Filing # 52502874 E-Filed 02/14/2017 07:15:34 PM

IN THE CIRCUIT COURT OF THE SECOND JUDICIAL CIRCUIT
IN AND FOR JEFFERSON COUNTY, FLORIDA

J.D. JAMES, INC. D/B/A
NATURE BRIDGES,

     Plaintiff,

vs.                                                                           CASE NO.: 2016-CC-025

SAKET CHAUDHARI,

     Defendants.

_____/

## DEFENDANT SAKET CHAUDHARI'S COUNTER-CLAIM AGAINST PLAINTIFF

     The Defendant, SAKET CHAUDHARI, by and through the undersigned counsel, hereby

files this Counter-Claim against the Plaintiff, as follows:

### Introduction

     23.    To the extent relevant to this Counter-Claim, and as necessary to ensure the

procedural efficiency proscribed by the Florida Rules of Civil Procedure, the Defendant re-alleges

and incorporate by reference paragraphs 1-12 the Defendant's Answer to Plaintiff's Complaint, as

well as Defendant's Affirmative Defenses 1-22.

     24.    For this Court's benefit, the allegations contained herein are numbered

continuously and sequentially with the Defendant's previously-filed Answer and Affirmative

Defenses.

     25.    The allegations contained in this Counter-Claim arise from the same transaction

and occurrence(s) forming the impetus for the Plaintiff's Initial Complaint. Specifically, this is a

Counter-Claim for breach of contract.

**EXHIBIT A**

CERTIFIED TRUE AND CORRECT COPY
KIRK B. REAMS
CLERK OF CIRCUIT COURT
JEFFERSON COUNTY, FLORIDA
BY

Electronically Filed Jefferson Case # 16000025CCAXMX 02/14/2017 07:15:34 PM

26.   This counter-claim is for damages exceeding $15,000, and therefore beyond the jurisdictional limits appropriate for this Court. Transferal to Circuit Court is appropriate.

27.   The undersigned counsel encountered a litany of unforeseeable technical difficulties, which delayed the filing of this Counter-Claim.

28.   The undersigned counsel respectfully and appreciatively acknowledges opposing counsel's consent in allowing this pleading to be filed after the filing of the Defendant's Answer and Affirmative Defenses.

### Parties and Factual Basis

29.   The Defendant is a permanent resident of the state of New Jersey.

30.   The Plaintiff, J.D. James, Inc. is incorporated in the state of Florida, with its principal place of business located within the state of Florida, and conducts business in Florida and New Jersey.

31.   Prior to executing the Agreement, the Defendant obtained an environmental permit, which he provided to the Plaintiff, along with a Site Development Plan, which had been prepared by a New Jersey engineering firm hired by the Defendant. *See Attachment #1.*

32.   The site plan established a size and location of the bridge which would ensure compliance with local ordinances, permitting requirements, and other associated environmental rules.

33.   On or about February 3, 2014, and armed with Armed with the Site Development Plan and the necessary permit, the Parties entered into the Parties entered into an Agreement for the design and construction of a bridge, which was to be built on the Defendant's property, located in New Jersey. *See Attachment #2.*

34.     Ultimately, the size of the bridge built by the Plaintiff was different than the previously-approved and permitted size.

35.     Moreover, the bridge built by the Plaintiff was construction in a different location than the previously-approved and permitted location.

36.     Eventually, representatives with the New Jersey Department of Environmental Protection discovered the irregularities, resulting in the issuance of a Notice of Violation.

37.     This Notice of Violation effectively brought the project to a halt, for which the Parties remain in a standstill pattern.

38.     Expecting the Plaintiff to perform the required remedial measures, the Plaintiff withheld a payment in the amount of $7,500.00, which represented the final payment of the initial Agreement, but excluding any costs for the required remedial measures.

39.     The Plaintiff, a licensed company experienced in the field of constructing bridges, breached the Agreement by failing to construct a compliant bridge that conformed with all applicable laws, ordinances, and rules.

40.     The Plaintiff breached the Agreement by failing to construct and/or complete a bridge for the Defendant that can be utilized in any meaningful, useful, and/or intended purpose.

41.     The Plaintiff breached the Agreement by failing to construct a bridge which complies with the requirements of the permit(s) and Site Development Plan obtained by Defendant and provided to Plaintiff.

42.     After receiving notice of the bridge's noncompliance, as well as the Plaintiff's willingness to pay for additional costs of remedial measures, the Plaintiff breached the Agreement

by failing to satisfy and/or correct any construction defect, noncompliance, and/or failing to make any remedial or corrective measures necessary to satisfy the contract, and the requirements of law.

43.     The Plaintiff breached the Agreement by failing to complete the project, which is a condition precedent to entitlement to final payment.

44.     The Plaintiff breached the Agreement by failing to thoroughly review, analyze, check and/or observe the requirements of the permit and associated Site Development Plan.

45.     The Plaintiff breached the Agreement by failing to increase its workforce and/or workload, and otherwise by failing to implement operational measures reasonably necessary to complete the project within terms, conditions, and restrictions of the relevant permit and Site Development Plan.

46.     The Plaintiff breached the Agreement, by failing to honor its warranty of work, as provided in the Agreement.

47.     The Plaintiff breached the Agreement by failing to provide sufficiently competent representatives to oversee the project on the Defendant's property.

48.     As a result of the Plaintiff's breach(es), the Defendant has sustained damages in an amount greater than fifteen-thousand dollars ($15,000.00).

49.     As a result of the Plaintiff's breach(es), the Defendant is entitled to recover pre-judgment and post-judgment interest, costs, as well as the Defendant's reasonable attorney's fees.

50.     All conditions precedent to this action have occurred, have been waived, have been offered and/or conveyed, and/or have been performed or substantially performed.

WHEREFORE, the Defendant, by and through the undersigned counsel, prays this Court to transfer this matter to circuit court for entry of a judgment in his favor for damages, including pre-judgment and post-judgment interest, attorney's fees and costs, and for any such further relief deemed just and proper.

