# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

SAKET CHAUDHARI AND SATYENDRA CHAUDHARI

Plaintiffs,

vs.

MATTHEW PARKER, PARKER CONSULTING SERVICES, INC., AND JOHN DOES (1-10)(representing unknown liable defendants),

Defendants.

Civil Action No. 2:20-cv-01609-CCC-JSA

Electronically Filed

Return Date:  July 3, 2023

---

**Memorandum of Law on Behalf of Defendants Matthew Parker and Parker Consulting Services, Inc., in Support of Motion for Summary Judgment and, in the Alternative, to Dismiss for Failure to State a Claim.**

---

Moreira Sayles Ramirez LLC
712 Kearny Avenue
Kearny, New Jersey 07068
(201) 991-9001
Attorneys for Defendants,
*Matthew Parker and Parker Consulting Services, Inc.*

*Of Counsel:*
Andrew C. Sayles, Esq.

*On the Brief:*
Andrew C. Sayles, Esq.

`

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ......................................................... 1

Procedural History and factual background............................................. 3

    A.  Procedural History........................................................... 3

    B.  Factual Background.......................................................... 4

LEGAL ARGUMENT ................................................................. 7

POINT I ............................................................................ 7
SUMMARY JUDGMENT IS WARRANTED DISMSSING ANY
AND ALL CLAIMS AGAINST DEFENDANTS................................. 7
POINT II ........................................................................... 8
PLAINTIFFS' CLAIMS ARE BARRED BY THE DOCTRINE' OF
RES JUDICATA. .................................................................. 8

    A.  Florida Law Concerning the Doctrine of Res Judicata Applies
Because the Claims Presented Sub Judice Arose from a Prior
Florida Court Proceeding and Judgment............................... 9

    B.  Plaintiffs' Claims Are Barred by the Doctrine of Res
Judicata................................................................. 9

    C.  The Third Circuit Recognized that Facts Beyond the
Amended Complaint Establish Identity of the Parties.................. 16

    D.  Identify of the Parties Exists for Res Judicata Preclusion
under Florida Law. ..................................................... 17

    E.  The Relevant Facts Support Summary Judgment and
Application of Res Judicata. ........................................... 22

POINT III .......................................................................... 28
PLAINTIFFS' COMPLAINT MUST ALSO BE DISMISSED
PURSUANT TO FED. R. CIV. P. 12(B)(6) FOR FAILURE TO
STATE A CLAIM FOR RELIEF. ................................................ 28
    A.  Rule 12(b)(6) Standard................................................ 29

    B.  Plaintiffs' Failure to State a Claim for Malpractice and
Negligence.............................................................. 30

C.   Plaintiffs have Failed to State a Claim for Breach of Contract. ............... 32

D.   Plaintiff's Failure to State a Claim under the Consumer Fraud Act.35

E.   Plaintiffs have Failed to State a Claim for Respondeat Superior / Vicarious Liability............................................................................. 39

F.   There are No Allegations Demonstrating any Relationship Between Plaintiff Satyendra Chaudhari and Defendants................................. 39

G.   Further Amendment of the Pleadings is Futile. ........................................ 40

CONCLUSION ................................................... 40

3094200-1

# TABLE OF AUTHORITIES

*Cases*

AMEC Civil, LLC v. Fla Dep't of Trans., 41 So. 3d 235 (Fla. Dist. Ct. App. 2010) ............................................................................10

Anchorage Assocs. V. Virgin Islands Bd. of Tax Review, 922 F.2d 168 (3d Cir. V.I. 1990).................................................................7

Anderson v. Liberty Lobby Inc., 477 U.S. 242, 248 (1986)......................7

Ashcroft v. Iqbal, 556 U.S. 662 (2009) ................................................29

Baskerville-Donovan Engineers, Inc. v. Pensacola Executive House Condo. Ass'n, Inc., 581 So. 2d 1301 (Fla. 1991) ......................18

Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007) ..................................29

Bosland v. Warnock Dodge, Inc., 197 N.J. 543 (2009)...........................35

Broadway Maintenance Corp. v. Rutgers, 90 N.J. 253 (1982)................32

Burtch v. Milberg Factors, Inc., 662 F.3d 212 (3d Cir. 2011)................29

Carvalho v. Toll Bros. and Developers, 143 N.J. 565 A.2d 209, 212 (N.J.1996) ..............................................................................31

Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)...................................................................7

Chaudhari, et al. v. Parker, et al., United States Court of Appeals for the Third Circuit, Case No. 21-1337 ...........................................3

Childers v. Joseph, 842 F.2d 689 (3rd Cir. 1988)......................................8

Ciser v. Nestle Waters North Am., Inc., 596 Fed.Appx. 157 (3d Cir. 2015)..................................................................................35

Cohn v. Fisher, 118 N.J. Super. 286, 291 (1972) ...................................33

Connelly v. Lane Constr. Corp., 809 F.3d 780 (3d Cir. 2016)................30

3094200-1

Cook v. State, 921 So. 2d 631 (Fla. 2d DCA 2005) ..................................19

Couch Construction Company f/u/b/o Kimmins Corporation,
   Inc. v. Florida Dept. of Transportation, 537 So. 2d 631 (Fla.
   Dist. Ct. App. 1988) ...........................................................................21

Daaleman v. Elizabethtown Gas Co., 77 N.J. 267 (1978) .......................... 35, 36, 37

Dunmore v. Eager Motor Lines, 560 So.2d 1261 (Fla. 1st DCA
   1990) .............................................................................................. 21, 22

Endre v. Arnold, 300 N.J.Super. 136 (App.Div.1997) ............................................30

Engle v. Liggett Grp., Inc., 945 So. 2d 1246 (Fla. 2006) .......................................17

Espinosa v. Sparber, Shevin, Shapo, Rosen & Heilbronner, 612
   So. 2d 1378 (Fla. 1993) .........................................................................18

Fernandez v. Cruz, 341 So. 3d 410 (Fla. Dist. Ct. App. 2022) ....................... 10, 28

Finderne Mgtmt. Co. v. Barrett, 402 N.J. Super 546 (App. Div.
   2008) .............................................................................................38

Fla. Dep't of Transp. v. Juliano, 801 So. 2d 101 (Fla. 2001) ..................................17

Fowler v. UPMC Shadyside, 578 F.3d 203 (3d Cir. 2009) ....................................29

Francis E. Parker Mem'l Home, Inc. v. Georgia-Pacific LLC, 945
   F. Supp. 2d 543 (D.N.J. 2013) ...............................................................35

Frederico v. Home Depot, 507 F.3d 188 (3d Cir. 2007) ................................. 33, 36

Globe Motor Co. v. Igdalev, 139 A.3d 57 (N.J. 2016) ...........................................33

Gomez-Ortega v. Dorton, Inc., 670 So .2d 1107 (Fla. Dist. Ct.
   App. 1996) .............................................................................................9

Gordon v. Gordon, 59 So. 2d 40 (Fla. 1952) ..........................................................10

Grayson v. Mayview State Hosp., 293 F.3d 103 (3d Cir. 2002) .............................30

Great Western Min. & Mineral Co. v. ADR Options, Inc., 882 F.
   Supp.2d 749 (D.N.J. 2012) ....................................................................28

v

Hamilton v. Leavy, 322 F.3d 776 (3d Cir. 2003) ....................................................15

Hoffman v. Hampshire Labs, Inc., 405 N.J. Super. 105 (App. Div. 2009)................................................................................................38

In re Nice Sys. Ltd. Sec. Litig., 135 F.Supp.2d 551 (D.N.J. 2001) ....................................................................................................................33

Kimbrell v. Paige, 448 So. 2d 1009 (Fla. 1984) .................................................11

Klotz v. Celentano Stadtmauer & Walentowicz, 991 F.3d 458 (3d Cir. 2021)................................................................................................30

Kuehn v. Pub Zone, 364 N.J.Super. 301, 835 A.2d 692, 698 (App.Div.2003)................................................................................................31

Lee v. First Union Nat'l Bank, 199 N.J. 251 (2009) ...............................................37

Lieberson v. Johnson & Johnson Consumer Companies, Inc., 865 F. Supp. 2d 529 (D.N.J. 2011)....................................................36

Macedo v. Dello Russo, 178 N.J. 340 (2004)............................................................36

Mallet's v. George, 641 F.3d 560 (3d Cir. 2011)....................................................29

Massey v. David, 831 So. 2d 226 (Fla. Dist. Ct. App. 2002)......................... 19, 20

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986)..................................................................................................................7

Neversoski v. Blair, 141 N.J. Super. 365 (App. Div. 1976)....................................36