Respectfully Submitted,

ROBERT A. "GUS" HARPER, III
Florida Bar No. 881791
Primary E-mail: gus@harperlawyer.com
HARPER LAW FIRM, P.A.
1725 Capital Circle N.E., Suite 304
Tallahassee, Florida 32308
Telephone: (850) 523-0930
Facsimile: (850) 523-0917
Counsel for Defendant

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served Electronically via E-Service through the Court's E-Portal system to the following this 14th day of February, 2017:

S. Elysha Luken
Smith, Currie & Hancock, LLP
101 N.E. Third Avenue, Suite 1910
Fort Lauderdale, FL 33301

/s/ Robert A. "Gus" Harper, III
ROBERT A. "GUS" HARPER, III




**STATE OF NEW JERSEY**
**DEPARTMENT OF ENVIRONMENTAL PROTECTION**
**DIVISION OF LAND USE REGULATION**
501 East State Street, Station Plaza 5, 2 nd Floor
P.O. Box 439, Trenton, New Jersey 08625-0439
Fax: (609) 777-3656 or (609) 292-8115
www.state.nj.us/dep/landuse

# PERMIT

| In accordance with the laws and regulations of the State of New Jersey, the Department of Environmental Protection hereby grants this permit to perform the activities described below. This permit is revocable with due cause and is subject to the limitations, terms and conditions listed below and on the attached pages. For the purpose of this document, "permit" means "approval, certification, registration, authorization, waiver, etc." | Approval Date: **FEB 19 2010**  Expiration Date: **FEB 19 2015** |
|---|---|

| Permit Number/s | Type of Approval/s | Enabling Statute/s |
|---|---|---|
| 1907-08-0002.1 FHA 080001<br>1907-08-0002.1 FHA 090001<br>1907-08-0002.1 FWW 090001 | Flood Hazard Area Individual Permit<br>Flood Hazard Area Verification<br>FWW General Permit 10A | NJSA 13:9B-1<br>NJSA 13:1D-1<br>NJSA 58:10A-1<br>NJSA 58:16A-50, et. seq. |

| Applicant | Owner (if different from applicant) |
|---|---|
| Satyendra Chaudhari<br>54 Corey Road<br>Flanders, New Jersey, 07836 | |

**Description of Authorized Activities and Limit of Disturbance**

This Permit verifies the flood hazard area and riparian zone limits and authorizes the construction of a single family dwelling, septic system and a driveway with a bridge, within the 300-ft riparian zone and flood hazard area of an unnamed tributary to the Paulins Kill, at a subject lot located northwesterly of the intersection of Stillwater Road and State Route 94, within Lot No. 15.02 of Block No.1601, in the Township of Fredon, Sussex County, New Jersey.

| [Lot 15.02 of Block 1601]<br>20 Stillwater Road<br>Fredon Township, Sussex County<br>New Jersey, 07860 | Received by County Clerk |
|---|---|
| **Project Manager's Signature**<br>_Mantu_<br>Marian Asante-Grable<br>Telephone: (609) 777-3760 | |

**This permit is not valid unless authorizing signature appears on the last page.**

# 1

1907-08-0002.1 FHA 080001 Individual Permit: FHA 090001 Verification; FWW 090007 GP10A          Page 2

**STANDARD CONDITIONS:**

1. **Acceptance of permit:** If you begin any activity approved by this permit, you thereby accept this document in its entirety and agree to adhere to all terms and conditions. If you do not accept or agree with this document in its entirety, do not begin construction. You are entitled to request an appeal within a limited time as detailed on the attached *Administrative Hearing Request Checklist and Tracking Form*. You may also contact the project manager shown on the first page if you have any questions or concerns about this document.

2. **Recording with County Clerk:** You must record this permit in the Office of the County Clerk for each county involved in this project. You must also mail or fax a copy of the front page of this permit to the Department showing the received stamp from each County Clerk within 30 days of the issuance date (or 90 days if multiple counties are involved). The Department's address and fax number are shown on the first page of this permit.

3. **Notice of Construction:** You must notify the Department in writing at least 7 days before you begin any work approved by this permit. The Department's address and fax number are shown on the first page. Please direct your letter to the project manager shown on the first page.

4. **Expiration date:** All activities authorized by this permit must be completed by the expiration date shown on the first page. At that time, this permit will automatically become invalid and none of the approved work may begin or continue until a replacement permit is granted. (Some coastal permits may qualify for an extension of the expiration date. Please contact the Department for further information.)

5. **Duty to comply:** The permittee, its contractors and subcontractors shall comply with all conditions of the permit, supporting documents and approved drawings. Any noncompliance with a permit constitutes a violation of this chapter, and is grounds for enforcement action pursuant to N.J.A.C. 7:13-19, as well as suspension and/or termination of the permit

6. **Duty to reapply:** If the permittee wishes to continue an activity covered by the permit after the expiration date of the permit, the permittee must apply for and obtain a new permit.

7. **Duty to halt or reduce activity:** It shall not be a defense for a permittee in an enforcement action that it would have been necessary to halt or reduce the permitted activity in order to maintain compliance with the conditions of the permit.

8. **Duty to minimize environmental impacts:** The permittee shall take all reasonable steps to prevent, minimize or correct any adverse impact on the environment resulting from activities conducted pursuant to the permit, or from noncompliance with the permit.

9. **Proper operation and maintenance:** The permittee shall at all times properly operate and maintain all facilities and systems of treatment and control (and related appurtenances) which are installed or used to achieve compliance with the permit. Proper operation and maintenance includes effective performance, adequate funding, adequate operator staffing and training, and adequate laboratory and process controls, including appropriate quality assurance procedures. The operation of back-up or auxiliary facilities or similar systems is only required when necessary to achieve compliance with the permit. The permittee must also properly execute any approved mitigation compensation and/or restoration proposal designed to mitigate losses caused by the permitted activity. The permittee shall maintain the authorized work areas in good condition and in accordance with the permit.

10. **Proper oversight:** The permittee shall ensure that all approved activities are undertaken using the best management practices available under the supervision and direction of an engineer at all points necessary to ensure compliance with all permit conditions.