Optica, Inc. v. Metro Pub. Adjustment, Inc., CIV.A. 03-5065, 2005 WL 1719134 (D.N.J. July 21, 2005)...........................................................31

People's Express Airlines Inc. v. Consolidated Rail., 100 N.J. 246, 495 A.2d 107, (N.J. 1985).............................................................................31

Petrillo v. Bachenberg, 139 N.J. 472, 655 A.2d 1354, 1357 (N.J.1995).................................................................................................30

Princeton Healthcare Sys. v. Netsmart New York, Inc., 422 N.J. Super. 467 (App. Div. 2011)...............................................................37

3094200-1

Radle v. Allstate Ins. Co., 758 F. Supp. 1464, 1467 (M.D. Fla. 1991) ................................................................................20

Ridgewood Bd. of Ed. V. Stokley, 172 F.3d 238 (3d Cir. 1999) ............................7

Ross v. Lowitz, 222 N.J. 494 (2015) ........................................................32

Rowan v. City of Bayonne, 474 F. App'x 875 (3d Cir. 2012) ................................39

Rycoline Prods., Inc. v. C & W Unlimited, 109 F.3d 883 (3d Cir. 1997) ................................................................................17

See Radle, 758 F.Supp at 1467 ................................................................20

Sipko v. Koger, Inc., 214 N.J. 364 (2013) ..................................................34

Stogniew v. McQueen, 656 So. 2d 917 (Fla. 1995) ..........................................19

Tallahassee Variety Works v. Brown, 144 So. 848 (Fla. 1932) ..............................19

Turner v. Crawford Square Apts. III L.P, 449 F.3d 542 (3d Cir. 2006) ................................................................................9

Udick v. Harbor Hills Dev., L.P., 179 So.3d 489 (Fla. 5th DCA 2015) ...........................................................................19, 20

Wildflower, LLC v. St. Johns River Water Mgmt. Dist., 179 So. 3d 369 (Fla. Dist. Ct. App. 2015) ........................................19

Youngblood v. Taylor, 89 So. 2d 503 (Fla. 1956) ...........................................11

**Statutes**

N.J.S.A. § 56:8-1 ................................................................... 41, 45

N.J.S.A. § 56:8-2 ........................................................................43

**Rules**

Fed. R. Civ. P 56(d) .......................................................................8

Fed. R. Civ. P. 56 .....................................................................4, 8

Fed. R. Civ. Pr. 12(b)(6) ................................................................35

Fla. R. Civ. P. 1.170(h) ...........................................................................17

Rule 12(b)(6)................................................................... passim

Rule 9(b)...........................................................................43

**PRELIMINARY STATEMENT**

This matter arises from previously litigated claims by the current Plaintiffs, Saket Chaudhari and Satyendra Chaudhari ("Plaintiffs"), in the State of Florida involving the design and construction of a residential bridge in Fredon, New Jersey. In the Florida litigation, Plaintiffs were defendants in a suit for non-payment by its general contractor, JD James, Inc., d/b/a Nature Bridges ("Nature Bridges") and filed counter-claims therein contending, *inter alia*, that the design and construction services were incomplete, defective and otherwise failed to comply with Plaintiffs' requirements. Defendants Matthew Parker, P.E., and Parker Consulting Services, Inc. ("Defendants"), were subcontractors of Nature Bridges and were retained to provide structural design and related engineering services as part of the bridge project. Plaintiffs' counterclaims were dismissed on directed verdict at trial in Florida and judgment was subsequently entered against Plaintiffs in that action.

Plaintiffs now seek to re-litigate claims that have already been adjudicated in another court through the present action. This Court previously granted a motion to dismiss by Defendants under Rule 12(b)(6) finding that Plaintiffs' claims were barred by application of the doctrine of *res judicata*. Plaintiffs appealed that ruling to the Third Circuit Court of Appeals and limited their challenge to the issue of whether Defendants were in privity to Nature Bridges such that *res judicata* should bar their claims. The Third Circuit subsequently remanded this matter, finding that

1

the pleading, on its face, did not establish privity, and directing that the matter be converted or heard anew as motion for summary judgment so the additional facts raised by Defendants could be properly considered.

In addition to *res judicata* arguments, Defendants also renew challenges to the sufficiency of the pleadings on other grounds. Specifically, Plaintiffs have not and can not allege any actionable claim for relief against Defendants within the several counts of the Amended Complaint. These arguments were previously raised but not addressed in light of this Court's prior determination concerning the application of *res judicata*.

## PROCEDURAL HISTORY AND FACTUAL BACKGROUND

### A.  Procedural History.

Plaintiffs initially filed this action in the Superior Court of New Jersey, Law Division, Sussex County on January 14, 2020 bearing docket number SSX-L-35-20. See ECF No. 1, Ex. A.[1]  Defendants removed this action and then filed a motion to dismiss the initial Complaint arguing, *inter alia*, *res judicata*. See ECF No. 1. Thereafter, on April 6, 2020, Plaintiffs filed an Amended Complaint. See ECF No. 8 ("Amended Complaint"). Defendants again moved to dismiss the Amended Complaint on multiple grounds, including application of the doctrine of *res judicata*. See ECF No. 9. On January 29, 2021, this Court issued an opinion and order dismissing the Amended Complaint finding that *res judicata* barred Plaintiffs' efforts to relitigate the claims in the underlying action. See ECF Nos. 12 and 13.

Plaintiffs appealed the dismissal but limited their challenge to whether the privity factor of *res judicata* was supported based on the allegations within the Amended Complaint.[2]  Prior to issuing its decision, the Third Circuit, *sua sponte*, requested that Plaintiffs supplement the record on appeal with a transcript of the

---

[1] "ECF No." refers to the docket number entry for this action, Civil Action Number 2:20-cv-01609.

[2] See Chaudhari, et al. v. Parker, et al., United States Court of Appeals for the Third Circuit, Case No. 21-1337. Defendants' prior counsel of record withdrew from representation during the pendency of the appeal and, as a result, no opposition was submitted on behalf of Defendants.

November 1, 2018, trial proceedings in the Florida Action.[3] On August 1, 2022, the Third Circuit issued an opinion and order vacating the dismissal and remanding the matter to the District Court for consideration of the arguments in the form of a motion for summary judgment pursuant to Fed. R. Civ. P. 56. See ECF No. 18-1; see also Chaudhari v. Parker, No. 21-1337, 2022 WL 3025478 (3d Cir. Aug. 1, 2022).[4]    Importantly, the Third Circuit did not disturb the District Court's analysis regarding the first, second and fourth factors of the *res judicata* analysis, nor did Plaintiffs disputed that those factors were satisfied. With respect to the third factor, identity of the parties and privity, the Court found that the limited allegations within the Amended Complaint raised the potential that Defendants were not in privity with Nature Bridges.

B.    **Factual Background.**

The claims in the Amended Complaint arise from the same facts and circumstances previously litigated in Florida involving to the construction of a bridge located at 20 Stillwater Road, Fredon, New Jersey by Nature Bridges ("Project").[5]

---

[3] See Third Circuit Court of Appeals, Docket No. 21-1337, General Docket No. 27.

[4] Herein, the Third Circuit ruling of August 1, 2021 is referred to as "Third Circuit Opinion".

[5] Plaintiff Satyendra Chaudhari is alleged to be the "former owner" of the Fredon, New Jersey property. See Amended Complaint, ¶ 2. It is further alleged that after purchasing the Fredon, New Jersey property in 2006, it was later transferred to Plaintiff Saket Chaudhari. Id., ¶ 9. For purposes of this application, it is assumed that Plaintiff Saket Chaudhari was acting on behalf of Satyendra Chaudhari at all relevant times.

Specifically, Plaintiffs were defendants in a breach of contract suit filed on or about August 1, 2016 by Nature Bridges in the Circuit Court of the Second Judicial District for Jefferson County, Florida, captioned J.D. James, Inc. d/b/a Nature Bridges v. Saket Chaudhari and assigned Case No. 17000163CA ("Florida Action"). Plaintiff Saket Chaudhari filed a Counterclaim in the Florida Action, alleging that Nature Bridges' work on the Project breached its contract and seeking damages. See Certification of Andrew C. Sayles, Esq., dated June 2, 2023 ("Sayles Cert."), Exhibit A ("Counterclaim"), ¶¶ 34-35; see also Statement of Material Facts not in Dispute ("SOF"), ¶¶ 15-28. During the five-day jury trial in the Florida Action, Nature Bridges obtained a Final Judgment in its favor against Plaintiff Saket Chaudhari concerning his allegations that the bridge was not constructed or designed properly. See Sayles Cert., Ex. B.