11. **Proper site maintenance:** While the regulated activities are being undertaken, neither the permittee nor its agents shall cause or permit any unreasonable interference with the free flow of a regulated water by placing or dumping any materials, equipment, debris or structures within or adjacent to the channel. Upon completion or

1907-08-0002.1 FHA 080001 Individual Permit; FHA 090001 Verification; FWW 090007 GP10A        Page 3

abandonment of the work, the permittee and/or its agents shall remove and dispose of in a lawful manner all excess materials, debris, equipment, silt fences and other temporary soil erosion and sediment control devices from all regulated areas.

12. **Permit actions:** A permit can be revised, suspended or terminated for cause. The filing of a request by the permittee for a revision, or a notification of planned changes or anticipated noncompliance does not stay any condition of a permit.

13. **Property rights:** A permit does not convey any property rights of any sort, or any exclusive privilege.

14. **Duty to provide information:** A copy of the general permit and other authorizing documents including all approved plans and drawings shall be maintained at the authorized site at all times and made available to Department representatives or their designated agents immediately upon request. The permittee shall also furnish to the Department within a reasonable time any information that the Department requests to determine compliance with a permit or to determine whether cause exists for suspension or termination of a permit. The permittee shall also furnish to the Department, upon request, copies of records required to be kept by the permit.

15. **Inspection and entry:** The permittee shall allow an authorized representative of the Department, at reasonable times and upon the presentation of credentials, to:

    i.   Enter upon the permittee's premises where a regulated activity is located or conducted, or where records must be kept under the conditions of the permit;

    ii.  Have access to and copy any records that must be kept under the conditions of the permit; and

    iii. Inspect any facilities, equipment, practices or operations regulated or required under the permit. Failure to allow reasonable access under this section shall be considered a violation of this chapter and subject the permittee to enforcement action pursuant to N.J.A.C. 7:13-19.

16. **Reporting requirements:** The permittee shall provide reports to the Department as follows:

    i.   Planned changes: The permittee shall give notice to the Department prior to any planned physical alterations or additions to the permitted project or activity;

    ii.  Transfers: The permit is not transferable to any person unless the transfer is approved by the Department, pursuant to N.J.A.C. 7:13-14.1;

    iii. Noncompliance: The permittee shall immediately report to the Department by telephone at (877) 927-6337 any noncompliance that may endanger health or the environment. The permittee shall report all other noncompliance to the Division of Land Use Regulation by telephone at (609) 292-0060 within two business days of the time the permittee becomes aware of the noncompliance, and in writing within five business days of the time the permittee becomes aware of the noncompliance. The written notice shall include: a description of the noncompliance and its cause; the period of noncompliance, including exact dates and times, and, if the noncompliance has not been corrected, the anticipated length of time it is expected to continue; and steps taken or planned to reduce, eliminate and prevent recurrence of the noncompliance. Such notice shall not, however, serve as a defense to enforcement action if the project is found to be in violation of this chapter; and

    iv.  Other information: Where the permittee becomes aware that it failed to submit any relevant facts in an application, or submitted incorrect information in an application or in any report to the Department, it shall promptly submit such facts or information.

17. **Other responsibilities:** You must obtain all necessary local, Federal and other State approvals before you begin work. All work must be stabilized in accordance with the Standards for Soil Erosion and Sediment Control in New Jersey, and all fill material must be free of toxic pollutants in toxic amounts as defined in section 307 of the Federal Act.

1907-08-0002.1 FHA 080001 Individual Permit; FHA 090001 Verification; FWW 090007 GP10A      Page 4

**SPECIAL CONDITIONS IN ADDITION TO THE STANDARD CONDITIONS:**

18. All excavated material and dredged spoils shall be disposed of in a lawful manner outside of any flood hazard area riparian zone, open water, freshwater wetland and adjacent transition area, and in such a way as to not interfere with the positive drainage of the receiving area.

19. All sediment barriers and other soil erosion control measures shall be installed prior to commencing any clearing, grading or construction onsite, and shall be maintained in proper working condition throughout the entire duration of the project.

20. This verification establishes the flood hazard area design flood elevation, and the riparian zone limits onsite as shown on the approved plans. A flood hazard area permit is required prior to undertaking any regulated activity within the verified flood hazard area or riparian zone onsite. Please note that regulated activities may be prohibited or restricted within the floodway and riparian zone onsite. Regulated activities are defined in the Flood Hazard Area Control Act rules at N.J.A.C. 7:13-2.4. Work outside both the verified flood hazard area and riparian zone does not require prior approval under N.J.A.C. 7:13.

21. In order to protect the trout production waters within the tributaries to the Paulins Kill, no grading, construction or clearing is permitted within any watercourse onsite between September 15 and March 15. Furthermore, any activity outside a watercourse, which would likely introduce sediment into the watercourse and/or increase its turbidity, is also prohibited during this period. The Department reserves the right to suspend all regulated activities onsite should it be determined that the applicant has not taken proper precautions to ensure continuous compliance with this condition.

22. Raw or unset concrete shall not come in contact with any surface waters onsite, since such contact can be toxic to aquatic biota.

23. In order to avoid direct impacts to foraging/roosting Indiana bats, the clearing of trees 6 inches diameter at breast height or greater may not occur within the entire project area from April 1 to September 30. Limited tree clearing during this time may be allowed subject to review and approval by the United States Fish and Wildlife Service (USFWS).

24. The existing migration patterns of aquatic life in the watercourse shall not be inhibited as a result of this project. This includes the maintenance and/or creation of a low-aquatic fish passage within the disturbed channel and throughout any proposed in-channel structure wherever possible. In addition, any disturbed areas of the channel shall be restored using native, non-acid producing soils and indigenous, non-invasive vegetation.

25. The Department has determined that the riparian zone associated with these features is 300 feet. Therefore, vegetation within 300 feet of the top of the bank shall only be disturbed in the areas specifically shown on the approved drawing/s. No other vegetation within 300 feet of the top of any stream bank shall be disturbed for any reason. This condition applies to all channels onsite regardless of the contributory drainage area.