In the Amended Complaint, Plaintiffs allege that Nature Bridges provided services for the Project and subcontracted with Defendants. See Amended Complaint, ¶¶ 12-13; SOF ¶¶ 12-13. As discussed more fully below, Plaintiffs' Amended Complaint sets forth essentially the same facts and circumstances alleged in the Counterclaim in the Florida Action. Despite a Final Judgment entered against Saket Chaudhari in the Florida Action, Plaintiffs continue to allege the same failures of performance on the Project by Nature Bridges, but this time substituting Defendants for Nature Bridges.

The present lawsuit constitutes an impermissible "second bite at the apple" by the Plaintiffs to re-litigate claims arising out of the Project that they already had a full and fair opportunity to litigate in the Florida Action. Plaintiffs could have brought claims against Defendants in the Florida Action as the alleged events stem from the same transaction and occurrence: the design and construction Project where Saket Chaudhari contracted with Nature Bridges to construct a bridge. The preclusive impact of having fully litigated the same substantive allegations in the Florida Action prohibits the current action. Stated plainly, Plaintiffs cannot re-litigate the same claims in the hopes of obtaining a different result. To permit otherwise, would encourage vexatious and frivolous litigation, would unnecessarily waste judicial resources, and would create the potential for inconsistent judicial outcomes.

In addition to being barred by *res judicata*, none of the counts presented in the Amended Complaint state a claim on which relief can be based.[6] Finally, Defendants incorporate the facts contained within its Statement of Material Facts Not In Dispute, filed with this application, as if set forth fully herein.

---

[6] Defendants presented these alternative arguments within their motion to dismiss the Amended Complaint (ECF No. 9) but they were not addressed by the District Court in light of its finding as to *res judicata*. As a result, they are now renewed as Defendants move in lieu of filing an Answer.

## **LEGAL ARGUMENT**

### **POINT I**

### **SUMMARY JUDGMENT IS WARRANTED DISMSSING ANY AND ALL CLAIMS AGAINST DEFENDANTS.**

Summary judgment is appropriate if the record shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). A fact is "material only if it might affect the outcome of the suit under the applicable rule of law." Id. The burden of establishing that no genuine issue" exists is on the party moving for summary judgment. Celotex, 477 U.S. at 330. Once the moving party satisfies this initial burden, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P 56(d). A genuine issue of material fact is one that will permit a reasonable jury to return a verdict for the non-moving party. Anderson v. Liberty Lobby Inc., 477 U.S. 242, 248 (1986). The non-moving party must do more than simply show that there is some metaphysical double as to material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); see also Ridgewood Bd. of Ed. V. Stokley, 172 F.3d 238, 252 (3d Cir. 1999).

A summary judgment motion is appropriately granted when the party is entitled to judgment as a matter of law. Anchorage Assocs. V. Virgin Islands Bd. of Tax Review, 922 F.2d 168, 175 (3d Cir. V.I. 1990). Even if a record contains facts

that might provide support for a non-movant's position, "the burden is on the [non-movant], not the court, to cull the record and affirmatively identify genuine material factual issues sufficient to defeat a motion for summary judgment.." <u>Childers v. Joseph</u>, 842 F.2d 689 (3rd Cir. 1988).


**POINT II**

**PLAINTIFFS' CLAIMS ARE BARRED BY THE DOCTRINE' OF RES JUDICATA.**

In the Florida Action, Defendants filed a Counterclaim against Nature Bridges alleging that the design, construction and subsequent permitting issues associated with the bridge were defective, non-compliant, in breach of the terms of their contract with Nature Bridges and otherwise improper. <u>See</u> Sayles Cert., Ex. A. As part of discovery there, Plaintiffs deposed Defendant Matthew Parker at length concerning his involvement in the Project. <u>Id</u>., Ex. E. After a five-day trial, the Court entered a directed verdict dismissing Plaintiffs' Counterclaims. <u>Id</u>., Ex. D, p. 158. Thereafter, a verdict was returned in favor of Nature Bridges and final judgment was entered against Plaintiff Saket Chaudhari. <u>Id</u>., Exs. B and C. Plaintiffs appealed that claim, unsuccessfully, to the Florida First District Court of Appeal. <u>Id</u>., Ex. G. Plaintiffs then commenced this matter against Defendants, alleging the same central allegations as those presented in the Florida Action. Under these facts, Defendants,

an acknowledged subcontractor to Nature Bridges, are entitled to dismissal of Plaintiffs' claims under the doctrine of *res judicata*.

A.   **Florida Law Concerning the Doctrine of Res Judicata Applies Because the Claims Presented Sub Judice Arose from a Prior Florida Court Proceeding and Judgment.**

As a preliminary matter, Florida law applies to the *res judicata* assessment presented. In deciding whether *res judicata* applies, the court looks to state law in which the judgment was rendered to determine what effect to give the state-court judgments. See Turner v. Crawford Square Apts. III L.P, 449 F.3d 542, 548 (3d Cir. 2006). The application of Florida law on *res judicata* here has been previously acknowledged. Both the District Court and the Third Circuit acknowledged that Florida law applies to the application of *res judicata*. See ECF No. 12, p.3; see also Third Circuit Opinion, ECF No. 18-1, pp. 4-5. Thus, Florida law on *res judicata* applies to the preclusive effect of the judgments in the Florida lawsuit and should be applied in the instant matter.

B.   **Plaintiffs' Claims Are Barred by the Doctrine of Res Judicata.**

Under Florida law, the doctrine of *res judicata* is premised on the concept "that a final judgment by a court of competent jurisdiction is absolute and puts to rest every justiciable, as well as actually litigated, issue." Gomez-Ortega v. Dorton, Inc., 670 So .2d 1107, 1108 (Fla. Dist. Ct. App. 1996). In determining whether a case is barred by *res judicata,* courts look not only to the claims that were litigated

in the first suit, but also to "every other matter to which the parties might have litigated and have determined, within the issues as framed by the pleadings or as incident to or essentially connected to the subject matter of the first litigation." AMEC Civil, LLC v. Fla Dep't of Trans., 41 So. 3d 235, 239 (Fla. Dist. Ct. App. 2010). In other words, *res judicata* bars not only the issues that were raised, but also those issues that could have been raised and determined in the first action, whether they were raised or not. See e.g., Fla Dep't of Transp. v. Juliano. 801 So. 2d 101 (Fla. 2001). The Florida Supreme Court has said that the doctrine "is founded upon the sound proposition that there should be an end to litigation and that... every justiciable controversy should be settled in one action in order that the courts and the parties will not be pothered [sic] for the same cause by interminable litigation." Gordon v. Gordon, 59 So. 2d 40, 44 (Fla. 1952); see also Fernandez v. Cruz, 341 So. 3d 410, 414 (Fla. Dist. Ct. App. 2022)(noting that *res judicata* serves a three-fold purpose of "reliev[ing] parties of the cost and vexation of multiple lawsuits, conserv[ing] judicial resources, and, by preventing inconsistent decisions, encourag[ing] reliance on adjudication.")(internal citation omitted). Further, the Florida Supreme Court has consistently set forth the following general statement of the doctrine of *res judicata*:

> A judgment on the merits rendered in a former suit
> between the same parties or their privies, upon the same
> cause of action, by a court of competent jurisdiction, is
> conclusive not only as to every matter which was offered

> and received to sustain or defeat the claim, but as to every
> other matter which might with propriety have been
> litigated and determined in that action.
>
> <u>Kimbrell v. Paige</u>, 448 So. 2d 1009, 1012 (Fla. 1984)
> (quoting <u>Wade v. Clower</u>, 114 So. 548 (Fla.1927)); <u>see
> also</u> <u>Youngblood v. Taylor</u>, 89 So. 2d 503, 505 (Fla. 1956).

As discussed herein, this matter presents the exact scenario that *res judicata* serves

to preclude.

 *Res judicata* applies following a final judgment on the merits to a subsequent

action if the required elements are present. <u>See</u> <u>Kimbrell</u>, 448 So. 2d at 1012. The

elements of *res judicata* in Florida refer to common "identities" between the prior

litigation and the current litigation:  (1) identity of the thing sued for; (2) identity of

the cause of action; (3) identity of the parties; and (4) identity of the quality in the

person for or against whom the claim is made. <u>Id.</u>  While Defendants disagree that

Plaintiffs have any valid claims, even if such claims existed, Plaintiffs' time for

bringing such claims would have been in the Florida Action as such claims could have

and should have been brought then under Florida law. The Final Judgment in the

Florida Action therefore precludes the current complaint.