26. In order to protect bog turtles (Clemmys muhlenbergii) a federally listed species, the permittee is responsible for ensuring the following for any project activities within wetlands between March 15 and October 30:

    a. Place double-silt fencing along project site and monitor the fencing on a daily basis.

    b. Employ a recognized qualified bog turtle surveyor to monitor the site during work activities within wetlands for protection of the bog turtle.

    c. Implement best management practices to avoid or minimize sediment release in the water column during construction activities.

For activities between November 1 and March 15, (a) and (c) above must be implemented.

1907-08-0002.1 FHA 080001 Individual Permit; FHA 090001 Verification; FWW 090007 GP10A       Page 5

27.   This permit does not authorize any additional clearing outside of the Limit of Disturbance identified on the plan. Any clearing for trees and other vegetation outside of the Limit of Disturbance will require additional permits from this office.

28.   The drawing hereby approved was prepared by Richard A. Wostbrock, P.E., dated April 13, 2009, last revised December 7, 2009 and entitled:

"SITE DEVELOPMENT PLAN, PROPOSED RESIDENTIAL DWELLING, FOR SATYENDRA & SADHNA CHAUDHARI, BLOCK 1601, LOT 15.02, FREDON TOWNSHIP, SUSSEX COUNTY, NJ" Sheet No. 1 of 1.


Vincent J. Mazzei, Jr., PE
Acting Supervising Engineer
Bureau of Inland Regulation

2/19/10
Date

# Adjudicatory Hearing Request Checklist and Tracking Form

I.     Permit Decision or Other Department Decision Being Appealed:

_____

Issuance Date of Decision Document      Document Number (If any)

II.     Please provide Name, Address and Phone No. of:

Person Requesting Hearing      Name of Attorney (If applicable)

Address      Address

Phone No.      Phone No.

III.     If you are the applicant or permittee, please include the following information with your hearing request:
A.   The date you received the permit decision or other decision which you are appealing;
B.   A copy of the decision document;
C.   The findings of fact and conclusions of law you are appealing;
D.   A statement as to whether or not you raised each legal and factual issue during the permit application process;
E.   Suggested revised or alternative permit conditions;
F.   An estimate of the time required for the hearing;
G.   A request, if necessary, for a barrier-free hearing location for physically disabled persons;
H.   A clear indication of any willingness to negotiate a settlement with the Department prior to the Department's processing of our hearing request to the Office of Administrative Law; and
I.   This form completed, signed and dated with all of the information listed above, including attachment to:

     1.   New Jersey Department of Environmental Protection Office of Legal Affairs
         Attention: Adjudicatory Hearing Requests
         401 East State Street
         P.O. Box 402
         Trenton, NJ 08625-0402:

     With a copy to:

     2.   New Jersey Department of Environmental Protection
         Land Use Regulation Program
         Attention: Director
         P.O. Box 439
         Trenton, NJ 08625-0439

Signature: _____      Date: _____

IV.   If you are a person other than the applicant or permittee, please include the following information with your hearing request:

A.   The date you or your agent received notice of the permit decision, and a copy of the permit decision;

B.   Evidence that a copy of your hearing request has been delivered to the applicant for the permit decision which is the subject of your hearing request (e.g., certified mail return receipt);

C.   A detailed statement of which findings of fact and/or conclusion of law you are challenging;

D.   A description of our participation in any public hearings held in connection with the permit application and copies of any written comments you submitted;

E.   Whether you claim a statutory or constitutional right to a hearing, and, if you claim such a right, a reference to the applicable statue or an explanation of how your interests are affected by the permit decision;

F.   Suggested revised or alternative permit conditions;

G.   An estimate of the time required for the hearing;

H.   A request, if necessary, for a barrier-free hearing location for physically disabled persons;

I.   A clear-indication of any willingness to negotiate a settlement with the Department prior to the Department's processing of the hearing request to the Office of Administrative Law; and

J.   This form completed, signed and dated with all the information listed above, including attachments to

1.   New Jersey Department of Environmental Protection Office of Legal Affairs
Attention: Adjudicatory Hearing Requests
401 East State Street
P.O. Box 402
Trenton, NJ 08625-0402;

With a copy to:

2.   New Jersey Department of Environmental Protection
Land Use Regulation Program
Attention: Director
P.O. Box 439
Trenton, NJ 08625-0439

Signature: _____     Date: _____





LAN Associates, EPAS, Inc.

LAN No.:    **2.9411.03**
Chaudhari/Flood Hazard Area Calculations & Permitting
Block 1601, Lot 15.02, Fredon, NJ

Photos by:    **CSG**    on    **9/23/14**

### Photo No. 1
A view of the as-built bridge. Photo taken from
Stillwater Road facing east.



### Photo No. 2
A view of the as-built bridge looking upstream.  Photo
taken from the west bank of the stream facing south.



### Photo No. 3
A view of the as-built bridge looking downstream.
Photo taken from the west bank of the stream facing
north.



**LAN Associates, EPAS, Inc.**

LAN No.:    **2.9411.03**
Chaudhari/Flood Hazard Area Calculations & Permitting
Block 1601, Lot 15.02, Fredon, NJ

Photos by:    **CSG**    on    **9/23/14**

### Photo No. 4
A view of the as-built bridge. Photo taken from
Stillwater Road facing west looking towards Stillwater
Road in background.



### Photo No. 5
A view looking downstream at the western abutment.
Photo facing north.



cc:    File #2.9411.03





**JD JAMES INCORPORATED**
D/B/A Nature Bridges

This Contract Agreement is entered into as of February 3, 2014 by Saket Chaudhari (Owner), and J.D. James, Inc. dba Nature Bridges (Contractor).

**The Work.** Contractor agrees to furnish all labor, materials, equipment, services, and facilities (including scaffolding and hoisting) necessary for the satisfactory completion and acceptance of the work described in Exhibit A for the HS-20 (20 Ton Bridge) (Project).