 Here, there is a prior judgment on the merits entered in the Florida Action. In

the Florida Action, the Plaintiff here, Saket Chaudhari, was a defendant in an action

brought by Nature Bridges. On February 14, 2017, Saket Chaudhari filed a

Counterclaim against Nature Bridges alleging breach of contract in the Florida

Action. See Sayles Cert., Ex. A. The Counterclaim against Nature Bridges in the Florida Action contains nearly identical allegations to those now alleged in the Amended Complaint. Specifically, Chaudhari alleged the following in the Florida Action:

- That he entered into a contract with Nature Bridges for the design and construction of a bridge in New Jersey. See Counterclaim, p. 2, ¶33;

- That he obtained a New Jersey Department of Environmental Protection ("NJDEP") permit for such bridge, which included a Site Development Plan developed by a New Jersey Engineering firm hired by Saket Chaudhari. Id. at p. 2, ¶31;

- That the bridge built by Nature Bridges was a different size than that shown in the permit Id. at p. 3, ¶34;

- That the bridge designed and built was in a different location than shown in the permit. Id. at p. 3, ¶35;

- That the NJDEP issued a Notice of Violation. Id. at p. 3, ¶¶36-37;

- That Nature Bridges breached the contract for the Project, Id. at pp. 3-4, ¶¶39-47, by failing to, *inter alia*, comply with the NJDEP permit or Site Development Plan, Id. at p. 3, ¶41, or correct the NJDEP Notice of Violation. Id. at pp. 3-4, ¶42; and

- That Saket Chaudhari incurred damages as a result of the alleged failures of Nature Bridges on the Project. Id. at p. 4, ¶48.

During the trial, Saket Chaudhari offered testimony in support of these allegations and further confirmed that he viewed Defendants as agents to Nature Bridges. See Sayles Cert., Ex. D. See SOF, ¶¶ 44-45. A Florida jury heard these claims over the course of a five-day jury trial and found against Saket Chaudhari

12

on these claims resulting in entry of final judgment for Nature Bridges. <u>See</u> Sayles

Cert., Ex. B (entering final judgment confirming Counterclaims disimssal).

The Counterclaim allegations are repeated almost identically in the instant

Amended Complaint. Specifically, Plaintiffs allege, *inter alia,* in the Amended

Complaint:

- That Plaintiff Chaudhari entered into a contract with Nature Bridges to construct a bridge for the Project. <u>Id</u>. at ¶10;

- That Plaintiffs obtained a permit from NJDEP and a Site Development Plan developed by a New Jersey Engineering Firm. <u>Id</u>. at ¶11;

- That the bridge built pursuant to the contract with Nature Bridges was a different size than that shown in the permit. <u>Id</u>. at ¶18;

- That the bridge built by Nature Bridges was in a different location than shown in the permit. <u>Id</u>.;

- That the NJDEP issued a Notice of Violation. <u>Id</u>.;

- That Parker failed to ensure that the bridge was designed and constructed in a manner that complied with the site development plans approved by the NJDEP and failed to determine and obtain the necessary permits. <u>Id</u>. at ¶19; and

- That Plaintiffs suffered damages because of Parker's alleged faulty including costs "to construct a worthless bridge, the cost of constructing the new bridge that complies with NJDEP directives and the loss of enjoyment of the Property..." <u>Id</u>. at ¶20.

In addition to the foregoing similarities between the Florida Action

Counterclaim and the Amended Complaint, Plaintiffs also plead additional facts that

support application of *res judicata*:

- Nature Bridges subcontracted with PCS to provide engineering services in connection with the construction of the bridge. As Nature Bridges' Project Manager put it, Parker "designs the bridge and makes sure that it meets all the requirements" including "to find out what permits are required for the bridge." PCS's name and logo appears on a document entitled Bridge Construction Plans, dated March 2014. Amended Complaint, ¶ 13.

- On March 2, 2015, the NJDEP issued a Notice of Violation that included four violations that were within the purview of the responsibilities of PCS and Parker. Amended Complaint, ¶ 15.

The only real distinction between the Florida Action and the instant Amended Complaint is that here, the Plaintiffs, having lost in a prior forum, now allege that Defendants are responsible, as opposed to Nature Bridges. Although Plaintiff has presented some different causes of actions against Defendants, they all arise from the same fundamental allegation: that the Project was not designed, constructed, or completed properly or as required under the contract with Nature Bridges and Plaintiffs. What is clear from the Amended Complaint and available relevant evidence concerning the Florida Action is that the claims Plaintiffs now assert against Defendants were presented in the Florida Action and could have been presented directly against Defendants at that time.[7]

---

[7] Florida Civil Procedure provides that "when the presence of parties other than those to the original action is required to grant complete relief in the determination of a counterclaim or crossclaim, they must be named in the counterclaim…." See Fla. R. Civ. P. 1.170(h). Accordingly, Plaintiffs had every opportunity, if not a mandate, to assert claims against Defendants in the Florida Action.

The procedural history of this matter assists in consolidating the Court's analysis. First, in response to Parker's prior Rule 12(b)(6) motion concerning *res judicata*, Plaintiffs only opposed or disputed one of the four factors: whether Parker is a same party in interest by application of privity. See ECF No. 10, pp. 5-7 of Opposition Brief. On appeal following the Court's dismissal of the Amended Complaint, Plaintiffs only challenged the finding that Parker was in privity with Nature Bridges. See Third Circuit ECF, Case No. 21-1337, Doc. No. 19, pp. 9-14 of Appellant's Brief.[8]   The resulting Third Circuit Opinion, in turn, did not disturb the District Court's prior findings that the first, second and fourth *res judicata* factors had been satisfied. In fact, the Third Circuit specifically noted that "[o]n appeal, the Chaudhari's challenge only the third condition" concerning the identity of the parties. See Third Circuit Opinion, p.5.   Accordingly, the Court's analysis at this time need only be focused on the third factor concerning identify of parties and privity.[9]   See Hamilton v. Leavy, 322 F.3d 776, 786-87 (3d Cir. 2003)(law of the case doctrine limits re-litigation of an issue once previously decided).

---

[8] Parker's prior counsel withdrew during the pendency of the appeal and no opposition was filed on behalf of Parker.

[9] Defendants refer the Court to the arguments set forth in its initial motion to dismiss the Amended Complaint concerning the first, second and fourth factors for further reference.   See ECF No. 9-1.  In the event Plaintiffs challenge that the satisfaction of those factors has not been previously accepted or decided, Defendants reserve the right to supplement it arguments further.

C.    **The Third Circuit Recognized that Facts Beyond the Amended Complaint Establish Identity of the Parties.**

The only portion of the trial court's ruling that was challenged on appeal was the question of whether Defendants were in privity with Nature Bridges for purposes of *res judicata*. On appeal, the Third Circuit stated:

> Here, ***the face of the amended complaint*** does not establish that Appellees' interests were sufficiently aligned with Nature Bridges' to establish privity for purposes of *res judicata*, as it states only that "Nature Bridges subcontracted with PCS to provide engineering services in connection with the construction of the bridge." App. 44. In fact, the amended complaint indicates that Parker and PCS had a relationship with the Chaudharis independent of the Chaudharis' dealings with Nature Bridges in that it states that Parker was in direct contact with the Chaudharis and billed them separately for a portion of his work.

> See <u>Third Circuit Opinion</u>, pp. 6-7 (emphasis added),

Importantly, the Third Circuit, *sua sponte*, directed Plaintiffs to supplement the record on appeal with transcripts from the Florida Action prior to issuing any ruling. <u>See</u> FN 3, *supra*. That transcript entailed, *inter alia*, cross-examination testimony of Saket and the Florida trial court's ruling dismissing Saket's counterclaims therein. <u>See</u> Sayles Cert., Ex. D; SOF ¶ 48. After reviewing this information, the Third Circuit acknowledged a tension between the crafted allegations within the Amended Complaint and additional omitted facts supporting application of *res judicata* and found that the assessment "could not be resolved via Rule 12(b)(6) motion." <u>Id</u>. at 7 (citing <u>Rycoline Prods., Inc. v. C & W Unlimited</u>,

109 F.3d 883, 886 (3d Cir. 1997).  The Third Circuit implicitly recognized that supporting facts exist outside the pleading exist and therefore vacated and remanded the matter with specific directions to assess the issue of privity under Rule 56. Id. at 7.