1. **The Contract Documents.** The Contract Documents consist of (1) this Contract Agreement; (2) Modifications issued subsequent to the execution of the Contract, whether before or after the execution of this Contract Agreement; and (3) Modifications to the Contract issued after execution of this Contract Agreement. These form the Contract, and are as fully a part of the Contract as if attached to this Contract Agreement or repeated herein. The Contract represents the entire and integrated agreement between the parties hereto and supersedes prior negotiations, representations, or agreements, either written or oral.

2. **The Contract Price.** Subject to all terms and conditions of this Contract, Owner agrees to pay Contractor for the satisfactory completion of the Work, and acceptance of the Work by Owner, the sum of $55,000.00 (Contract Price).

3. **Payment Conditions.** The following conditions precedent must all be satisfied before any progress or final payment can become due. Owner has no obligation to make payment to Contractor unless and until each of these conditions precedent has been satisfied:
   a. Contractor has timely submitted a properly completed Application for Payment
   b. Contractor has furnished all required certificates of insurance
   c. Contractor has furnished, for itself and from each of its subcontractors and materialmen, releases and waivers of liens and claims that comply with the requirements of Paragraph 10 below
   d. with respect to final payment, Contractor has furnished an Affidavit and Final Release and Waiver of Liens and Claims that is satisfactory to Owner.
   Payment to Contractor is due ten (10) business days after the foregoing conditions precedent have all been satisfied. Unless unavoidably required in order to timely perfect a lien or a payment bond claim, Contractor agrees not to file any lien, claim, or suit to collect payment from Owner before fifteen (15) days after the above conditions precedent have all been satisfied, and not withstanding any such lien, claim, or suit, all such conditions precedent must be satisfied before payment can become due.

   100% of the Contract Price will be invoiced by the Contractor to the Owner after work is completed.

4. **Effect of Payment.** No payment to Contractor constitutes acceptance of any part of the Work. Contractor's acceptance of a progress payment or final payment releases Owner from liability (except retainage) arising from any Work performed (including Changes), or conditions or events occurring, before the date of the Application for Payment on which the payment is made.

5. **Payments By Contractor.** Contractor shall timely pay all bills, invoices, and charges for all labor, services, equipment, and materials acquired or used by Contractor for the Work.

6. **Satisfaction of Past Due Obligations.** Owner has the right, but not the obligation, to satisfy any past due obligations of Contractor arising out of the Work by direct payment to the creditor or by a check payable jointly to Contractor and the creditor. Such payments shall be treated as payments to Contractor.

7. **Waivers of Claims and Liens.** Contractor shall provide, for itself and from its subcontractors and suppliers, any release or waiver of liens and claims required by the Contract. In addition, with each Application for Payment, Contractor shall provide satisfactory evidence that it has paid its laborers, suppliers, and subcontractors for all work, equipment, and materials furnished through the date of the previous Application for Payment.

#2

8. <u>Submittal and Substitutions.</u>  Contractor shall thoroughly check and correct all shop drawings, samples, and other submittals before submission to Architect, and Contractor shall ensure that all such submittals, shop drawings, and samples comply with all requirements of the Contract, including, but not limited to, those applicable to form, format, content number of copies, and time of submission.  If required, shop drawings and submittals shall be prepared and stamped by an engineer licensed in the state of New Jersey.  Approval by Owner or Architect of any shop drawing, sample, or other submittal does not relieve Contractor of liability for deviations from the requirements of this Contract Agreement unless the deviation is conspicuously and specifically identified as such and described in detail at the time of submission, and is thereafter specifically and explicitly approved by the Architect in writing.  The stamping of submittals "Approved" or the like will not alone suffice to approve a deviation.  Without limiting the generality of the incorporation by reference of the Contract, substitutions of products, materials, equipment, or systems shall be allowed only to the extent, and only under the conditions, provided for in the Contract, and Contractor assumes obligations and liabilities for any substitution affecting the Work, regardless of whether such substitution was approved by Owner or Architect.

9. <u>The Schedule.</u>  Time is of the essence.  Before and during performance of the Work, Contractor must remain knowledgeable about the progress of the Project, and make all arrangements necessary to coordinate and not impede its Work.  Contractor shall perform the Work in accordance with the schedule for the Project.  As the Project progresses, Contractor may amend the Schedule (including both duration and sequences of activities) to reflect instructions from the Owner, changes in the Project, changes in the construction means or methods, or unanticipated occurrences affecting the Project.  The Contract Price shall be adjusted for amendments to the Schedule only to the extent explicitly provided for in this paragraph and only if all conditions described in this Paragraph and Paragraphs 14, 15, and 16 are fully satisfied.  If an amendment materially reduces the duration (excluding float) provided in the Schedule for Contractor's Work, Contractor may become entitled to payment for any actual, documented increase in Contractor's direct costs that results solely and necessarily from accelerated performance required by the amendment if, <u>before</u> proceeding with any Work on an accelerated basis, Contractor first:
   a. Specifically notifies Architect in writing of the increased costs that will result from accelerated performance, <u>and</u>
   b. Thereafter obtains Architect's specific, written and signed authorization to proceed on an accelerated basis.
   Upon Architect's request, Contractor shall promptly provide detailed progress, procurement, manpower and completion schedules.  Contractor shall increase its workforce, work overtime, work Saturdays, Sundays, and holidays, all without additional compensation, if such measures are necessary to maintain the Schedule.  No premium time will be paid except pursuant to prior written authorization, signed by Architect, specifying that premium time will be paid and the amount that will be paid.