### D.    Identify of the Parties Exists for Res Judicata Preclusion under Florida Law.

Under Florida law, the identity of the parties factor requires the litigants in the former action to be either "the same parties [as the litigants in the latter suit] or their privies." See Third Circuit Opinion, p. 5 (citing Engle v. Liggett Grp., Inc., 945 So. 2d 1246, 1259 (Fla. 2006) (quoting Fla. Dep't of Transp. v. Juliano, 801 So. 2d 101, 105 (Fla. 2001)). It must also be noted that "Florida Courts have not strictly adhered to the identity of the parties requirement in all cases … and have dispensed with strict mutuality requirements where special fairness or policy considerations appear to compel it.  See Fernandez, 341 So. 3d at 414(internal quotes and citations omitted).

Here, the District Court previously determined that Defendants' contractual relationship with Nature Bridges, as subcontractor and contractor, and alternatively, through mutuality of interest, established privity for purposes of *res judicata*. See ECF No. 12, pp.5-7. The record presented confirms and supports the District Court's initial ruling that privity exists to support *res judicata*. There is no genuine issue of material fact that Defendants were subcontractors to Nature Bridges and therefore in

privity or that a corresponding mutuality of interest exists between the contractor and subcontractor. The Florida Action was between Plaintiff Chaudhari and Nature Bridges and included the same issues and claims now presented against Defendants. See Amended Complaint; ¶¶ 10,11,13,15,18,19,20; see also SOF ¶¶ 15-28. Plaintiffs' Complaint alleges as a predicate that Defendants were subcontracted by Nature Bridges and provided services thereafter. See Amended Complaint, ¶ 13. Plaintiffs allege here, just as they did in the Florida Action, that the provisions of services relevant to the design and construction of the Project were defective and incomplete, including a failure to address permitting issues, causing injury in the form of a useless bridge that requires additional permitting and related damages. See SOF ¶¶ 21-27.

The ordinary meaning of the word, "privity," as well as Florida Supreme Court precedent, holds that "[i]n a legal context, the term 'privity' is a word of art derived from the common law of contracts and used to describe the relationship of persons who are parties to a contract." See Espinosa v. Sparber, Shevin, Shapo, Rosen & Heilbronner, 612 So. 2d 1378, 1379–80 (Fla. 1993); Baskerville-Donovan Engineers, Inc. v. Pensacola Executive House Condo. Ass'n, Inc., 581 So. 2d 1301, 1303 (Fla. 1991) ("The term "privity" is a word of art that derives from the common law of contracts. It is commonly used to describe the relationship of persons who are parties to a contract) (citing 4 Corbin on Contracts § 772, at 2 (1951)). Under Florida

law, "[a] privy is one who is identified with the litigant in interest." <u>Wildflower, LLC v. St. Johns River Water Mgmt. Dist.</u>, 179 So. 3d 369, 374 (Fla. Dist. Ct. App. 2015) (internal quotation marks and citation omitted). This requires the privy to "have [had] an interest in the [former] action such that she [is] bound by the final judgment as if she were a party." <u>Massey v. David</u>, 831 So. 2d 226, 232 (Fla. Dist. Ct. App. 2002) (quoting <u>Stogniew v. McQueen</u>, 656 So. 2d 917, 920 (Fla. 1995)).

In many instances, privity is shown through the existence of a contractual relationship, but can also be established through mutuality of interest. In this respect, Florida courts make clear that privity is a flexible concept such that there is more than one way for privity to be established for purpose of a *res judicata* analysis. <u>See, e.g.</u>, <u>Tallahassee Variety Works v. Brown</u>, 144 So. 848, 852 (Fla. 1932) ("There is no definition of the word 'privity' that can be applied in all cases."); <u>Cook v. State</u>, 921 So. 2d 631, 635 (Fla. 2d DCA 2005) ("'The concept of 'privity' refers to a *cluster of relationships* ... under which the preclusive effects of a judgment extend beyond a party to the original action and apply to persons having specified relationships to that party....") (emphasis added) (quoting Restatement (Second) of Judgments: ch. 1, Scope). One such non-exclusive method, is through so called "virtual representation." <u>See</u> <u>Udick v. Harbor Hills Dev., L.P.</u>, 179 So.3d 489 (Fla. 5th DCA 2015). In a virtual representation scenario, a party in a prior suit may be so closely aligned to the interests of a party in a subsequent litigation that *res judicata*

19

principles to the subsequent action. <u>Udick</u>, 179 So.3d at 492 (Res judicata barred a homeowner's suit against a developer and others arising from an amendment to an HOA covenant where separate homeowners had file prior, similar claims).

Under Florida's privity analysis, where parties are in a contractual relationship that directly involves the service or goods at issue in the litigation, privity exists for purposes of *res judicata*. <u>See</u> <u>Radle v. Allstate Ins. Co.</u>, 758 F. Supp. 1464, 1467 (M.D. Fla. 1991). ("Privity is a mutuality of interest, an identification of interest with one party to another, and includes privity of contract, the connection or relationship which exists between the contracting parties"). In circumstances where the contractual relationship is more attenuated, may require a separate finding that the parties' "interests coincide." <u>Massey</u>, 831 So. 2d. at 233 n.12.   This requires a case-by-case analysis of the facts and claims involved.  <u>See</u>  <u>Daredevil, Inc. v. ZTE Corp.</u>, 1 F.4th 622, 628 (8th Cir. 2021)(Eighth Circuit Court of Appeals applying Florida law on res judicata noting that "privity with one another is a question of fact to be determined on a case-by-case basis.").   The <u>Daredevil</u> Court proceeded to note, much like this matter, that the claimant's "virtually identical" allegations against a subsidiary named in a second litigation established identity of the parties for purposes of establishing privity under Florida's res judicata analysis.  <u>Daredevil</u>, 1 F. 4th at 629.

Instances where *res judicata* has not been extended are distinguishable. For example, Plaintiffs have previously cited to <u>Couch Construction Company f/u/b/o Kimmins Corporation, Inc. v. Florida Dept. of Transportation</u>, 537 So. 2d 631 (Fla. Dist. Ct. App. 1988), for the proposition that *res judicata* should not apply to a subcontractor based on a contractor's pervious suit. <u>See</u>, e.g., ECF No. 10, p.6; However, as accurately held by this Court in its prior opinion granting Defendants' motion to dismiss, <u>Couch</u> did not address the privity assessment at all and, instead, focused on fourth *res judicata* factor concerning identify of the quality or capacity of the person for whom the claim is made within the compared suits. <u>See</u> ECF No. 12, p.6.

Similarly, in <u>Dunmore v. Eager Motor Lines</u>, 560 So.2d 1261, 1263 (Fla. 1st DCA 1990), the Court found that privity did not exist in a res judicata claim by an independent contractor. The <u>Dunmore</u> decision did not contain any substantive discussion of privity and noted merely that "record does not establish a relationship … showing the requisite privity or identify of persons or capacity…" <u>Dunmore</u>, 560 So.2d at 1263. It contains no analysis of privity law in the State of Florida, whereas it devoted a substantial portion of the ruling rejecting the proposition that a satisfaction of judgment against one tortfeasor operates to discharge the liability of other separate tortfeasors. <u>Id</u>. It continued and cautioned that "rarely, if ever, should a trial court order separate trial in a comparative negligence act involving multiple

tortfeasors…" Id. at 1264. It is clear, however, that the facts and circumstances of Dunmore are distinct from those now before the Court here. In Dunmore, the plaintiff initially sued three tortfeasor defendants arising out of a wrongful death claim, but at the third defendant's urging, the trial court severed the matter into two separate trials, with the first two defendants proceeding to trial. Id. at 1262-1263. On conclusion of the first trial, the third defendant argued for *res judicata* preclusion and estoppel based on a prior satisfaction of judgment following conclusion of the trial between the other tortfeasors. Id. Here, Nature Bridges retained Defendants as subcontractors in connection with the Project. See Amended Complaint, ¶ 13. Plaintiffs asserted in the Florida Action that the bridge was designed and constructed defectively and that Nature Bridges had a duty and failed to ensure that permitting was completed. See Counterclaim – all responsibilities Plaintiffs now allege were in the purview of Defendants. Having lost in the Florida Actions, those same allegations are now directed against Nature Bridges' subcontractor and should be barred..

**E.      The Relevant Facts Support Summary Judgment and Application of Res Judicata.**

Here, privity exists between Nature Designs and Defendants based on the facts and the contract and relationship between the parties. Further, Defendants and Nature Bridges had a common interest in the successful completion of Project. Defendants were "subcontracted" by Nature Bridges to design a residential bridge

to be constructed by Nature Bridges. <u>See</u> Amended Complaint, ¶ 13. Clearly, Defendants did not operate independently from Nature Bridges. For example, Nature Bridges gave Defendants instructions as to what the loads would be, what the materials would be, the size of the bridge, and confirmation that the NJDEP permit for construction in wetlands was complete. <u>See</u> Sayles Cert., Ex. E, 11:11-12:08. Similarly, Mr. Parker's testimony as to the sizing discrepancy of the bridge shows the control exercised by Nature Bridges over Defendants. <u>See</u> Sayles Cert., Ex. E, 14:2-12. When Mr. Parker noted that the site plans called for a bridge larger than 20' x 12', Nature Bridges gave him specific instructions to proceed with the smaller size. <u>Id</u>. Additionally, Plaintiffs allege that Defendants were responsible for designing the bridge, making sure it meets all requirements and to find out what permits were required for the bridge, all of which stem from the contractual relationship with Nature Bridges. <u>See</u> Amended Complaint, ¶¶ 13, 19.