10. <u>Delays.</u>  If the Work is unavoidably delayed solely by:  extraordinary weather conditions that are uncharacteristic for the locale of the Work and could not have been anticipated; unusual, unavoidable, and unanticipated delays in transportation; affirmative actions by Contractor that are unjustified, improper, and could not have been anticipated; or unavoidable casualty loss to, or destruction of, the Work, then the Schedule may be adjusted by Contractor based on the amount of time actually and unavoidably lost solely as a result of such occurrences.  Otherwise, except as specifically and explicitly provided herein, Contractor assumes all risks of strict compliance with the Schedule.  Adjustments to the Schedule will be made only if both of the following conditions precedents have been satisfied:
   a. Contractor has delivered to Architect a written notice containing a specific request for adjustment of the Schedule by the earlier of two (2) days after commencement of the first occurrence or condition that causes the delay or two (2) business days prior to the date by which Architect is required to provide a corresponding notice to Owner under the terms of the Contract; and
   b. Contractor receives a corresponding time extension from Owner (except with respect to delays directly caused by improper and unjustified affirmative acts by Contractor which result solely from conditions or decisions that are entirely within Contractor's effective and actual control).

11. <u>Schedule Amendments and Delays Originating with Owner.</u>  For Schedule amendments or delays that result directly or indirectly from decisions, instructions, actions, or omissions by Owner or Architect, Contractor may

Page 2 of 8

a. by the earlier of seven (7) days after Schedule amendment or commencement of the delay or seven (7) business days before a corresponding notice or request must be submitted by the Contractor to the Owner under the terms of the Contract, Contractor delivers to Owner or Architect a specific written request seeking additional compensation from Owner; and

b. Contractor timely provides all supporting documentation and other evidence that is requested by Owner or Architect.

The foregoing conditions are in addition to, and not in lieu of, the applicable conditions in Paragraphs 13 and 14 above, which must also be satisfied. Contractor shall be responsible for all costs and expenses (including attorneys fees) incurred by Owner as a result of a request by Contractor pursuant to this Paragraph.

12. <u>Changes.</u> Owner may, without notice to any surety, direct changes, additions, and/or deletions to the Work, or direct extra work (all of the foregoing are referred to as "Change(s)). Regardless of whether a Change is initiated by written or oral authorization, direction, interpretation, determination, or any other form of words or conduct, Owner shall not be obligated to pay Contractor an amount in excess of the Contract Price and/or adjust the Schedule on account of a Change unless the following conditions precedent have all been satisfied:

a. <u>before Contractor proceeds with the Change:</u>

i. Owner authorizes the Change in a signed written directive explicitly designated as a Change Order, or

ii. Contractor delivers to Architect or Owner a written statement describing in detail the nature and scope of the work that Contractor contends is a Change, and describing in detail the basis of the Contractor's claim that such work constitutes a Change; and

b. With respect to adjustment of the Schedule:

i. Contractor states the number of days requested in a written notice delivered to Owner or Architect by five (5) days after initiation of the Change

13. <u>Adjustments in Contract Price for Changes.</u> Before authorizing a Change, Owner may require Contractor to provide a detailed price breakdown showing the difference in the cost and value of the work, labor, services, and materials added, omitted, or modified by the proposed Change, and all other information and documentation with respect to proposed Changes. All such information and documentation must be delivered by Contractor to Owner no less than five (5) business days after initiation of the proposed Change. If no agreement concerning an adjustment to the Contract Price is reached, the proposed Change shall not be executed.

14. <u>Warranty.</u> Contractor warrants the Work to Owner under the same terms and for one year. Contractor assumes and shall perform and discharge obligations and other responsibilities that relate to the Work. In addition, Contractor warrants that the Work will be performed in strict accordance with all terms of this Contract Agreement and in conformity with the best practices of the construction industry. Contractor further warrants and agrees that it will exercise due care in the performance of the Work, and will execute the Work in a non-negligent manner. Contractor's warranty obligations survive termination of this Contract.

All Work is subject to approval by Owner. If any part of the Work is determined to be defective or otherwise to constitute a breach of any of Contractor's warranties, Contractor, at its own expense, shall promptly correct or replace the same, as directed by Architect or Owner, and shall repair or replace any other work, materials, or property damaged or required to be redone as a result of such correction or replacement. Nothing in this Paragraph may be interpreted to restrict Owner's remedies, or the liability of Contractor, for any breach of Contractor's warranties. Contractor shall comply with all warranty, repair, and replacement obligations in a timely manner.

15. <u>Taxes.</u> The Contract Price includes, and Contractor shall pay, all applicable taxes, assessments, and contributions arising from this Contract or the Work, including, but not limited to:

a. taxes and/or contributions based on the earnings of Contractor's employees, or employees of any subcontractor or supplier of Contractor;

b. sales, use, or excise taxes; and

c. gross receipts or similar taxes

16. <u>Permits, Licenses, and Fees.</u>  Contractor shall obtain municipal building permits and licenses, required for the Work.  The cost of any building permit will be assumed by the Owner.  Contractor shall also be responsible for the costs of any municipal inspections or certifications required for the Work.  Owner shall obtain at his own expense all environmental permits and licenses, required for the Work.  Owner shall also be responsible for the costs of any environmental inspections or certifications required for the Work.

17. <u>Compliance with Laws.</u>  Contractor shall comply with all applicable laws, ordinances, rules, regulations, and orders, including, but not limited to, those relating to:
   a.  discrimination;
   b.  safety;
   c.  substance abuse; and
   d.  hazardous materials; and
   e.  documentation of citizenship or alien status
   If, during the term of this Contract Agreement, there are any changed or new laws, codes, ordinances, or regulations which become effective and which will or may affect the cost or time of performance of this Contract, the Contractor shall immediately notify Owner in writing and submit detailed documentation of such affects in terms of both time and cost of performance.

18. <u>Liability Insurance.</u>  Contractor shall maintain at its own expense:
   a.  all insurance required by applicable law; and
   b.  the forms of insurance identified below in at least the amounts specified.
   Contractor shall have Owner designated and included as additional insureds on all such insurance.  Coverage of Owner shall be primary, and not contributory or excess.  Contractor waives all rights of recovery against Owner for any loss or damage that is covered, or which Contractor was obligated to have covered, by any insurance, including all rights that might otherwise accrue to any subrogee.