Plaintiffs allege that the March 2, 2015 NJDEP notice identified violations "that were in the purview of the responsibilities of PCS and Parker", derivative of Defendants' role as subcontractor to Nature Bridges. <u>Id</u>., ¶ 15. Saket Chaudhari testified in the Florida Action that upon receipt of the NJDEP notice he sent it to Brian Green of Nature Bridges, who in turn contacted Parker, and that "they started handling this matter." <u>See</u> Sayles Cert., Ex. F, 166:23-167:02. He then confirmed that "I did not hire Matthew Parker" to look into the process of addressing the

23

NJDEP notice, further demonstrating that he viewed those duties as within the purview of Plaintiffs' contract with Nature Bridges and, by extension, Defendants 'contractual engagement by Nature Bridges. <u>Id</u>., 167:03-167:13.

The alleged damages also establish a shared or common interest with Nature Bridges. Plaintiffs' damages allegations mirror those presented in the Florida Action. There, Plaintiffs alleged that the bridge constructed was non-compliant, faulty, and otherwise useless and sought "close to $1 million in damages". <u>See</u> Counterclaim, ¶¶ 35-39; Sayles Cert., Ex. C, p.5. At trial in the Florida Action, Plaintiff Saket Chaudhari repeated these categorical damages. <u>See</u> SOF, ¶ 50. Now, the same deficiencies are alleged against Defendants in this matter seeking damages of "no less than $500,000." <u>See</u> Amended Complaint, ¶¶ 20, 24, 33, 38. Nature Bridges successfully defended Plaintiffs' claims based on the services offered by Defendants to Nature Bridges as a subcontractor, resulting in a directed verdict at trial. <u>See</u> Sayles Cert., Ex. D, p. 158. The foregoing examples demonstrate that Defendants were operating as a subcontractor to Nature Bridges at all relevant times and shared a common interest.

Plaintiffs also allege, without factual support, that an independent contractual relationship existed with Defendants based on an email and invoice for $750.00 and an informal proposal for additional services sent on March 16, 2016. <u>See</u> Amended Complaint, ¶¶ 16, 30. However, available facts demonstrate that Defendants' actions

arose due to their engagement by Nature Bridges as a subcontractor, and not some independent, distinct contractual relationship with Plaintiffs and that no such relationship existed.[10]  In Count III of the Amended Complaint, alleging breach of contract, Plaintiffs assert that Defendants owed a duty to "design a bridge that Plaintiffs could actually use, which at a minimum required compliance with the plans approved by NJDEP."  Id., ¶ 31. Plaintiffs continue that "Defendants breached this duty by, among other things, designing a bridge that did not meet certain vital specification set forth in the plans approved by the NJDEP…" Id.,¶ 32.  Defendants, by Plaintiffs' own admission, were "subcontracted" by Nature Bridges to design the bridge and ensure that it met all requirements, including determining what permits were required, further showing that any claims against Defendants arose through their conduct as a privy to Nature Bridges. Id., ¶ 13. Those exact claims were presented against Nature Bridges in the Florida Action and formed the basis for Plaintiffs' Counterclaim.

Mr. Parker confirms that he was asked to gather information concerning the NJDEP notice at the request of Nature Bridges, which he did as a "professional courtesy" notwithstanding that they did not concern structural design issues. See Parker Cert., ¶¶ 5-6; Sayles Cert., Ex. E, 51:13-24. The invoice subsequently issued

---

[10] Plaintiffs never paid Defendants in response to the invoice, nor did they accept the proposal or make any payment to Defendants pursuant to the proposal. As such, there is no contract formed to support this claim. See Point IIIC), *infra*.

to Plaintiffs, at the direction of Nature Bridges, reflected additional time spent by Mr. Parker trying gather information concerning the status of the identified violations. <u>See</u> Parker Cert., ¶ 7, Sayles Cert. Ex. E, 56:03-14.[11]   However, at all times it was the responsibility of the property owner to obtain the necessary permits. <u>See</u> Sayles Cert., Ex. F, 24:21-24.  Finally, even if there were an effort to contract through the invoice, Mr. Parker, in turn, has confirmed that no payment was ever made in response to his invoice, thereby showing that no consideration existed to impose a contractual duty. <u>See</u> Parker Cert., ¶ 9.

The alleged proposal also has no impact on a finding of privity and the application of *res judicata*. Mr. Parker's research into the NDJEP Notice of Violation confirmed that efforts to address the permit violations and reinstate the expired permits would be outside the scope of his engagement by Nature Bridges. <u>See</u> Parker Cert., ¶¶ 6, 8. As a result, in March 2016, Mr. Parker sent an email informally outlining a scope of work for future services to Saket Chaudhari , advising that the proposed work would be outside the scope of his engagement with Nature Bridges. <u>Id</u>., ¶ 8. Saket Chaudhari never accepted the proposal, never made any payment to Defendants in response to the Proposal and otherwise did not memorial any independent retention of Defendants. <u>Id</u>. In fact, Saket Chaudhari

---

[11] Incidentally, Plaintiffs never paid the invoice issued by Defendants. <u>See</u> Parker Cert., ¶ 9.

confirmed as much nearly two years later when he testified "**I did not hire Matthew Parker to do that**." Sayles Cert., Ex. F, 166:23-167:13 (emphasis added).

Thus, it is indisputable that Saket Chaudhari never independently engaged Defendants to provide services beyond the scope of their retention as a subcontractor to Nature Bridges and that no independent contractual relationship exists between Plaintiffs and Defendants. Similarly, any direct contact he had with Defendants arose as the direction of Nature Bridges.

Further, running Plaintiffs' arguments here to their logical conclusion strengthens the need for application of *res judicata*. First, assuming, *arguendo*, that this matter advances past Defendants' current application, it is likely that Defendants may advance third party claims against other parties involved in the bridge design and construction, including Nature Bridges. Certainly, Nature Bridges would raise *res judicata* challenges as the entirety of Plaintiffs' allegations against Defendants were previously litigated in the Florida Action. Alternatively, authorizing the continued litigation of Plaintiffs' claims here would create the potential for inconsistent judicial outcomes in light of the fact that all of the current allegations were previously litigated in the Florida Action.

Based on the foregoing, Plaintiffs' entire claim should be dismissed as it is barred under the doctrine of *res judicata*. The allegations made herein are either the same as those actually presented and litigated in the Florida Action and could have

been raised in the Florida Action. Both this lawsuit and the Florida Action all involve the same nucleus of operative facts, the Project for construction of a bridge in Fredon, New Jersey. All four identities are present and under Florida law *res judicata* bars this action and it must be dismissed. See Great Western Min. & Mineral Co. v. ADR Options, Inc., 882 F. Supp.2d 749, 765 (D.N.J. 2012) (barring Plaintiff's claims under *res judicata*, collateral estoppel, and entire controversy doctrine and preventing Plaintiff "plagu[ing] numerous courts with the same or similar allegations for more than a decade."). Similarly, permitting this claim to proceed would encourage vexatious litigation, would waste judicial resources, and would create the potential for inconsistent decisions and discourage reliance on the soundness of prior adjudications. See Fernandez, 341 So. 3d at 413. Accordingly, summary judgment should be granted dismissing Plaintiffs' Amended Complaint as barred by *res judicata*.

## POINT III

## PLAINTIFFS' COMPLAINT MUST ALSO BE DISMISSED PURSUANT TO FED. R. CIV. P. 12(B)(6) FOR FAILURE TO STATE A CLAIM FOR RELIEF.

Defendants previously moved to dismiss each count in the Amended Complaint on alternative grounds pursuant to Rule 12(b)(6). The Court declined to address those arguments when it determined that *res judicata* barred Plaintiffs'

claims. Those arguments are renewed at this time, in the alternative, as Defendants move in lieu of filing an Answer.