   I.   Workmen's Compensation – Statutory
        A.   Employer's Liability - $500,000.00
        B.   Voluntary Compensation Endorsements
        C.   Broad Form All States Endorsement

   II.  Comprehensive General Liability
        A.   Limits
             1.   Bodily Injury:        $1,000,000.00 Each Occurrence
                                        $2,000,000.00 Aggregate
             2.   Property Damage:      $1,000,000.00 Each Occurrence
                                        $2,000,000.00 Aggregate

        B.   Policy shall include the following coverages:
             1.   Premises & Operations
             2.   Independent Contractors
             3.   Broad Form Extended Liability Endorsement
             4.   Contractual Liability.  (This insurance shall cover all contractual agreements, both oral and written, including, but not limited to, Contractor's agreement to defend and indemnify Contractor as provided in this Subcontract).

   III. Automobile Liability – Comprehensive Form
        A.   Limits of Liability
             Combined Single Limit - $1,000,000.00
        B.   Uninsured Motorist
             Combined Single Limit - $25,000.00

   IV.  Umbrella
        Limit of Liability - $1,000,000.00

Page 4 of 8

19. **Insurance for Contractor's Property.** Contractor shall maintain, at its own expense, insurance against loss or destruction or materials, equipment, tools, and other property purchased by Contractor for the Work.

20. **Certificates of Insurance.** Before beginning the Work, Contractor shall furnish to Owner an insurance certificate demonstrating that all required insurance is in force. All required insurance policies must be endorsed to specify that cancellation of or any material change in, such policies that may adversely affect the interests of Owner shall not become effective before thirty (30) days after written notice of such modification or cancellation is received by Owner.

21. **Contractor's Representative and Workers.** Contractor shall have a competent representative at the Project at all times during the performance of the Work who shall be authorized to act, in all respects, on behalf of Contractor. Contractor shall remove and replace such representative, or any other worker, foreman, or supervisor without additional charge, within twenty-four (24) hours after receipt of a written request by Owner stating any reasonable grounds for removal. Nothing in this Paragraph or elsewhere in this Contract shall be deemed to make Contractor (or any of its employees or agents) an employee or agent of Owner. Rather, Contractor is in all respects an independent contractor.

22. **Maintenance of Site.** Contractor shall at all times keep the vicinity of the Work clean and orderly.

23. **Cost Data.** Contractor shall comply with all applicable laws, regulations, and ordinances relating to costs and pricing; maintenance of cost and pricing data and records; and audits of cost and pricing data records.

24. **Patent Infringement.** Contractor shall defend and indemnify Owner against all liabilities, claims, royalties, suits, damages, and expenses, including, but not limited to, court costs and attorneys' fees, arising out of any alleged unauthorized use of patented processes, products, materials, or appliances in performing the Work.

25. **Protection of the Work.** Contractor shall carefully secure and protect the Work and all materials, equipment, and work of Contractor, and shall be liable for any loss or damage that result from Contractor's failure to do so.

26. **Slowdown or Work Stoppage.** In the event of a slowdown, work stoppage or strike by Contractor's employees or any employees of its subcontractors or suppliers, Contractor shall take all measures necessary to execute the Work without delays and to avoid any delay or disruption of the Work. Time lost as a result of such slowdowns, work stoppages, or strikes is not an excusable delay, and shall not result in an adjustment of the Schedule.

27. **Default and Notice Cure.** If Contractor fails to supply enough properly skilled workers, proper materials, or maintain the Schedule; fails to make timely payment to its workers, subcontractors or suppliers; furnishes deficient or defective work or materials; disregards any laws, ordinances, rules, regulations or orders; or otherwise fails to strictly comply with any requirement of this Contract, Contractor shall be in default. The foregoing events and occurrences are referred to as "Events of Default." If the Contractor fails, within five (5) business days after written notice from Owner or Architect to cure any Event of Default, then Owner, without prejudice to any other rights or remedies and without notice to any surety, shall have the right, but not the obligation, to:
    a. Supply such workers, materials, equipment and other facilities as Owner deems appropriate to address the Event of Default; and/or
    b. Engage one or more additional contractors or subcontractors to perform any part of the Work that Owner deems appropriate to address in the Event of Default. In the event of an emergency requiring immediate action to avoid loss, damage, or injury, Owner may take any of the foregoing measures without first giving five (5) days' prior notice to Contractor, but shall thereafter give Contractor prompt notice of such action.

28. **Termination for Default.** If Subcontractor fails to commence and satisfactorily continue correction of any Event of Default within three (3) days after notification from Contractor as provided for above, then Contractor may, in addition to any other remedies give a second notification to Subcontractor stating that if Subcontractor fails to commence and satisfactorily continue correction of the Event of Default within seven (7) days after the second notification, this Subcontract may be terminated. Upon termination, Contractor may, at its option: (a)

29. <u>Safety.</u>  Contractor shall issue an Accident Prevent Plan to promote jobsite safety; Contractor shall have complete and exclusive responsibility for the safe performance of the Work and the safety of its employees, the employees of any of its subcontractors, and any other persons who may be in the vicinity of the Work.

30. <u>Terms of Subcontracts.</u>  Subcontractor shall include in its subcontracts and purchase orders with others all provisions required by law of the Prime Contract to be incorporated therein.  Neither this Paragraph nor any other provision of this Contract shall create any contractual or other relationship between Owner and any Subcontractors or suppliers of Subcontractor, except that Owner shall be entitled to enforce all warranty obligations of such Subcontractors and suppliers.

31. <u>Claims.</u>  Regardless of whether Owner has actual or constructive notice of any claim of Contractor for additional compensation, time, or other consideration, Contractor agrees that such claim is waived and forfeited unless it is set forth in detail in a written notice to Owner, and delivered to Owner as soon as practicable in the circumstances, but in any event no later than seven (7) days after the first occurrence of any of the conditions out of which such claim arises.

32. <u>No Delay Because of Claims.</u>  If Owner fails to make payment to Contractor, for reasons entirely unrelated to Contractor or Contractor's Work., within ten (10) days after payment becomes due under the terms of this Contract, then Contractor may, upon ten (10) additional days' written notice to the Owner, stop the Work until payment of the past due amount has been made.  Provided, however, that this Paragraph does not apply to, and Contractor shall not stop or slow down the Work on account of, Owner's non-payment of disputed amounts, including but not limited to:
   a.  payments as to which Owner contends one or more conditions provided in this Contract have not been satisfied;
   b.  payments for disputed Changes or disputed portions of Applications for Payment; or
   c.  payments of disputed amounts withheld by Owner under Paragraph 4.