A.    **Rule 12(b)(6) Standard**

In assessing a motion to dismiss under Fed R. Civ. P. 12(b)(6), a district court employs a three-part analysis. Mallet's v. George, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" Id. (alteration in original) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)). Second, courts accept as true all of the plaintiff's *well-pleaded* factual allegations and "construe the complaint in the light most favorable to the plaintiff." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (internal citation omitted). At the same time, however, courts should ignore legal conclusions or factually unsupported accusations that merely state "the-defendant-unlawfully-harmed-me." Iqbal, 556 U.S. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Mere restatements of a claim's elements are legal conclusions; and, therefore, unentitled to a presumption of truth. Burch v. Milberg Factors, Inc., 662 F.3d 212, 224 (3d Cir. 2011). Third, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" Fowler, 578 F.3d at 211 (quoting Iqbal, 556 U.S. at 679). Meaning, district courts must separate the factual and legal elements. Id. at 210–11. Facial plausibility "allows the court to draw the reasonable inference that the defendant is

29

liable for the misconduct alleged." To that end, however, a plaintiff must necessarily "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of her claims." Connelly v. Lane Constr. Corp., 809 F.3d 780, 789 (3d Cir. 2016). Finally, a dismissal under Rule 12(b)(6) may be with prejudice where future amendment would not redress the underlying deficiencies. "Inadequate complaints should be dismissed without granting leave to amend only if the amendment would be inequitable or futile." Grayson v. Mayview State Hosp., 293 F.3d 103,106 (3d Cir. 2002). Futility, simply stated, means that the complaint—as amended—would fail to state a claim for relief under Fed. R. Civ. P. 12(b)(6). Klotz v. Celentano Stadtmauer & Walentowicz, 991 F.3d 458, 462 (3d Cir. 2021).

**B.     Plaintiffs' Failure to State a Claim for Malpractice and Negligence**

Count One of the Amended Complaint for Professional Malpractice and Count Two for Negligence are similar causes of action. The elements of Professional Malpractice and Negligence are based on tort law. Under New Jersey law, three elements that show the existence of a negligence action are the following: (1) a duty of care owed by defendant to plaintiff; (2) a breach of that duty by defendant; and (3) an injury to plaintiff proximately caused by defendant's breach. Endre v. Arnold, 300 N.J.Super. 136 (App.Div.1997) (citation omitted). To determine if a duty exists is a question of law for the court. Petrillo v. Bachenberg, 139 N.J. 472, 655 A.2d 1354, 1357 (N.J.1995) (citations omitted). The

factors to consider in determining whether a duty exists include the foreseeability of harm, fairness, and public policy. <u>Carvalho v. Toll Bros. and Developers</u>, 143 N.J. 565, 675 A.2d 209, 212 (N.J.1996). Foreseeability, as it impacts duty determinations, refers to:

> [t]he knowledge of the risk of injury to be apprehended. The risk reasonably to be perceived defines the duty to be obeyed; it is the risk reasonably within the range of apprehension, of injury to another person, that is taken into account in determining the existence of the duty to exercise care.
>
> <u>Kuehn v. Pub Zone</u>, 364 N.J.Super. 301, 835 A.2d 692, 698 (App.Div.2003).

The final element of negligence is damages, which is limited to actual physical injury to a person or property. New Jersey, however, rejects a per se "economic loss" doctrine and creates exceptions to the rule when the plaintiffs are reasonably foreseeable, the injury is directly and proximately caused by defendant's negligence, and liability can be limited fairly. <u>People's Express Airlines Inc. v. Consolidated Rail.</u>, 100 N.J. 246, 495 A.2d 107, 109 (N.J. 1985). To recover for an economic loss from a negligence claim for furnishing a service, a "direct contractual relationship between the parties" must exist or the injured party must be a known "beneficiary of the defendant's undertaking." <u>Optica, Inc. v. Metro Pub. Adjustment, Inc.</u>, CIV.A. 03-5065, 2005 WL 1719134, at *16 (D.N.J. July 21, 2005) (citations omitted).

Plaintiffs have failed to allege the elements of a negligence claim against the Defendants. Plaintiffs fail to assert any direct contractual agreement whereby Defendants were to provide any services, much less engineering services, to either Plaintiff.[12]  Plaintiffs do not allege any facts establish a duty owed by Defendants, by contract or otherwise. Instead, the Amended Complaint alleges Nature Bridges subcontracted with Defendants for the Project, with any duties or responsibilities flowing to Nature Bridges, not to the Plaintiffs.[13] <u>See</u> Amended Complaint, ¶ 13. Additionally, there is no articulation of damages caused by Defendants arising from a duty owed to Plaintiffs. Rather, the damages sought are derivative of Plaintiffs' contract with Nature Bridges and the services provided therein. Rather, the involvement of Defendants is based on the fact that "Nature Bridges subcontracted with Defendants." <u>See</u> Amended Complaint, ¶ 13.

**C.     Plaintiffs have Failed to State a Claim for Breach of Contract.**

To state claim for breach of contract in New Jersey, the plaintiff must establish the following: (1) a valid contract "containing certain terms," (2) that plaintiff "did

---

[12] Although Plaintiffs imply the invoice is a contract, as set forth below, they have failed to plead the existence of a contract

[13] Additionally, Plaintiffs do not identify any fact within the alleged contract between Nature Bridges and Defendants that would indicate any third-party beneficiary status. <u>See</u> <u>Ross v. Lowitz</u>, 222 N.J. 494, 514 (2015) ("…a third party is deemed to be a beneficiary of a contract only if the contracting parties so intended when they entered into their agreement."); <u>see</u> <u>also</u> <u>Broadway Maintenance Corp. v. Rutgers</u>, 90 N.J. 253, 259-60 (1982) (intent of the contracting parties is the critical issue in assessing third-party beneficiary claims).

what the contract required them to do," (3) defendant's breach of the contract, and (4) damages resulting from that breach. See <u>Globe Motor Co. v. Igdalev</u>, 139 A.3d 57, 64 (N.J. 2016) (citations omitted); <u>see also</u> <u>Frederico v. Home Depot</u>, 507 F.3d 188, 203 (3d Cir. 2007) (affirming dismissal of breach of contract claim for failure to allege facts to support second, third, or fourth elements of breach of contract claim). A plaintiff cannot meet the burden of establishing the elements by merely making conclusory allegations. See <u>In re Nice Sys. Ltd. Sec. Litig.</u>, 135 F.Supp.2d 551, 565 (D.N.J. 2001).

Plaintiffs allege, in a conclusory fashion, that "Defendants established a direct contractual relationship with Plaintiffs by sending the March 16, 2016 email and invoice." Amended Complaint, ¶ 30. In order for a valid contract to exist, a plaintiff must show mutual assent, consideration, the legality of the contract's object, the capacity of the parties, and the formulation of memorialization. See <u>Cohn v. Fisher</u>, 118 N.J. Super. 286, 291 (1972). The Amended Complaint fails in this respect as there is no allegation establishing a binding or enforceable contract with Defendants, particularly since Plaintiffs acknowledge that Defendants were subcontractors to Nature Bridges. See Amended Complaint, ¶ 13. Plaintiffs allege that "Parker invoiced Plaintiffs $750.00 for the work done to that point and stated that "'[w]e can complete the application get the two expired NJDEP permits reinstated for $3,500.'" <u>Id</u>. at ¶ 16. However, there is no allegation that a separate contract existed, let alone

that Plaintiffs accepted or paid consideration as part of the alleged contractual relationship. See Sipko v. Koger, Inc., 214 N.J. 364, 380 (2013).

Even if the invoice could be considered a "contract," Plaintiffs have failed to allege breach or damages arising from the breach of the invoice. Instead, the allegations contradictorily assert breach and damages not associated with the invoice, but rather the design of the bridge that occurred years before. The allegations that Defendants "breached this duty by, among other things, designing a bridge that did not meet any certain vital specification set forth in the plans approved by the NJDEP as set forth above" is not supported by the facts alleged in the Amended Complaint. See Amended Complaint, ¶ 32. Even if the invoice could be considered a "contract," the alleged terms of the invoice dated March 16, 2016, (Amended Complaint, ¶ 16), was for the close out of permitting, but makes no mention of any duties relating to the design of the bridge that was completed years prior to the alleged invoice See Amended Complaint, ¶ 13 (alleging Bridge Construction Plans with "PCS's name and logo" dated March 2014). Thus, Plaintiffs' claim that an invoice from March 2016 for $750.00 to close out permitting is a contract, and that the contract was breached two years earlier in March 2014 when the design was prepared, does not state a claim for relief. This illogical theory is further contradicted by Plaintiffs' own allegations that the Defendants had a direct

contractual relationship with Nature Bridges, not the Plaintiffs for any alleged work completed on the designing of the bridge. See Amended Complaint, ¶ 13.