33. <u>Expenses And Attorney's Fees.</u>  In the event of litigation between the parties arising out of the Work or this Contract, the party that substantially prevails shall be entitled to recover from the other party and its surety all reasonable costs and expenses (including attorneys fees) incurred by the prevailing party in connection with such litigation.  In addition, Contractor and its surety shall be liable to Owner for, and shall defend and indemnify Owner against, all damages, costs, judgments, fines, citations, assessments or expenses, including attorney's fees, incurred by Owner as a result of Contractor's failure to strictly comply with any term or requirement of this Contract.

34. <u>Governing Law.</u>  The terms and conditions of this Subcontract shall be construed and interpreted under, and the respective rights, duties, and obligations of the parties shall be governed by, New Jersey law.  Provided, however, that if Owner is made a party to any suit or proceeding that involves, or arises in whole or in part out of, this Contract or the Work, and Owner joins Contractor or asserts a claim against Contractor in such suit or proceeding, then the law of the jurisdiction where the suit or proceeding is pending shall govern all matters of procedure, including, but not limited to, the statues of limitations for the commencement of any actions against Contractor (unless New Jersey law allows a longer time for commencement of any such action).

35. <u>Dispute Resolution.</u>  Any arbitration provisions in the Prime Contract are not applicable to disputes between Owner and Contractor.  However, Owner may require Contractor to participate in any mediation of disputes with Owner that involves Contractor's Work.  Any litigation arising out of the Contract or the Work shall be brought only in a state or federal court situated in Jefferson County, Florida, which courts shall be the exclusive venues for any such litigation, unless Owner is or becomes a party to litigation in another venue and jurisdiction that arises in whole or in part out of the Contract or the Work, in which event Owner may elect to join

36. <u>Remedies Cumulative.</u>  The rights and remedies of Owner under this Contract are cumulative and are not intended to be in <u>lieu</u> of any right or remedy of Owner under applicable law.

37. <u>Notices.</u>  All notices required by this Contract must be in writing at the following address:

Saket Chaudhari
54 Corey Road
Flanders, New Jersey 07836

Delivery at such address may be made by personal delivery or mail (first class, postage pre-paid United States mail).

Any notice to be given to Contractor may be given either by personal delivery to Contractor or by mail (first class, postage pre-paid United States mail) to the following address:

Nature Bridges
1586 Seven Bridges Road
Monticello, Florida 32344

Any notice that does not comply with foregoing requirements is not effective.

38. <u>Amendment Or Modification.</u>  The Parties intend and expect that the terms and conditions of this Contract will govern all aspects of their relationship in connection with the Work and the Project, and that no agreements inconsistent with the terms and conditions of this Contract may implied from their correspondence, statements, or conduct.  Neither will rely upon, nor claim to have relied upon, any correspondence, statements, or conduct as having amended or modified any of the terms and conditions of this Contract.  Rather, an amendment or modification of this Contract may be made only by a written amendment that is specifically identified as such and is signed by both parties.

39. <u>Non-Waiver.</u>  No waiver of any term or condition of this Contract , or any of Owner's rights or remedies, shall result or be implied from any words or conduct of Owner (or any reliance thereon by Contractor), including, but not restricted to:
    a.  any failure by Owner to assert or enforce any such rights or remedies on other occasions;
    b.  any failure by Owner to insist upon the occurrence or satisfaction of any such conditions on other occasions;
    c.  any payment or other consideration given by Owner without the occurrence or satisfaction of such conditions; or,
    d.  any actual or constructive knowledge by Owner.

40. <u>Third Party Beneficiaries.</u>  Except to the extent specifically and explicitly provided otherwise above, this Contract is intended solely for the benefit of Owner and Contractor and there are no third party beneficiaries.

41. <u>No Fiduciary Duty.</u>  No action by Owner on behalf of Contractor, including, but not limited to, the presentation or prosecution of claims on behalf of Contractor pursuant to this Contract, shall give rise to any fiduciary duty owed by Owner to Contractor.  Rather, the only duties owed by Owner to Contractor are strictly contractual, and are limited to the express provisions of this Contract.

42. <u>Survival of Terms.</u>  All terms and conditions of this Contract shall survive termination of this Contract or completion and acceptance of the Work.  The terms and conditions of this Subcontract are binding on the parties' respective heirs, insurers, sureties, administrators, executors, successors, and assigns.

43. <u>Conformity With Applicable Law.</u>  If any provision or paragraph of this Contract contravenes any applicable law, then it is the intent of the parties that the provision or paragraph should not be treated as void and

unenforceable, but rather that the provision or paragraph should be deemed to be modified and reformed to the minimum extent necessary to conform to the requirements of such law and be valid and enforceable. Any words, terms, and clauses in this Contract shall be deemed to be deleted or modified to the extent, but only to the extent, necessary to render the affected provision or paragraph of the Contract valid and enforceable.

44. <u>Entire Contract.</u> This Contract contains the entire agreement between the parties and supersedes all other representations, proposals, understandings, correspondence and agreements. No course of dealing or custom or usage of any trade that varies from or is inconsistent with the terms and conditions of this Contract shall be binding or affect the respective rights and obligations of the parties. Any difference between this Contract and any other Contract entered into by Owner or any prior draft of this Contract shall not be considered in any respect in interpreting or construing this Contract.

JD JAMES INCORPORATED
1586 Seven Bridges Road
Monticello, Florida 32344

By: _____

Name: _____

Title: _____

Date: _____

Saket Chaudhari
(Owner)

By: _____
(Authorized Signature)

Name: __Saket Chaudhari__

Title: __Owner__

Date: __2/10/15__

Contractor's Federal Tax I.D. No. 51-0423587

Page 8 of 8