**D.     Plaintiff's Failure to State a Claim under the Consumer Fraud Act.**

Count IV of the Amended Complaint alleges violations of the New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-1 *et seq.* ("CFA"). With certainty, this claim will never set forth a basis for relief under the facts alleged. The CFA "is aimed basically at unlawful sales and advertising practices designed to induce consumers to purchase merchandise or real estate." Francis E. Parker Mem'l Home, Inc. v. Georgia-Pacific LLC, 945 F. Supp. 2d 543 (D.N.J. 2013) (quoting Daaleman v. Elizabethtown Gas Co., 77 N.J. 267, 270 (1978)). The purpose of the CFA is to protect consumers from fraudulent and deceptive practice pertaining to the sale of merchandise and goods. See Elizabethtown Gas Co., 77 N.J. at 271. "A CFA plaintiff must prove three elements for a successful claim: (1) unlawful conduct by defendant, (2) ascertainable loss, and (3) a causal relationship between the unlawful conduct and the ascertainable loss." Ciser v. Nestle Waters North Am., Inc., 596 Fed.Appx. 157, 160 (3d Cir. 2015) (citing Zaman v. Felton, 219 N.J. 199, 222 (2014)); see also Bosland v. Warnock Dodge, Inc., 197 N.J. 543, 557 (2009). Additionally, where a plaintiff asserts claims under the CFA based on affirmative misrepresentation or material omissions, i.e., claims sounding in fraud, those claims must meet the heightened pleading standard of Federal Rule of Civil

Procedure 9(b). <u>See</u> <u>Frederico v. Home Depot</u>, 507 F.3d 188, 202-03 (3d Cir. 2007); <u>Lieberson v. Johnson & Johnson Consumer Companies, Inc.</u>, 865 F. Supp. 2d 529, 538 (D.N.J. 2011). Under Rule 9(b), "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." An "unlawful practice" under the CFA is "any unconscionable commercial practice, deception, fraud, false pretense, false promise, [or] misrepresentation ... in connection with the sale or advertisement of any merchandise." N.J.S.A. § 56:8-2.

*1.*                        **The CFA does not Apply to Professionals.**

It is well-settled that the CFA does not apply to learned professionals. The "learned professional" exception, established over the past forty years, "continues to identify learned professionals as beyond the reach of the Act so long as they are operating in their professional capacities." <u>Macedo v. Dello Russo</u>, 178 N.J. 340, 345–46 (2004). The entire purpose of the of the Act "is pointed to products and services sold to consumers in the popular sense." <u>Neversoski v. Blair</u>, 141 N.J. Super. 365, 378 (App. Div. 1976). In addition, a more limited interpretation of the legislative intent of the Act is to curb "sharp practices and dealings in the marketing of merchandise and real estate whereby the consumer could be victimized by being lured into a purchase through fraudulent, deceptive or other similar kind of selling or advertising practices." <u>Elizabethtown Gas Co.</u>, 77 N.J. at 271. Given this scope,

the Act is inapplicable to professional services, including structural engineering services.

The learned professional exception also avoids conflicts between the Act and other regulatory structures, with courts recognizing that "uniform regulation of an occupation, where such regulation exists, could conflict with regulation under the CFA." Lee v. First Union Nat'l Bank, 199 N.J. 251, 264 (2009) (citing Elizabethtown Gas Co., 77 N.J. at 272, where the Court expressed a reluctance to permit private company regulated under the Public Utilities Act to be held accountable under the Consumer Fraud Act). New Jersey law prohibits application of the Act to Defendants here, and this claim must be dismissed with prejudice.

*2.*                           **Plaintiffs have not Alleged any Covered Goods or Services**

Even if the CFA did apply to licensed professionals such as Defendants, Plaintiffs fail to and cannot allege any sale of goods or merchandise.  The Amended Complaint provides a partial quote from N.J.S.A. 56:8-2.  Plaintiffs notably omit the part of the statute that says "in connection with the sale or advertisement of any merchandise or real estate," in quoting from the statute in Paragraph 35 of the Amended Complaint. In Princeton Healthcare Sys. v. Netsmart New York, Inc., 422 N.J. Super. 467, 473 (App. Div. 2011), the court confirmed that the Act only applies to the sales of "real estate" and "sales of merchandise." (citing N.J.S.A. 56:8-2). Under the Act, the term "merchandise" is defined as including "any objects, wares,

goods, commodities, services or anything offered, directly or indirectly to the public for sale." Id. (quoting N.J.S.A. § 56:8-1(c)). In addition, the court observed that "[w]e have previously indicated that 'the public,' as used in this definition of 'merchandise,' refers to 'the public at large.'" Id. (citing Finderne Mgtmt. Co. v. Barrett, 402 N.J. Super 546, 570 (App. Div. 2008)). Plaintiffs do not, nor can they allege, that Defendants sold any real estate or merchandise in this case. Therefore, Plaintiffs are incapable of setting forth any set of facts under which this claim can set forth a basis for relief.

Furthermore, not only do Plaintiffs fail to identify the existence of any consumer purchase of merchandise or real estate between Plaintiffs and either defendant, Plaintiffs do not allege with any specificity the "acts and/or omissions of Defendants caused Plaintiffs to sustain an ascertainable pecuniary loss by virtue of the money they spent to construct a worthless bridge," and instead simply set forth a general allegation. See Amended Complaint, ¶¶ 35, 36. A plaintiff suing under the Consumer Fraud Act must show that there was a causal relationship between the unlawful practice and the ascertainable loss sustained by the plaintiff. Plaintiffs have not pled with specificity as to why the Defendants' alleged actions would be applicable under the Act. See Hoffman v. Hampshire Labs, Inc., 405 N.J. Super. 105, 853 (App. Div. 2009) ("Because a claim under the CFA is essentially a fraud claim, the rule requires that such claims be pled with specificity to the extent

practicable."). Therefore, Plaintiffs' Consumer Fraud Claim fails in its entirety as the allegations in the Amended Complaint do not rise to a claim that would fall under the protections of the Act and the claim should be dismissed.

**E.     Plaintiffs have Failed to State a Claim for Respondeat Superior / Vicarious Liability.**

Count IV of the Amended Complaint alleges that liability should extend to PCS in the event Parker is deemed liable to Plaintiffs. This is a theory of liability, as opposed to an independent cause of action. See Rowan v. City of Bayonne, 474 F. App'x 875, 870 n.3 (3d Cir. 2012) ("[T]he doctrine of *respondeat superior* does not provide an independent cause of action under New Jersey law."). This Court specifically recognized this deficiency within its Opinion dismissing the Amended Complaint. See ECF No. 12, p. 2, FN1. Accordingly, Count V of the Complaint should be dismissed for failure to state a claim for relief.

**F.     There are No Allegations Demonstrating any Relationship Between Plaintiff Satyendra Chaudhari and Defendants.**

Plaintiffs fail to distinguish between each other in any meaningful way within the Amended Complaint, or explain why Plaintiff Satyendra Chaudhari is a proper plaintiff that had any involvement with the Project, except that he "purchased the Property in or about 2006, which was later transferred to Saket Chaudhari." See Amended complaint, ¶ 9. In addition, Satyendra Chaudhari is referred to as "former owner of the Property," and his right to sue the Defendants is unclear. Id., ¶ 2. There

39

are no allegations of communications or interactions among Satyendra Chaudhari and Defendants, nor are there any assertions that would support any of the claims against Defendants within the Amended Complaint. As a result, claims asserted by Satyendra Chaudhari should be dismissed pursuant to Rule 12(b)(6).

**G.     Further Amendment of the Pleadings is Futile.**

Plaintiffs previously amended the Complaint, as of right, in response to Defendants' initial challenge to the pleadings. However, the efforts to cure the deficiencies previously identified by Defendants are ineffective, as outlined above. Plaintiffs' effort to relitigate claims which they lost in a prior forum arise from a fixed and comprehensive record. There is no scenario whereby Plaintiffs could further amend their pleading to circumvent the pleading deficiencies identified in this motion. As a result, further amendment of pleadings would be futile and warrants a dismissal of the Complaint with prejudice for failure to state a claim.

## CONCLUSION

For all of the foregoing reasons, it is respectfully requested that this Court grant Defendants' Motion for Summary as a barred by the doctrine of *res judicata*. In the alternative, Plaintiffs' Amended Complaint should be dismissed with prejudice pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim.

**MOREIRA SAYLES RAMIREZ LLC**
Attorneys for Defendants,
*Matthew Parker and Parker Consulting*
*Services, Inc.*


By: s/    Andrew C. Sayles
          Andrew C. Sayles

Dated:  June 2, 2023

41