# EXHIBIT D

Case: 21-1337   Document: 28   Page: 1   Date Filed: 05/23/2022

JDJames Inc.

*vs.*

Saket Chaudhari

Trial Before:

JUDGE DAWN CALOCA-JOHNSON

November 01, 2018

# PHIPPS REPORTING

*Raising the Bar!*

---

Case: 21-1337   Document: 28   Page: 3   Date Filed: 05/23/2022

Judge Dawn Caloca-Johnson
November 01, 2018

Page 2

```
 1    APPEARANCES:

 2         ON BEHALF OF THE PLAINTIFF:

 3              Smith, Currie & Hancock, LLP
                101 NE 3rd Avenue, Suite 1910
 4              Fort Lauderdale, FL 33301
                954-761-8700
 5              BY: S. ELYSHA LUKEN, ESQUIRE
                seluken@smithcurrie.com
 6
 7         ON BEHALF OF THE DEFENDANT:

 8              Harper Law Firm
                1725 Capital Circle, N.E., Suite 304
 9              Tallahassee, FL 32308
                850-523-0930
10              BY:  Robert Augustus Harper III, ESQUIRE
                gus@gbwlegal.com
11
12
13         ALSO PRESENT:

14              SAKET CHAUDHARI
                J.D. JAMES
15
16
17
18
19
20
21
22
23
24
25
```

---

Case: 21-1337   Document: 28   Page: 2   Date Filed: 05/23/2022

Judge Dawn Caloca-Johnson
November 01, 2018

IN THE CIRCUIT COURT OF THE SECOND JUDICIAL CIRCUIT IN
AND FOR JEFFERSON COUNTY, FLORIDA

CASE NO.:   2017-CA-162

J.D. JAMES, INC., d/b/a
NATURE BRIDGES,

        Plaintiff,

vs.

SAKET CHAUDHARI,

        Defendant.
_____/

TRANSCRIPT OF JURY TRIAL PROCEEDINGS

DATE TAKEN:  Thursday, November 1, 2018
TIME:        9:00 a.m. - 5:05 p.m.
PLACE:       Jefferson County Courthouse
             1 Courthouse Circle
             Monticello, FL  32344
BEFORE:      DAWN CALOCA-JOHNSON, CIRCUIT JUDGE

        This cause came on to be heard at the time and
place aforesaid, when and where the following
proceedings were stenographically reported by:

        JO LANGSTON, RPR

Job No. :  251738

---

Case: 21-1337   Document: 28   Page: 4   Date Filed: 05/23/2022

Judge Dawn Caloca-Johnson
November 01, 2018

Page 3

```
 1               INDEX OF PROCEEDINGS
      PROCEEDINGS                                   PAGE
 2
      Plaintiff's Motion for Directed Verdict by Ms. Luken   115
 3
      Ruling on Plaintiff's Motion for Directed Verdict      158
 4
      Portions of Deposition of Richard Wostbrock read       200
 5    by Ms. Luken

 6    Portions of Deposition of Saket Chaudhari read         202
      by Ms. Luken
 7
      Certificate of Reporter                                219
 8
               INDEX OF WITNESSES
 9    SAKET CHAUDHARI                                PAGE

10        Cross-Examination Continued by Ms. Luken     4

11        Redirect Examination by Mr. Harper          92

12        Jury Question Read by the Court             110

13        Follow-up Examination by Ms. Luken         111

14    BRIAN GREEN

15        Direct Examination by Ms. Luken            183

16    J.D. JAMES

17        Direct Examination by Ms. Luken            187

18        Cross-Examination by Mr. Harper            193

19               INDEX OF EXHIBITS
20    PLAINTIFF'S EXHIBITS:                       ID  ADMITTED

21    7 - 8/17/2012 email from Guddemi to Chaudhari    5

22    52 - Email from Chaudhari to Green              33

23    53 - 5/3/2015 email from Chaudhari to James         193

24    67 - 2/11/2016 email from Chaudhari             28

25    71 - 3/16/2016 email from Parker to Chaudhari   36
```

Judge Dawn Caloca-Johnson
November 01, 2018

Page 4

1       The proceedings began at 9:00 a.m.,

2   continued from 10/31/2018.

3       (STENOGRAPHER'S NOTE: Trial proceedings held

4   on 10/29 through 10/31 and proceedings on 11/2

5   were not transcribed.)

6       THE COURT:  Any issues we need to talk about

7   before we bring in the jury?

8       MS. LUKEN:  Not from the plaintiff.

9       MR. HARPER:  No, Your Honor.

10      THE COURT:  Mr. Chaudhari, if you want to

11  come back up, take the witness stand.

12      (Jury enters the courtroom.)

13      THE COURT:  So we left off with -- Ms. Luken

14  had started cross-examination of the defendant

15  yesterday afternoon, and you may proceed.

16      MS. LUKEN:  Yes, Your Honor, I will.

17  WHEREUPON,

18              SAKET CHAUDHARI

19  was called as a witness and, having been previously

20  duly sworn, was examined and testified as follows:

21          CONTINUED CROSS-EXAMINATION

22  BY MS. LUKEN:

23      Q    Mr. Chaudhari, good morning.

24      A    Good morning.

25      Q    Just to kind of catch us up to sort of where

Judge Dawn Caloca-Johnson
November 01, 2018

Page 5

1   we were, I wanted to just touch on a couple of things

2   that you talked about yesterday, the first of which

3   is, I wanted to confirm with you that in 2012, this is

4   around the time that you're having discussions with

5   LAN Associates about how much a 35-foot bridge was

6   going to cost.  Do you remember having those

7   discussions with Mr. Guddemi?

8       A    I remember having those discussions after

9   speaking to Nature Bridges.

10      Q    But around that same time period, right?

11      A    Yes, ma'am, around the same time.

12      Q    And Mr. Guddemi advised you that the bridge

13  itself -- I might have said this incorrectly

14  yesterday, so I just wanted to confirm with you --

15  that in order to do a 35-foot bridge, the pricing that

16  he had gotten was about $55,000, and that was just the

17  bridge, some geotechnical, and it did not include

18  installation; is that correct?

19      A    I don't recall that.

20      (Plaintiff's Exhibit No. 7 was marked for

21      identification.)

22  BY MS. LUKEN:

23      Q    Let me show you what's been marked for

24  identification as Plaintiff's Exhibit 7.  And, Mr.

25  Chaudhari, I don't need you to read the whole thing,

Judge Dawn Caloca-Johnson
November 01, 2018

Page 6

1   but I just was going to direct your attention to the

2   first paragraph there.  This is Mr. Guddemi writing to

3   you, correct?

4       A    Yes, ma'am.

5       Q    And this is in August -- August 17th of

6   2012, right?

7       A    Yes, ma'am.

8       Q    And he tells you that the geotech portion is

9   21,000?

10      A    Yes, ma'am.

11      Q    And then the bridge, just the bridge is

12  35,000, correct?

13      A    Yes, ma'am.

14      Q    So that's actually 56?

15      A    Yes.

16      Q    And that did not include installation of the

17  bridge?

18      A    Yes, ma'am.

19      Q    And now, this is also the email -- let's put

20  a pin in this, LAN discussion, 35-foot cost.  And that

21  was August 17th, right?

22      A    Yes, ma'am.

23      Q    And this is also the email where you're

24  advised by LAN you may want to get some professional

25  help to further develop this site?

Judge Dawn Caloca-Johnson
November 01, 2018

Page 7

1       A    Yes, ma'am.

2       Q    And they offer you a proposal and you do not

3   engage them at that time?

4       A    They did not offer me a proposal.

5       Q    He does suggest that you should hire them,

6   though, correct?

7       A    Yeah.  There's a sentence in there to

8   utilize them.

9       Q    But you did not hire LAN to do anything with

10  respect to your site development project at that time?

11      A    They did all the site development plans up

12  until this point, and I tried to pair up Nature

13  Bridges and LAN to do the project, which is when

14  Nature Bridges provided me proposals for bridge

15  testing and discussed engineering services.

16      Q    Let me cut you off here, because I'm trying

17  to just talk about LAN here for a minute.  As of

18  August 2012, you did not have an engagement with LAN,

19  correct?

20      A    There was no agreement with LAN, yes.

21      Q    And in fact, let's see here.  LAN suggests

22  that if you did want to hire them to assist you in the

23  process of continuing the development of this raw

24  land, that you should replenish a retainer with them

25  for $2,000, right?

Judge Dawn Caloca-Johnson
November 01, 2018

Page 8

1    A    Yes.  That's what he said in the email.

2    Q    And you did not do that?

3    A    No, ma'am.

4    Q    And you generally understand that if there's
5  no retainer on there, they're not going to be doing
6  work for you?

7    A    That's not true, ma'am.  I had conversations
8  with him.

9    Q    Okay.  But he requests a retainer and you
10  did not give him one?

11    A    He requested a retainer.  We did not go
12  through with the project at that time.  There was
13  nothing that was ongoing.

14    Q    Very good.  Let me take that back.  Now, you
15  did not go under contract with LAN again until much
16  later, correct?

17    A    Yes.  When we found out the project was --

18    Q    And that would have been in July of 2015,
19  correct?

20    A    We found out through --

21    Q    My question is, do you recall when you
22  reengaged LAN to perform any services pursuant to your
23  site development plan?

24    A    The next payment made to LAN, just looking
25  at the invoice, 2015, that would have been the next

Judge Dawn Caloca-Johnson
November 01, 2018

Page 10

1    A    There was nothing we could do.  In 2014, we
2  realized the problem and needed to figure out how to
3  proceed.

4    Q    My question is simply, you would just talk
5  to them and get advice and they wouldn't bill you for
6  it?

7    A    Yes, ma'am.  We spoke and they didn't bill
8  me.

9    Q    That's all the answer that I need.  Now,
10  when you did make this payment to LAN in July of 2015,
11  that was for an as-built survey, correct?

12    A    Yes, ma'am.

13    Q    And you entered into a formal written
14  agreement with LAN for them to provide that as-built
15  survey, correct?

16    A    Yes, ma'am.  There's an agreement.

17    Q    And that agreement specifically says, We're
18  going to prepare an as-built survey for you.

19    A    I believe that's what it states in there,
20  yes.

21    Q    Now, you are seeking in this lawsuit, in
22  fact, for that as-built survey, $850, right?

23    A    Yes, ma'am.

24    Q    And let me show you Plaintiff's Exhibit 15,
25  our friendly contract here.  And, sir, there is

Judge Dawn Caloca-Johnson
November 01, 2018

Page 9

1  payment made to LAN, but there was consultation with
2  LAN in between.

3    Q    But you didn't hire LAN to do anything until
4  July 2015 when you asked them to prepare an as-built?

5    A    I hired LAN -- I had to hire LAN because
6  nothing else was being done in between.

7    Q    Again, that's not my question.  My question
8  is, you didn't hire them again until July 2015, three
9  years after Mr. Guddemi suggests that you might want
10  to get some assistance from them and requested a
11  retainer, right?

12    A    I was supposed to hire LAN in 2015.

13    Q    You did not hire them again until 2015,
14  right?  Correct?  Yes or no?

15    A    The next payment made to LAN was 2015.

16    Q    That's probably close enough.  Payment --
17  I'm going to write that down.  Payment to LAN.  So
18  from this entire time, August 17th, 2012, when
19  Mr. Guddemi suggests that you replenish their retainer
20  so they can assist you, until 2015, July, you did not
21  make any payments to LAN.

22    A    Yes.  We had consultation without any
23  payments.

24    Q    So you would just talk to them and they
25  would give you free advice?

Judge Dawn Caloca-Johnson
November 01, 2018

Page 11

1  nowhere in your contract agreement with Nature Bridges
2  that they are going to be providing you an as-built
3  survey; isn't that correct?

4    A    I believe there is, ma'am.

5    Q    Please point me to where you believe that to
6  be the case, sir.

7    A    Just reading one of the paragraphs in the --

8    Q    Could you just tell me which paragraph you
9  are currently on?

10    A    Sorry, ma'am.  It's paragraph number 14.

11    Q    So you believe somewhere in paragraph 14 is
12  an obligation to furnish you with an as-built drawing.
13  And actually, before we even get to that, you
14  understand that an as-built drawing is a survey of
15  conditions after things are built, right?

16    A    Yes, ma'am.

17    Q    And you believe that under this paragraph
18  14, warranty, that there is some obligation on the
19  part of Nature Bridges to furnish you a surveyed,
20  as-built drawing?

21    A    Yes, ma'am.

22    Q    And there's nothing within this paragraph
23  that says the word "as-built" anywhere, does it?

24    A    It doesn't state "as-built" in the warranty,
25  correct.

Judge Dawn Caloca-Johnson
November 01, 2018

Page 12

```
 1        Q    So why do you think then, in the absence of
 2   those words, there is some obligation?
 3        A    In the second paragraph, it says, If any
 4   part of the work is determined to be defective or
 5   otherwise to constitute a breach of any of the
 6   contractor warranties, contractor is to promptly
 7   correct or replace the same as directed by architect
 8   or owner and shall repair or replace any of the work,
 9   materials or property damaged or required to be redone
10   as a result of such correction or replacement.
11        Q    And so you believe that requires an as-built
12   survey?
13        A    Yes, ma'am.  One of the processes --
14        Q    Yes or no is fine.
15        A    Yes.
16        Q    All right.  So LAN is out of the picture.
17   You're having phone calls with them that they're not
18   billing you for from 2012 to July 2015.  Just kind of
19   shifting here for a moment, during the course of
20   discovery in this case, there's been a lot of emails,
21   right?  You would agree with me?
22        A    Yes, ma'am, a lot of emails.
23        Q    And you would agree with me that in many of
24   your emails to various entities, whether it's LAN or
25   Nature Bridges, you used the word "team" a lot.  Do
```

Judge Dawn Caloca-Johnson
November 01, 2018

Page 13

```
 1   you agree with me?
 2        A    There may be mention of a team.
 3        Q    You say things like, Hey, team, let's get
 4   moving on this, that or the other thing.  Would you
 5   agree?
 6        A    I would agree.
 7        Q    And I don't know that anybody has asked you
 8   this.  Do you work for yourself or do you work for a
 9   company?
10        A    I work for a company, ma'am.
11        Q    And so within your company structure, you
12   have teams for projects within your company, correct?
13        A    We have one team.
14        Q    But sometimes there's an individual project
15   and you've got a group of people that are working on
16   that and that's your project team?
17        A    We just have one production team.  There's
18   not a special team.
19        Q    And all the people that are on your team are
20   employed by your company, right?
21        A    Yes, ma'am.
22        Q    So they all already are being paid, correct?
23        A    Yes, ma'am.
24        Q    And so when you were talking about team in
25   the context of talking to LAN or talking to Nature
```

Judge Dawn Caloca-Johnson
November 01, 2018

Page 14

```
 1   Bridges, you're essentially talking about the team of
 2   people that you have collected to help you develop
 3   your father's raw land into a home site, correct?
 4        A    No, ma'am.  The only team I signed up with
 5   for this project was with Nature Bridges, who declined
 6   the help of LAN.
 7        Q    But LAN wasn't engaged by you for the
 8   three-year period during which you entered into a
 9   contract with Nature Bridges and they completed the
10   work, correct?
11        A    There was no contract.  They were engaged.
12   They participated in a lot of consultation, site
13   visits.
14        Q    And for which you have no bills or any other
15   indication that that actually occurred, right?
16        A    I believe I have emails, ma'am.
17        Q    But there's no billing from them and there's
18   no contract in place because you did not give
19   Mr. Guddemi the $2,000 retainer he had requested.
20        A    That's not true, ma'am.  He assisted many
21   times in between to help figure out what happened.
22        Q    Except when you emailed him also in 2012 the
23   fact that you were planning on going with a
24   12-by-20-foot bridge, and you said that he never
25   responded to you about that.
```

Judge Dawn Caloca-Johnson
November 01, 2018

Page 15

```
 1        A    He never had a comment regarding the size of
 2   the bridge, ma'am.
 3        Q    So you took from that that it was all fine.
 4        A    Yes.
 5        Q    So would you agree with me, sir, that for
 6   purposes of what you were doing in developing or
 7   trying to develop your father's property, you would be
 8   the captain of the team?  You're the one calling the
 9   shots, right?
10        A    No, ma'am.  Nature Bridges is calling the
11   shots.  They're the captain.
12        Q    Wait a minute.  You're the one paying for
13   all this, correct?
14        A    That's correct.  I'm paying.  That's all I'm
15   doing.
16        Q    So you're paying for LAN to originally come
17   up with a site development plan, right?
18        A    Yes, ma'am.  They came up with the site
19   development plan.
20        Q    And then you want to pay Nature Bridges to
21   build a bridge for you, right?
22        A    Yes.
23        Q    And so you've assembled these people and you
24   are directing all of them, correct?  When LAN is doing
25   things for you, you are directing them, right?
```

Judge Dawn Caloca-Johnson
November 01, 2018

```
                                                      Page 16
 1      A    No, ma'am.
 2      Q    Who is directing them then?
 3      A    Nature Bridges.
 4      Q    Nature Bridges is directing LAN?
 5      A    We had discussed the implementation of a
 6   civil engineering team for LAN.  You have a proposal
 7   with services such as bridge testing, which are highly
 8   specialized services that only civil engineers and not
 9   all engineers provide.  These were the engineering
10   consultations as received at that time, which is why
11   the implementation of a secondary civil engineering
12   team was not me, because Nature Bridges assured me
13   that they were capable of handling the project by
14   themselves.
15      Q    You said this -- and I was going to get to
16   this point.  You said this in your direct examination
17   with your lawyer yesterday.  You said that you
18   believed Nature Bridges had some sort of obligation to
19   engage with and confer with LAN, right?  That's your
20   belief?
21      A    Yes, ma'am, if they're going to do --
22      Q    Yes or no is fine.
23      A    Yes, ma'am.
24      Q    So you believed that.  And at the time you
25   hired Nature Bridges and entered into a contract with
```

---

Judge Dawn Caloca-Johnson
November 01, 2018

```
                                                      Page 18
 1      A    I don't recall him stating one way or
 2   another whether he officially said that or not.
 3      Q    Okay.  Now, in your work, you have a title,
 4   right, a job title?
 5      A    Yes, ma'am.  I do have a title, yes.
 6      Q    And so you're familiar with the concept of a
 7   job title?
 8      A    Yes, ma'am.  I'm familiar with -- well,
 9   actually --
10      Q    You're not familiar with the concept of a
11   job title?
12      A    In my company, I'm familiar with the process
13   of my company, yes.
14      Q    Just generally speaking, whether it's
15   purchasing manager, sales clerk, attorney at law, a
16   job title is what describes who you are and what you
17   do.
18      A    Not necessarily, ma'am.  It depends on what
19   the title is.
20      Q    Would you agree with me that the purpose of
21   a job title is to describe the person's position?
22      A    No, ma'am.  I believe it is the information
23   that they're providing, is what decides what their
24   title is.
25      Q    So according to your logic, if I go into
```

---

Judge Dawn Caloca-Johnson
November 01, 2018

```
                                                      Page 17
 1   them in 2014, you did not have an agreement in place
 2   with LAN, right?
 3      A    I had an agreement with Nature Bridges, yes.
 4      Q    Right.  But you didn't have an agreement
 5   with LAN.
 6      A    There was no agreement or contract with LAN.
 7      Q    Yet you believe -- and just for clarity,
 8   too, I mean, in terms of that engagement, you didn't
 9   do anything to facilitate that engagement.
10      A    I did everything I could to facilitate the
11   engagement.
12      Q    But you didn't contract with LAN, did you?
13      A    As per the request of Santiago, but yes, it
14   was not needed.
15      Q    Let's talk about Santiago then, because it
16   seems to me that you seem to think an awful lot about
17   these conversations.  For example, you testified on
18   direct that you believed that Santiago Garcia was an
19   engineer, right?
20      A    Yes.
21      Q    Now, he never told you he was an engineer,
22   did he?
23      A    He provided very specific --
24      Q    Question.  Did he tell you, I am an
25   engineer?
```

---

Judge Dawn Caloca-Johnson
November 01, 2018

```
                                                      Page 19
 1   Burger King and I am making my order and I see the
 2   lady's name tag says "sales associate," I am supposed
 3   to assume she is the manager?
 4      A    If it says "sales associate," it's a sales
 5   associate.  But if it says "bridge consultant" or
 6   "cost estimator," I believe that's understood, that in
 7   fact I had contacted a secondary personnel.
 8      Q    Let's hold on here.  So you agree with me
 9   Mr. Garcia never told you he was an engineer?
10      A    I can't recall if he told me directly
11   whether he was or wasn't, but he certainly addressed
12   all my questions.
13      Q    And I'm sure you had a lot of questions
14   because you didn't hire LAN to assist you as they had
15   suggested, right?
16      A    I had a lot of questions and he had a lot of
17   answers.
18      Q    Okay, good.  Now, you received many
19   communications from -- well, let me ask you this.  You
20   received many proposals from Nature Bridges that were
21   sent out under Mr. Garcia's signature, correct?
22      A    I received proposals, yes.
23      Q    And you've now come to understand, if you
24   didn't know before -- I think you probably did, but
25   you've now come to understand that any proposal that
```

Judge Dawn Caloca-Johnson
November 01, 2018

Page 20

1  goes out the door from Nature Bridges is going to be

2  reviewed by Brian Green?

3      A    Yes, ma'am.

4      Q    And you actually knew that at the time

5  because there would be several points where Mr. Garcia

6  would advise you, I need to check with my project

7  manager, true?

8      A    I don't recall, ma'am.

9      Q    You don't recall him ever saying to you, I

10  need to check with my project manager on that?

11      A    About the pricing?

12      Q    About any of the apparently many, many, many

13  discussions that you had?

14      A    I don't recall him mentioning anything of

15  that sort, ma'am.

16      Q    We're going to have to come back to that

17  because I'm going in this other direction.

18          Now, those proposals that were sent to you

19  under Mr. Garcia's signature, you received several of

20  those, correct?

21      A    I received several proposals from Nature

22  Bridges.

23      Q    And every single one of those, sir -- this

24  is one of them.  This is Plaintiff's Exhibit 14 I'm

25  putting up here.  Can you see that from where you are?

Judge Dawn Caloca-Johnson
November 01, 2018

Page 21

1      A    Yes, ma'am.

2      Q    I can hand you the small version if you'd

3  like.

4      A    If you could, please.

5      Q    Sure.  Now, none of these are signed -- none

6  of the ones you received ever from Nature Bridges say,

7  Thank you, Santiago Garcia, engineer, do they?  They

8  all say, Santiago Garcia, estimator, true?

9      A    It says estimator here on this one.

10      Q    And all of them said that.

11      A    If you can give me all of them, I'll verify

12  that for you.

13      Q    I don't know if we have time to do that.

14  And I'm sure, if they don't all say that, your counsel

15  will ask you about it on redirect.

16          MR. HARPER:  Objection, Your Honor.

17          MS. LUKEN:  It's withdrawn, Your Honor.

18  BY MS. LUKEN:

19      Q    Now, Mr. Garcia never sent you any -- oh,

20  and Mr. Garcia, he would email you, too, correct, or

21  you would email him?

22      A    There were emails, ma'am.

23      Q    And you probably, like everybody else,

24  you've got a signature block on your email for work,

25  right?

Judge Dawn Caloca-Johnson
November 01, 2018

Page 22

1      A    I actually don't, ma'am.

2      Q    Well, then you're a little different.

3  Mr. Garcia had a signature block on his emails.

4      A    If I could see an email, then I could verify

5  that for you.

6      Q    Okay.  And you have no emails from

7  Mr. Garcia where it indicates that his title is

8  anything other than estimator, correct?

9      A    I have a lot of emails that have a lot of

10  information in them.

11      Q    But you would think that if you were trying

12  to demonstrate that somehow Mr. Garcia was holding

13  himself out as an engineer, if there were indeed an

14  email where he had said he was an engineer, that would

15  be something you would be talking about, right?

16      A    I have the emails that discuss -- a lot of

17  content from the engineers we discussed.

18      Q    And, now, you also testified in direct with

19  your counsel that you understood that Nature Bridges

20  was a licensed general contractor in New Jersey,

21  correct?

22      A    Yes, ma'am.

23      Q    Now, you don't have any letterhead, emails,

24  anything of that nature where it says Nature Bridges,

25  licensed general contractor, New Jersey.  You do not

Judge Dawn Caloca-Johnson
November 01, 2018

Page 23

1  have anything like that, correct?

2      A    I'm sorry.  Can you repeat the question?

3      Q    Do you have any communications from Nature

4  Bridges, any emails from Nature Bridges, anything at

5  all that says on it, on the letterhead, on a signature

6  block, anything of that nature, that says Nature

7  Bridges, licensed general contractor in the state of

8  New Jersey and license number.  You do not have

9  anything like that.

10      A    I don't recall, ma'am.  I'm not sure what

11  you're asking.

12      Q    Do you have any piece of paper from Nature

13  Bridges that says, We are licensed general contractors

14  in the state of New Jersey and here is our license

15  number?

16      A    I'm not sure, ma'am.

17      Q    You don't know.  Okay.  And you heard

18  Ms. James testify on the first day of trial that

19  Nature Bridges displays all of their licenses as

20  required.  Did you hear that testimony?

21      A    I can't recall her testimony at this point.

22      Q    Let's talk about the March 3rd, 2015, letter

23  that was sent to your father as the DEP permit holder.

24  Do you know the letter that I'm referencing?

25      A    If you could please show me.

Judge Dawn Caloca-Johnson
November 01, 2018

Page 24

```
 1      Q    Sure.

 2      A    Yes, ma'am.

 3      Q    You're familiar with that letter?

 4      A    Yes, ma'am.

 5      Q    And that was a letter addressed from the New

 6   Jersey DEP to your father, who was the permit holder

 7   for the environmental permit, correct?

 8      A    Yes.  My father was the permit holder.

 9      Q    Could I have that back, please?  Thank you.

10   All right.  Now, under the contract agreement that you

11   had with Nature Bridges, you were responsible for

12   obtaining environmental permits, correct?

13      A    I had to provide them with the environmental

14   permits.

15      Q    Right.  You were responsible to go and get

16   them, maintain them, keep them up to date, all of that

17   stuff.

18      A    We all have to abide by the permits.  It's

19   my job to give them the permits so they know what they

20   have to do.

21      Q    Right.  But it's your responsibility to go

22   get them and have them, correct?

23      A    It is my responsibility to make sure we have

24   environmental permits before we proceed.

25      Q    To do the work that you want to do, right?
```

---

Judge Dawn Caloca-Johnson
November 01, 2018

Page 26

```
 1   violation.

 2      Q    Sir, I'm not going to be moving this into

 3   evidence.  I'd like to have a discussion with you

 4   about this, though, because you talked about this on

 5   direct with your counsel.  And if I recall your

 6   testimony, you said there was something about silt

 7   fence, right?

 8      A    That's one of the items, silt fence, yes.

 9      Q    One of the items was silt fence.  One of the

10   items was the permit needs to be recorded in the

11   County.

12      A    That was one that was mentioned in there,

13   yes.

14      Q    And then the other one was the permit needs

15   to be posted on the job site.

16      A    That was one on there, yes.

17      Q    So those are the items?

18      A    Those are minor items.  The biggest item is

19   written above each of those three items.

20      Q    Okay.  Sir, the things that needed to be

21   done, there's three of them.  You've got recording the

22   permit, correct?

23      A    That's one of the items.

24      Q    You've got posting the permit at the job

25   site.
```

---

Judge Dawn Caloca-Johnson
November 01, 2018

Page 25

```
 1      A    For the general contractor to do the work

 2   that they need to do.

 3      Q    And, again, the general contractor issue

 4   that you've raised several times, you know, again, you

 5   do not have any written representation of any sort

 6   from Nature Bridges that they were acting as a general

 7   contractor in the state of New Jersey.

 8      A    I don't recall having anything, ma'am.

 9      Q    All right.  So this letter -- this is not my

10   best timeline, unfortunately.  This letter we just

11   indicated was dated March 2nd, 2015.  I'm sorry.  I

12   took it back from you.

13      A    That's correct, yes, ma'am.

14      Q    Do you remember that date?

15      A    That's correct.

16      Q    Now, the issues set forth in this letter, I

17   think you talked about those on direct with your

18   counsel, but just to recap here, I believe I'm

19   correct, the first item was, the permit needs to be

20   recorded with the local county where the work is being

21   performed; is that correct?

22      A    No, ma'am.

23      Q    That's not the first issue?

24      A    There was -- I believe, if I could have it

25   back, it's two sentences above that first, notice of
```

---

Judge Dawn Caloca-Johnson
November 01, 2018

Page 27

```
 1      A    That's one of the items.

 2      Q    And then you've got silt fence that needs to

 3   be reestablished.

 4      A    That's, again, one of the minor items.

 5      Q    And all three of those had to be resolved in

 6   order to resolve this letter with the New Jersey DEP?

 7      A    That's incorrect, ma'am.

 8      Q    You didn't have to resolve all three of

 9   these items?

10      A    These needed to be resolved only if you

11   followed the approved drawings, which we did not.

12      Q    I think your use of the word "we" there is

13   definitely apt.

14          MR. HARPER:  Objection, Your Honor.

15          THE COURT:  Sustained.

16          MS. LUKEN:  Withdrawn, Your Honor.

17   BY MS. LUKEN:

18      Q    Now, Mr. Parker attempted to help you out

19   with this letter, correct?  You sent it to Brian

20   Green.  He sent it over to Mr. Parker.

21      A    Matthew Parker was involved in the notice of

22   violation, yes.

23      Q    And he was trying to help you out, right?

24      A    He was addressing some items, yes, in the

25   notice of violation.
```

Judge Dawn Caloca-Johnson
November 01, 2018

Page 28

```
 1    Q    And he was someone you consulted with about
 2  this, right?
 3    A    I had certain interactions with Matthew
 4  Parker regarding these items, but the biggest item,
 5  again --
 6    Q    Again, my question is, you worked with him
 7  on this issue, right?
 8    A    He was involved in the notice of violation.
 9    Q    Now, in 2016, you had gotten to the point
10  where all of the issues had been addressed except for
11  one, the recording of the permit with the local
12  county, correct?
13    A    That is incorrect, ma'am.
14         (Plaintiff's Exhibit No. 67 was marked for
15    identification.)
16  BY MS. LUKEN:
17    Q    Okay.  Well, let me show you what I've
18  marked as Plaintiff's Exhibit 67 for reference.  And
19  without -- because of certain evidentiary rulings in
20  the case, you may not read aloud from this at this
21  time.  However, what I'm interested in is your
22  statements to Matt Parker and Brian Green.  Okay?
23  This is an email from you dated February 11th, 2016,
24  right?
25    A    That is the date of the email, yes.
```

Judge Dawn Caloca-Johnson
November 01, 2018

Page 29

```
 1    Q    Let's extend out our timeline here.  So
 2  2016.  And I'm sorry, the date of this email again?
 3    A    February 11th.
 4    Q    All right.  Now, in this email to Matt
 5  Parker and Brian Green dated February 11th, 2016, you
 6  advised them that the only delay right now is that the
 7  original permit is not being registered with the
 8  County.  That's correct?
 9    A    No, ma'am, that's not correct.
10    Q    I'm sorry.  Those are not your words in this
11  email?
12    A    This is a mischaracterization of the
13  situation that was existing at this time.
14    Q    Sir, do you agree with me that in this email
15  you state, The only delay right now is the original
16  permit not being registered with the County?
17    MR. HARPER:  Your Honor -- I withdraw.
18    THE COURT:  You can answer the question.
19    A    This is a misrepresented sentence that I had
20  written under a false assumption at that time, yes.
21  BY MS. LUKEN:
22    Q    So you were mistaken, right?
23    A    I was --
24    Q    Yes or no, you were mistaken?
25    A    Let me specify a date.
```

Judge Dawn Caloca-Johnson
November 01, 2018

Page 30

```
 1    Q    Sir, I just want to focus on my question.
 2  You say to Nature Bridges and their sub-consultant
 3  engineer in February 2016, The only delay which
 4  affected this notice of violation is the original
 5  permit not being registered with the County.  Those
 6  are your words, correct, sir?  Sir?
 7    A    These are my words after a direct
 8  communication based off of Brian Green.
 9    Q    Sir, these are your words, correct?
10    A    These are words that are being put in my
11  mouth.
12    Q    Well, sir, these are your words and that's
13  what you're saying to them, right?
14    A    This is what I'm saying, not realizing that
15  the as-built survey was never submitted to DEP.
16    Q    This is what you're saying.  The original
17  permit needs to be recorded.  And you go on in this
18  email, don't you, to say the following:  I am not sure
19  who misinformed Matt -- and you're referencing there
20  Matt Parker, correct?
21    A    Ma'am, can you just repeat the whole line
22  again?  You said something.  I may have missed it.
23  Could you restart the entire --
24    Q    February 11th, 2016, you say, the only delay
25  right now is the original permit not being registered
```

Judge Dawn Caloca-Johnson
November 01, 2018

Page 31

```
 1  with the County.  And you go on to say in your email
 2  to Matt and Brian, Matt Parker, Nature Bridges'
 3  sub-consultant, Brian Green, Nature Bridges' project
 4  manager, I am not sure who misinformed Matt of this
 5  initial registering or where the confusion could be.
 6  Those are your words, correct?
 7    A    This is what this conversation entailed.
 8  They were not aware that we had deviated from the
 9  permits.  And this conversation, just to reflect what
10  the substance of this email is, is not aware --
11    Q    Sir, sir, I'm focusing on your statements to
12  Matt Parker and Brian Green.  And my question to you
13  simply is, did you say, I am not sure who misinformed
14  Matt of this initial registering or where the
15  confusion could be?  Do you say that in this email?
16    A    These statements are a follow-up to a
17  conversation --
18    MS. LUKEN:  Your Honor, could I ask that the
19    witness be instructed to answer my question?
20    MR. HARPER:  Your Honor, I believe that the
21    rule -- it's a little difficult when you've got
22    someone trying to explain the conversation as
23    opposed to --
24    THE COURT:  Well, you'll have an opportunity
25    to redirect, Mr. Harper.  But you can answer her
```

Judge Dawn Caloca-Johnson
November 01, 2018

Page 32

```
 1    question.  Your attorney can ask follow-up
 2    questions.
 3        A    Can you repeat the question one more time?
 4  BY MS. LUKEN:
 5        Q    You state in your email to Brian Green and
 6    Matt Parker on February 11th, 2016, I am not sure who
 7    misinformed Matt of this initial registering or where
 8    the confusion could be.  You say that in your email to
 9    Matt and Brian, correct?
10        A    That's one of the sentences that's
11    mentioned.
12        Q    And when you say the initial registering,
13    you are referring to getting the permit recorded,
14    correct?
15        A    The permit needed to be recorded.
16        Q    Right.  And so February 11th, 2016 --
17    actually, let me -- so you had thought that -- as of
18    February 11th, 2016, you had thought that the permit
19    had actually been recorded, correct?
20        A    We established that while -- in 2014,
21    Santiago at Nature Bridges would appoint someone to do
22    permitting activities.
23        Q    Sir, Nature Bridges has no responsibility
24    under this agreement to record your father's
25    environmental permit, do they?
```

Judge Dawn Caloca-Johnson
November 01, 2018

Page 34

```
 1        Q    You are familiar with the concept of a book
 2    and page number, right?
 3        A    Yes, ma'am, a book and page number.
 4        Q    And that's when you go to the local county,
 5    like here in Jefferson County, and you take an
 6    official document that has to do with a piece of real
 7    estate, right?
 8        A    Okay, ma'am.
 9        Q    And then you record it with the clerk, and
10    she or he will issue you a book and page number
11    telling you where it is in the official records.  You
12    do understand that, right?
13        A    Yes.
14        Q    And in this email in April of 2015, you tell
15    Nature Bridges that all you've got to do is go to the
16    County and get the book and page number, right?
17        A    I told them, I was explaining the
18    information he's asking me for.  He asked me for book
19    and page number.  I'm giving him the book and page
20    number.
21        Q    So when you say almost a year later,
22    February 2016, in your email to Mr. Green and
23    Mr. Parker that you're not sure where the confusion
24    arises from, that the permit has already been
25    recorded, that confusion is actually a result of your
```

Judge Dawn Caloca-Johnson
November 01, 2018

Page 33

```
 1        A    That was a conversation we had.  They had --
 2        Q    Sir, within your contract agreement --
 3        A    There's nothing in the contract that says
 4    they had to record the permit.
 5        Q    So as of the date of this email or prior to
 6    that, you had thought that the permit had been
 7    recorded, right?
 8        A    Prior to my conversation, I thought there's
 9    necessary steps that needed to be taken.
10        Q    Right.  And you, in fact, told Brian Green
11    that, didn't you, back in April of 2015?  In April of
12    2015, you told Brian Green that the permit had already
13    been recorded.
14        A    I don't recall that, ma'am.
15             (Plaintiff's Exhibit No. 52 was marked for
16        identification.)
17  BY MS. LUKEN:
18        Q    Let me show you Plaintiff's Exhibit 52.  And
19    in this email to Mr. Green, you indicate that you will
20    go to the town and get the book and page number for
21    the recorded permit, correct?
22        A    It states, I will follow up with the town to
23    get a book and page number.  That does not equate to
24    being recorded.  I was gathering the information that
25    he's asking me for.
```

Judge Dawn Caloca-Johnson
November 01, 2018

Page 35

```
 1    own statement in April 2015 where you tell Brian Green
 2    that it's already been recorded, correct?
 3        A    No, ma'am.  There is an entire different
 4    line of confusion that's existing.
 5        Q    There's more confusion than your own
 6    confusion, when you say in April 2015 that it's
 7    already been done?
 8        A    There's only one time of confusion.
 9        Q    So shortly after this point, where you're
10    demanding in February 11th, 2016, to Mr. Green and
11    Matt Parker that you get this permit recorded, they
12    explain to you that not only did they not contract
13    with you to do that, but that they can't record a
14    document that they don't have the original of.  You
15    were explained this, correct?
16        A    We're trying to resolve or we're trying to
17    figure out how to get a permit for the bridge that was
18    built.  That was the discussion.
19        Q    And on February 11th, 2016, you say to
20    Nature Bridges, the only thing holding us up here is
21    that the permit is not recorded.  Why isn't the permit
22    recorded?  Right?
23        A    Again, it's a misrepresentation.
24        Q    All right.  So right around this time,
25    February 11th, 2016, shortly thereafter, Mr. Parker
```

Judge Dawn Caloca-Johnson
November 01, 2018

Page 36

1   says to you, Look, I've been trying to help you out
2   with this, but this is beyond the scope of my work
3   with Nature Bridges.  It's beyond the scope of Nature
4   Bridges' work.  Here's an invoice from me.  And if you
5   want me to help you further, I'm happy to do it, but
6   it's going to be $3,500.  Correct?
7        A   I remember him saying that this was outside
8   of the scope of Nature Bridges, and I remember
9   following up with him.
10       Q   And you remember him sending you an invoice,
11  correct?
12       A   I remember him forwarding an invoice.  I
13  don't recall receiving that invoice, and I followed up
14  with him in a secondary invoice, a secondary email,
15  sorry.
16           (Plaintiff's Exhibit No. 71 was marked for
17           identification.)
18  BY MS. LUKEN:
19       Q   Let me show you what -- actually, could I
20  have back the ones you were using before, please?  All
21  right.  And let me show you Plaintiff's Exhibit 71.
22  And this is -- we're out of room here.  And, Mr.
23  Chaudhari, this is an email from Parker Consulting to
24  you on March 16, 2016, correct?
25       A   This is the email, but the actual invoice

Judge Dawn Caloca-Johnson
November 01, 2018

Page 37

1   was not attached.  I could not open it, and I notified
2   him of that.
3        Q   And the document that you have in front of
4   you indicates an attachment; does it not?
5        A   Yes.
6        Q   Invoice 1942 from Parker Consulting
7   Services?
8        A   Yes.  It indicates that there is an
9   attachment, but the attachment was not there.
10       Q   All right.  The document you have in front
11  of you has it.  I mean, I can't move anything into
12  evidence at this time, but let me just ask you this.
13  You knew that Matt Parker was sending you an invoice.
14  He tells you that in his email, right?
15       A   He tells me there's a $750 invoice.
16       Q   And that was for the miscellaneous services
17  that he had been providing to you that were outside
18  the scope of his work with Nature Bridges, correct?
19       A   He mentions it's outside the scope of Nature
20  Bridges.  It's addressing the minor things in the
21  notice of violation.
22       Q   And you did not pay that invoice?
23       A   I told him I did not receive this invoice.
24       Q   And he actually sent it to you again, didn't
25  he?

Judge Dawn Caloca-Johnson
November 01, 2018

Page 38

1        A   He did not, ma'am.
2        Q   You never paid it, though, right?
3        A   I can't pay something I haven't received,
4   ma'am.  He didn't send me an invoice.  I did not
5   receive that invoice.
6        Q   Well, we'll talk about that with, I guess,
7   another witness then.  But the bottom line is, you
8   knew that he was billing you for his services,
9   correct?
10       A   He states in here that there's $750, time
11  spent on addressing minor things in the notice of
12  violation and an invoice that was not attached.
13  That's what this document says.
14       Q   Right.  And he tells you that he can help
15  you further for $3,500, correct?
16       A   It states in his email he has to complete
17  application to get the two expired permits for a
18  different bridge for $3,500.
19       Q   And you did not take him up on that
20  proposal.
21       A   At this point I was trying to realize, how
22  can you renew permits for a different bridge.
23       Q   Well, let's go to that.  You never hired LAN
24  Associates to modify their site development plan to
25  account for the fact that you wanted a smaller bridge,

Judge Dawn Caloca-Johnson
November 01, 2018

Page 39

1   right?
2        A   The smaller bridge comes from the advice of
3   Santiago.
4        Q   Sir, do you remember how many times in your
5   deposition I asked you how you came up with the
6   12-by-20-foot bridge that you requested from Nature
7   Bridges?
8        A   I have always answered it's been because of
9   me and Santiago.
10       Q   Oh, okay.  Well, we'll have to test that
11  then.  That's going to take me a minute to put
12  together.  All right.  Actually, my question was, do
13  you remember how many times I asked you that question?
14       A   I don't recall.
15       Q   More than three?
16       A   I don't recall how many times you asked it.
17       Q   More than five?
18       A   I don't recall.
19       Q   How about on September 10th, 2018, just a
20  mere two months ago, two and a half months ago, do you
21  remember a deposition in this case?
22       A   Yes.  There's two, and I believe September
23  was -- sounds about right, ma'am.
24       Q   And do you remember that I asked you, sir,
25  the following question?  Well, actually, let me ask

Judge Dawn Caloca-Johnson
November 01, 2018

Page 40

1   you the question, and then we'll go into that.  In
2   this deposition, I asked you a question.  I said as
3   follows:  That is the point, is you said, I want a
4   12-by-20-foot bridge, sir.  And I'm asking you where
5   did you come up with that figure.
6        And do you recall you answered to me that
7   this was just an idea that you had from a discussion
8   of the span of a 12-foot stream?  Do you recall that
9   answer that you provided?
10       A   I don't recall the specific words.  But,
11  yes, it was with Santiago.  The discussion would have
12  been with Santiago.
13       Q   And, again, you didn't even get a copy of
14  the site development plan until 2013, correct?
15       A   I had the plans.  I forwarded it to
16  Santiago.
17       Q   You didn't give them to anybody germane here
18  until 2013, right?
19       A   Santiago asked for it after -- yes, in 2013
20  I believe I sent it to him.
21       Q   Sir, you had your discussions requesting --
22  and I talked about the email with you from July 2012,
23  where you say in no uncertain terms to Mr. Garcia, I
24  want pricing for a 12-by-20-foot bridge, correct?  You
25  remember that email I showed you yesterday?

Judge Dawn Caloca-Johnson
November 01, 2018

Page 42

1   the bridge needs to go a little bit beyond the width
2   of the stream.  Those are your words in your emails to
3   Nature Bridges, correct?
4        A   This is a discussion I was having at that
5   time, ma'am.  This is when an engineer would
6   realize --
7        Q   And that's fine, sir.  And that's fine, sir.
8   A couple of other smaller matters.  This is going to
9   seem out in left field, but it's what's in front of my
10  notes right now.
11       One of the questions that your counsel asked
12  you on direct was essentially, you know, you never
13  even received the name of the Nature Bridges interim
14  project manager, the gentleman who was in charge if
15  Brian Green was out of town or something like that.
16  Do you recall that discussion?
17       A   Yes.  I never received a title "interim
18  project manager" from Nature Bridges.
19       Q   Right.  And you didn't know who the guy was,
20  you didn't know his name either?
21       A   I didn't know who was going to be
22  responsible for Brian Green's requirements as project
23  manager.
24       Q   You said on direct -- and if I'm incorrect,
25  please tell me.  You said on direct that you didn't

Judge Dawn Caloca-Johnson
November 01, 2018

Page 41

1        A   A phone call before that email, but, yes,
2   that there was an email sent.
3        Q   Right.  And there was a phone call before
4   that email which actually prompted a quote for a
5   12-by-12-foot bridge, right?
6        A   There was an email where a 12-by-12 at some
7   point was brought out, but, yes, I had phone calls
8   prior to the first email.
9        Q   And so do you recall in this deposition that
10  I also asked you, how did you come up with the 12-foot
11  stream?  Do you remember that line of questioning?
12       A   Yes, ma'am, I do remember that.
13       Q   And I said to you, how did you do that?  Did
14  you go out there into the stream and measure it
15  yourself?
16       A   No, ma'am.
17       Q   And, in fact, you got that information from
18  LAN, correct?
19       A   That is general information.  At some point
20  LAN --
21       Q   LAN told you that the stream was 12 feet?
22       A   Because the general -- the entire stream is
23  not 12 feet, ma'am.  It's a general depiction of --
24       Q   And then you told that to Nature Bridges,
25  and you said, I want a 12-by-20-foot bridge because

Judge Dawn Caloca-Johnson
November 01, 2018

Page 43

1   even know the gentleman's name that was running the
2   crew building your bridge.
3        A   My discussions with Brian Green, when I had
4   them, was that his engineer was on site to actually
5   dictate.
6        Q   It's an engineer on site.  Okay.  And so
7   there's more engineers wandering around then.  Okay.
8        MR. HARPER:  Objection, Your Honor.
9        THE COURT:  Sustained.
10       MS. LUKEN:  Withdrawn.
11  BY MS. LUKEN:
12       Q   And, again, if I'm wrong in my recollection
13  of your testimony -- I have it written down here as,
14  Question:  Were you ever given the name of Nature
15  Bridges' interim project manager?  And I believe your
16  response was, No.
17       MR. HARPER:  Objection, Your Honor.
18  BY MS. LUKEN:
19       Q   Is that correct?
20       MR. HARPER:  She's testifying.
21       THE COURT:  Overruled.
22       A   I didn't know who the interim project
23  manager was.
24  BY MS. LUKEN:
25       Q   Okay.  And let's take a look at Plaintiff's

Judge Dawn Caloca-Johnson
November 01, 2018

Page 44

1   Exhibit 37.  Plaintiff's Exhibit 37 -- and that's
2   currently in evidence.  And I'm looking, sir, at the
3   second page.  This is your counterproposal to Nature
4   Bridges, correct?
5       A   I wouldn't consider the first one a proposal
6   or this is not a proposal.
7       Q   This was the fill dirt, right?  They had
8   sent you a proposal for some fill material?
9       A   There was a discussion of finishing the
10  project, but that was not a proposal.
11      Q   Well, I mean, they gave you a proposal for
12  fill material, right?  We have that as Plaintiff's
13  Exhibit 36.  Do you remember this?
14      A   It's a piece of paper with some preliminary
15  information, but that's not a proposal.
16      Q   I'm sorry?
17      A   It's a piece of paper with some preliminary
18  information, but that's not a proposal.
19      Q   This is a budget proposal for permitting
20  purposes only, right?
21      A   That's what it says.
22      Q   It says proposal right up here, right?
23      A   It says proposal there.
24      Q   And that's Plaintiff's Exhibit 36.  So this
25  is dated October 13th, 2014.  And this is after you

Judge Dawn Caloca-Johnson
November 01, 2018

Page 46

1       A   No, ma'am.  I requested a proposal and the
2   engineering plans to be submitted to get the road
3   opening permit for the new --
4       Q   You were going to get the road opening
5   permit, though, right?  There's an email in our
6   evidence already that you were going to go and get the
7   road opening permit, correct?
8       A   I was going to give this information to
9   Nature Bridges to get the road opening permit done.
10      Q   Sir, Plaintiff's Exhibit 30, this is an
11  email from you to Nature Bridges in which you say, I
12  will file for the permit application for opening the
13  county road and obtain it ASAP.  Those are your words,
14  right?
15      A   These are my words in the email.
16      Q   Very good.  That's October 3rd, correct?
17      A   This is dated October 3rd.
18      Q   Right.  And then on October 13th, Nature
19  Bridges sends you this, right?
20      A   This was one piece that I needed.
21      Q   Yes.  But they sent this to you?
22      A   They sent that to me, yes.
23      Q   And it is for fill material?
24      A   It is an estimated proposal with an
25  indeterminate amount of fill.  There's no quantifying

Judge Dawn Caloca-Johnson
November 01, 2018

Page 45

1   said, I would like you to give me a price for the fill
2   material to go on either side of the abutment,
3   correct?
4       A   Can I see the email, ma'am?
5           THE COURT:  Ms. Luken, somebody dropped a
6       folder off for you.
7           MS. LUKEN:  Thank you.
8   BY MS. LUKEN:
9       Q   And I'm sorry.  You want to see the email
10  that attaches this proposal?  This is after that, and
11  I'm just trying to make the connection here.  Job
12  finishes September 11th, 2014, right?  That's work
13  done on site, and the crew -- the crew leaves, right?
14  You agree?
15      A   I don't think the work was done, but the
16  crew has left.
17      Q   And you were never on site watching the work
18  anyway, so you don't dispute that Nature Bridges left
19  the site September 11th, 2014?
20      A   I will not dispute Nature Bridges left the
21  site on that date.
22      Q   And then three weeks later you requested
23  that they give you a proposal for the fill material to
24  go on either side of the concrete abutments that make
25  up the bridge, correct?

Judge Dawn Caloca-Johnson
November 01, 2018

Page 47

1   numbers to actually suggest the whole amount of fill
2   that will be needed.  This number is to get the road
3   opening permit done.  It's not a proposal.
4       Q   Which you were going to go do.
5       A   No, ma'am.
6       Q   Your email says you're going to apply for
7   the road opening permit ASAP.
8       A   This email says I was going to file for the
9   permit application, but when the location changed --
10      Q   Okay.  Sir, sir, I'm talking about what you
11  did on October 3rd in your email to Nature Bridges.
12  You said, I'm going to apply for the road opening
13  permit ASAP.  That's in capital letters and underlined
14  and bolded, right?
15      A   Yes, ma'am.  I was --
16      Q   All right.  That's my question.  So after
17  you say to Nature Bridges, I'm going to go get the
18  road opening permit, can you guys give me a quote for
19  the fill material, they give you a quote.  And then
20  you, in Plaintiff's Exhibit 37, respond to that,
21  correct?  I have 37 in front of you, don't I?
22      A   Yes, ma'am.  I see it.
23      Q   And you respond to this proposal that
24  Mr. Garcia, the estimator, sent to you, right?
25      A   I responded to the document.

Judge Dawn Caloca-Johnson
November 01, 2018

Page 48

1   Q   Yes.  And you say, Hi, Santiago.  Thanks
2   again for providing the proposal.  I accept the price
3   offered.
4       So you accepted the price that was offered,
5   the $27,000.
6   A   Yes.  There was a discussion about the
7   price.
8   Q   Okay.  And then you list out several other
9   items that you want to be included as extra work, but
10  you want to keep the same price, correct?
11  A   No, ma'am, that's not entirely correct.
12  Q   You say, I would like to convey and discuss
13  a few points.  Your first paragraph, you say you want
14  Louis, who is the adjacent property owner, right?
15  A   Yes.
16  Q   You want Louis to team up with Brian.
17  That's Brian Green.
18  A   Yes.
19  Q   And Rick.  You know Rick's name.  Rick was
20  the crew leader for Nature Bridges, right?
21  A   He was a worker.
22  Q   Okay.  He was the crew leader for Nature
23  Bridges.  And contrary to your testimony yesterday,
24  you did know his name.  You knew his name right here
25  because you put it in this email, right?

Judge Dawn Caloca-Johnson
November 01, 2018

Page 50

1   You say in your email that you want to add certain
2   items that are excluded.  In fact, you want a
3   guardrail --
4   A   Yes, ma'am.
5   Q   -- and you want a gravel path, correct?
6   A   The second paragraph is saying guardrail --
7   Q   And you --
8   A   -- and gravel path.  Yes, and gravel path.
9   Q   And you want a gravel path also, correct?
10  A   It says gravel path.
11  Q   Okay.  Then you also want -- and I'm
12  skipping down here.  You are aware, as of the date of
13  this email -- which let's write that on the top.  Sir,
14  what's the date on Plaintiff's Exhibit 37?  Could you
15  look at the first page for me, please?
16  A   October 15th, ma'am.
17  Q   October 15th, 2014.  And so in your last
18  paragraph here, you're talking about the DEP permits.
19  Those are the environmental permits that you are
20  obligated to obtain under your contract with Nature
21  Bridges, right?
22  A   Ma'am, that is in the last paragraph.  If
23  you go to the paragraph above --
24  Q   Sir, your counsel is going to probably ask
25  you all sorts of questions.  I'm asking my questions,

Judge Dawn Caloca-Johnson
November 01, 2018

Page 49

1   A   I knew Rick's name, but that's not to say he
2   was the replacement for Brian Green.  And, again,
3   Brian Green told me the engineer was on site.
4   Q   Now, they send you a proposal for fill
5   material for $27,000.  You say you want Nature Bridges
6   to use Louis's 250 cubic yards of fill, right?
7   A   Yes, ma'am.  I was trying to piece up the
8   relationship between Louis and Nature Bridges.
9   Q   We're going to get to that.  Don't worry.
10  We're going to definitely talk about that.  You also
11  say in your next paragraph, I would like to make a
12  request for certain other items that are excluded as
13  of now to be included in the proposed price.  You see
14  that there?
15  A   I see that line, yes.
16  Q   And so you're saying to them, I want to take
17  the $27,000, but I want you to add on some things that
18  not currently included, correct?
19  A   That's not entirely true, ma'am.
20  Q   I'm sorry.  You're telling us here that
21  that's not what that means?
22  A   No, ma'am.  There is discussion with
23  Santiago and Louis as to how this is going to --
24  Q   Sir, sir, I'm just talking about the email.
25  Okay?  I'm just talking about the email right now.

Judge Dawn Caloca-Johnson
November 01, 2018

Page 51

1   though, right now.  The DEP permits -- let me get back
2   my train of thought here.
3       You are aware, as of October 15th, 2014,
4   that the DEP permits, those are the environmental
5   permits that you're obligated to obtain under your
6   contract with Nature Bridges, are going to expire at
7   the end of February.  That means February 2015, right?
8   A   I know the permits that were originally
9   obtained for the original site plans expired
10  February 2015.  That's the date that's on the permit.
11  Q   And you're aware of that, right, as of
12  October 15th, 2014, right?
13  A   Yes, ma'am.  I'm aware the original permits
14  for the original design is going to expire in February
15  of 2015.
16  Q   And you asked Nature Bridges to include in
17  their dirt proposal, include the work of getting those
18  permits renewed, correct?
19  A   Yes, ma'am.  They're prompting a discussion
20  about DEP permits.
21  Q   Right.  And you're asking -- you want Nature
22  Bridges to include that in their scope of work in the
23  proposal for fill material.
24  A   Yes, ma'am.  I want the word "DEP permits"
25  on all the proposals going forward.

Judge Dawn Caloca-Johnson
November 01, 2018

Page 52

```
 1        Q    And Nature Bridges and you did not enter
 2   into a contract arising out of this proposal, did you?
 3        A    This is not a proposal, ma'am.
 4        Q    Okay.  You and Nature Bridges never entered
 5   into an agreement whereby you say, Here, I would like
 6   to accept the $27,000, but I want you to do a
 7   guardrail, I want you to do gravel, I want you to go
 8   and renew my DEP permits.  You never entered into an
 9   agreement with Nature Bridges for that scope of work.
10        A    We verbally agreed to --
11        Q    Okay.  Never had a written agreement for
12   that work.
13        A    I never received a written agreement from
14   Nature Bridges to begin with.
15        Q    Very good.  And again, as of this date,
16   October 15th, 2015, one of the reasons why you
17   wanted --
18        A    It's 2014.  I'm sorry.
19        Q    I'm sorry.  You're right.  Thank you.  One
20   of the reasons why you want Nature Bridges to do that
21   is because you say you would just prefer to work with
22   Nature Bridges' team and benefit the team, given the
23   excellent work already performed and the highest level
24   of customer service demonstrated.  Those are your
25   words to Nature Bridges October 15th, 2014, correct?
```

Judge Dawn Caloca-Johnson
November 01, 2018

Page 53

```
 1        A    After my site visit with my --
 2        Q    Sir, those are your words, correct?
 3        A    It's a misrepresentation of my words.
 4        Q    I just read them out loud for the jury.  Are
 5   you saying I didn't read them correctly?
 6        A    You read the words, but I can explain the
 7   meaning.
 8        Q    Well, the words are on the page, and we're
 9   going to have a finder of fact determine meaning,
10   so --
11             MR. HARPER:  Objection, Your Honor.
12             MS. LUKEN:  Withdrawn.
13             THE COURT:  Sustained.
14   BY MS. LUKEN:
15        Q    All right.  So you knew Rick's name, I
16   guess, is the bottom line to this whole thing, right?
17        A    I knew Rick's name.
18        Q    Okay.  Very good.  One more thing.  I don't
19   want to drag this back out here, but let's just do it.
20   I think we established, March 2nd, 2015, we have a
21   letter from DEP setting forth various items.  I think
22   you mentioned with your counsel silt fence was one of
23   those items, correct?
24        A    There's mention of silt fence on those
25   items.
```

Judge Dawn Caloca-Johnson
November 01, 2018

Page 54

```
 1        Q    It's bullet points 3 and 4, numbered
 2   paragraphs 3 and 4, correct?
 3        A    I don't have the document in front of me.
 4        Q    You do know that silt fence was in the
 5   letter, right?  It needed to be reestablished.
 6        A    Yes, ma'am.  The silt fence was in the
 7   letter.
 8        Q    And you're aware that silt fence is
 9   temporary, correct?
10        A    Yes, ma'am.
11        Q    And as of the time of this letter -- and,
12   actually, let's just mark this in here.  Nature
13   Bridges is off site September 11th, 2014, right?  We
14   agree on that?
15        A    That sounds right, ma'am.
16        Q    All right.  So this letter from DEP about
17   the silt fence falling down, that's not until six
18   months after Nature Bridges left the site, correct?
19        A    There's a six-month gap between the two.
20        Q    Okay.  And so you did not maintain that silt
21   fence in any way for those six months after Nature
22   Bridges left the site.
23        A    I did not maintain the silt fence after they
24   left and told me they would come back to it.
25        Q    And you don't contend that Nature Bridges
```

Judge Dawn Caloca-Johnson
November 01, 2018

Page 55

```
 1   had some sort of continuing obligation until the end
 2   of time to maintain a silt fence, do you?
 3        A    They had to maintain a silt fence till the
 4   time they finished the project.
 5        Q    Yeah, while they're doing their work.  You
 6   would agree with me that after their work is
 7   completed, the silt fence is no longer their
 8   responsibility.
 9        A    If the work was completed right, then the
10   silt fence could be removed.
11        Q    So this letter from DEP raising silt fence
12   as an issue is six months after they left the site,
13   correct?
14        A    They had left for six months, yes.
15        Q    That's the answer.  Okay.  Thank you.
16   Mr. Chaudhari, on direct examination, you alleged that
17   the adjacent property owner, Mr. Louis Ratti, was
18   threatening to sue, and so you paid him.  That was
19   your testimony on direct; is that true?
20        A    He was threatening to sue.  I paid him for
21   services.
22        Q    You paid him to get him to stop threatening
23   to sue you.
24        A    I made him a part of the team to reconcile
25   all differences.
```

Judge Dawn Caloca-Johnson
November 01, 2018

```
                                              Page 56
 1    Q    So he was part of the team, too, right?
 2    A    Yes, ma'am, Nature Bridges, Louis Ratti --
 3    Q    And LAN, right?  LAN is part of your team.
 4  They're the ones that drew up the site development
 5  plan, right?
 6    A    Which weren't complied to.
 7    Q    But, again, sir, you changed the site
 8  development plan because you decided you didn't want a
 9  35-foot bridge.
10    A    No, ma'am.  They changed the site
11  development plans.
12    Q    Those are your -- they're your father's site
13  development plans, right?
14    A    Site development plans are site development
15  plans, whoever's name is on them.  The plans were
16  changed.
17    Q    And just by the by, the gentleman from LAN
18  Associates who drew that site development plan, do you
19  recall his name?
20    A    Yes, ma'am.
21    Q    And what is his name?
22    A    Richard Wostbrock.
23    Q    And when Mr. Wostbrock's name is shown in
24  all documents that you've seen, you always see a comma
25  after it and a P.E., right?  You've seen that before,
```

Judge Dawn Caloca-Johnson
November 01, 2018

```
                                              Page 57
 1  Richard Wostbrock, comma, P.E.?
 2    A    I don't recall that, but he's apparently a
 3  P.E.
 4    Q    Right.  And that's a title like, again,
 5  attorney at law, M.D., right?  You recognize it as
 6  such, and so you know that Mr. Wostbrock is a
 7  registered professional engineer because he uses the
 8  term "P.E." after his name, right?
 9    A    That is what that means up there, yes.
10    Q    And he's the one that drew the site
11  development plan.
12    A    He drew the site development plans.
13    Q    Perfect.  Let's get back to Mr. Ratti again.
14  So you claim you had to pay him -- and, again, I think
15  what you were inferring there is that you were forced
16  to pay Mr. Ratti because Nature Bridges was not paying
17  him?
18         MR. HARPER:  Objection.
19  BY MS. LUKEN:
20    Q    That was your implication?
21         THE COURT:  She asked a question at the end.
22    Overruled.  Can you restate the question?
23         MS. LUKEN:  Yes, Your Honor.
24  BY MS. LUKEN:
25    Q    In your testimony yesterday with respect to
```

Judge Dawn Caloca-Johnson
November 01, 2018

```
                                              Page 58
 1  this issue, your implication was that you were forced
 2  somehow to pay Mr. Ratti because Nature Bridges was
 3  not paying him.  Was that your implication?
 4    A    No, that was not my implication, ma'am.
 5    Q    You never meant to suggest that?
 6    A    What am I suggesting?  I can't follow what
 7  you're saying.
 8    Q    Your testimony yesterday was that the
 9  adjacent property owner was threatening to sue, right?
10    A    He was threatening to sue, yes.
11    Q    And you said you had to pay him, right?
12    A    I offered to assist in the payments.
13    Q    Oh, okay.  So you -- again, I think the
14  transcript will bear me out, but you're saying your
15  testimony yesterday, you didn't say you paid him?
16    A    I gave him money for certain things that he
17  performed.
18    Q    But that was at a different time than the
19  threatening to sue you?
20    A    Yes, ma'am.  I told him that they will come
21  back and they will help resolve all the issues.
22    Q    So you didn't mean to imply that Nature
23  Bridges did not pay Mr. Ratti?
24    A    It's in the text messages, ma'am.  I'm not
25  sure what else --
```

Judge Dawn Caloca-Johnson
November 01, 2018

```
                                              Page 59
 1    Q    Well, the jury doesn't have that in front of
 2  them, so I'm trying to get the information from you.
 3  You are not implying that Nature Bridges did not pay
 4  Mr. Ratti.  As far as you are aware, Nature Bridges
 5  paid Mr. Ratti in full, correct?
 6    A    I didn't see the agreement between Louis
 7  Ratti and Nature Bridges.  I only can recall what he
 8  has told me.
 9    Q    And as far as you know, he has been paid in
10  full.
11    A    I've seen the recent information that
12  suggests he was paid.
13    Q    Suggests.  Sir, this is a document you
14  received, isn't it?
15    A    Yes.  I believe this is part of the
16  discovery.
17    Q    Yes.  And this confirms -- and this is
18  Mr. Ratti's signature at the bottom, right?
19    A    I'm not sure.
20    Q    You don't recognize Mr. Ratti's signature?
21  You've had some correspondence with him; have you not?
22    A    I don't recall seeing his signature but --
23    Q    This is his address, right, 26 Stillwater
24  Road?
25    A    26 Stillwater Road is where Louis resides.
```

Judge Dawn Caloca-Johnson
November 01, 2018

Page 60

1    Q   And this document, which you've seen before,
2  indicates that he has received his final payment from
3  Nature Bridges as of October 2nd, 2014, correct?
4    A   I have not seen this document before.  I
5  don't recall seeing this document.
6    Q   Sir, you've been heavily involved in this
7  litigation; have you not?
8    A   That's true, ma'am.
9    Q   And, I mean, you've looked at all the
10  documents that have been produced back and forth.
11  You've sat in on every deposition, I believe.  Do you
12  remember reviewing documents produced by Nature
13  Bridges in this matter?
14    A   There's a lot of documents.  Sure.
15    Q   Let's do this another way then, and let's
16  just do a quick little history on this also.  All
17  right.  We talked about this yesterday, so I think we
18  can kind of breeze through this, but I want to do this
19  in the framework of Mr. Ratti for a minute, if you
20  don't mind.
21        If you recall, this is one of plaintiff's
22  exhibits.  It is the $25,000 invoice that Ms. James
23  agreed to invoice you, even though your contract says
24  a hundred percent is going to be billed; is that
25  correct?

Judge Dawn Caloca-Johnson
November 01, 2018

Page 61

1    A   Can you say it one more time?  Sorry.
2    Q   This is the $25,000 invoice from Nature
3  Bridges dated September 16, 2014.
4    A   That is the $25,000 invoice dated September
5  16th.
6    Q   And you recall our discussion yesterday
7  about you asking Ms. James to not bill you the full 55
8  but only bill you the 25, correct?
9    A   Say that one more time.  I'm sorry.
10    Q   Ms. James originally sent you an invoice for
11  $55,000?
12    A   No, she did not.  I don't recall her sending
13  me an invoice for $55,000.
14    Q   Sir, I think we covered this yesterday.  I
15  believe you agreed with me that your payment terms
16  were a hundred percent billed on completion of the
17  project, correct?
18    A   Yes, ma'am, a hundred percent.
19    Q   And you had a phone conversation with her
20  and you asked her to send you a bill for just part of
21  it, $25,000.
22    A   I agreed to do progress invoices.
23    Q   Howsoever.  When did you pay this?
24    A   I'm sorry.  What was the last thing you
25  said?

Judge Dawn Caloca-Johnson
November 01, 2018

Page 62

1    Q   I said howsoever, and I withdraw that.  It
2  wasn't a question.  When did you pay this invoice?
3    A   Shortly thereafter.
4    Q   September 24th?
5    A   Possibly, ma'am.  I'm sure it's in the
6  paperwork.
7    Q   And if that's what's shown in Nature
8  Bridges' books and records, you would have no reason
9  to dispute that?  That would be consistent with your
10  recollection?
11    A   If it's stated, I'm sure that could be
12  verified.
13    Q   You saw this exhibit, right?  Ms. James was
14  discussing it.  You see your first payment here?  It's
15  logged in at September 24th, 2014, right?
16    A   Okay, ma'am.  I see that.
17    Q   Okay.  And do you agree with that?
18    A   I have no reason not to agree with it,
19  ma'am.
20    Q   Okay.  Fair enough.  Now, you had a
21  conversation with Mr. Louis Ratti on September 24th,
22  2014, correct?  And you were having some text messages
23  back and forth?
24    A   There were text messages, ma'am.  The date
25  would be what it is.

Judge Dawn Caloca-Johnson
November 01, 2018

Page 63

1    Q   Sure.  I understand.  And you had him as
2  Louis Fredon on your phone, right?
3    A   Yes, ma'am.
4    Q   Is that because his first name is Louis and
5  he's from the Fredon Township where this property is
6  located?
7    A   Sure, ma'am.
8    Q   That's a good way to remember people.
9    A   I thought so, ma'am.
10    Q   Very good.  Now, this is the text message,
11  and I guess I want to ask you this.  Do you remember
12  September 24th, 2014, as the date you received a text
13  message from Mr. Louis Ratti demanding payment and
14  saying he's going to sue you?  Do you remember that as
15  the date?
16    A   I don't remember the date.
17    Q   Let me show you.
18    A   Yes, ma'am.  I see the date, September 24th,
19  2014.
20    Q   And as of that date, that's the date of your
21  first payment to Nature Bridges, right, $25,000?
22    A   Okay, ma'am, yes.
23    Q   Again, I just -- I showed you that document.
24    A   Yes, ma'am.  The date September 24th
25  matches.

Judge Dawn Caloca-Johnson
November 01, 2018

Page 64

```
1        Q    And you heard Ms. James' testimony that
2   pretty much from when they entered into the contract
3   with you, they started incurring costs and they
4   incurred costs all the way.  You would agree with me
5   that as of their departure from the site, they had
6   pretty much incurred all the costs of the work.
7        A    Ma'am, I don't recall.
8        Q    But they hadn't been paid anything until
9   September 24th.
10       A    That's my first check.
11       Q    And so you are having a conversation with
12  Mr. Ratti on September 24th, and he is claiming that
13  he has not been paid; is that true, sir?
14       A    Yes, ma'am.
15       Q    Okay.  And, now, you don't -- and I think
16  you admitted this already.  You don't know the details
17  of whatever payment arrangements Nature Bridges had
18  with Mr. Ratti.
19       A    I do not know the arrangements.
20       Q    But you did find out that on -- if you could
21  flip to the next page.  Was it October 2nd, 2014,
22  Mr. Ratti was paid?
23       A    Yeah.  I believe I paid Louis.
24       Q    Pardon me?  Because that's actually what you
25  said yesterday, too, and I want to clarify this issue.
```

Judge Dawn Caloca-Johnson
November 01, 2018

Page 65

```
1        A    This is when I overnighted the check to
2   Nature --
3        Q    Sir, this is a text message between you and
4   Louis, right?  And he tells you, Rick called.  That's
5   Rick, the crew leader Rick, right?
6        A    No, ma'am.  There was something else that
7   was going on around this time that I can't recall.
8        Q    I'm sorry?
9        A    There were a couple of different things that
10  were happening at this time.
11       Q    Does Mr. Louis Ratti say to you, The check
12  came, thank you?
13       A    He says, Check came, thank you.
14       Q    And that's on October 2nd, right?
15       A    It's dated October 2nd.
16       MS. LUKEN:  Your Honor, could I ask for a
17  five-minute break?
18       THE COURT:  I was going to say, it's 10:30,
19  mid-morning break time.  So let's take a
20  ten-minute recess.
21       (Jury leaves courtroom.)
22       (Recess taken.)
23       THE COURT:  Ready for the jury?
24       MR. HARPER:  Yes, Your Honor.
25       MS. LUKEN:  Yes, Your Honor.
```

Judge Dawn Caloca-Johnson
November 01, 2018

Page 66

```
1        THE COURT:  Okay.
2        (Jury enters the courtroom.)
3   BY MS. LUKEN:
4        Q    Mr. Chaudhari, you had a few words to say
5   about various aspects of the contract, so I'm going to
6   run through a couple of those with you.  Actually, our
7   perennial play list, Exhibit 15.  All right.
8             Mr. Parker asked you some questions about
9   the schedule provision, which is paragraph 9.  Do you
10  have that in front of you, sir?
11       A    Yes, ma'am.
12       Q    And I think your focus -- and I wasn't quite
13  clear on your testimony on this.  You seem to be
14  focused on this "time is of the essence" clause,
15  correct?
16       A    There's a couple of things in this
17  paragraph, ma'am.
18       Q    And one of them is this "time is of the
19  essence."
20       A    One of them is "time is of the essence."
21       Q    And you would agree with me that that's
22  applicable to everybody, right?  That's applicable to
23  you, that's applicable to Nature Bridges, right?
24       A    Time is applicable to everyone.
25       Q    Right.  Time is important.
```

Judge Dawn Caloca-Johnson
November 01, 2018

Page 67

```
1        A    Time is important.
2        Q    Right, because we're trying to get something
3   done.  Okay.  Now, you seem to say that there was some
4   sort of problem with -- and I guess maybe that's not
5   clear to me.  But Nature Bridges contracted with you
6   in February 2014, and they departed the site on
7   September 11th, 2014, correct?
8        A    That's when they departed.
9        Q    And so in terms of that time frame, you have
10  some sort of concern or complaint with that?
11       A    I sent them the permits prior, and the work
12  could have been arranged or expedited to be completed
13  sooner.
14       Q    Okay.  You wanted the work done sooner than
15  September 11th, 2014?
16       A    I wanted the work done in the next available
17  time frame, to make sure all the work had been
18  completed.
19       Q    And you never -- I mean, there's no
20  specifics in this schedule provision that says all the
21  work needs to be done by, you know, July 15 or
22  something like that.  You agree with me that there's
23  no provision in this contract that says that.
24       A    There's no date when the contract needs to
25  be done by, correct.
```

Judge Dawn Caloca-Johnson
November 01, 2018

Page 68

1  Q    And you never provided a schedule for the
2  project, right?
3  A    I didn't give them a schedule.
4  Q    And in fact, you -- I believe one of your
5  first communications the minute after this contract
6  was signed is that you were leaving the country for a
7  month, right?
8  A    There was a vacation in between.  I remember
9  a vacation.
10  Q    You actually -- you emailed and you said,
11  I'm going to be gone for a month.  I'll check back in
12  with you-all when I'm back, right?
13  A    I do remember a vacation.
14  Q    And you did.  You checked in about six weeks
15  later, right?  You said, I'm officially back from my
16  trip.
17  A    I remember an email saying I'm officially
18  back.
19  Q    All right.  Let's look at -- let me find it
20  on here first.  Let's look at this one now.  This is a
21  warranty provision.  Let's look at paragraph 14,
22  warranty.  I believe your counsel was focused on the
23  following language:  All work is subject to approval
24  by owner.
25       And your counsel focused in on that and you

Judge Dawn Caloca-Johnson
November 01, 2018

Page 69

1  answered some questions about that provision.  Do you
2  recall that?
3  A    I remember discussing this sentence, yes.
4  Q    Now, you would agree with me that this
5  provision is subject to a reasonableness evaluation.
6  MR. HARPER:  Objection, Your Honor.  That's
7  vague.
8  MS. LUKEN:  I can reframe.
9  BY MS. LUKEN:
10  Q    You would agree with me that this provision
11  does not allow the owner to unreasonably withhold
12  approval.
13  A    There is certainly a reasonableness to the
14  subjectivity of the work.
15  Q    So, I mean, if the reason why the owner is
16  withholding approval is unreasonable, you would agree
17  with me that this provision would not apply.
18  A    If the owner was unreasonable, then that can
19  be discussed, yes.
20  Q    Very good.  There's a provision addressing
21  sufficient workforce that I believe your counsel was
22  referencing.  Let's just -- since we've got this up
23  here, let's go through that.  Do you know the
24  provision I'm talking about, sir?
25  A    Please tell me the paragraph.

Judge Dawn Caloca-Johnson
November 01, 2018

Page 70

1  Q    I'm sorry.  I thought -- I'm sorry.  Just
2  let me find what I'm looking for.  Do you recall your
3  counsel asking you about a provision within the
4  contract that says something to the effect of Nature
5  Bridges will provide a sufficient workforce to perform
6  your project?
7  A    I'm sorry.  Could you repeat that?  What
8  workforce?
9  Q    Sufficient workforce.  Do you recall a
10  discussion on that?  And I believe your claim was
11  something to the effect of you didn't think that they
12  had sufficiently manned the project, so to speak?
13  A    I don't recall a discussion, but I do agree
14  to that assertion.
15  Q    And you were not physically at the site when
16  any work was being performed.
17  A    I wasn't physically at the site.  But,
18  again, Brian told me the engineer was on site to do a
19  final verification of the --
20  Q    Sir, you've said that a number of times now.
21  My question was simply this.  Were you on the site?
22  Were you there?
23  A    I was not on the site during the days of the
24  construction.
25  Q    The entire construction?

Judge Dawn Caloca-Johnson
November 01, 2018

Page 71

1  A    My parents were at the site.
2  Q    And I remember that.  But you personally
3  were not.
4  A    Correct, ma'am.
5  Q    Actually, let's take a look at that.  I
6  believe it's paragraph 21, and this is contractor's
7  representative and workers.  It states in the first
8  sentence, Contractor shall have a competent
9  representative at all times during performance of the
10  work who shall be authorized to act in all respects on
11  behalf of contractor.  Is that the provision you were
12  referencing?
13  A    Referencing when?
14  Q    When you said that you felt like Nature
15  Bridges did not have appropriate representatives on
16  site.
17  A    Yes.  Brian told me the engineer was on
18  site.
19  Q    Sir, is this the provision that you're
20  talking about?
21  A    Yes, ma'am.  I think an engineer is
22  qualified as a competent representative.
23  Q    And, again, my question to you is, this
24  provision, it says that Nature Bridges shall have a
25  competent representative at the project at all times

Judge Dawn Caloca-Johnson
November 01, 2018

Page 72

1    during the performance of the work.  And I'm taking it
2    from your testimony, sir, that you're saying that Rick
3    Miller of Nature Bridges is not a competent
4    representative.  Is that what you're saying?
5        A    I am saying my testimony, I was assured this
6    bridge -- the competent representative worker from
7    Nature Bridges, it's my testimony today, was Matthew
8    Parker, who did the final verification of this bridge
9    to ensure that it met all compliance.
10       Q    Sir, is there anywhere in this paragraph
11   that says there's going to be a registered
12   professional engineer like -- remember Mr. Wostbrock,
13   the guy with a P.E. at the end of his name?  Is there
14   anything in this contract that says that there's going
15   to be a registered professional engineer on the site
16   as the representative of Nature Bridges on the project
17   for the ten days that the construction of your bridge
18   took?  Is there anything in this contract that says
19   that?
20       A    I think the first line about the definition
21   of a bridge.  How do you know it's a bridge without
22   knowing that it's structurally qualified to support a
23   vehicle?
24       Q    Well, maybe -- you know, you chose not to
25   hire LAN to assist you in reporting site development plans,

Judge Dawn Caloca-Johnson
November 01, 2018

Page 73

1    correct?
2            MR. HARPER:  Objection, Your Honor.
3            THE COURT:  What's your objection?
4            MR. HARPER:  My objection was counsel is
5    testifying.
6            THE COURT:  Overruled.
7    BY MS. LUKEN:
8        Q    Sir, if there is confusion for you about
9    what is or is not a bridge, you could have hired LAN
10   in 2012 when Mr. Guddemi advised you that you probably
11   could use some help.  You could have given him the
12   2,000 retainer at that time, right?
13       A    Mr. Guddemi sent an email referencing me
14   paying for a specialist and approached Santiago with
15   the services.
16       Q    Sir, my question was simply, you could have
17   hired LAN to tell you what a bridge was.  You could
18   have hired LAN to make changes to your site
19   development plan to accommodate your desire for a
20   12-by-20-foot bridge.  You could have done all of
21   those things, but you chose not to do them, right?
22       A    I hired Nature Bridges as a general
23   contractor.
24       Q    But Nature Bridges didn't design your site
25   development plan.  You did that through your team

Judge Dawn Caloca-Johnson
November 01, 2018

Page 74

1    member LAN, right?
2        A    Nature Bridges --
3        Q    LAN is working for you.
4        A    I didn't hire LAN.  I hired Nature Bridges.
5        Q    But you also hired LAN.  You hired LAN to do
6    this site development plan back in 2008 that you claim
7    now is a big problem.  But you never told them that
8    you wanted to change it to a 12-by-20-foot bridge, and
9    you didn't hire them to change the plan to accommodate
10   your desire for a 12-by-20-foot bridge, did you?
11       A    I gave the plan to Nature Bridges and hired
12   them to comply with those plans.
13       Q    Right.  And those are your plans, and you
14   did not go to LAN and say, I want a 12-by-20-foot
15   bridge, please make a change.  You didn't do that, did
16   you?
17       A    Their engineering plans were to match the
18   site plans.
19       Q    And they were Richard Wostbrock's
20   engineering plans, right?
21       A    They were Matthew Parker's engineering
22   plans.
23       Q    No.  I'm talking about the site development
24   plan, sir, that shows a 35-foot bridge, right?
25       A    There's a site development plan.

Judge Dawn Caloca-Johnson
November 01, 2018

Page 75

1        Q    That shows a 35-foot bridge.  It's drawn by
2    a man with a P.E. after his name, an engineer, Richard
3    Wostbrock?
4        A    Richard Wostbrock is an engineer.
5        Q    Right.  And so you never went to Mr. Richard
6    Wostbrock and said, I can't afford a 35-foot bridge
7    that you've got designed here.  I want to do something
8    cheaper.  I want to do a 12-by-20-foot bridge.
9            MR. HARPER:  Objection.  Counsel is
10   testifying.
11   BY MS. LUKEN:
12       Q    Change your plans --
13           MS. LUKEN:  I'm sorry.  There was an
14   objection, Your Honor.
15           THE COURT:  The objection is that you're
16   testifying.
17           MS. LUKEN:  I'll try to just ask two
18   sentences then.
19   BY MS. LUKEN:
20       Q    You never went to Mr. Wostbrock or LAN
21   Associates and said, I can't afford a 35-foot bridge.
22   I want to do something cheaper.  Please redraw the
23   site development plan so I can do something smaller.
24   You never did that.
25       A    Say that one more time, ma'am.

Judge Dawn Caloca-Johnson
November 01, 2018

Page 76

```
 1      Q    You never went to Richard Wostbrock, the
 2  P.E. guy, or anyone at LAN Associates and said, I
 3  can't afford a 35-foot bridge.  I want to do a 20-foot
 4  bridge.  Please redraw the site development plan.
 5      A    No, I never went to Richard Wostbrock.
 6      Q    All right.  One more thing on this.  You
 7  know, if you did not like Rick Miller as the crew
 8  leader and competent representative for Nature
 9  Bridges, you had the option under this agreement to
10  provide a written request stating any reasonable
11  grounds for removal.
12           Now, you never went to Nature Bridges and
13  said, I want this Rick Miller guy off my job.  You
14  never did that, right?
15      A    Ma'am, I had no complaints with Rick Miller.
16      Q    Okay.  Very good.  Now, prior to your foray
17  into this matter, you had not had any prior
18  development experience, developing a piece of raw land
19  into a residential home site with various amenities,
20  correct?
21      A    I've not performed or -- I've never
22  developed a property, that's correct.
23      Q    This is your first try.
24      A    This is the -- yeah.  This is the
25  residential property development, first try.
```

Judge Dawn Caloca-Johnson
November 01, 2018

Page 77

```
 1      Q    Now, yesterday you had made some testimony
 2  about your belief that the bridge installed by Nature
 3  Bridges is encroaching on the stream.  Do you remember
 4  that?
 5      A    Yes, ma'am.
 6      Q    Now, my question for you is a very simple
 7  question.  Is your testimony in that regard your own
 8  personal view or belief or something that you
 9  personally have observed, or is it something that
10  someone else who is not here in the courtroom today
11  told you?
12      A    No, ma'am.  I took the as-built survey.
13  That is my testimony.
14      Q    So it's something that's not here in front
15  of the Court today that you're basing your statement
16  on.
17      A    I'm explaining how I arrived at my
18  conclusion.
19      Q    My question was simply, is this something
20  that you personally observed or evaluated, or is it
21  something that somebody who is not here in the
22  courtroom today told you?
23      A    It is both.
24      Q    Did you go out to the site and make any sort
25  of physical observations?
```

Judge Dawn Caloca-Johnson
November 01, 2018

Page 78

```
 1      A    Yes, ma'am.
 2      Q    Just for clarity, too, so the jury knows
 3  here, there's a whole bunch of pictures of your
 4  property and your bridge, right?
 5      A    There's a bunch of pictures.
 6      Q    A lot of them, right?
 7      A    There's a lot of them.
 8      Q    Dozens and dozens.
 9      A    I'd say there's a lot.
10      Q    And so your reasoning in this regard, then,
11  is twofold.  You've got somebody who's not here and
12  then your own personal observations, correct?
13      A    No, ma'am.  It's based off of a survey that
14  was done.
15      Q    Okay.  A document that's not before the
16  Court here today.
17      A    I'm not sure if the document is here or not.
18      Q    Let's address what your claim is here in
19  this lawsuit.  You never asked anybody at LAN whether
20  or not you could put a 12-by-20-foot bridge in the
21  location shown on the site plan for a 35-foot bridge,
22  did you?
23           MR. HARPER:  Objection, asked and answered.
24           THE COURT:  Overruled.
25      A    Can you repeat the question, please?
```

Judge Dawn Caloca-Johnson
November 01, 2018

Page 79

```
 1  BY MS. LUKEN:
 2      Q    You never asked anybody at LAN whether or
 3  not you could fit a 12-by-20-foot bridge in the
 4  location shown on your site development plan for a
 5  35-foot bridge.
 6      A    I've never asked LAN -- what was the
 7  question again, ma'am?
 8      Q    You never asked LAN whether or not you could
 9  put a 12-by-20-foot bridge in the location where a
10  35-foot bridge is shown in their site development
11  plan.
12      A    I have not asked LAN.
13      Q    And you are aware that Mr. Wostbrock has a
14  view on that subject, correct?
15      A    Mr. Wostbrock has a view --
16      Q    He's the guy with the P.E. at the end of his
17  name, right?
18      A    Yes, ma'am.
19      Q    This guy?
20      A    Yes.
21      Q    You are aware that he has a view on whether
22  or not you could actually put a 12-by-20-foot bridge
23  in the location shown on your site development plan
24  for a 35-foot bridge.
25      A    I'm not sure what his views are, ma'am.
```

Judge Dawn Caloca-Johnson
November 01, 2018

Page 80

```
 1      Q    All right.  So you're saying you want this
 2   as-built survey, and you're claiming that this cost
 3   you $850 from LAN, right?
 4      A    Yes, ma'am.  That was the cost of the
 5   survey.
 6      Q    And you're claiming this is Nature
 7   Bridges -- Nature Bridges owes you this money, and yet
 8   you are unable to show us where in the contract Nature
 9   Bridges agreed to provide you with an as-built survey.
10      A    Can I look at the contract, ma'am?
11      Q    Sure.  I think we actually did cover this.
12   You indicated you felt like it was somewhere in the
13   warranty provision, I think?  It was paragraph 14?
14      A    Yes, ma'am.  It would be part of the
15   correction of the defect.
16      Q    And, again, there's no evidence of any
17   defect that's been established.  And actually let
18   me --
19           MS. LUKEN:  Your Honor, can I ask for a
20      quick conference on this?
21           (The following sidebar conference was held
22      outside of the hearing of the jury.)
23           MS. LUKEN:  I guess my concern, Your Honor,
24      with the answer to my question, he's presuming
25      the existence of a defect.  I know there is no
```

Judge Dawn Caloca-Johnson
November 01, 2018

Page 82

```
 1   construction defect, you need to have an expert
 2   opinion opining there was defective construction.
 3   There is no evidence of that.
 4           MR. HARPER:  It's cross-examination.  You
 5      can --
 6           MS. LUKEN:  The question that I want to ask
 7      him is an extremely narrow one.  I guess I'm
 8      concerned he's not going to follow the narrow
 9      nature.
10           THE COURT:  He hasn't followed your narrow
11      nature of anything you've asked.
12           MS. LUKEN:  That seems a little bit unfair.
13      I can't ask him an objective question based on
14      the record because he's going to say whatever he
15      wants to say regardless of the question I ask.  I
16      guess the only cure for that would be for me to
17      request the Court to direct him to answer just
18      the question that I'm asking.
19           THE COURT:  You can try to ask a very
20      pointed question.
21           MS. LUKEN:  All right.
22           (End of sidebar conference.)
23   BY MS. LUKEN:
24      Q    And, again, there's nothing in this contract
25   that states, whether in the scope of work that we've
```

Judge Dawn Caloca-Johnson
November 01, 2018

Page 81

```
 1   competent evidence of a defect, but if I ask him
 2   that question, he's going to start prattling on
 3   about whatever it is he thinks is defective,
 4   right?
 5           And I don't want to elicit that kind of
 6      testimony.  However, I want to ask him -- I guess
 7      I would like to have him agree with me that
 8      there's no evidence in front of a jury of a
 9      defect.
10           THE COURT:  He's not going to agree with
11      you.
12           MR. HARPER:  I agree.  His first claim is
13      it's defective because it's not a bridge.
14           MS. LUKEN:  But he can't prove that because
15      he has no expert and you have not submitted --
16           MR. HARPER:  What is or is not a bridge,
17      that doesn't require an expert.  It's
18      incomplete.
19           MS. LUKEN:  That's not what a defect is.  A
20      defect is a particular term of art.  It's
21      something that was not installed or manufactured
22      or delivered correctly.  It's a highly
23      particularized term, and it's applicable to the
24      construction industry.
25           And if you are trying to prove a
```

Judge Dawn Caloca-Johnson
November 01, 2018

Page 83

```
 1   already gone through before or the text of the
 2   contract itself, that says Nature Bridges is going to
 3   provide you an as-built survey.  Agreed?
 4      A    There are several paragraphs in here, ma'am.
 5   Warranty was one of them that we were speaking about.
 6      Q    Is the word "as-built" anywhere in this
 7   contract?
 8      A    There's no mention of as-built survey in
 9   this contract.  It arises because of deficiencies
10   within the work.
11      Q    And so this is based on your belief that
12   there are deficiencies and somehow this as-built
13   survey resolves those deficiencies?
14      A    No, ma'am.  I already testified it changed
15   the location.
16      Q    Sir, you changed the location when you asked
17   for a 12-by-20-foot bridge, didn't you?
18      A    No, ma'am.  Santiago is the one who --
19      Q    Sir, it was a simple question.  If your
20   answer is no, that's fine, if you don't think that.
21   All right.  So this as-built survey is simply a
22   drawing, and there's nothing in the contract that says
23   Nature Bridges is going to provide you an as-built.
24   We can at least agree upon that.
25      A    There's no mention of as-built survey in
```

Judge Dawn Caloca-Johnson
November 01, 2018

Page 84

```
1    this contract.
2        Q    Very good.  Now, in terms of your testimony
3    yesterday, you believe the bridge has to be removed,
4    correct?
5        A    Yes, ma'am.  I believe the bridge has to be
6    removed.
7        Q    And you've thrown out a number of $27,000,
8    correct?
9        A    I believe it's 27,500 for the physical
10   portion.
11       Q    And this is based on your belief that it has
12   to be removed, your testimony yesterday.
13       A    It is based on a lot of consultation.
14       Q    And, again, with people who are not here in
15   the courtroom today, right?
16       A    It's my testimony that Brian Green told
17   me --
18       Q    Sir, I'm asking you about how you came to
19   believe that the bridge has to be removed.  And I
20   asked you, Is that based on your belief?  And you
21   said, And in consultation.
22            So my question to you simply is, your belief
23   is based on consultations that you may or may not have
24   with other people who are not here in the courtroom
25   today.  Do you agree with that?
```

Judge Dawn Caloca-Johnson
November 01, 2018

Page 86

```
1    your discussions with him, he told you several times
2    that he had tried to reach out to LAN Associates,
3    didn't he?
4        A    I do recall an email where he was trying to
5    reach out to them.
6        Q    And he characterized them as, I believe,
7    nonresponsive.  Do you remember that?
8        A    I don't recall that from Matt.
9        Q    Mr. Parker told you that he was having
10   trouble getting in touch with Mr. Wostbrock, right,
11   the man who drew the plan?
12       A    Yes, ma'am.  His email address was incorrect
13   when he was emailing him.  I recall that.  He had the
14   wrong email address.
15       Q    Well, you forwarded it, though, didn't you?
16       A    Eventually, I forwarded it.
17       Q    And that email was not the wrong email
18   address.  That was actually the correct email address.
19   All right.  We can go through that.  You do agree with
20   me that Mr. Parker advised you that he was having
21   problems getting in touch with folks over at LAN.
22       A    It took a little time.
23       Q    It took several months actually, right?
24       A    No, ma'am, I don't recall that.
25       Q    Here you go.  Do you remember that email you
```

Judge Dawn Caloca-Johnson
November 01, 2018

Page 85

```
1        A    With all the information that I've
2    collected, I believe, yes, the bridge needs to be
3    removed.
4        Q    All right.  And then we've got a claim for
5    additional permitting.  It's environmental permitting,
6    right?
7        A    Yes, ma'am.  This is the environmental.
8        Q    And you believe that Nature Bridges is
9    responsible for some additional environmental
10   permitting, correct?
11       A    Yes, ma'am.
12       Q    And under this contract, you're responsible
13   for environmental permits, correct?
14       A    I was responsible for obtaining and giving
15   them the permits.  They didn't follow up.  They need
16   to be done.
17       Q    Sir, your responsibility under the contract
18   is to obtain and pay for all environmental permits,
19   true?
20       A    Yes.  But they need to be redone.
21       Q    And we went through, I think, an email where
22   you were aware that those permits were expiring in
23   February 2015, correct?
24       A    That was in the email.
25       Q    You recall that.  Okay.  Matt Parker, in
```

Judge Dawn Caloca-Johnson
November 01, 2018

Page 87

```
1    received from Brian Green?
2        A    Okay, ma'am, yes.
3        Q    What number is that again?
4        A    This is Plaintiff's Exhibit 52.
5        Q    52?
6        A    Yes, ma'am.
7        Q    Now, this is Mr. Parker in April of 2015,
8    and he advises that he has been trying to get in touch
9    with Mr. Richard Wostbrock, P.E.  Do you see that
10   there?
11       A    Yes.
12       Q    And he indicates that Mr. Wostbrock is not
13   responsive.
14       A    That's what Mr. Parker states.
15       Q    And this is April 20th, 2015, right?
16       A    Yes, ma'am.  It's April 20th, 2015, yes,
17   ma'am.
18       Q    This is when Mr. Parker is trying to help
19   you out with this letter from DEP, right?
20       A    He's helping me with a few of the points in
21   the notice of violation.
22       Q    And this is all before you hired LAN to
23   start working on your project again, right?
24       A    Can you say that one more time, ma'am?
25       Q    Mr. Parker telling you, I'm trying to reach
```

Judge Dawn Caloca-Johnson
November 01, 2018

Page 88

1  out to Mr. Wostbrock and he's being unresponsive, that
2  occurs prior to you hiring LAN to come work on your
3  project again in July 2015, right?
4      A    Again, ma'am, I had a lot of communications
5  with LAN, but the official hire was July 2015 to
6  assist in part of the issue.
7      Q    But Mr. Parker's email is before that
8  happened.
9      A    Yes.  This email predates that.
10     Q    And would you agree with me that one of
11 reasons for the nonresponsiveness might be that they
12 had not been hired by you to do anything?
13     A    No, ma'am.  If I recall from the testimony,
14 I believe there was an issue with the email address.
15     Q    And you, of course, jumped in right away to
16 resolve any discrepancy in that regard, right?
17     A    Resolve what discrepancy, ma'am?
18     Q    Well, if Mr. Parker is saying he can't get
19 in touch with the other member of the team, LAN,
20 you're the team leader, right?  Did you jump in to try
21 to resolve this situation?
22     A    Nature Bridges asked for my help, and I
23 helped him to get the line of communication.
24     Q    Right.  But you don't want them to reach out
25 to Mr. Wostbrock in your response email, right?

Judge Dawn Caloca-Johnson
November 01, 2018

Page 90

1      A    Can you remind me, please?  Can you point me
2  to that, please?
3      Q    I'm not sure where it is.  I have in my
4  notes that you're claiming that Brian Green told you
5  that Nature Bridges was going to be providing
6  architectural services?
7      A    Yes, ma'am.  He told me he's going to get
8  me -- everything adjusted for the new location, the
9  new plans and everything else.
10     Q    I'm sorry, sir.  Do you know what architects
11 design?
12     A    It depends on the architect.
13     Q    Right.  Do architects design bridges?  If
14 you don't know the answer, that's fine.
15     A    It depends on the type of bridge.
16     Q    All right.  And you think that's an
17 architectural service.  The work that Nature Bridges
18 was doing, you think that that's an architectural
19 service?
20     A    It became -- because of the site development
21 plan changes, they assumed greater roles that were
22 required beyond the specificities in this contract.
23     Q    Just one more question here.  You knew, in
24 your discussion with LAN as early as August 2012, that
25 the site development plan that you had a 35-foot

Judge Dawn Caloca-Johnson
November 01, 2018

Page 89

1      A    Say that again, ma'am.
2      Q    In your email there, you specifically say,
3  Do we have to contact Richard again?  You do say that,
4  right?
5      A    Yes.  I'm asking them why do we need to --
6  why do you guys need to contact him again.
7      Q    Right.  And that's because every time
8  Mr. Wostbrock gets contacted by somebody and has
9  communications on your behalf, he sends you a bill,
10 right?
11     A    No, ma'am.  They have been so supportive
12 this entire process and did not send me a single bill.
13     Q    Well, that's not entirely true, sir.  You're
14 claiming damages for work that you allege that they
15 did, right?
16     A    This is the work that was done and needs to
17 be redone.
18     Q    You had no contract with LAN at the time
19 Mr. Parker wrote you that email, right?
20     A    There is no contract, but there is
21 assistance in between.
22     Q    Now, sir, the testimony that was elicited by
23 your question -- okay.  I can't get there quite yet.
24 Something about an architect, the word "architect" is
25 in the contract.  Do you remember that testimony?

Judge Dawn Caloca-Johnson
November 01, 2018

Page 91

1  bridge, correct?
2      A    I remember the email.
3      Q    Now, you never asked for nor received a
4  proposal from Nature Bridges for a 35-foot bridge.
5      A    I don't recall receiving a proposal from
6  Nature Bridges.
7      Q    And your counsel took some pains to ask you
8  some questions yesterday, you know, you're a
9  professional, you do pretty well financially, et
10 cetera, et cetera.  Do you remember that line of
11 questioning?
12     A    Yes, ma'am.
13     Q    So if you had wanted a 35-foot bridge from
14 Nature Bridges, all you had to do was ask, right?
15     A    Yes, ma'am.  I spoke with Santiago.
16          MS. LUKEN:  Okay.  Your witness.
17          THE COURT:  Can we break for lunch a little
18 early and then we can come back?
19          MS. LUKEN:  It's up to you.
20          THE COURT:  How long do you think you're
21 going to take?
22          MR. HARPER:  I'm not sure, Your Honor.  I
23 think your idea is probably a sound one.
24          MS. LUKEN:  Maybe we should try to use the
25 time we have, Your Honor, to get started.

Judge Dawn Caloca-Johnson
November 01, 2018

Page 92

1    THE COURT:  Okay.  Well, we can go maybe 30
2  minutes.  Are you-all fine to do lunch at noon?
3    MS. LUKEN:  Well, maybe we should just
4  break.
5    THE COURT:  Why don't we go ahead and take a
6  lunch break.  We'll come back at 12:45.
7    (Jury leaves courtroom.)
8    (Lunch recess from 11:35 a.m. until 12:45
9  p.m.)
10    THE COURT:  You can bring the jury in.
11    (Jury enters courtroom.)
12    THE COURT:  Mr. Harper, you can ask
13  questions.
14    MR. HARPER:  Thank you, Your Honor.
15    REDIRECT EXAMINATION
16  BY MR. HARPER:
17    Q    Mr. Chaudhari, we're going to clear up just
18  a few things and hopefully move on here rather
19  quickly.  At the end of the day, did you withhold
20  final payment because you didn't receive what you
21  bargained for?
22    A    Yes, sir.
23    Q    Did you receive a bridge in exchange for
24  $55,000?
25    A    No, sir.  There is not a bridge.

Judge Dawn Caloca-Johnson
November 01, 2018

Page 93

1    Q    Specifically, Plaintiff's Exhibit 83-D, it's
2  your testimony that that's not a bridge?
3    A    Yes, sir.  That's my testimony.
4    Q    Now, have you ever been on a bridge before?
5    A    Yes, sir.
6    Q    Have you ever seen a bridge before?
7    A    Yes, sir.
8    Q    Have you seen many bridges?
9    A    Yes, sir.
10    Q    Have you ever in your life seen a bridge
11  like that?
12    A    Just the last four years, that's the only
13  bridge I've seen.
14    Q    Have you ever been on a bridge like this?
15    A    Not like that, sir.
16    Q    Do you think you need to be an expert to
17  know what a bridge is?
18    A    No, sir.
19    Q    Do you think the definition of a bridge is
20  common sense?
21    A    Yes, sir.
22    Q    Do you believe the structure is noncompliant
23  because it's defective?
24    MS. LUKEN:  Objection, Your Honor.  That
25  calls for opinion testimony from a lay witness,

Judge Dawn Caloca-Johnson
November 01, 2018

Page 94

1  predicate and foundation.
2    THE COURT:  I think he can say what he
3  believes.
4    A    It is my 101 percent belief that's
5  noncompliant.
6  BY MR. HARPER:
7    Q    Do you believe that it's noncompliant
8  because it encroaches in the stream on this property?
9    A    Yes.  I believe it encroaches on the stream
10  on that property.
11    Q    Do you believe that the structure complies
12  with law?
13    MS. LUKEN:  Objection, Your Honor, predicate
14  and foundation with respect to --
15    THE COURT:  Sustained.
16  BY MR. HARPER:
17    Q    Mr. Chaudhari, I'm going to show you again
18  what's been marked as Plaintiff's Exhibit 15, and that
19  is the contract agreement.  Do you see that?
20    A    Yes, sir.
21    Q    What law, the law of which state applies?
22    A    New Jersey laws.
23    Q    Where are you right now?
24    A    New Jersey.
25    Q    You're in New Jersey right now?

Judge Dawn Caloca-Johnson
November 01, 2018

Page 95

1    A    Yes, sir.
2    Q    It's funny.  It feels like Florida.
3    A    Yes, sir.
4    Q    Are you sure you're not in Florida?
5    MS. LUKEN:  Objection, relevance.
6    THE COURT:  Sustained.
7  BY MR. HARPER:
8    Q    Have you ever seen a bridge in Florida
9  before?
10    MS. LUKEN:  Objection, Your Honor,
11  relevance, cumulative.
12    MR. HARPER:  Your Honor, the contract that
13  the jury is going to see provides that New Jersey
14  law applies.  We're in Florida.  I'm just making
15  sure there's not some distinction I'm unaware of
16  about what a bridge is.
17    MS. LUKEN:  Well, then competency with
18  respect to that information, if the query is
19  whether or not --
20    THE COURT:  Well, the original question was,
21  does the bridge comply with New Jersey law.
22  There was an objection, which I sustained because
23  the witness is not qualified to answer as to what
24  is or is not compliant with New Jersey law unless
25  you qualify him as a lawyer.

Judge Dawn Caloca-Johnson
November 01, 2018

Page 96

```
 1          MR. HARPER:  Or a professor of law.
 2          THE COURT:  I thought he was a nuclear
 3     pharmacist.
 4   BY MR. HARPER:
 5       Q    Mr. Chaudhari, can you use this structure in
 6   any meaningful or useful way as it stands?
 7       A    No, sir.
 8       Q    And is it your testimony yesterday and today
 9   that this structure here does not comply with your
10   permits?
11       A    Yes, sir.
12          MS. LUKEN:  Objection, Your Honor, predicate
13     and foundation with respect to that conclusion,
14     which requires opinion testimony or other
15     competent evidence.
16          THE COURT:  Sustained.
17   BY MR. HARPER:
18       Q    Mr. Chaudhari, is it your testimony today
19   that this bridge, this structure does not comply with
20   the design and site plans that you provided to Nature
21   Bridges?
22       A    Yes.  It does not comply with the site
23   plans.
24          MS. LUKEN:  Same objection as previous, Your
25     Honor, competency, predicate with respect to that
```

Judge Dawn Caloca-Johnson
November 01, 2018

Page 98

```
 1   paragraph in your contract agreement; is that correct?
 2       A    Yes, sir.
 3       Q    Did you approve of this structure?
 4       A    No, sir.
 5       Q    Do you approve of this structure as being
 6   the bridge built?
 7          MS. LUKEN:  Objection, Your Honor,
 8     cumulative and asked and answered on direct and
 9     now.
10          THE COURT:  Sustained.
11   BY MR. HARPER:
12       Q    Mr. Chaudhari, do you believe that you
13   sufficiently expressed your displeasure to Nature
14   Bridges about this structure?
15       A    Yes, I did.
16       Q    Did Nature Bridges do anything in addition
17   to the structure after you expressed your displeasure?
18       A    No, sir.  Just the lawsuit.
19       Q    Were those complaints of yours within one
20   year?
21       A    Yes, sir.
22       Q    Is your testimony that you have been unable
23   to move forward with the rest of the development of
24   this property because of Nature Bridges?
25       A    Yes, sir.
```

Judge Dawn Caloca-Johnson
November 01, 2018

Page 97

```
 1     question, compliance with the plans.
 2          MR. HARPER:  Your Honor, the site plans --
 3     and this is hour number ten in Mr. Chaudhari's
 4     testimony.  I was trying to avoid having to go
 5     all the way back around.
 6          THE COURT:  He can state what his position
 7     is.  I agree that there's nobody here to -- I
 8     don't believe there's going to be anybody that's
 9     an expert that's willing to -- or is going to be
10     here testifying.
11          MR. HARPER:  Your Honor, I'm not suggesting
12     Mr. Chaudhari is an expert, and we're not talking
13     about other experts.  I'm just asking him what
14     his belief is.
15          MS. LUKEN:  Relevance.
16          THE COURT:  He can answer the question.
17       A    That structure does not comply to the site
18   plans, which is the only approval made by New Jersey
19   DEP.
20   BY MR. HARPER:
21       Q    Now, in your defenses to the lawsuit filed
22   against you, one of the defenses raised is that you
23   believe this structure built by Nature Bridges and
24   your agreement with Nature Bridges and subsequently
25   Nature Bridges' performance, it violates that warranty
```

Judge Dawn Caloca-Johnson
November 01, 2018

Page 99

```
 1       Q    Do you believe the work as envisioned by
 2   this contract agreement before you and as agreed to,
 3   do you believe that scope of work is done?
 4          MS. LUKEN:  Objection, relevance.
 5          THE COURT:  Is what?
 6          MR. HARPER:  I asked him if he believed the
 7     scope of work in this contract has been done.
 8          MS. LUKEN:  Withdrawn.
 9       A    No, sir.
10   BY MR. HARPER:
11       Q    Did you ever express anything to Nature
12   Bridges along the lines of, Thank you for the work
13   you've done, job well done?
14          MS. LUKEN:  Objection, leading.
15          THE COURT:  Overruled.
16       A    Would you repeat that, please?
17   BY MR. HARPER:
18       Q    Have you ever expressed at any time to
19   Nature Bridges that you were satisfied and happy with
20   their work and job well done?
21       A    I made sure they knew that there was much
22   work that needed to be done.
23       Q    I believe Ms. Luken asked you about Louis
24   Ratti.  Do you recall that?
25       A    Yes, sir.
```

Judge Dawn Caloca-Johnson
November 01, 2018

Page 100

```
 1        Q    Do you believe Louis Ratti has anything to
 2   do with why we are here today?
 3        A    Yes, sir.
 4        Q    Why is that?
 5        A    He's just a part of the conversation, so
 6   he's affiliated with this case.
 7        Q    Do you believe he did anything wrong?
 8        A    No, sir.
 9        Q    Are you suing Louis Ratti?
10        A    No, sir.
11        Q    Has Louis Ratti sued you?
12        A    He's not sued me, sir.
13        Q    And Ms. Luken spent quite a bit of time
14   talking about LAN Associates.  Do you recall that?
15        A    Yes, I do recall that.
16        Q    Do you believe LAN has anything to do with
17   why you're here today?
18        MS. LUKEN:  Objection, Your Honor,
19        relevancy.  There's no third-party pleading in
20        this matter.  There's no --
21        MR. HARPER:  Your Honor, I didn't bring up
22        LAN.  It was mentioned and discussed in
23        cross-examination and, I feel like, in an effort
24        to deflect blame, and I feel like it's
25        appropriate.
```

Judge Dawn Caloca-Johnson
November 01, 2018

Page 101

```
 1        THE COURT:  Sustained.
 2   BY MR. HARPER:
 3        Q    Is LAN Associates' name anywhere on that
 4   contract agreement?
 5        A    No, sir.
 6        Q    How about Louis Ratti, is his name on that
 7   contract agreement?
 8        A    No, sir.
 9        Q    How about Chris Guddemi or Richard
10   Wostbrock?
11        A    No, sir.
12        Q    How about Rick?
13        A    No, sir.
14        Q    How about Nature Bridges?
15        A    Yes, sir.
16        Q    Now, something else Ms. Luken said, I
17   believe she asked you a question along the lines of,
18   if you were confused about what a bridge was or
19   wasn't, you could have -- why didn't you hire LAN to
20   help.  Do you recall that line of questioning?
21        A    Yes, sir.
22        Q    Were you ever confused about what a bridge
23   was?
24        A    No, sir.
25        Q    Was anyone?
```

Judge Dawn Caloca-Johnson
November 01, 2018

Page 102

```
 1        A    No, sir.
 2        Q    Do you believe the structure here to be
 3   defective?
 4        A    Yes, sir.
 5        MS. LUKEN:  Objection, Your Honor, predicate
 6        and foundation.
 7        THE COURT:  Sustained.
 8   BY MR. HARPER:
 9        Q    Do you believe that structure has to be
10   removed?
11        A    Yes, sir.
12        Q    And you're asking Nature Bridges to pay for
13   the cost of that?
14        A    Yes, sir.
15        Q    Do you want Nature Bridges to give you your
16   money back as well?
17        A    Yes, sir.
18        Q    How much money did you pay them?
19        A    $47,500, sir.
20        Q    Ms. Luken asked you about Santiago Garcia
21   and in particular your conversation with Santiago
22   Garcia early on.  Do you remember that line of
23   questioning?
24        A    Yes, sir.
25        Q    And I believe Ms. Luken asked you whether or
```

Judge Dawn Caloca-Johnson
November 01, 2018

Page 103

```
 1   not Santiago Garcia identified himself to you as a
 2   civil engineer.  Do you recall that question?
 3        A    I recall her asking if he was an engineer.
 4        Q    And do you recall what your answer was?
 5        A    I recall, sir.
 6        Q    In your conversation with Santiago Garcia --
 7   and I believe there is some testimony here in court by
 8   him about this.  Did Santiago Garcia ever explain to
 9   you his background as a mechanical engineer?
10        A    Yes, sir.
11        Q    Now, as part of your damages, you're also
12   claiming that you have to get this project and this
13   property re-permitted; is that correct?
14        A    Yes, sir.
15        Q    And why do you believe that you have to get
16   this property or this project re-permitted?
17        MS. LUKEN:  Objection, your Honor, predicate
18        and foundation.
19        THE COURT:  Sustained.
20   BY MR. HARPER:
21        Q    Ms. Luken spoke extensively about your
22   environmental permits at some point expiring because
23   they were not renewed.  Do you recall that?
24        A    Yes, sir.
25        Q    And is that indeed true, that the permits
```

Judge Dawn Caloca-Johnson
November 01, 2018

Page 104

```
 1   that were originally obtained, the environmental
 2   permits, expired because they were not renewed?
 3        A   No, sir.
 4        Q   That's not true?
 5        A   Could you repeat the question?
 6        Q   Is it true that the environmental permits
 7   that you provided to Nature Bridges at some point
 8   expired because they were not renewed?
 9        A   Yes, they expired.
10        Q   Do you believe you could have simply
11   resubmitted or renewed the permits as they were then?
12        MS. LUKEN:  Objection, Your Honor, predicate
13   and foundation.
14        THE COURT:  Do you need a sidebar?
15        MR. HARPER:  No, Your Honor.  Thank you.
16        THE COURT:  Sustained.
17   BY MR. HARPER:
18        Q   Mr. Chaudhari, has there been anything about
19   these proceedings that have at times confused you?
20        A   Yes, sir.
21        Q   Have you ever been through this experience
22   before?
23        A   No, sir.
24        Q   Has it been easy for you to explain yourself
25   when you continue to get cut off?
```

Judge Dawn Caloca-Johnson
November 01, 2018

Page 105

```
 1        MS. LUKEN:  Objection, Your Honor, relevancy
 2   and improper purpose.
 3        THE COURT:  Sustained.
 4        MR. HARPER:  Nothing further, Your Honor.
 5        THE COURT:  All right.  Thank you, Mr.
 6   Chaudhari.  Do you have another witness,
 7   Mr. Harper?
 8        MR. HARPER:  No, Your Honor.  The defense
 9   rests.
10        MS. LUKEN:  I'm going to have a motion.
11        THE COURT:  Okay.  So I'll ask the jury --
12   I'll give you a recess.  We have a little
13   business to conduct on the record.  Sorry.  I
14   forgot.  Do any jurors have any questions?  Okay.
15        (The following sidebar conference was held
16   outside of the hearing of the jury.)
17        THE COURT:  The first question is, "Is there
18   signed by both parties a modification that states
19   the bridge can be modified from a steel structure
20   to a poured concrete one?"
21        MS. LUKEN:  I don't think that can be
22   answered, Your Honor, because the witness has
23   already answered that there are no modifications
24   to the contract.
25        MR. HARPER:  I think you can provide the
```

Judge Dawn Caloca-Johnson
November 01, 2018

Page 106

```
 1   same instruction that you gave before.
 2        THE COURT:  Which is --
 3        MS. LUKEN:  It's already been answered.
 4        MR. HARPER:  Yes.
 5        THE COURT:  "If you can't answer this, can
 6   you clarify if there any signed modifications
 7   that are part of this contract?"  That's been
 8   answered.
 9        MS. LUKEN:  Uh-huh.
10        THE COURT:  "Were there local and state
11   permits required for this project?"  That was
12   answered.  "How many permits, local and state,
13   were pulled?"
14        MS. LUKEN:  I don't think any of these can
15   be answered, Your Honor.  I don't think they can
16   be asked.  I think these are all cumulative.
17   This one, I think, also has already been answered
18   in the testimony, and I don't know that this
19   witness is competent to even answer that question
20   because I don't know that he knows.  I don't know
21   what to do.  What is your view, Mr. Harper?
22        MR. HARPER:  This seems to suggest they've
23   forgotten what happened yesterday, which doesn't
24   surprise me.  For what it's worth, I'd be happy
25   to clarify that.  Ms. Luken asked that there --
```

Judge Dawn Caloca-Johnson
November 01, 2018

Page 107

```
 1   this is the contract, there are no modifications
 2   signed in writing.  We have something we both
 3   stipulated to.  I don't know why that couldn't be
 4   answered.
 5        THE COURT:  These are witness questions.
 6        MS. LUKEN:  Right.  That's what I'm
 7   thinking, is the other one any better.
 8        THE COURT:  "Did the defendant receive
 9   written notice of the location change after Brian
10   Green made the site visit?"
11        MS. LUKEN:  Interesting.
12        MR. HARPER:  We can ask him that.
13        MS. LUKEN:  Did defendant receive written
14   notice of the location change?  I mean, I think
15   the way the question is framed is not permissible
16   because it's assuming an ultimate fact, I guess.
17   I don't think that would be a proper question.  I
18   think if Mr. Harper asked it, I would object to
19   it.
20        MR. HARPER:  I think that's a proper
21   question.
22        THE COURT:  I think it really goes -- I
23   think you can ask this question.  I think it goes
24   to argument, because the whole argument here,
25   they gave him a site plan they couldn't use for
```

Judge Dawn Caloca-Johnson
November 01, 2018

Page 108

```
 1    the 25 grand.  That's going to be the argument.
 2    I think it can be asked.
 3         MR. HARPER:  I agree.  He's still under
 4    subpoena, Mr. Brian Green is.  I don't see the
 5    harm.  That is probably a question I should have
 6    asked.
 7         MS. LUKEN:  I'm sorry.  What do you want to
 8    do?
 9         THE COURT:  There's no location in the
10    contract.
11         MS. LUKEN:  Right.  That's why this makes --
12    I don't think this question is proper because it
13    assumes that there's a location dictated within
14    the contract agreement, which by the way, is
15    precisely what the modification clause and parole
16    evidence rule seek to prohibit any testimony
17    about.  So we've got the site plan into evidence,
18    however -- I mean, not site plan, but I mean --
19         THE COURT:  You can ask follow-up questions
20    to this question.
21         MS. LUKEN:  Sure.
22         THE COURT:  "Did Nature Bridges ever discuss
23    the difference between the site plan bridge size
24    and the requested bridge size before the contract
25    was signed?"
```

Judge Dawn Caloca-Johnson
November 01, 2018

Page 109

```
 1         MS. LUKEN:  Can't answer that.
 2         MS. LUKEN:  Can't answer that.  "Can he tell
 3    us why the house can't be built on plan site?
 4    What does driveway have to do with it?"
 5         MR. HARPER:  I think that could be asked.
 6         MS. LUKEN:  No, that cannot be.  It's
 7    irrelevant and it also -- again, you've got a
 8    site plan drawing.  It's something an engineer
 9    would need to testify to.  I mean, if that's a
10    problem, with having him being able to testify
11    like I think this -- I think that we end up with
12    these questions that are the subject of
13    specialized areas of knowledge that could
14    actually explain these things and provide these
15    opinions, and instead we've got him --
16         MR. HARPER:  It's not required to have
17    experts on both sides.  It would be nice but not
18    a requirement of law.
19         MS. LUKEN:  To pursue the claims you're
20    making it is.
21         MR. HARPER:  That's not correct.
22         THE COURT:  Okay.  I think this is
23    irrelevant.  So the only question, I'm just going
24    to tell them --
25         MR. HARPER:  What are you going to do for
```

Judge Dawn Caloca-Johnson
November 01, 2018

Page 110

```
 1    the ones that aren't going to be answered?
 2         THE COURT:  I believe the rule is I just --
 3    we don't present them to the witness.
 4         MS. LUKEN:  And the Court is going to read
 5    that question.
 6         THE COURT:  Uh-huh.
 7         (End of sidebar conference.)
 8         THE COURT:  Okay.  So if you'll recall at
 9    the beginning of the trial, when I instructed you
10    about the questioning part, the procedure is to
11    review the questions with the lawyers, and then
12    the Court has to make a decision as to whether or
13    not -- basically, if one of the lawyers have
14    asked that question or if the question has
15    already been asked, then we don't ask it again.
16    So we've gone through that process with the
17    questions that have been submitted.  And most of
18    the questions are not going to be presented.  So
19    I'll read this question to Mr. Chaudhari.  And
20    then if Mr. Harper or Ms. Luken have follow-up,
21    they're entitled to follow up on the question.
22         So, Mr. Chaudhari, did you receive written
23    notice of the location change after Brian Green
24    made the site visit?
25         THE WITNESS:  No, I did not receive written
```

Judge Dawn Caloca-Johnson
November 01, 2018

Page 111

```
 1    notice from Brian Green after the site visit.
 2         THE COURT:  Any questions, Mr. Harper?
 3         MR. HARPER:  No, Your Honor.
 4         THE COURT:  Ms. Luken?
 5         FOLLOW-UP EXAMINATION
 6    BY MS. LUKEN:
 7         Q    For clarity here, your contract agreement
 8    with Nature Bridges does not include your site plan,
 9    correct?
10         A    The contract, it -- it's implied in New
11    Jersey laws the site plan would be provided.
12         Q    Sir, my question is very simple.  The site
13    plan that you've been referencing here as showing a
14    location, whatever location you wanted, that is not
15    incorporated into your contract with Nature Bridges,
16    correct?
17         A    The site plan is the only plans approved by
18    New Jersey laws --
19         MS. LUKEN:  Your Honor --
20         THE COURT:  Mr. Chaudhari, you need to
21    answer her question.
22         A    The site plan is not attached to the
23    contract.
24    BY MS. LUKEN:
25         Q    And the contract, as we've gone through,
```

Page 112

```
 1   describes what exactly is in the contract, right?  It
 2   says the contract, any written modifications and
 3   Exhibit A, right?
 4        A   Yes, ma'am.
 5        Q   And you did negotiate this contract with
 6   Nature Bridges?
 7        A   This is the contract between Nature Bridges
 8   and I.
 9        Q   And you negotiated the terms of it, correct?
10        A   Yes, ma'am.  We had back and forth about the
11   terms.
12        Q   And if you had wanted to attach your site
13   plan to this contract, you could have asked to do
14   that, correct?
15        A   I had an email before --
16        Q   Sir, my question, if you had wanted that
17   included in your agreement, binding on both parties,
18   you could have asked to have that included as part of
19   your contract, correct?
20        A   I did ask, ma'am.
21        Q   Sir?
22        A   I had an email.  There's a reason --
23        Q   Sir, sir, you gave up on that then.  If your
24   testimony is that you asked for it to be included, you
25   see that it is not, correct?
```

Page 114

```
 1        yes, he sent an email.  It's how this all
 2        started.
 3             THE COURT:  I'm not sure what his answer
 4        was.
 5   BY MS. LUKEN:
 6        Q   All right.  You think you asked for that,
 7   right?  Is that what you're saying?
 8        A   Yes, ma'am.
 9        Q   But it's not, right?
10        A   It's not.
11        Q   So you negotiated that, then, right?  You
12   said, okay, they don't want to do it, I'm fine with
13   that.  Is that -- I mean, is that essentially what
14   you're testifying to?
15        A   They accepted my site plans and did not tell
16   me they would not --
17        Q   But, sir -- but, sir, if you're saying now
18   that you asked to have this all be part of your
19   agreement and it's not now, that means they didn't
20   agree to that, right?
21        A   They agreed verbally.
22        Q   But it's not in your contract, right?  And
23   you signed this contract anyway, even though it's not
24   in there.  True?
25        A   I signed the contract and --
```

Page 113

```
 1        A   It is a part of the hundred percent --
 2        Q   Sir, sir --
 3             MR. HARPER:  Your Honor, I think we're
 4        getting beyond the spirit of this follow-up
 5        questioning.  It was follow-up to one jury
 6        question, and now we're, I believe, way outside
 7        the scope.
 8             THE COURT:  I don't think so.
 9   BY MS. LUKEN:
10        Q   All right.  You're now testifying for the
11   first time in this trial that you believe that you
12   asked to have the site plan drawing incorporated into
13   this agreement.
14        A   I had requested to get permit approvals
15   integrated into the agreement.
16        Q   Sir, I'm talking about the site plan itself.
17   Did you ask to have that incorporated into your
18   agreement?
19        A   The site plan is the permit.
20        Q   Sir, did you ask to have the site plan
21   incorporated into your agreement, yes or no?
22             MR. HARPER:  Objection, asked and answered.
23             MS. LUKEN:  It has not been answered, Your
24        Honor.
25             MR. HARPER:  Your Honor, his answer was,
```

Page 115

```
 1        MS. LUKEN:  Thank you.  Thank you.  That's
 2   all I have, Your Honor.  Thank you.
 3        THE COURT:  Mr. Chaudhari, you can have a
 4   seat.  The defense rested, right?
 5        MR. HARPER:  Yes.
 6        THE COURT:  So now that we -- the defense
 7   has rested.  Now I'm going to ask you-all to step
 8   back in the jury room.
 9        (Jury leaves courtroom.)
10        MR. HARPER:  Based on our agreement of
11   providing each other two hours' notice, do you
12   know who your witness is going to be?
13        MS. LUKEN:  You're conflating two things,
14   Counsel.  But two hours' notice for that, if I am
15   going to call anybody in rebuttal, it will
16   probably be Mr. James first.
17        MR. HARPER:  Sorry.  I misunderstood.
18        MS. LUKEN:  I don't mind telling you what I
19   plan on doing.
20        All right.  Plaintiff is moving for a
21   directed verdict on several of the affirmative
22   defenses, as well as -- you know, we don't have
23   counts broken out into complaints, so I think
24   that's not going to be an issue, but I think we
25   can do it.
```

Judge Dawn Caloca-Johnson
November 01, 2018

Page 116

1    There are several matters, Your Honor, for
2  which there is insufficient proof to go to the
3  jury, and we believe we are entitled to a
4  directed verdict in our favor on those matters.
5    I'm going to start with the affirmative
6  defenses of Mr. Chaudhari to the plaintiff's
7  case.  That's probably not the right way to go.
8  I've got to go to the counterclaim.  Sorry about
9  that, Your Honor.  All right.  Your Honor, there
10  is a claim for breach of contract that is not set
11  fourth in separate counts.  However, there are
12  aspects of the plaintiff's complaint for which
13  there has been no competent evidence presented.
14    Specifically, starting with paragraph 34,
15  the allegation is that the size of the bridge
16  built by plaintiff was different than the
17  previously approved and permitted size.  There
18  has been no competent expert testimony with
19  respect to that issue.  There has been no other
20  evidence presented as to it, and we do not
21  believe that that is an issue that can be
22  presented to the jury.
23    You know, maybe -- I kind of just dove into
24  this directed verdict, Your Honor, but the more
25  I'm thinking about it, this may be something that

Judge Dawn Caloca-Johnson
November 01, 2018

Page 117

1  we can address in the jury instructions as well.
2  I'm just going to do this in a holistic way
3  because I think that might be easier.
4    There has not been any proof as to the
5  allegations in paragraph 34.  There has been no
6  competent proof as to the allegations in
7  paragraph 35, that there was a different location
8  than the previously approved and permitted
9  location.  There's been no testimony with respect
10  to those locations and what was permitted or what
11  was permitted either.
12    We also contend that defendant has failed to
13  prove that anything with respect to the notice of
14  violation was anything to do with actions of
15  Nature Bridges.  The testimony on that subject
16  has been that the permit holder was obligated to
17  provide -- to record with the local county the
18  permit, the original permit.
19    The second item that was explained by Mr.
20  Chaudhari was that the notice of violation needed
21  to be in a box on the site, and then there were
22  silt fence issues.  Mr. Chaudhari admitted on
23  cross-examination that the silt fence was not
24  required to be there perpetually or that that was
25  not Nature Bridges' responsibility, or at least

Judge Dawn Caloca-Johnson
November 01, 2018

Page 118

1  that it was not set forth in the contract.  And
2  the two other items, there's been no actual
3  demonstration that those are anything that Nature
4  Bridges was required to do under the terms of the
5  agreement.
6    Paragraph 39, Mr. Chaudhari alleges that
7  Nature Bridges failed to construct a compliant
8  bridge that conformed with all applicable laws,
9  ordinances or rules.  There's been no evidence on
10  that issue.
11    Paragraph 40, Mr. Chaudhari alleges that
12  Nature Bridges failed to construct and complete a
13  bridge that can be utilized for any meaningful,
14  useful or intended purpose.  Not only is there no
15  specific warranty within the contract agreement
16  that would require Nature Bridges to provide
17  something fit for a particular purpose, there is
18  no such warranty language.  Regardless of the
19  fact that there is nothing in the contract that
20  requires it, there has not been evidence,
21  competent evidence demonstrating that, other than
22  Mr. Chaudhari's subjective belief.
23    Paragraph 41, this has had no proof at all.
24  This is Mr. Chaudhari's allegation that plaintiff
25  has failed to construct a bridge which complies

Judge Dawn Caloca-Johnson
November 01, 2018

Page 119

1  with the requirements of the permits.  There has
2  been no competent evidence on that subject.
3    The next paragraph alleges that Nature
4  Bridges' final product had construction defects.
5  There's been no expert testimony that would be
6  sufficient to send that issue to a jury.
7    Paragraph 43 says that plaintiff breached
8  the agreement by failing to complete the project.
9  There has been no testimony of any additional
10  work that is remaining within the scope of work
11  of the contract.  To the extent that, again, Mr.
12  Chaudhari subjectively believes that there's
13  something else, that can't be contradicted by the
14  express terms of the agreement.  And the
15  unrebutted testimony is that those items listed
16  on the scope of work have indeed been completed.
17    Paragraph 44 alleges that Nature Bridges
18  breached the agreement by failing to review,
19  analyze, check and/or observe the requirements of
20  the permit and associated site plan.  That's an
21  argument that would require a predicate showing
22  of a violation of the permit, which there has not
23  been any such showing.
24    Paragraph 45 alleges the plaintiff breached
25  the agreement by failing to increase its

Judge Dawn Caloca-Johnson
November 01, 2018

Page 120

```
 1   workforce and/or workload.  There has been no
 2   testimony that Nature Bridges did anything other
 3   than exactly what it was supposed to do in terms
 4   of workforce and workload.  Mr. Chaudhari was not
 5   on site, and the unrebutted testimony thus far
 6   has shown that there was 600 man-hours utilized
 7   and that that was sufficient.
 8        Paragraph 46, Mr. Chaudhari is alleging that
 9   there has been a failure to honor the warranty of
10   the work.  The warranty of the work speaks to
11   correcting defects.  There's been no expert
12   testimony with respect to any defects in the
13   structure.
14        And paragraph 47, plaintiff breached the
15   agreement by failing to provide sufficiently
16   competent representatives to oversee the project
17   on defendant's property.  The contract calls for
18   competent representation.  Again, Mr. Chaudhari
19   was not on site.  And, again, Mr. Chaudhari did
20   not exercise his right under the agreement to
21   reject a person that he believed to be
22   non-competent, so there has been no proof on that
23   issue.
24        In addition to that, we don't believe that
25   the defendant has proved damages with sufficient
```

---

Judge Dawn Caloca-Johnson
November 01, 2018

Page 121

```
 1   proof to go to the jury.  Specifically, the
 2   $27,500, this is, you know, clearly not something
 3   from defendant's personal knowledge.  He was
 4   allowed to testify as to what his belief was.
 5   That standing all by itself is insufficient to
 6   send this matter to the jury, at least on that
 7   damage point.
 8        There is a claim that there is some
 9   additional permitting of $20,000.  That has not
10   been sufficiently described.  And in fact, the
11   defendant admitted that that permitting is
12   environmental permitting, which is his
13   responsibility under the agreement, which he has
14   also admitted.  So those items together mean that
15   that is not an item of damage that has been
16   proven.
17        The third item, with respect to the as-built
18   plans, there has been no demonstration that
19   there's anything within the contract that
20   requires Nature Bridges to provide an as-built
21   drawing.  Now, I think Mr. Chaudhari's testimony
22   on that has been that that's somehow within the
23   warranty provision.  But, again, that requires a
24   showing of a construction defect.  And there has
25   not been any credible, competent evidence of any
```

---

Judge Dawn Caloca-Johnson
November 01, 2018

Page 122

```
 1   sort of construction defect.
 2        So on these grounds, Your Honor, we contend
 3   that the defendant/counter-plaintiff has failed
 4   to meet its burden of proof with respect to not
 5   only showing a breach, a material breach of a
 6   contract, which is -- we are applying New Jersey
 7   law.  Your Honor read it at the very beginning.
 8   It requires a breach of a material term.  It
 9   requires a showing of damages, and it requires
10   those damages to flow from the breach, the
11   material breach that has been asserted.  That is,
12   you could have a breach, a minor breach, but if
13   it doesn't -- if your damages that you're
14   claiming don't flow from it, they don't count.
15        So under these circumstances, Your Honor, we
16   are moving for a directed verdict.  The
17   counter-plaintiff has failed to demonstrate
18   breach of a material aspect of the agreement, and
19   he has failed to demonstrate damages that flow
20   from that breach.  And for those reasons, we are
21   seeking a directed verdict.
22        THE COURT:  Mr. Harper.
23        MR. HARPER:  Thank you, Your Honor.  I'll
24   try to do this as best I can in the same order.
25   Your Honor, first and foremost, what we have here
```

---

Judge Dawn Caloca-Johnson
November 01, 2018

Page 123

```
 1   is a contract that provides for a bridge to be
 2   built, the term "bridge" throughout.  There's no
 3   definition of a bridge.
 4        And so what is or is not a bridge is the
 5   crux of Mr. Chaudhari's case.  That's the crux of
 6   this case.  We don't have a definition.  We've
 7   got a reasonableness standard.  Those sorts of
 8   things are to be determined by the finder of
 9   fact.
10        I think there's been more than competent,
11   substantial evidence that Mr. Chaudhari is a
12   reasonable person and that his belief as to what
13   a bridge is or is not is fair and reasonable.
14        There's also not a location identified in
15   this contract, but Nature Bridges picked a
16   location.  The compliance, the whether or not Mr.
17   Chaudhari approved that, agreed to it, even knew
18   about it, those are all issues in dispute that
19   are more than appropriate or necessary to be
20   decided by the finder of fact.
21        I appreciate Ms. Luken's comment that maybe
22   some of this can be addressed in jury
23   instructions.  I think she's right.  Number 34,
24   the size of the bridge built is different than
25   previously approved and permitted size.  There
```

Judge Dawn Caloca-Johnson
November 01, 2018

Page 124

1  has been more than enough competent, substantial
2  testimony that there was a -- this is a different
3  size.  There's been more than enough competent,
4  substantial testimony to allow the jury to decide
5  as to the discrepancy in size.
6      Number 36, this is a matter involving
7  irregularities resulting in the notice of
8  violation.  Subject to my prior objection, number
9  one, it mentions a notice of violation.  As we
10 sit here now, there are two.  I think it's worth
11 mentioning.  Mr. Chaudhari has testified that he
12 believed there was some obligation and duty from
13 Nature Bridges to not obtain or purchase the
14 permit but to comply with them and that their job
15 site, they're going to keep it clean.  He
16 believed it's their duty to make sure it's posted
17 so everyone knows what they're doing, put a stake
18 down in the ground.
19     The same goes with the silt fence.  Those
20 were matters that were discussed extensively in
21 Mr. Chaudhari's testimony, which by the way, in
22 day four, much more than 50 percent of all the
23 testimony has been Mr. Chaudhari.
24     THE COURT:  Back to the size of the bridge,
25 I thought the point of the site plan was just to

Judge Dawn Caloca-Johnson
November 01, 2018

Page 126

1  that when he went out there, he said it wouldn't
2  fit this application.
3      MR. HARPER:  That's correct.  And Mr. Green
4  is not an engineer either.  Your Honor, it sounds
5  as though --
6      THE COURT:  I mean, I think we really need
7  to talk about 39 through 47.  I mean, the stuff
8  above that is really just stating what you
9  believe some of the facts are.  But in 39 you
10 say, Plaintiff, a licensed company experienced in
11 the field of construction, breached the agreement
12 by failing to construct a compliant bridge that
13 conformed with all the applicable laws,
14 ordinances and rules.
15     MR. HARPER:  Yes, Your Honor.  That's
16 because Mr. Chaudhari said this is not a bridge.
17 And if you're contracting, which is a legal
18 document, to build something called a bridge,
19 that by law you have to build a bridge as we all
20 see in our brain when we close our eyes.  When we
21 close our eyes and picture a bridge, that is not
22 this.  And so Mr. Chaudhari --
23     THE COURT:  And what law in New Jersey says
24 what a bridge is?
25     MR. HARPER:  I think the same law that --

Judge Dawn Caloca-Johnson
November 01, 2018

Page 125

1  point out that the site plan that LAN Associates
2  drafted has a different size bridge.  I don't
3  believe that Mr. Chaudhari is suggesting or that
4  the complaint suggests, does it, that Nature
5  Bridges breached a contract because they didn't
6  build a 35-foot bridge?
7      MR. HARPER:  No, Your Honor.
8      MS. LUKEN:  That is in the pleadings, Your
9  Honor.
10     THE COURT:  So why is the size of the
11 bridge -- I'm not clear why you mentioned that.
12 Because he contracted for a 12-by-20-foot bridge.
13     MR. HARPER:  I understand, but -- and the
14 contract speaks for itself.  Mr. Chaudhari
15 testified he did not believe that the size of the
16 bridge was compliant.  He also testified that he
17 contracted for this -- a bridge of these
18 dimensions.
19     THE COURT:  Well, I think what he testified
20 to is he thinks that they could have put the
21 12-by-20-foot bridge right where the bridge was
22 that was 35 feet.  But there's no testimony other
23 than his testimony that he thinks that's the case
24 because there was no engineer here to testify
25 that he could, other than what Mr. Green said,

Judge Dawn Caloca-Johnson
November 01, 2018

Page 127

1      THE COURT:  Do you have it?
2      MR. HARPER:  I don't have it, Your Honor.
3      THE COURT:  Then how do you know what New
4  Jersey law says a bridge is?
5      MR. HARPER:  I don't.  I'm just assuming a
6  bridge -- the definition of a bridge is a bridge.
7  Mr. Chaudhari raised this claim.
8      THE COURT:  I mean, I agree with you,
9  Mr. Harper, that the everyday walking-around
10 person would look at that picture and say that's
11 not a bridge, but --
12     MR. HARPER:  And we've got notice of
13 violations, Your Honor, that are out there that
14 have been testified to.  They're not admitted
15 into evidence, but the jury has heard hours of
16 testimony that --
17     THE COURT:  I'm talking about paragraph 39,
18 where you alleged a breach.  When you're dealing
19 with construction issues, though, definitions can
20 be different.
21     MR. HARPER:  Sure.  And we have a contract
22 that's drafted not by Mr. Chaudhari but by Nature
23 Bridges.  And when in doubt, the benefit of that
24 sort of stuff goes to Mr. Chaudhari.
25     MS. LUKEN:  Actually, Your Honor, it

Judge Dawn Caloca-Johnson
November 01, 2018

Page 128

```
 1   doesn't.
 2        MR. HARPER:  I'm sorry.
 3        MS. LUKEN:  Under New Jersey law, it does
 4   not.
 5        MR. HARPER:  Do you have a license in New
 6   Jersey?
 7        MS. LUKEN:  I've researched this issue.
 8        MR. HARPER:  I don't believe any of us are
 9   qualified to talk about New Jersey law.  And
10   that's one of the unique components of this case.
11        Your Honor, with regards to 39, the
12   application of paragraph 39 to the case is that,
13   as it relates to the permits, environmental laws,
14   Mr. Chaudhari testified to --
15        THE COURT:  How is he qualified to testify
16   to that?
17        MR. HARPER:  Well, he's not qualified as an
18   expert, Your Honor, but I believe it's the only
19   testimony that's been presented.  I believe Mr.
20   Chaudhari to be credible, and I believe it to be
21   sufficient for -- I'm sorry?  Did you want to say
22   something to me?
23        THE COURT:  No.
24        MR. HARPER:  Mr. Chaudhari, as you pointed
25   out, is not a lawyer, granted.
```

Judge Dawn Caloca-Johnson
November 01, 2018

Page 130

```
 1   verdict on complete -- it's like -- you agree
 2   with that, don't you?
 3        MR. HARPER:  I agree with the statement of
 4   the law, but I don't agree as it applies here,
 5   Your Honor, because in my experience, when in
 6   doubt, you leave it for the jury to decide.
 7   That's what I was referring to.
 8        In a criminal case in particular, you're
 9   always -- every case relies heavily on hearsay.
10        THE COURT:  But everything Mr. Chaudhari
11   testified about related to his breach of contract
12   is related to information he's gathered up in New
13   Jersey to come to this belief that has not been
14   subject to cross-examination by Ms. Luken.
15        That's my question, is how can you put
16   something like that in front of a jury when it's
17   just simply Mr. Chaudhari's opinion that the
18   bridge isn't compliant?  Nobody has been in here
19   talking about whether it's compliant, other than
20   Nature Bridges.
21        MR. HARPER:  Who testified that it was
22   compliant for Nature Bridges?
23        THE COURT:  I thought Mr. --
24        MR. HARPER:  I don't think anyone --
25        MS. LUKEN:  He said, We completed all of our
```

Judge Dawn Caloca-Johnson
November 01, 2018

Page 129

```
 1        THE COURT:  So doesn't he have to prove up
 2   paragraph 39 with competent, substantial
 3   evidence?  Where's the evidence, other than his
 4   lay opinion that it doesn't comply?
 5        MR. HARPER:  All we have is his lay opinion.
 6        THE COURT:  For all of this, right?
 7        MR. HARPER:  Yes, Your Honor.  Your Honor,
 8   you don't have to have an expert opinion as to
 9   whether or not a contract has been breached.
10        THE COURT:  No.  But if the subject of the
11   breach is -- so if I'm not a doctor, I can come
12   into court and say that -- I can opine on
13   somebody's medical condition and it can go to the
14   jury if I'm not qualified?  Because that's what
15   you're asking to send to the jury, is your
16   client's opinion based on hearsay statements that
17   are not presented to the jury and not -- it's
18   like you do criminal work, right, Mr. Harper?
19        MR. HARPER:  Yes, Your Honor.
20        THE COURT:  You know doggone good and well
21   in a felony trial, if all of the evidence is
22   based on unsubstantiated hearsay, it doesn't go
23   to the jury, right?  Right?
24        MR. HARPER:  Not in my experience.
25        THE COURT:  They can't rely and reach a
```

Judge Dawn Caloca-Johnson
November 01, 2018

Page 131

```
 1   work and satisfied all conditions of the
 2   contract.
 3        MR. HARPER:  Right.  It was never testified
 4   to that it complied.  That was --
 5        MS. LUKEN:  We don't need to go through the
 6   contract and say, Okay, paragraph 1, we did
 7   paragraph 1.  Paragraph 2, we did paragraph 2.
 8   That's not our burden.
 9        THE COURT:  Well, their case is $7,500 that
10   he didn't pay.  He's the one that's brought the
11   claim that the bridge is not compliant.  So it's
12   his burden to prove that the bridge is not
13   compliant.
14        And my question to you is, how do you let it
15   go to the jury when the only evidence is a lay
16   opinion?  He can't even say why it's not
17   compliant, other than to try and get in hearsay
18   statements that it's not compliant.
19        MR. HARPER:  Your Honor, there's been
20   sufficient and substantial testimony that even
21   though there's no location defined in this
22   contract, there was a location approved, provided
23   to Nature Bridges and that Nature Bridges changed
24   the location of that.  That's post-contract.
25   That is admissible.
```

Judge Dawn Caloca-Johnson
November 01, 2018

Page 132

1    And Mr. Chaudhari has testified that there
2  were discussions and there were also -- but there
3  was no consent.  There was no notification, no
4  approval.  There was no modification in writing.
5  That is different.  That is up to the jury to
6  decide.  They have the definition of what the
7  contract is, what it is not.  And I think that's
8  more than appropriate.
9    I also feel like there needs to be, again,
10  just for the record a little bit of leniency as
11  it pertains to this case because of the
12  circumstances surrounding the very unique and
13  bizarre scenario we find ourselves in.
14    THE COURT:  I don't think that's a legal
15  standard the Court can find.  We don't change the
16  rules to -- we don't change the rules that must
17  be applied because one case might be a little
18  unique.  If you can show me a law that says,
19  Court ignore the rules because this case is a
20  little unique.  I'm not aware of one.
21    MR. HARPER:  Well, I suspect Your Honor
22  could see a lot of appellate opinions about that
23  for precedent, but I believe it's completely
24  appropriate in the day-to-day operations of the
25  Court to rule, within reason, when necessary, to

Judge Dawn Caloca-Johnson
November 01, 2018

Page 134

1  affirmative defenses anyway.
2    THE COURT:  Well, let me back up to what you
3  said a few moments ago, that he shouldn't have to
4  hire experts and come into court and spend that
5  kind of money because he's -- I mean, I agree
6  that some of these didn't require experts.
7    He could have taken the deposition of
8  somebody at DEP who did the notice of violation,
9  who issued the permit.  And a deposition to
10  perpetuate testimony could have been taken and he
11  could have presented that evidence to the jury.
12  And he chose not to spend the money to take the
13  deposition.
14    Just like LAN Associates, he could have had
15  you schedule a video deposition of Mr. Wostbrock,
16  P.E., and whoever else he was dealing with over
17  at LAN Associates, scheduled those depositions,
18  had you take their depositions to perpetuate
19  their testimony, and we could have played video
20  depositions of all the people in New Jersey, who
21  could have then said, You know what?  Here's the
22  site plan, and it shows this.
23    And you could have asked a question or
24  Ms. Luken could have asked a question, Could you
25  put a 20-foot bridge in this location?  And he

Judge Dawn Caloca-Johnson
November 01, 2018

Page 133

1  adjust the way they apply the law and the rules.
2  That is the function of the Court.  I think that
3  is appropriate.  Not for changing the rules.
4  But, again, this is all about justice.  That's
5  it.  That is why we're here.
6    I don't see how anybody could have justice
7  with this unless you're going to say -- you would
8  have to have an expert opinion about a permit,
9  about what the law is, about what a construction
10  defect is or not.
11    Mr. Chaudhari is a New Jersey resident who
12  has this property, and he contracted with Nature
13  Bridges, and he's saying that it's not compliant,
14  that it's not usable.  It cannot be accessed.  It
15  cannot be utilized in any meaningful way, that it
16  cannot remain, that it's not what he agreed to,
17  that Nature Bridges knew that, that they know it
18  still.
19    And there's always been an understanding of
20  what a bridge is and what a bridge is not.  And I
21  don't necessarily disagree that perhaps there
22  needs to be some limiting here, but the idea that
23  paragraphs 39 through 42, I don't believe it's
24  appropriate to strike all that.  Moreover, there
25  is a correlation to some of this with his

Judge Dawn Caloca-Johnson
November 01, 2018

Page 135

1  would have been able to present competent,
2  substantial evidence that yes or no.
3    Because I tell you what, if LAN Associates
4  would have testified that you could have put the
5  20-foot bridge in the location that's depicted on
6  the site plan, that would be a problem for the
7  plaintiff.  But you didn't do that.  For whatever
8  reason, the decision was made not to get this
9  testimony tied down.
10    Somebody could have asked LAN Associates,
11  since apparently they know about bridges, as an
12  expert, Is this a bridge?  I mean, the contract
13  that Mr. Chaudhari entered into, is this a
14  bridge?
15    I don't know what they would have said.
16  They could have said, Yeah, that's a bridge.  The
17  industry standard, when you quote bridges is
18  this.  And if you want more than the thing that
19  goes over the ditch or the thing that goes over
20  the water, if you want more than that, you have
21  to pay for it.
22    But we don't know the answers today to those
23  questions because none of those folks' testimony
24  was preserved to present to the jury.  And so
25  we're in a situation where the Court is being

Case: 21-1337   Document: 28   Page: 137   Date Filed: 05/23/2022

Judge Dawn Caloca-Johnson
November 01, 2018

Page 136

1   asked to let these issues go to the jury based on
2   Mr. Chaudhari's testimony alone, which is just
3   completely backed up by hearsay.
4        He's testified, Yeah, they didn't follow the
5   permits.  Well, what part -- we can't even see
6   the permit.  We don't know what the permit
7   required.  Okay.  Let's look at the site plan.
8   We don't have a site plan.  It's his opinion that
9   the bridge could go where the 35-foot bridge is.
10  Common sense tells me, it's an engineering firm,
11  they put a 35-foot bridge there because that's
12  what it took to span the whatever it is the
13  bridge is crossing.  Because why on earth would a
14  qualified engineer do a site plan for a 35-foot
15  bridge when you only need a 10-foot one?  They'd
16  be sued for malpractice.  Right?  Anything else?
17       MR. HARPER:  Yes.  Your Honor, paragraph 43,
18  I think there's more than competent, substantial
19  evidence to suggest the project has not been
20  completed and that there's --
21       THE COURT:  Again, based on the common sense
22  notion of what a bridge is?
23       MR. HARPER:  Your Honor, based on what the
24  contract requires and what the parties testified
25  to.

Case: 21-1337   Document: 28   Page: 139   Date Filed: 05/23/2022

Judge Dawn Caloca-Johnson
November 01, 2018

Page 138

1   agreement by failing to further review, analyze,
2   check or observe the requirements of the permit.
3   Mr. Chaudhari has testified that -- and so did
4   Nature Bridges.  There are permits.  There were
5   site plans.  They were asked for amnesty by
6   Nature Bridges, and we have a problem.  And I
7   think that is sufficient.  I think that it's
8   appropriate for Mr. Chaudhari to raise, and I
9   think him coming in here to testify today is
10  competent and substantial evidence.
11       With regards to paragraph 45, Mr. Chaudhari
12  has claimed Nature Bridges failed to increase its
13  workforce for the workload or failed to implement
14  other reasonable operational changes.  And he
15  testified to that.  Brian Green testified that it
16  was sufficient.
17       Everybody testified that there were
18  problems, that there was a disagreement as to
19  what the project was, what the bridge was going
20  to be, what was agreed to.  Everything, all the
21  testimony has confirmed that.  We have a
22  difference of opinion.
23       And once again, I think there's competent
24  and substantial evidence to suggest paragraph 46.
25  Mr. Chaudhari notified them within a year that

Case: 21-1337   Document: 28   Page: 138   Date Filed: 05/23/2022

Judge Dawn Caloca-Johnson
November 01, 2018

Page 137

1        THE COURT:  So 43 is they failed to complete
2   the project.  So what else?  Failed to complete
3   what part of the project?
4        MR. HARPER:  The bridge and that it could be
5   utilized.
6        THE COURT:  That's what I asked you.  Based
7   on the common sense --
8        MR. HARPER:  Common sense, that's exactly
9   right.  I don't think common sense has to be
10  proven by expert testimony.
11       MS. LUKEN:  Well, none of the damages that
12  are being sought flow from that breach, so it
13  really doesn't matter with respect that
14  paragraph, none of the damages claimed.
15       MR. HARPER:  Your Honor --
16       MS. LUKEN:  They don't.  Your Honor, they
17  say that they have environmental permitting
18  costs, the bridge needs to be removed and there's
19  an as-built.  If indeed the project wasn't
20  completed, the measure of damages would be
21  whatever the cost is to, quote, unquote, complete
22  the additional pieces that Mr. Chaudhari believes
23  are necessary to make this a complete bridge, and
24  there's been no proof of that.
25       MR. HARPER:  The plaintiff breached the

Case: 21-1337   Document: 28   Page: 140   Date Filed: 05/23/2022

Judge Dawn Caloca-Johnson
November 01, 2018

Page 139

1   there was a problem and multiple problems.  The
2   contract provides that they will -- that the work
3   has to be approved by the owner.  It was not
4   approved.  He notified them it was not approved.
5   He told them what the issues were, and here we
6   are.  There's been more than enough, more than
7   sufficient, competent testimony.
8        It's interesting that with regard to 46, I
9   think the argument is -- it's interesting because
10  we also don't have a schedule of work within the
11  contract.  So in theory, without a beginning and
12  an end, the contract is still in effect right
13  now.  I mean, there's no -- there's a signature
14  date, but there's no ending.  And the ending of a
15  contract is based on the approval and
16  satisfaction of the owner.
17       So based on the plaintiff's argument, we're
18  still under that contract.  We're still working
19  within that contract.  I don't see how these
20  things can be so easily dismissed without a true,
21  in my opinion, true, legitimate scope of work, a
22  definition of a bridge, a schedule and -- and the
23  location.
24       I mean, you don't have to have expert
25  testimony presented to establish or try to

Judge Dawn Caloca-Johnson
November 01, 2018

Page 140

1 establish that there was a location that was
2 agreed to obviously, or else there wasn't.  But
3 there was a location.  And that was left
4 open-ended by someone that drafted the contract
5 inartfully.  That's not on Mr. Chaudhari.  That's
6 on the drafter of the contract.
7       And as a result, all of these damages that
8 Mr. Chaudhari is alleging, they all flow from
9 this contract for the work performed by Nature
10 Bridges.  Thank you.
11       MS. LUKEN:  Just briefly, Your Honor.  Under
12 New Jersey law -- and just so we're clear here,
13 choice of law provisions are not unusual.  I
14 mean, this is not some sort of foreign, weird
15 thing.  That actually happens fairly frequently,
16 particularly in the construction industry.  I
17 recently had several cases over in Tallahassee
18 that were applying Texas law, not a big deal.
19       MR. HARPER:  That went to trial?
20       MS. LUKEN:  No.  They were resolved.
21       MR. HARPER:  Right.
22       MS. LUKEN:  But I don't see a difference
23 with respect to the issues that you're raising.
24 Under New Jersey law, there is no presumption in
25 favor of the drafter if the other party had the

Judge Dawn Caloca-Johnson
November 01, 2018

Page 142

1 in here and put "I think" in the front, and you'd
2 have somebody get up on the stand and say, "I
3 think this.  I think that."  Regardless of their
4 qualifications, experience or anything else, that
5 would be sufficient to go to a jury.
6       And it's just not the case for these types
7 of claims.  If you're going to allege that
8 someone violated a permit, it needs to be more
9 than a homeowner saying, "I believe that to be
10 so."
11       So I don't think -- at least insofar as that
12 aspect of the case is concerned, the only breach
13 that would result in having to do additional
14 environmental permitting is a failure to comply
15 with permits, which has not been proven and
16 cannot be proven.
17       The same is true, I think, for the other
18 item of damage sought, $27,500 because the bridge
19 has to be removed.  Again, the only way to make
20 it so that the bridge would have to be removed is
21 if there were a violation of the permit, again,
22 that was the responsibility of my client.  I
23 mean, I don't want to lose sight of that issue as
24 well.
25       Our position obviously is, to the extent

Judge Dawn Caloca-Johnson
November 01, 2018

Page 141

1 opportunity to negotiate.  And I have a case on
2 that.  I don't think this is the time for it,
3 perhaps not.  But I did want to bring that to the
4 Court's attention.
5       And Mr. Chaudhari has admitted unequivocally
6 that he was given the opportunity to negotiate,
7 and it's our position that there is no
8 presumption against the drafter or in favor of
9 the drafter.  There's no presumption whatsoever
10 with respect to this contract.
11       The damages -- and, I mean, I think it would
12 probably be easier here just to work backwards,
13 because Mr. Chaudhari has to prove breach of a
14 material term and that he has damages that flow
15 from that breach.
16       So let's look at the damages that he's
17 seeking in this case.  $20,000 for the
18 environmental permit.  Working backwards, you
19 would have to demonstrate -- in order for a
20 damage such as that to flow from a term, he would
21 have to demonstrate that there was a violation of
22 the permit, period.  And he cannot do that.
23       And I agree with Your Honor.  I mean,
24 essentially, if that issue were permitted to go
25 to a jury, you would just take every allegation

Judge Dawn Caloca-Johnson
November 01, 2018

Page 143

1 Mr. Chaudhari, in his developer hat, decides that
2 he wants to do something different than what his
3 engineer said, he can do that.  But it's his job
4 to get environmental permits.  So if whatever it
5 is we did at his direction needs to have new
6 environmental permits or whatever it needs,
7 that's his job.  So I don't want to lose sight of
8 that piece of this.
9       But regardless, he can't even demonstrate
10 that there is a problem with the bridge relative
11 to the permit because he does not have competent
12 testimony.
13       Going backwards again, with respect to this
14 $850 for an as-built, I don't know quite where
15 that goes.  I guess it would be some sort of
16 breach of that warranty provision.  But, again,
17 that references a construction defect, which he
18 also can't prove.
19       So I guess I would say, Your Honor, that
20 there's a whole lot of stuff in here, but I think
21 just working backwards from the damages, the two
22 issues he needs to show in order to tie with
23 these damages, a failure to comply with the
24 permit, he can't prove.  So if he doesn't have
25 evidence for any of these other items, then he's

Judge Dawn Caloca-Johnson
November 01, 2018

Page 144

1  got no case and directed verdict should be
2  granted.
3      THE COURT:  Do you want to speak to the
4  issue of Mr. Harper's position that common sense
5  tells you a bridge is all parts versus some
6  parts?
7      MS. LUKEN:  Here's what I would say about
8  that, Your Honor.  If there were a contract and
9  the only sentence in that contract said, I, Joe,
10 will build you, Steve, a bridge, I would kind of
11 agree that, you know, bridge, whatever -- I could
12 argue that there's a meeting of the minds because
13 you may have different ideas.
14     Our contract is not that way.  Our contract
15 specifically describes precisely what we're going
16 to be doing.  I know this is a jury tool, but
17 it's an easy place so I know where it is.  We
18 don't say -- the description of the work is not,
19 We're going to build you a bridge.  It's that
20 we're going to build you a free-span bridge
21 12-by-20 feet, steel bridge with concrete deck.
22 And we also say we're going to provide this,
23 we're going to provide bridge engineering,
24 concrete abutments, et cetera.
25     The only testimony in this case is that

Judge Dawn Caloca-Johnson
November 01, 2018

Page 145

1  these things have been fulfilled.  The only
2  testimony from Mr. Chaudhari in response to that
3  is, I don't think it's a bridge.  That's not
4  competent to rebut what the contract actually
5  says or to demonstrate a breach of that contract.
6      Again, in the abstract, if that's all we
7  had, a sentence, I agree to build you a bridge,
8  Mr. Chaudhari's testimony could be sufficient.
9  But in this instance, that's not what's said.
10 And these are terms of art within the
11 construction industry, and they were explained by
12 people in the construction industry who
13 understand them.
14     And I would say that Mr. Chaudhari's mere
15 response that, I don't think it's a bridge,
16 again, that's all -- you know, and that's really
17 the problem with this whole thing, is he wants to
18 do a fraudulent inducement case, but he hasn't
19 pled it.  And that's really why we are where we
20 are in this case.
21     So I guess I would say, no, that is
22 insufficient proof that a bridge is not a bridge.
23 And by the way, there are no damages flowing from
24 that.  So even if he says it's not a bridge and
25 even if the jury found he was right, none of

Judge Dawn Caloca-Johnson
November 01, 2018

Page 146

1  these damages flow from that.
2      If it's not a bridge and you were supposed
3  to give me also the approaches and all the dirt
4  and the driveway and gravel, right, his measure
5  of damages for that would be whatever is missing,
6  right?
7      He's not put on any proof of what those
8  costs might be.  So even if the jury were to find
9  in his favor on this "bridge means something else
10 than what is specifically described," he's got no
11 damages.
12     MR. HARPER:  Your Honor, with regards to
13 that, a couple of things I'd like you to keep in
14 mind.  First of all, Nature Bridges was not
15 licensed in the state of New Jersey, so
16 theoretically -- there's been no testimony to
17 suggest that what they performed required expert
18 level of expertise anyway.
19     We're talking about a -- there's nothing to
20 suggest that -- to put this fundamental expert
21 opinion standard on my client, conversely, there
22 has been testimony to establish that Nature
23 Bridges is not a licensed general contractor,
24 they're not a licensed contractor in the state of
25 New Jersey.

Judge Dawn Caloca-Johnson
November 01, 2018

Page 147

1      THE COURT:  Well, the testimony is they
2  didn't have to be, unrebutted testimony.
3      MR. HARPER:  So, therefore, if you don't
4  have to have a license, then why are we trying to
5  apply an expert opinion standard to what a bridge
6  is or isn't?  You don't have to.  You have a lay
7  person hiring a company to build a bridge.  We're
8  not talking about a licensed expert bridge
9  building company.  We're talking about, in
10 essence, two parties at the same level, basic
11 understanding --
12     THE COURT:  I think you're conflating
13 issues, Mr. Harper.
14     MR. HARPER:  And, Your Honor, something
15 else, before we circle back to her and let her
16 tell us how this thing is going to go, you've got
17 Santiago Garcia --
18     THE COURT:  I'm taking exception to that,
19 Mr. Harper.  That was an inappropriate comment.
20     MR. HARPER:  My apologies, Your Honor.
21 Santiago Garcia testified that they, rather than
22 build a steel bridge free span, that a concrete
23 bridge with precast concrete abutments is what he
24 received.  Mr. Chaudhari testified to that and
25 Santiago Garcia testified to that as well.

Judge Dawn Caloca-Johnson
November 01, 2018

Page 148

1   Now, that goes directly to Mr. Chaudhari's
2   claimed breach that it was not compliant, what
3   was agreed to, that it's not compliant with --
4   that it's a deviation, that it's a modification that
5   he didn't approve and that he's been harmed by
6   that.  I think there is enough for the jury to
7   decide.  That also goes to the warranty.
8       THE COURT:  Which paragraph do you think
9   that applies to?  Not 39, because that was the
10  claim that they failed to comply with applicable
11  laws, ordinances and rules.
12      MR. HARPER:  Right.  I would say --
13      THE COURT:  I don't see --
14      MR. HARPER:  I would say 42.
15      THE COURT:  42?
16      MR. HARPER:  Yes, Your Honor.  I would say
17  43.  I would say 46.  And I'd say -- well, okay.
18  And I would say 39.  For what it's worth, I think
19  that we submit or propose to the Court that the
20  applicable law is in this contract.  We have a
21  legal, binding document that is applicable.
22      THE COURT:  That's not a law, though.  A
23  contract isn't a law.
24      MR. HARPER:  I understand.
25      THE COURT:  Do you want to respond to that

Judge Dawn Caloca-Johnson
November 01, 2018

Page 149

1   argument, Ms. Luken?
2       MS. LUKEN:  Sure, Your Honor.  With respect
3   to paragraph 42, the allegation that plaintiff
4   breached the agreement by failing to satisfy
5   and/or correct any construction defect, again, no
6   demonstrable construction defect at all, no
7   competent testimony of any defect.
8       THE COURT:  Then you construe those back to
9   the plaintiff substituted precast slabs for -- I
10  mean, it's not the same thing as what's in the
11  proposal.
12      MS. LUKEN:  Well, it is, actually, Your
13  Honor.  There is testimony from both Brian Green
14  and April James that there is, in fact, steel in
15  the bridge.  There is a description here, you're
16  going to get a concrete deck, which is exactly
17  what's there, and that's what the testimony is,
18  and concrete abutments, which is what's there.
19  And there's also a steel railing.
20      So, you know, I'm not sure I understand the
21  argument in this regard anyway, because obviously
22  there's no ability on the part of Mr. Chaudhari
23  to opine as to what the difference or differences
24  might be between the concrete deck and concrete
25  abutments that were provided and whatever it is

Judge Dawn Caloca-Johnson
November 01, 2018

Page 150

1   he believes he was entitled to.
2       But, again, I'm going to go back to my
3   favorite here.  That doesn't go to any of his
4   claimed damages.  It doesn't go to any of the
5   damages that he's claiming.  He's claiming he's
6   got to go spend $20,000 on environmental
7   permitting.  That's got nothing to do with the
8   materials in the bridge.
9       THE COURT:  What he's claiming is he's going
10  to have to spend $20,000 to do environmental
11  permitting because he needs to tear this bridge
12  out and start all over, which is going to be a
13  new bridge with new permits.
14      MS. LUKEN:  But there's been no testimony
15  that the reason why he thinks -- the only reason
16  he has said that he thinks the bridge has to be
17  torn out is because he doesn't think it complies
18  with whatever.
19      A different material being used goes to a
20  quality, quantification issue.  I thought I was
21  going to get a steel bridge for $55,000.  You
22  only gave me a concrete bridge for $55,000.  You
23  need to give me back $5,000, or whatever the
24  diminution in value is between the materials that
25  I believe I bargained for and what I got.

Judge Dawn Caloca-Johnson
November 01, 2018

Page 151

1       And so that would be a normal measure of
2   damages.  That's not been proven at all.  That is
3   a distinction between whatever it is -- again, if
4   he had competent testimony about what this
5   description means -- let's say hypothetically you
6   had someone say, you know, there should have been
7   a steel deck.  Right?  You would have somebody
8   come in and say, Well, a steel deck bridge would
9   be more valuable than a concrete bridge, and
10  therefore the difference in the value of these
11  two products is $10,000.  But there's been no
12  testimony on that either.
13      So, I mean, again, I don't think he's
14  demonstrated any of those damages.  A
15  construction defect is when there is -- the item
16  that is being either constructed or built does
17  not perform the way it's supposed to perform.
18  You know, you put in windows.  The windows leak.
19  That's a construction defect.  They were either
20  installed incorrectly, they were manufactured
21  incorrectly.  There's been no demonstration of an
22  incorrect installation.  There's been no
23  demonstration of an incorrect manufacture.
24      You know, again, if there had been some
25  demonstration that what is provided is different,

Judge Dawn Caloca-Johnson
November 01, 2018

Page 152

1   you need to show whatever you believe the
2   diminution in value is between what you bargained
3   for and what you received.  So I don't think that
4   fits at all.
5        The second part of that paragraph, which
6   talks about failing to make corrective measures
7   necessary to satisfy the contract and
8   requirements of law, that's got nothing to do
9   with it.  And, again, all the rest of these I
10  believe are related to the site plan.
11       So -- and, you know, again, any claim that
12  he may have, whether it's in the context of this
13  is not a bridge, it's not supposed to have the sides
14  and a driveway and everything else leading up to
15  my house, whether it's that argument or whether
16  it's that it should have been steel and it should
17  have been cast in place, whatever argument he's
18  trying to make here, that does not equate to, now
19  I have to remove it.
20       And, in fact, that would probably be deemed
21  to be economic waste, because unless there is
22  some sort of impetus to do that, your difference
23  is going to be the difference in value between
24  what you bargained for and what you got.  And
25  there's been no testimony about that at all.

Judge Dawn Caloca-Johnson
November 01, 2018

Page 154

1   was necessary to get those permits either renewed
2   timely or to get some sort of variance from the
3   Department of Environmental Protection.
4        He never heard from Nature Bridges.  We
5   didn't do that.  We don't have that.  We've never
6   done that.  They confirmed that.  It's just --
7   there's a bunch of nothing.  He's still talking
8   to them up until 2016.  But there's back and
9   forth.  There's back and forth.  He finds out
10  after the fact that they never did it, never
11  intended to.
12       THE COURT:  Never did what?
13       MR. HARPER:  They never created as-built
14  plans.  There was never any belief or
15  understanding Nature Bridges said that they were
16  going to get site-specific engineering and design
17  work done, change the location, build a bridge
18  and then do the same thing for the as-built
19  location.
20       All of that has to -- it has to be possessed
21  by Mr. Chaudhari, the permitee, or the holder of
22  the permit, the son of the permitee.  They have
23  to have -- they have to know about it and you
24  have to notify the DEP before any of this is
25  done.

Judge Dawn Caloca-Johnson
November 01, 2018

Page 153

1        MR. HARPER:  Your Honor, I'm grateful for
2   Ms. Luken's experience in Florida construction
3   law.  I wish it were applicable here.  I wish we
4   all had a better, firm grasp on exactly what New
5   Jersey's substantive law, legal standard that
6   we're all here tasked with navigating on.
7        THE COURT:  Well, it's your burden to show
8   me --
9        MR. HARPER:  I'm sure it's his burden to --
10       THE COURT:  It's both of your burdens.
11  You're the one on the counterclaim.  I mean, all
12  of these paragraphs, it's your burden to show
13  that.
14       MR. HARPER:  Your Honor, with regards to
15  something else that was mentioned, failure to
16  perform, failure to -- maybe she was referring to
17  42.  I'm not sure.  But what I did want to
18  mention to you is, it's been Mr. Chaudhari's
19  testimony and a defense as well, these damages,
20  as they relate to the reapplication of permits,
21  they're derived because the original permit
22  expired.
23       The original permits expired, and it is
24  Mr. Chaudhari's belief and testimony because
25  Nature Bridges frustrated the ability to get what

Judge Dawn Caloca-Johnson
November 01, 2018

Page 155

1        At the end of the day, all these notices of
2   violation, they come back around, like this
3   latest one, it's because -- they could all be
4   averted if notice is given that something has
5   changed.  You could have avoided most of this.
6   There are very few instances where someone like
7   DEP is going to say, no --
8        THE COURT:  What did Mr. Chaudhari do to go
9   back to DEP or go back to LAN Associates -- I'm
10  just curious -- and say, Okay, I need you guys to
11  get out to the property, I need you guys to help
12  me put a new permit together where this bridge is
13  so that it can be approved by DEP and I get out
14  from these notices?
15       MR. HARPER:  Well, he hired LAN, Your Honor.
16  Once he learned that there was no --
17       THE COURT:  The $850 for the as-built.
18       MR. HARPER:  Which they did, right.  And by
19  that time --
20       THE COURT:  But my point is, what has he
21  done with that to get that permitted through DEP
22  so you don't have to take it out, you can just
23  fix whatever you need to do?
24       MR. HARPER:  He submitted everything he had
25  done, which is probably the reason -- it's the

Page 156

```
 1    impetus for this new notice of violation.  That's
 2    exactly what happened.
 3        THE COURT:  Well, that's not evidence.
 4        MR. HARPER:  I understand, but that's
 5    exactly what happened.  And he has been advised
 6    from day one that -- and I think that the only
 7    relevance that you mentioned in the second notice
 8    of violation is that it establishes the
 9    frustration of the permit holder.
10        THE COURT:  So, anyway, going back to, you
11    insinuated that New Jersey construction law might
12    be different.  What have you -- do you have any
13    citations or anything, research that --
14        MR. HARPER:  I don't.
15        THE COURT:  So you haven't researched any of
16    that?  Because you insinuated it might be
17    different, because you made a comment about
18    Ms. Luken being so well-versed in construction
19    law.
20        MR. HARPER:  I was simply trying, on the
21    record, to distinguish that this is -- she's
22    citing Florida law.  I'm simply saying New Jersey
23    law applies here.  That's all.  I'm not inferring
24    that I --
25        THE COURT:  I know.  Ms. Luken's case is
```

Page 157

```
 1    relatively simple.
 2        MR. HARPER:  I understand.  But she --
 3        THE COURT:  I mean, it's a contract for
 4    $55,000, and he still owes $7,500.  His side of
 5    the case is much more complicated.  Ms. Luken --
 6    I think it would be -- if you want the Court to
 7    consider anything different than New Jersey
 8    construction law, then it would be incumbent upon
 9    you to tell me about it, because it's not her
10    burden to prove your case.
11        MR. HARPER:  I understand.  I just want to
12    make sure that the wrong law is not relied on.
13        THE COURT:  Well, what wrong law?
14        MR. HARPER:  I don't know, Your Honor.  I
15    don't have any more.  I haven't thoroughly
16    researched New Jersey construction law.  What we
17    have here is case law that's been cited.  Ms. Luken
18    Florida case law.  We've got New Jersey case law,
19    substantive law that's applicable.  I just want
20    it to be clean in the record.  That's all.
21        THE COURT:  Well, the Florida case law that
22    the Court cited was procedural.  I don't believe
23    I've cited any substantive law.  Do you disagree
24    that a rule of procedure is procedural?
25        MR. HARPER:  Federal rule of procedure?
```

Page 158

```
 1    Yes.
 2        THE COURT:  Well, that's the only case law,
 3    I believe, that was cited, was based on Rule
 4    1.120(c), which is a procedural rule.  Okay.  Let
 5    me take a break.
 6        (Recess taken.)
 7        THE COURT:  Let me see if I can get
 8    organized here.  So the first -- and I did look
 9    up New Jersey law.  I don't think that New Jersey
10    law would apply for rules of evidence.  That's
11    procedural rules.  But I wanted to just go there
12    and see what New Jersey law said.
13        And it appears that New Jersey law is
14    similar to Florida law.  So there's two kinds of
15    opinions that can be offered in a case.  There
16    are lay opinions and there are expert opinions.
17    And lay opinions cannot be offered if they are
18    based on inadmissible hearsay statements.  That's
19    New Jersey law.
20        So lay opinion testimony is limited to what
21    is directly perceived by the witness and may not
22    rest on otherwise inadmissible hearsay.  Florida
23    law is similar.  Ehrhardt on Evidence says lay
24    opinion based on hearsay evidence is not
25    admissible.
```

Page 159

```
 1        So, for example, in this case, Mr. Chaudhari
 2    testified that where the bridge is currently
 3    located is in the water.  The abutment is in the
 4    water.  He can observe that fact and testify to
 5    it.  What he can't testify to is that violates
 6    New Jersey DEP law, because he doesn't have any
 7    specialized knowledge, training or skill to
 8    render that opinion, which would be considered an
 9    expert opinion.
10        Somebody from DEP or a lawyer that has that
11    training or that knowledge would have to testify
12    that, yeah, if the abutments are in the water,
13    that violates New Jersey DEP requirements.  And
14    for purposes of our record, the statute regarding
15    lay opinions is 90.701 Florida Statutes.  Experts
16    are allowed to render opinions under section
17    90.702 if the testimony is scientific, technical
18    or other specialized knowledge.  You know, you
19    have experts for all kinds of things.
20        So Mr. Chaudhari has testified that -- well,
21    his opinion that the bridge does not comply with
22    the applicable laws, ordinances and rules is
23    based on information he's gathered from other
24    folks in New Jersey.  So it's based on hearsay,
25    which the opinion is then not admissible.
```

Judge Dawn Caloca-Johnson
November 01, 2018

Page 160

1    So, for example, paragraph 39, the complaint
2    is that the agreement was breached by failing to
3    construct a compliant bridge that conformed with
4    all applicable laws, ordinances and rules.  So
5    directed verdict must be granted on that
6    allegation.
7        Paragraph 40, the plaintiff breached the
8    agreement by failing to construct and/or complete
9    a bridge for the defendant that could be utilized
10   in any meaningful, useful and/or intended
11   purpose.  So if I assume that's true, if we
12   follow the argument that Exhibit 83-B -- I agree,
13   it doesn't look like a bridge at this point.
14   Technically it might be considered a bridge, but
15   it doesn't look like a bridge that can be used in
16   any meaningful, useful or intended purpose.  So
17   let's assume that's true.
18       The problem is no damages have been proven,
19   because the damages would be completing the
20   bridge, taken by itself.  So you can't use the
21   bridge as it looks in 83-B.  So how much is it
22   going to cost to do the approaches to the bridge
23   in such a manner that it would withstand a 20-ton
24   vehicle, per the contract?  There's no evidence
25   that's been presented as to what -- how much that

Judge Dawn Caloca-Johnson
November 01, 2018

Page 162

1    Directed verdict for Nature Bridges.
2        44, plaintiff breached the agreement by
3    failing to thoroughly review, analyze, check
4    and/or observe the requirements of the permit and
5    associated site development plan.  Just to
6    further comment about the permit and associated
7    site development plan, I haven't even seen the
8    permit.  Neither the permit nor the site
9    development plan are in evidence.
10       But, again, the requirements, unless
11   they're -- well, I have a couple of comments.
12   The permit is not in evidence, so the Court can't
13   even determine if there are technical
14   requirements listed on the permit or if they're
15   readily observable by -- a lay person can figure
16   it out.  You know what I'm saying?
17       Like most people know what a silt fence is.
18   So if the permit says you've got to have a silt
19   fence around the project, that's probably a
20   common sense issue.  But if the permit says that
21   you have to have a very technical requirement, it
22   may require an expert to testify.
23       Without knowing what the permit says or the
24   site development plan says, it's impossible to
25   determine whether a lay person could at least

Judge Dawn Caloca-Johnson
November 01, 2018

Page 161

1    would cost.
2        There was evidence, a $27,000 proposal by
3    Nature Bridges for some fill, but that's it.
4    There may -- I think April James testified that
5    didn't include any retaining walls necessary to
6    keep all that fill dirt in place.  So there's no
7    damages proven, so directed verdict must be
8    granted for paragraph 40.
9        Paragraph 41, plaintiff breached the
10   agreement by failing to construct a bridge which
11   complies with the requirements of the permit and
12   site development plan obtained by defendant and
13   provided to the plaintiff.  That is the same
14   issue or legal reasoning in paragraph 39.  I
15   believe the Court must direct a verdict for --
16   well, I guess it would be the counter-defendant,
17   but for Nature Bridges.
18       Same as to paragraph 42, directed verdict
19   for Nature Bridges.  43, plaintiff breached the
20   agreement by failing to complete the project,
21   which is the condition precedent to final
22   payment.  That is similar to paragraph 40,
23   completing the project.  There's no damages
24   proven by the plaintiff as to what would be
25   required money-wise to complete the project.

Judge Dawn Caloca-Johnson
November 01, 2018

Page 163

1    comment on some of those requirements.
2        An example to the site development plan I
3    provided earlier, without looking at it, it calls
4    apparently for a 35-foot bridge, but there's no
5    one here to testify as to is the 35-foot bridge
6    necessary, not necessary.
7        And Mr. Chaudhari has rendered a lay opinion
8    that you could put that 20-foot bridge where a
9    35-foot bridge is placed on the site plan.  But
10   other than his opinion, there's no other
11   evidence, unless somebody has told him that,
12   which would be based on inadmissible hearsay, and
13   he hasn't demonstrated that he has specialized
14   knowledge, training and experience to render that
15   opinion.
16       I know I'm not saying that very artfully,
17   but I'm trying to at least put some of these on
18   the record in case Mr. Chaudhari decides he wants
19   to appeal or Nature Bridges decides they want to
20   appeal.  So directed verdict on 44 for the
21   plaintiff, Nature Bridges.
22       45, the plaintiff breached the agreement by
23   failing to increase its workforce and/or workload
24   and otherwise by failing to implement operational
25   measures reasonably necessary to complete the

Judge Dawn Caloca-Johnson
November 01, 2018

Page 164

```
 1   project within terms, conditions and restrictions
 2   of the relevant permit and site development plan.
 3        The only evidence before the Court that
 4   doesn't connect to thoughts is that Mr. Chaudhari
 5   rendered an opinion that there weren't enough
 6   people on site but didn't and never made the
 7   connection, relate how does that relate to the
 8   permit or the site development plan.  So there's
 9   a directed verdict for Nature Bridges.
10        Plaintiff breached the agreement by failing
11   to honor its warranty of work as provided by the
12   agreement.  Directed verdict for the plaintiff,
13   Nature Bridges.
14        The plaintiff breached the agreement by
15   failing to provide sufficiently competent
16   representatives to oversee the project on the
17   defendant's property.  The contract does not
18   direct any specifically trained person to be on
19   site.  It says a representative.
20        So there's no evidence -- I know, I think,
21   Mr. Chaudhari said it should be an engineer.  The
22   parties didn't -- they said a representative.  So
23   directed verdict for the plaintiff, hasn't proven
24   a requirement for an engineer or that the person
25   on site was not sufficiently competent.
```

Judge Dawn Caloca-Johnson
November 01, 2018

Page 165

```
 1        So I know this has not gone well for
 2   Mr. Chaudhari.  Again, I'm a person who feels
 3   sympathetic to either side of the case, but I
 4   believe my obligation is to not do that and to
 5   follow the law.  And if there's a disagreement,
 6   then the appellate court can tell me if I did
 7   something wrong.
 8        So the sum and substance is, we've had --
 9   had the counterclaim considered against
10   defendant, counter-defendant Nature Bridges.  The
11   Court is directing a verdict as to all breach of
12   contract claims brought by Mr. Chaudhari, which
13   leaves us with the plaintiff's complaint.
14        MS. LUKEN:  And I guess the issue that I'm
15   seeing, Your Honor, is that obviously there's
16   some overlap between the affirmative defenses and
17   the things that Your Honor has ruled upon in the
18   directed verdict.
19        So maybe it would be appropriate for me to
20   renew my motion to strike with respect to those
21   affirmative defenses, and then I can figure out
22   what if anything else I need to put on in
23   rebuttal.  Would that make sense?
24        THE COURT:  Yeah.  I have to pull up the
25   affirmative defenses.  I've got defendant's
```

Judge Dawn Caloca-Johnson
November 01, 2018

Page 166

```
 1   answer.  Let me go to plaintiff's.
 2        MS. LUKEN:  I did a reply and motion to
 3   strike as part of the pleading process.  I guess
 4   what I was going to suggest to you is --
 5        THE COURT:  Well, they look identical to the
 6   -- are they identical, Mr. Harper, to the
 7   counterclaim?
 8        MR. HARPER:  What is that?
 9        MS. LUKEN:  Pretty much.  I think he may
10   have like a failure to mitigate or something like
11   that that would remain.
12        THE COURT:  So number 1, the plaintiff, a
13   licensed company experienced in the field of
14   constructing bridges, has failed to comply with
15   the terms and conditions of the contract by
16   failing to construct a compliant bridge that
17   conforms with all applicable laws, ordinances and
18   rules.  That's paragraph 39 of the counterclaim.
19        MS. LUKEN:  Yes.
20        THE COURT:  So do you want any further
21   argument on that, Mr. Harper, since I've already
22   ruled on the counterclaim directed verdict?
23        MR. HARPER:  Whether or not -- so is the
24   idea that he can't defend himself based on his
25   lay person opinion?  Because presenting a case as
```

Judge Dawn Caloca-Johnson
November 01, 2018

Page 167

```
 1   a plaintiff and defending are two different
 2   things, I think two different standards.
 3        THE COURT:  What would be the different
 4   standard?
 5        MR. HARPER:  How would anyone be able to --
 6   they themselves have to present a case that they
 7   complied with the contract.  They didn't present
 8   any testimony that they are licensed or that
 9   they're experienced or that this meets the
10   definition of a bridge.
11        It is Mr. Chaudhari's opinion that it's not.
12   I don't believe that opinion has been rebutted by
13   anyone.  So I think it's an appropriate
14   affirmative defense, the defense to why not make
15   final payment.
16        THE COURT:  Okay.  Do you have a response?
17        MS. LUKEN:  Just briefly.  I think
18   procedurally the way to do this, since Your Honor
19   has already made a ruling on the legal
20   sufficiency of these defenses as an affirmative
21   claim, is to apply that ruling to these same
22   affirmative defenses.
23        And I move to strike -- and I can list the
24   ones.  But all of the ones that are virtually
25   identical to the paragraphs that are pled in the
```

Judge Dawn Caloca-Johnson
November 01, 2018

Page 168

1  counterclaim, I would move to strike all of those
2  affirmative defenses and have the Court make a
3  ruling on that.
4       And then, once we're done with that process,
5  I can then look and see what if anything is
6  remaining and whether or not I need to put any
7  rebuttal case on at all.  That's kind of my
8  procedural viewpoint.  I don't think the fact
9  that -- you know, the legal sufficiency of the
10  evidence that is presented, it doesn't matter if
11  it's in furtherance of his counterclaim or if
12  it's in furtherance of his defense to payment.  I
13  mean, it's the same standard.  You have a burden
14  of proof on your affirmative defenses.  We came
15  in.  We said we did the work.  We haven't been
16  paid.
17       And despite Mr. Harper's repetition of this
18  issue, we do not have to go through and provide
19  specific testimony or evidence relative to each
20  and every obligation in the complaint or in the
21  contract.  We can demonstrate the existence of
22  the contract, the material breach by the
23  defendant, which we have, and the proof of the
24  damages.
25       To the extent he's got defenses, he has the

Judge Dawn Caloca-Johnson
November 01, 2018

Page 170

1       MR. HARPER:  Because of all the reasons
2  raised in the answer and affirmative defenses
3  that contributed to this problem.  It's a breach
4  of -- they breached their warranty.
5       He, during their engagement, expressed
6  dissatisfaction, problems.  They didn't do
7  anything.  They refused to remedy any of the
8  deficiencies.  They've acknowledged that there's
9  differences, but they're saying, We didn't have
10  to do it.  We say they did.  Plaintiff failed to
11  cure.
12       And default, that unless or until --
13  especially in light of the notice of violation
14  that we know, while inadmissible, exists, we also
15  know that there is not a full and complete
16  satisfaction of the plaintiff's work that has
17  been remedied, that there is a contingency now on
18  this piece of property that Mr. Chaudhari has to
19  go back to.  And he has withheld that final
20  payment and justifiably so.
21       The contract requires the job has to be
22  completed and to the owner's satisfaction.
23  That's what the contract says.  And it says he
24  has to approve all changes.  None of those things
25  happened.  They're saying, because we don't --

Judge Dawn Caloca-Johnson
November 01, 2018

Page 169

1  burden of proof.  So, you know, these are two
2  sides of the same coin.  I mean, I think the only
3  thing in the defenses that is somewhat different
4  is, he does have some additional defenses in
5  here, such as mitigation, waiver.  I mean, I'm
6  not so sure that those are legally sufficient at
7  this point either, but I haven't individually
8  evaluated each one of them.
9       But, I mean, I don't think it makes a major
10  distinction, just in terms of the sufficiency of
11  the evidence, as to whether it's a counterclaim
12  or a defense.  He still has the burden of proof.
13       MR. HARPER:  Your Honor, they've got to
14  prove first there's a material breach by
15  Mr. Chaudhari.  If they have proven that, then
16  the burden is on me.
17       THE COURT:  So do you dispute that the
18  $7,500 is not a material breach of the contract?
19       MR. HARPER:  I dispute that that is a
20  material breach.  I think --
21       THE COURT:  You're disputing -- you're
22  saying it's not --
23       MR. HARPER:  It's not a material breach,
24  correct.
25       THE COURT:  Why is that?

Judge Dawn Caloca-Johnson
November 01, 2018

Page 171

1  that's insignificant.  What's significant is that
2  we did a 20-by-12-foot structure, so pay up.
3       And that's just not a consistent application
4  of the agreement or the contract.
5       MS. LUKEN:  Your Honor, I'm not in any way
6  suggesting that Mr. Harper can't make an argument
7  to the jury about why his client shouldn't have
8  to pay.  Again, if you want to hang your hat on
9  that owner must approve -- you know, all work is
10  subject to approval by owner, certainly
11  Mr. Chaudhari's counsel could argue, you know,
12  you read the contract, you saw that it has to be
13  approved by the owner, it's not approved by the
14  owner.
15       I'm not suggesting that he doesn't get the
16  opportunity to do that.  All I'm saying is some
17  of these affirmative defenses should be stricken,
18  and I would suggest that any argument on those
19  topics would be inappropriate if they're not part
20  of the legal pleadings in the case.
21       MR. HARPER:  Maybe it would be best if we go
22  through and identify which ones she's talking
23  about.  I'm not going to strike affirmative
24  defenses.
25       THE COURT:  I understand.  The first

Judge Dawn Caloca-Johnson
November 01, 2018

Page 172

1  affirmative defense, that's identical to
2  paragraph 39.
3      MS. LUKEN:  Yes.  I would move to strike it
4  for the same reasons that Your Honor articulated
5  in the directed verdict finding.
6      THE COURT:  Mr. Harper?
7      MR. HARPER:  Your Honor, I'd love to get
8  this case to the jury today, notwithstanding my
9  prior objection and argument.
10     THE COURT:  Okay.
11     MR. HARPER:  I'm not going to add more labor
12 to this.
13     THE COURT:  Okay.  So the first affirmative
14 defense is stricken.  Second affirmative defense,
15 plaintiff has failed to construct or complete a
16 bridge that the defendant can utilize in any
17 meaningful, useful or intended purpose.  That's
18 identical to paragraph 40, so that affirmative
19 defense is stricken.
20     Third, plaintiff has failed to construct a
21 bridge which complies with the requirements of
22 the permit -- specifically, the plaintiff
23 deviated by constructing a bridge which was too
24 small and located in a flood zone approximately
25 60 feet from the preapproved permitted location

Judge Dawn Caloca-Johnson
November 01, 2018

Page 174

1  talk location.  Is that --
2      MR. HARPER:  That's correct.
3      THE COURT:  Fifth affirmative defense.
4      MS. LUKEN:  This is a construction defect
5  one, Your Honor.  I think it's the same as Your
6  Honor's ruling with respect to paragraph 42 of
7  the complaint.
8      THE COURT:  Mr. Harper, do you want to say
9  anything about that?
10     MR. HARPER:  No, Your Honor.
11     THE COURT:  That one is stricken.  Six.
12     MS. LUKEN:  I don't know what this is, but I
13 mean, failure to --
14     THE COURT:  What exhaustible remedies,
15 Mr. Harper?  Like what?
16     MR. HARPER:  Contacting New Jersey DEP,
17 assisting Mr. Chaudhari on any level with
18 as-built site plans so that he can submit and
19 redo the applications as the contract provides.
20 There's a provision about mediation that was
21 not -- not presuit demanded.
22     THE COURT:  Is there a requirement for
23 presuit mediation?
24     MR. HARPER:  I don't know that it's a
25 requirement.  I think the language is "may."

Judge Dawn Caloca-Johnson
November 01, 2018

Page 173

1  on defendant's property.  So that's a little more
2  detailed than --
3      MS. LUKEN:  I think he could -- I mean, in
4  fairness, Your Honor, I think he could argue, as
5  a defense to payment, the bridge isn't where I
6  want it to be.  The only concern that I have,
7  Your Honor, is -- well, it doesn't matter, Your
8  Honor.  That's fine, except obviously we wouldn't
9  be talking about preapproved permitted locations
10 and arguments about violations of the permit or
11 anything like that.
12     THE COURT:  Fourth affirmative defense.
13     MS. LUKEN:  I don't think this is really a
14 defense, Your Honor.  It's not a legal defense.
15 I'm assuming the term "specs" -- I've asked this
16 in interrogatories.  I'm assuming he means the
17 site development plan.  It's our position that
18 that's not incorporated into the contract and
19 therefore it's not governing.  But I don't really
20 think this is a legal defense anyway.
21     MR. HARPER:  It's our position it is
22 incorporated because it would have to be, it
23 would have to be in order to determine --
24     THE COURT:  So, really, the fourth
25 affirmative defense is related -- you're going to

Judge Dawn Caloca-Johnson
November 01, 2018

Page 175

1      MS. LUKEN:  We wrote a demand letter two and
2  a half months before filing suit.
3      MR. HARPER:  A demand letter for payment and
4  a notice of intent to sue, not a request or
5  notice to mediate.
6      THE COURT:  I'm fine with leaving the sixth
7  affirmative defense.  I think it's a legal
8  argument based on the contract.  Seventh
9  affirmative defense?
10     MS. LUKEN:  Yes, Your Honor.  Again, this is
11 the condition precedent.  He claims that we
12 failed to complete the project.  You know, he can
13 probably make that argument, Your Honor, as an
14 affirmative defense.  He doesn't need damages for
15 an affirmative defense.
16     THE COURT:  Sure.  So seven stays.  Eight.
17     MS. LUKEN:  I don't think this is an
18 appropriate legal defense for this case.  It's a
19 breach of contract case.  I don't think issues of
20 contributory negligence are necessarily
21 applicable.  Again, this seems more like argument
22 than a legal defense in any event.
23     THE COURT:  What are you getting at with the
24 eighth affirmative defense, Mr. Harper?
25     MR. HARPER:  I think it's the frustration

Judge Dawn Caloca-Johnson
November 01, 2018

Page 176

1  of -- it goes to damages, contributed to the
2  amount of damages.
3      THE COURT:  To the damages claimed by
4  Mr. Chaudhari or $7,500?
5      MR. HARPER:  Their damages.
6      THE COURT:  The eighth affirmative defense
7  can stay.  Nine.
8      MS. LUKEN:  Your Honor, if he wants to argue
9  that he shouldn't have to pay because there
10 weren't enough people there or something, I mean,
11 I guess that's -- I think it's a more factual
12 argument.
13     THE COURT:  Ten?
14     MS. LUKEN:  I mean, I guess I would move to
15 strike this as not being a legal defense really.
16     THE COURT:  What does your tenth affirmative
17 defense go to, Mr. Harper?  There may be a
18 similar argument that you're going to
19 make related to that.
20     MR. HARPER:  I'm sorry, Your Honor?
21     THE COURT:  What's the tenth affirmative
22 defense going to be about?
23     MR. HARPER:  That any work or a change was
24 not approved by Mr. Chaudhari before it was done.
25 That's in section 14 of the contract.  It must be

Judge Dawn Caloca-Johnson
November 01, 2018

Page 178

1  cause of action type of thing.  I mean, again, I
2  suppose we could keep that there, but I don't
3  want a jury instruction on that.
4      THE COURT:  Well, is it possible to finish
5  this up, and we can decide what affirmative
6  defenses are going to be on the jury form, the
7  verdict form?
8      MS. LUKEN:  That may be the best way to do
9  it.
10     THE COURT:  Instead of trying to do that
11 now, can we do that, Mr. Harper?
12     MS. LUKEN:  The only concern that I have is
13 I wanted to make sure that I did enough for
14 rebuttal.  I didn't want to miss something here.
15 As long as -- can I just have a quick moment to
16 confer?
17     THE COURT:  Sure.
18     (Discussion off the record.)
19     MS. LUKEN:  We're fine doing it that way,
20 and just clean these up in the jury instructions,
21 once we get there.  I don't really have a
22 rebuttal case anymore, do I?  Because the
23 counterclaim is gone.  But we treated this
24 altogether, so I still think I get a rebuttal to
25 his affirmative defenses.  So I'm going to put

Judge Dawn Caloca-Johnson
November 01, 2018

Page 177

1  approved and to the owner's satisfaction.
2      THE COURT:  Okay.  Ten can stay.  11?
3      MS. LUKEN:  I don't mind this staying here.
4  I think my only concern is that, you know, to the
5  extent that many of these are just factual
6  arguments, I would prefer them not to be a jury
7  instruction.  If it's a real affirmative defense,
8  you failed to meet a condition precedent, we can
9  have an instruction on it.  But I don't think we
10 should be having instructions on things like,
11 your work was deficient, or whatever these are
12 intended to do.
13     So with that caveat, I mean, number 12,
14 plaintiff breached the parties' contract by
15 failing to properly obtain permits, inspections
16 or certificates, I'm not sure if that's a defense
17 to payment.
18     I mean, these are all allegations of breach.
19 Again, I don't think these are legal defenses.
20 As long as we don't have jury instructions on
21 them, I don't see the need to go through each one
22 of these factually.  Let me see if there's any
23 that do actually qualify.
24     Well, the 17th affirmative defense I think
25 can just be -- that's just failure to state a

Judge Dawn Caloca-Johnson
November 01, 2018

Page 179

1  that on.
2      I have two things I was going to read into
3  the record.  You're not going to be happy with
4  me.  I wanted to call Brian Green just very
5  briefly to address the discussion about the
6  staking, and then Mr. James, and we will be done.
7  And I think that if cross can get done, we should
8  be done by 5:00.  I can work on jury instructions
9  this evening.  We could meet early.
10     THE COURT:  The question is going to be
11 whether or not the jury can come back tomorrow,
12 because we didn't tell them to plan on Friday.
13     MS. LUKEN:  And traffic court, right?
14     THE COURT:  I've resolved the traffic court
15 issue.
16     MR. HARPER:  Your Honor, I need a few
17 minutes to make a couple of phone calls as well
18 to clear up conflicts.  From my end, I
19 anticipated I did what I thought I needed to do
20 to be done today.  I did not anticipate running
21 into tomorrow.
22     THE COURT:  It's quarter to 4:00.  Even if
23 we finished witnesses by 5:00, we still have to
24 do charging conference, closing arguments and
25 give the case to the jury.  So I don't think --

Judge Dawn Caloca-Johnson
November 01, 2018

Page 180

```
 1  knowing how charging conferences go, I can't
 2  imagine getting this case to the jury until 7:00
 3  tonight, realistically.
 4       We may not have a choice, though, because we
 5  may find out one of these jurors can't come
 6  tomorrow, period.  I think they'd have to have a
 7  good reason.  What I typically do when we run
 8  into these situations is just tell them like it
 9  is and that we need them to come back tomorrow.
10       MS. LUKEN:  Well, maybe we can do this, Your
11  Honor.  I will be as quick as I can do it.  If
12  one of the jurors says they've got a problem or
13  concern, we've greatly narrowed the issues in
14  this matter.  We had a fairly decent set of
15  instructions when we started that two weeks ago.
16  I don't think there's a whole lot that we're
17  going to need to add to it.  We may have some
18  printing issues because I don't have a printer.
19       THE COURT:  I have one.  You and me and
20  Mr. Harper can print them.
21       MS. LUKEN:  Okay.
22       THE COURT:  Why don't we start with -- do
23  you want to go ahead and try to get the witnesses
24  done, see where we are, Mr. Harper?
25       MR. HARPER:  I know where this is going.  I
```

Judge Dawn Caloca-Johnson
November 01, 2018

Page 181

```
 1  would request to be able -- to allow maybe five
 2  minutes so I can clear up some conflicts, because
 3  I'm not aware of anything that's happened in this
 4  case quickly.
 5       THE COURT:  Sure.  You can have five
 6  minutes.
 7       (Recess taken.)
 8       THE COURT:  We've taken up a lot of time
 9  since -- I don't know what time we sent the jury
10  out, but it was a long, long time ago.  Is there
11  anything that you-all would like me to say to the
12  jury, or just tell them that you've got a couple
13  of witnesses that will be short?
14       MS. LUKEN:  I think that's fine.
15       MR. HARPER:  That's okay.
16       MS. LUKEN:  I guess you don't need to
17  disclose the ruling on that, at least right this
18  minute.
19       THE COURT:  Are you okay with that,
20  Mr. Harper, just continue the case and at some
21  point --
22       MR. HARPER:  I think it's worth talking
23  about tomorrow with them before going much
24  further, because if a juror has a problem with
25  tomorrow, it would be better to know that sooner
```

Judge Dawn Caloca-Johnson
November 01, 2018

Page 182

```
 1  than later.
 2       MS. LUKEN:  That's fine.  My intention is I
 3  will be done by 5:00, as long as whatever cross
 4  is commensurate with whatever I put on in direct.
 5       THE COURT:  Why don't we do the testimony
 6  first, because I don't want them thinking about
 7  that and not paying attention to y'all's
 8  questions.  Because right now it's maybe, right?
 9  So some is going to depend on when we can get
10  done.  We might be able to get -- I don't know
11  how long closings will take.  If we could get the
12  case done tonight, that would probably be more
13  preferable for Mr. Harper at least, maybe for the
14  jury.  Let's do the rebuttal, and then we'll see
15  where we are.
16       (Jury enters the courtroom.)
17       THE COURT:  Okay.  I know you-all have been
18  waiting for quite some time.  But at the close of
19  sides of the cases, there's sometimes a lot of
20  work that needs to be done outside the presence
21  of the jury.  So at this time, the
22  defendant/counter-plaintiff has presented his
23  case, has rested, and the plaintiff, Nature
24  Bridges, has a few short -- I am told short
25  rebuttal witnesses to the defense's presentation.
```

Judge Dawn Caloca-Johnson
November 01, 2018

Page 183

```
 1       So who would you like to proceed with first?
 2       MS. LUKEN:  Yes, Your Honor.  I'd like to
 3  recall Mr. Green for a brief couple of questions.
 4       THE CLERK:  Mr. Green, if you'll raise your
 5  right hand.  Do you solemnly swear the evidence
 6  you shall give on this issue shall be the truth,
 7  the whole truth and nothing but the truth, so
 8  help you God?
 9       THE WITNESS:  Yes, I do.
10  WHEREUPON,
11                 BRIAN GREEN
12  was called as a witness and, having been first duly
13  sworn, was examined and testified as follows:
14                 DIRECT EXAMINATION
15  BY MS. LUKEN:
16       Q    Mr. Green, welcome back.  I'm going to get
17  you out of here fairly quickly.  On your initial
18  testimony earlier, you described going up to the site
19  up in New Jersey on July 1st, 2014.  Do you recall
20  that?
21       A    Yes, ma'am.
22       Q    Okay.  And I think you also testified that
23  you spoke with Mr. Chaudhari on the phone to let him
24  know that you were coming?
25       A    Yes, ma'am.
```

Judge Dawn Caloca-Johnson
November 01, 2018

Page 184

1    Q    Now, in your experience, working in

2  construction, what is this kind of site visit?  Does

3  this have some importance in the overall construction

4  project that's being undertaken?

5    A    Yes, ma'am.  This is the first -- well, it

6  might not be the first, but this site visit in

7  particular was the first site visit to the property.

8  It's where we lay out the bridge and make sure we have

9  access and get everything ready for the crew that's

10  going to come in soon and start working on the bridge.

11    Q    Are these typical in construction projects,

12  to have these types of --

13    A    Yes, yes.

14    Q    And in these situations, are there sometimes

15  more than just the owner and whoever is going to be

16  doing the installation?

17    A    That just depends on the size of the

18  project.  Every project is a little different.

19    Q    In a larger project, for example, would it

20  be uncommon to have a design professional perhaps

21  coming with the owner, the owner's designer?

22    A    No.  Typically, it's just -- in my work,

23  typically, it's just me and the contractor, the owner,

24  or one representative, maybe two.

25    Q    And I guess my question was also, and you

---

Judge Dawn Caloca-Johnson
November 01, 2018

Page 185

1  distinctly remember speaking with Mr. Chaudhari after

2  you staked out the location?

3    A    Yes, that's correct.

4    Q    And let me ask you this.  When you were at

5  the site, did you look at -- well, let me back up for

6  a second.  What was the situation with the location --

7  one more time.

8    There was a proposed location set forth in

9  the site plan for a larger bridge.  Do you recall

10  that?

11    A    There was a site plan for a different --

12  well, it was a significantly bigger bridge, and the

13  approaches, everything about that was a totally

14  different design than what we were asked to --

15  proposing, totally different from what we contracted.

16    Q    Would it have been possible for you to stake

17  out the location for the 20-foot bridge that

18  Mr. Chaudhari had ordered at the location for the

19  35-foot bridge in the site plan?

20    A    It would have been impossible.

21    Q    And why is that?

22    A    Well, number one, the reason that they -- in

23  that one plan they had a 35-foot bridge, because it

24  had to be 35-foot long to span that area.  So if you

25  go back to the emails, what we were requested to give

---

Judge Dawn Caloca-Johnson
November 01, 2018

Page 186

1  pricing for was a 20-foot bridge.

2    And in that email, the owner had gone out

3  and measured the spot, which we had discussed before

4  in our earlier email.  And his measurement was 12-foot

5  wide on the creek, where 20-foot would have to come on

6  each side, per the picture that we talked about the

7  other day.  There was only one spot to put that

8  bridge.

9    Q    Is that where you put it?

10    A    That's where we put it.  It's not -- you

11  can't put a 20-footer where a 35-footer goes.

12    Q    And are you also saying then that the

13  location for the 35-foot bridge, the stream was wider

14  than the location where the bridge was actually

15  placed?

16    A    Yes.  It's just -- as you can imagine, a

17  35-foot bridge goes on a lot wider spot than a 20-foot

18  bridge.  That's the reason we reduced the budget,

19  reduced the size of the bridge, put it where -- as we

20  put in there.  He requested it be where the 12-foot

21  section was at on the creek, and that's where it would

22  fit.  So that's what -- you can't put it any other

23  place.

24    MS. LUKEN:  Your witness.

25    MR. HARPER:  No questions.

---

Judge Dawn Caloca-Johnson
November 01, 2018

Page 187

1    THE COURT:  Thank you, Mr. Green.

2    MS. LUKEN:  And the plaintiff would like to

3  call J.D. James.

4    THE CLERK:  Would you raise your right hand?

5  Do you solemnly swear the evidence you shall give

6  on this issue shall be the truth, the whole truth

7  and nothing but the truth, so help you God?

8    THE WITNESS:  I do.

9  WHEREUPON,

10    J.D. JAMES

11  was called as a witness and, having been first duly

12  sworn, was examined and testified as follows:

13    DIRECT EXAMINATION

14  BY MS. LUKEN:

15    Q    Mr. James, when you go last, you get the

16  quickest questions, so we're going to get you through

17  here.

18    Can you state your full name for the record

19  and maybe just tell the jury a little bit about your

20  experiences and your involvement in the construction

21  industry?

22    A    My name is J.D. James.  I live here in

23  Monticello.  I've been in the construction business

24  since I was 15 years old.  I started off as a block

25  mason, and I've had a contracting business in South

Judge Dawn Caloca-Johnson
November 01, 2018

Page 188

1  Florida and then moved up here to Monticello, and we
2  started building homes, Brackenchase Builders.  And
3  then we branched off into commercial millwork
4  installation and bridge building, about 15 years ago
5  started building bridges.

6      Q   So you've built a lot of bridges?

7      A   Yes, ma'am, we've built a lot of bridges.

8      Q   I think you've been listening during the
9  testimony here, and so I don't want to belabor this a
10 whole lot.  This contract calls for a specific item.
11 It's got a free-span bridge, 12 by 20 feet, steel
12 bridge with concrete deck, and we've also got concrete
13 abutments.  I believe those are the major work
14 activities that are identified there.

15         Is the description on Nature Bridges' scope
16 of work consistent with the photograph that we've got
17 there, Plaintiff's Exhibit 83-B?

18     A   Yes, it is.

19     Q   Now, I know that the defendant has provided
20 some testimony saying that he doesn't think that this
21 is a bridge.  And I guess, can you take the
22 opportunity to maybe just explain the pieces of this
23 and why this is indeed a bridge?

24     A   Well, the first and most important part is
25 that it bridges the stream.  So you can't put a

Judge Dawn Caloca-Johnson
November 01, 2018

Page 190

1  stream bed.  Now, the reason that the bridge is at the
2  height it's at, so during flood stage, if there was an
3  enormous amount of rain, that bridge will withstand
4  the flood.  That means, as that water would rise, it
5  wouldn't encapsulate the top of the deck.  In normal
6  stream flow, it is not encroaching on the normal
7  stream flow of the waterway.

8      Q   And I mean, this height, this is how it's
9  supposed to be, right?

10     A   Yes, ma'am.  That is the height it needs to
11 be.  You can see in the foreground the roadway.

12     Q   Right up here?

13     A   Right there.  They're approximately the same
14 height.  So the connection would be from the roadway
15 to the bridge.

16     Q   Very good.  Now, where is the steel in this
17 bridge?

18     A   It's encased in the concrete.

19     Q   And the purpose of that in a bridge of this
20 type?

21     A   The purpose for the steel is to add
22 structure strength to the concrete.  The concrete
23 alone will not withstand the span.  So that is a free
24 span.  So there's no intermediate structure to the
25 stream.  So that has a steel cage inside of it.  And

Judge Dawn Caloca-Johnson
November 01, 2018

Page 189

1  driveway across the stream.  It bridges one side of
2  the stream to the other.  Just like if you were going
3  on the interstate and you were driving up to the
4  overpass, you can see where it bridges the road you're
5  driving over, and the bridge goes over the road, and
6  the roadway connects to the bridge.

7          So the main component of a bridge is that it
8  bridges one side to the other.  Whether it's a stream,
9  a roadway, a ditch, it bridges something.  And that
10 bridges that stream.

11     Q   And so -- and just for clarity, too, you
12 know, this is a piece of a potential driveway, going
13 all the way up, and the further development of this
14 site, correct?

15     A   Yes.  That is the bridge component of a
16 driveway.

17     Q   Now, I wanted to clarify just one other --
18 well, let's do the picture.  Mr. Chaudhari has
19 testified that he believes that this bridge is somehow
20 encroaching on the stream in this property.  In this
21 photograph that we've got here, is there an
22 encroachment into the stream by this bridge?

23     A   No, ma'am.  As you can see, the inside wall,
24 those abutments are approximately 4 feet back from the
25 stream bed.  So the abutments do not encroach on the

Judge Dawn Caloca-Johnson
November 01, 2018

Page 191

1  that together, along with the concrete, encompasses
2  the steel and makes the structure be able to span and
3  hold the weight that's required for that bridge.

4      Q   Very good.  If Mr. Chaudhari had wanted a
5  12-by-35-foot bridge, would Nature Bridges have been
6  happy to quote that to him?

7      A   Yes.  We would have been happy to quote any
8  size bridge he wanted.

9      Q   And without getting into too much detail, I
10 mean, if the bridge is larger, that's a larger
11 contract price typically, correct?

12     A   Yes.  And it would cover our yearly
13 overhead.  If it was larger, there would be more
14 overhead.  But we would have been happy to price a
15 35-foot bridge for him.

16     Q   So there would be no incentive for Nature
17 Bridges to want to build people smaller bridges or
18 what have you.  I mean, it's what the person needs,
19 but if they want something larger, you're happy to do
20 it.  Is that fair?

21     A   Yes.  If he had called and asked for a
22 35-foot bridge, we would have built him a 35-foot
23 bridge.  Our main responsibility is to give the
24 customer what he asks for.

25     Q   Now, kind of going back to this "what is a

Judge Dawn Caloca-Johnson
November 01, 2018

Page 192

1    bridge" concept here, after being involved in this
2    case for as long as you have been, have you formed a
3    view of whether or not the defendant knows what a
4    bridge is?
5        A    In the beginning, I thought he knew what a
6    bridge was.  But during testimony today, when asked if
7    that was a bridge, he said no.  I assume that he
8    doesn't know what a bridge is.
9        Q    Okay.  Was there a time when you had
10   communications with the defendant that made it pretty
11   clear to you that he did, in fact, know what a bridge
12   was?
13       A    Yeah.  He had sent me an email.
14       Q    Let me show that to you, Mr. James.  This is
15   Plaintiff's Exhibit 53.  And what is Plaintiff's
16   Exhibit 53, Mr. James?
17       A    The owner is asking me if I would like to
18   purchase the property from him.
19       Q    And does he provide sort of an explanation,
20   a sales pitch to some degree in this email?
21       A    Yes.  He says that there were some
22   improvements done to the property that include a steel
23   bridge constructed by the company at a cost of $40,000
24   and that there was an additional 25 to $35,000 of
25   local engineering.

Judge Dawn Caloca-Johnson
November 01, 2018

Page 193

1        MS. LUKEN:  And I'd like to move this into
2    evidence at this time, Your Honor, Plaintiff's
3    53.
4        THE COURT:  Any objection, Mr. Harper?
5        MR. HARPER:  No, Your Honor.
6        THE COURT:  53 is admitted.
7        (Plaintiff's Exhibit No. 53 was admitted
8    into evidence.)
9    BY MS. LUKEN:
10       Q    So this will go back with the jury.  But, I
11   mean, does the defendant specifically describe this as
12   a steel bridge, referring to this here?
13       A    Yes.  He specifically calls it improvements,
14   including the steel bridge constructed by the company.
15       Q    And what is the date on this email?
16       A    The date is May 3rd, 2015.
17       MS. LUKEN:  So this was approximately nine
18   months after Nature Bridges completed its work?
19       A    Yes.  That's approximately nine months after
20   we completed it.
21       MS. LUKEN:  Your Honor, I have no further
22   questions.  Your witness.
23              CROSS-EXAMINATION
24   BY MR. HARPER:
25       Q    How are you, sir?

Judge Dawn Caloca-Johnson
November 01, 2018

Page 194

1        A    Good.
2        Q    Mr. James, how many conversations did you
3    have with Mr. Chaudhari?
4        A    I probably can't remember one.
5        Q    Zero, in other words?  Zero that you can
6    recall?
7        A    Zero verbal conversations, yes, sir.
8        Q    Now, I know that the company name is J.D.
9    James, Inc., and then you have a d/b/a as Nature
10   Bridges; is that correct?
11       A    That's correct.
12       Q    Are you the owner of the company?
13       A    I am part owner, yes, sir.
14       Q    Along with your wife, Mrs. April James?
15       A    My wife is April James.
16       Q    Do you own the company along with your wife?
17       A    I do.
18       Q    Are you a licensed general contractor?
19       A    No, not anymore.  I let my license expire.
20       Q    Are you an engineer?
21       A    I am not.
22       Q    Are you a surveyor?
23       A    I am not.
24       Q    Did you visit this property?
25       A    I have not.

Judge Dawn Caloca-Johnson
November 01, 2018

Page 195

1        Q    Did you send Brian Green instead to visit
2    the property?
3        A    Through the course of his duties for this,
4    as project manager, he visited the property, yes.
5        Q    And is it your understanding that Mr. Green
6    staked the location where that structure was going to
7    be built?
8        A    That's what Mr. Green testified to, yes,
9    sir.
10       Q    But did you know that prior to his
11   testimony?
12       A    That would be the standard operating
13   procedure, would be to stake the location of the
14   bridge prior to the crew arriving to construct it.
15       Q    I'm asking do you know.  Did you know prior
16   to this trial that he was the one that staked out the
17   location?
18       A    I can't remember exactly if I was told that
19   or not.
20       Q    How was the, as you testified to, the
21   appropriate height determined?
22       A    It was probably on the engineered drawings,
23   I would assume.
24       Q    Whose engineer?
25       A    Matt Parker.

Judge Dawn Caloca-Johnson
November 01, 2018

Page 196

```
 1      Q    Is that your engineer?  Is Matthew Parker
 2  your engineer?
 3      A    He's our consultant, yes, sir.
 4      Q    When were those plans drawn up; do you
 5  recall?
 6      A    I do not recall, no.
 7      Q    Do you ever remember seeing any plans from
 8  Matthew Parker or reviewing them?
 9      A    That wouldn't be part of my daily scope.  I
10  may have looked at them.  I can't remember.  It's been
11  a long time ago.
12      Q    What do you do generally, day-to-day
13  operations?
14          MS. LUKEN:  Objection, outside the scope of
15      direct.
16          MR. HARPER:  Your Honor, he said it's not
17      within the scope of what he normally does.  I'm
18      trying to get an idea what is in the scope.
19          THE COURT:  Overruled.
20      A    Day-to-day operations for myself is project
21  manager of the commercial millwork installation
22  division of the company and oversee business
23  development for that.
24  BY MR. HARPER:
25      Q    And that's J.D. James, Incorporated,
```

Judge Dawn Caloca-Johnson
November 01, 2018

Page 198

```
 1  he had, which was the email with Mr. Chaudhari.
 2          THE COURT:  Sustained.
 3  BY MR. HARPER:
 4      Q    Mr. James, you testified that your main
 5  responsibility is to give the customer what he asks
 6  for.
 7      A    Yes, sir.
 8      Q    Do you remember saying that?
 9      A    Yes, sir.
10      Q    Did you do that here?
11      A    I did.
12      Q    You believe this structure is what
13  Mr. Chaudhari asked for?
14      A    I do.
15      Q    Do you know that Mr. Chaudhari disagrees
16  with you?
17      A    I've heard that today, yes, that he
18  disagrees.
19      Q    Now, with regards to that Exhibit 53 that
20  you have there in front of you in which Mr. Chaudhari
21  is referencing a steel bridge, do you know that
22  Mr. Chaudhari was relying on the statements of Brian
23  Green when he sent you that email?
24      A    I would not know what he was relying on when
25  he crafted that email, no, I do not know that.
```

Judge Dawn Caloca-Johnson
November 01, 2018

Page 197

```
 1  correct, the millwork side?
 2      A    J.D. James, Incorporated, has two divisions.
 3  One is the commercial millwork installation and one is
 4  bridge construction, yes.
 5      Q    So your day-to-day operation or day-to-day
 6  role is not -- do you have a day-to-day role as it
 7  relates specifically to the Nature Bridges division of
 8  J.D. James, Inc.?
 9      A    No.  That's not the way our company is set
10  up.  I handle day to day on the commercial millwork
11  installation.
12      Q    Do you know who Santiago Garcia is?
13      A    Do I know who he is?
14      Q    Yes, sir.
15      A    Yes, I know who he is.
16      Q    Does he still work at your company?
17      A    No, he does not.
18      Q    Were you involved with or privy to any
19  conversations that Mr. Garcia had with Saket
20  Chaudhari?
21          MS. LUKEN:  Objection, Your Honor, beyond
22      the scope of direct examination, which I
23      purposely limited.  We had no testimony about
24      conversations with Mr. Chaudhari with respect to
25      Mr. Garcia.  He related to one communication that
```

Judge Dawn Caloca-Johnson
November 01, 2018

Page 199

```
 1      Q    You wouldn't know then whether
 2  Mr. Chaudhari, after sending that email, later
 3  confirmed that this indeed is not a steel bridge?
 4      A    I don't know what he was thinking, no.
 5          MR. HARPER:  Nothing further, Your Honor.
 6      That's all I have.
 7          THE COURT:  Any redirect?
 8          MS. LUKEN:  No, Your Honor.
 9          THE COURT:  Thank you, Mr. James.  Do you
10      have another witness?
11          MS. LUKEN:  No, Your Honor.  But I do have
12      portions of a transcript that I could read into
13      the record.  Just one moment.  The first portion
14      of a transcript that I'm going to be reading into
15      the record is from a deposition of Mr. Richard
16      Wostbrock from LAN Associates.
17          THE COURT:  Do you have a copy of that?
18          MS. LUKEN:  Yes, I have that.
19          THE COURT:  What page are you starting on?
20          MS. LUKEN:  This is an excerpt of the
21      deposition.  From the version that I am going to
22      be reading from, I am going to be starting on
23      page 4.  And actually, I'm going to be reading
24      to -- yeah, I'm going to start on page 4.  I
25      think I need to state on the record the place
```

Page 200

1  that the deposition was taken.
2      This is the deposition of Mr. Richard
3  Wosbrock that was taken at Barry A. Fond
4  Shorthand Reporters, 381 Broadway, Third Floor,
5  Westwood, New Jersey, on Thursday, July 26, 2018,
6  commencing at 10:05 a.m.
7      And, Your Honor, the part that I had
8  designated to be read into the record starts on
9  page 4, line 16.  And actually, I'm going to
10  start on line 18.
11      So this is question from Ms. Luken:  And I'm
12  sorry, Mr. Court Reporter, I had to get you
13  started on the other exhibits, and I wanted to
14  start with Exhibit R.  Can I ask you to please
15  put that in front of the witness.
16      And there's a note in the record that
17  Exhibit R, the site development plan, was marked
18  for identification.
19      Question, by Ms. Luken:  Mr. Wostbrock, do
20  you recognize Exhibit R?
21      Answer:  Yes.
22      Question:  What is it?
23      Answer:  Site plan or drawing called site
24  development plan, SP-21.
25      Question:  Okay.  Is this a document that

Page 201

1  you prepared?
2      Answer:  It was prepared under my direction.
3      Question:  Okay.  That's fine.  That's fine.
4  It's your signature and seal, correct?
5      Answer:  Yes.
6      Question:  All right.  And this is
7  depicting -- this is -- these are not for
8  construction, correct?
9      Answer:  Yes.
10      Question:  I asked you, from the very
11  beginning of this, what size bridge.  From
12  looking at this document, are you able to
13  ascertain what size bridge was necessary for the
14  crossing on your site development plan?
15      Answer:  I need glasses.
16      Question:  Do you have them with you, sir?
17      Answer:  No, I don't.
18      Question:  I'm sorry.
19      Answer:  Does it say graphics scale 20 feet?
20      Question:  Yes, sir.
21      Answer:  I would estimate it was 30 feet
22  long, abutment to abutment.
23      Question:  Now, I think we talked about
24  earlier that would be an appropriate approximate
25  length of the bridge, correct?

Page 202

1      Answer:  That would be the span, the clear
2  span across the floodway.
3      Question:  All right.  Would a 20-foot
4  bridge at this location work with your site
5  development plan?
6      Answer:  Not if I'm accurate saying it was
7  30 feet, no.  It needs to cross the floodway.  It
8  needs to span the floodway.
9      Jumping down in the transcript to page 6,
10  line 25.
11      Question:  Okay, great.  Just for clarity
12  and the record, you cannot put a 20-foot bridge
13  in this location as depicted here in Exhibit R?
14      Answer:  You can't put a 20-foot bridge
15  where 30 feet is required, correct.
16      That's what I wanted to put in for that
17  portion, Your Honor.
18      Then I also wanted to read into the record,
19  Your Honor, a portion of the deposition of
20  Mr. Saket Chaudhari, taken February 22nd, 2018.
21  I'm going to hand a copy of that to Mr. Harper.
22  And then I'm going to start on this deposition,
23  Your Honor, this is page 42.  This deposition was
24  taken on February 22nd, 2018, at Accurate
25  Stenotype Reporters, at 2894-A Remington Green

Page 203

1  Lane in Tallahassee, Florida.  And this is the
2  deposition of Mr. Chaudhari.  Starting on page 42
3  at line 25.
4      Question:  Okay.  And is it safe to say,
5  sir, that the first time you would have seen this
6  site development plan would have been about
7  June 2013 when you received it from Mr. Guddemi?
8      Answer:  Yes.
9      Question:  Okay.  And this site plan depicts
10  a number of different items on it, doesn't it?
11      Answer:  Yes, ma'am.
12      Skipping ahead to page 44, line 2.
13      Question:  Do you have an understanding, in
14  the world of construction, engineering, project
15  planning, what a site development plan is?
16      Answer:  Yes, ma'am.  Yes, ma'am.  I have an
17  understanding of this particular documentation.
18  At this time, I can explain -- well, I'm not
19  asking me to explain.  I'm sorry.  Yes, ma'am.  I
20  do have an understanding.  I don't know.
21      Question:  What is the understanding that
22  you have?
23      Answer:  My understanding is that there
24  is -- and I'm giving you my understanding at this
25  time, ma'am.

Judge Dawn Caloca-Johnson
November 01, 2018

Page 204

1    Question:  Sure.

2    Answer:  So this is suggesting that there is

3  a proposed bridge at a location, a proposed

4  driveway, a proposed dwelling.

5    And I'm sorry.  I said that incorrectly.

6  It's just proposed dwelling.

7    And it shows the stream, which is a -- and

8  about the stream, it has a lot of information,

9  which is substantial.

10    Skipping ahead to page 46, starting at line

11  23.

12    Question:  Okay.  And I think you indicated

13  in your prior statement that these are all

14  proposed locations, correct?  Do you see that on

15  the document?

16    Answer:  Proposed location, let me see that.

17  Where are you looking at, ma'am?

18    Question:  I'm asking.  You used the word

19  "proposed."  You used proposed location for a

20  house, proposed driveway, proposed bridge.  Is it

21  your understanding that these are proposed

22  locations?

23    Answer:  Oh, I see, ma'am.  Yes, ma'am.  I

24  see now what you are referring to, yes, ma'am.

25    Going down to line 24 of that same page,

Judge Dawn Caloca-Johnson
November 01, 2018

Page 205

1  page 47, starting at line 24.

2    Question:  Mr. Chaudhari, before we went on

3  break, I think we were discussing that all of

4  these were all proposed locations; is that

5  correct?

6    Answer:  Yes, ma'am.

7    Skipping to page 66, starting at line 15.

8    Question:  My question is, how did you come

9  to ask for a 20-foot bridge?  Where did that

10  number come from?

11    Answer:  I'm not exactly sure why that was

12  the number.  I just know in my conversations, I'm

13  asking him, the best of my ability, if we have

14  something like a waterway, so this is here.  Like

15  how does it -- like what is the cost and what is

16  the -- again, just trying to get an idea of what

17  is entailed, what is pricing, what is the

18  project, and just trying to understand from the

19  company exactly what that is.

20    Skipping to 67, line 8.  And I'm not reading

21  the beginning part of that line because it's the

22  end of another sentence, so starting at line 8.

23    My question is, how did you come up with the

24  20 feet?

25    Answer:  Again, I just know we had -- I

Judge Dawn Caloca-Johnson
November 01, 2018

Page 206

1  wouldn't say come up with it.  I know we spoke

2  about -- and I can't recall exactly what we spoke

3  about, ma'am.  But it was just -- I don't --

4  maybe trying to describe the property.  And then

5  I don't know exactly how that conversation really

6  entailed, but -- okay.

7    The question that I really would like to get

8  an answer to is this, how you came up with asking

9  for a 20-foot bridge.  If you don't know or you

10  don't remember, just say so.

11    Answer:  Okay.

12    Question:  How did you come up with the

13  20 feet?

14    Answer:  I don't remember for sure.

15    The final one, Your Honor, is very short,

16  from the deposition of Mr. Chaudhari taken

17  September 10th, 2018.  I'm going to be starting

18  at page 43, line 10.

19    Question:  Okay.  Mr. Parker was

20  volunteering to assist you with a notice of

21  violation, correct?

22    Answer:  Yes, ma'am, he was.

23    Skipping to page 44, starting at line 2.

24    And what is -- the description of the

25  noncompliance with reference to that has nothing

Judge Dawn Caloca-Johnson
November 01, 2018

Page 207

1  to do with the size or location of the bridge,

2  does it?

3    Answer:  Yes, ma'am.  The description of

4  noncompliance does not mention those.

5    Question:  And in fact -- and in fact, none

6  of these other noncompliance issues that have

7  been identified by the New Jersey Department of

8  Environmental Protection have anything to do with

9  the size or the location of the bridge, do they?

10    Answer:  Yes, ma'am.  This notice of

11  violation does not reference the size and

12  location beyond these four measures.

13    And the plaintiff rests.

14    THE COURT:  Do you have any additional

15  portions of the transcripts that were read that

16  you want to read, Mr. Harper?

17    MR. HARPER:  No, Your Honor.  I presented

18  live testimony.  Thank you.

19    THE COURT:  All right.  So what's left,

20  there's no more evidence to be presented.

21  There's jury instructions.  I'm going to give you

22  the lay of the land at this point.  It's 4:30.

23    So what has to happen is we have to have

24  what is called a charging conference, which means

25  you guys don't get to participate in that.  We

Judge Dawn Caloca-Johnson
November 01, 2018

Page 208

```
 1    come up with a finalized set of jury
 2    instructions, read the jury instructions and have
 3    closing arguments.
 4         I don't think it will take very long to come
 5    up with what the jury instructions are going to
 6    be, but that's an exercise.  I know trial can be
 7    unpredictable in timing.  Y'all have spent a lot
 8    of time by yourselves in the jury room, not in
 9    the courtroom.  It was unavoidable.  We worked as
10    efficiently as we could, but it is what it is.
11         I'm going to let you-all -- I don't want to
12    put anybody on the spot.  We can continue and go
13    as late as we need to go today, if that's what
14    you-all want to do, and we'll get busy on the
15    charging conference, or -- I know we told you the
16    trial would be done today.  We can do our work
17    and start first thing in the morning.  But,
18    again, I would rather you-all discuss that
19    privately and see if you can reach a resolution
20    on that.
21         I will and the attorneys will do whatever
22    you-all want to do, but the option is to let
23    y'all go now and come back in the morning.  And I
24    think that between reading the jury instructions
25    and closing arguments, we'd be done relatively
```

Judge Dawn Caloca-Johnson
November 01, 2018

Page 209

```
 1    quickly.  And then we would let y'all deliberate.
 2         Those are your two choices.  I just need to
 3    know what you-all want to do.  Let me just ask
 4    you -- go talk about it.  I don't want to put
 5    anybody on the spot.  Y'all talk about it and
 6    knock on the door when you're ready to come in
 7    and tell me what you guys want to do.
 8         (Jury leaves the courtroom.)
 9         THE COURT:  Do you object to moving in two
10    exhibits?
11         MS. LUKEN:  There's a complication with this
12    one.  This one is fine.  I'd like to move in
13    Plaintiff's Exhibit 52.  It was, I believe,
14    authenticated and admissible through the
15    testimony of Mr. Chaudhari.
16         THE COURT:  Which one is that?
17         MS. LUKEN:  Exhibit 52, Plaintiff's
18    Exhibit 52.  It's an email from Mr. Chaudhari to
19    Brian Green.
20         THE COURT:  Any objection, Mr. Harper?
21         MR. HARPER:  What does it say?
22         THE COURT:  Have them come back in.  Wait.
23    Do you think we can hammer out jury instructions
24    before we go home, so when they come back
25    tomorrow, we can just go?
```

Judge Dawn Caloca-Johnson
November 01, 2018

Page 210

```
 1         MS. LUKEN:  I would think so, yeah.
 2         THE COURT:  Mr. Harper?
 3         MR. HARPER:  I could certainly try.  The
 4    landscape of the case has changed a bit.  It
 5    might -- I'll certainly try.  That's all I can
 6    say.
 7         THE COURT:  Why don't I tell them to come at
 8    10:00.  Does that work or not?  I don't want them
 9    sitting around anymore.  They're not happy, I
10    don't think, that they've spent most of the day
11    locked in the jury room.  They're really not
12    happy about that.
13         MS. LUKEN:  Do you want to say 9:30 and we
14    could meet at 8:30?
15         THE COURT:  I'd like to do a little bit
16    tonight, if we can.
17         MS. LUKEN:  10:00 is fine.  I'd like to get
18    it to them as quickly as possible.
19         THE COURT:  How long do you think your
20    closing argument is going to take, Mr. Harper?
21         MR. HARPER:  30 minutes.
22         MS. LUKEN:  Same for me.
23         THE COURT:  I'll tell them 9:30.  Okay.
24         (Jury enters the courtroom.)
25         THE COURT:  So do I understand that you-all
```

Judge Dawn Caloca-Johnson
November 01, 2018

Page 211

```
 1    want to go home, correct?  Everybody wants to go
 2    home?
 3         (Jury indicates affirmatively.)
 4         THE COURT:  So if that's what you-all want
 5    to do, that's what we will do.  So we'll work on
 6    the charging conference.  Again, I apologize that
 7    you-all spent a lot of time getting to know each
 8    other today.  So I'll ask you to report tomorrow
 9    morning at 9:30.  We'll get our work done so we
10    can just hopefully go.  Okay?  Thank you-all very
11    much.
12         (Jury leaves the courtroom.)
13         THE COURT:  Can we talk about jury
14    instructions?
15         MS. LUKEN:  Yes, Your Honor.  I'm going from
16    the file version, at least for now, because I do
17    think there's a couple of modifications.  I've
18    been going through and trying to cross out what
19    we don't need.
20         THE COURT:  So on the proposed jury
21    instruction number 15 --
22         MS. LUKEN:  That's where I started, too.
23         THE COURT:  Do you have a copy of the jury
24    instructions, Mr. Harper?
25         MR. HARPER:  I'm sure I do, Your Honor.
```

Judge Dawn Caloca-Johnson
November 01, 2018

Page 212

1    THE COURT:  Okay.  Let me go run get the --
2    MS. LUKEN:  I'm sorry.  I don't have an
3    extra.
4    THE COURT:  I've got them up on the
5    computer.
6    (Discussion off the record.)
7    THE COURT:  Did you find them?
8    MR. HARPER:  I have not, Your Honor.
9    MS. LUKEN:  I might have an extra in my
10   pleadings.  Mr. Harper, do you still need a copy?
11   MR. HARPER:  I do if you're offering,
12   please.
13   MS. LUKEN:  Yeah.  I've got a set here in my
14   pleadings folder, and I'll just give you this
15   one.
16   MR. HARPER:  Wait.  I think I found it.
17   I've got it, I think.  What's the last one?
18   THE COURT:  I think we need to start with
19   number 15.
20   MS. LUKEN:  Yes, Your Honor.
21   MR. HARPER:  What's the last one in the set
22   you're looking at?
23   THE COURT:  The very last one?
24   MR. HARPER:  Yes, ma'am.  I want to make
25   sure I've got a complete set.

Judge Dawn Caloca-Johnson
November 01, 2018

Page 214

1    THE COURT:  Making sure you're weighing in
2    here.  18.  Didn't we --
3    MS. LUKEN:  I think everything up until B-2
4    is probably okay, although we've got to figure
5    out what to say about defendant's affirmative
6    defenses.  Mr. Harper, I think you had some
7    proposed instructions.  Have you done one
8    relative to your own defenses?
9    MR. HARPER:  I haven't done anything since
10   the Court's ruling, most importantly.  In all
11   honesty, Your Honor, what I would ask, please, is
12   that we go through and just identify the ones
13   that we stipulate to and we can agree on, which I
14   think will be simple.
15   I've got a scheduling conflict tomorrow that
16   I really need to get on to remedy, and I'll be
17   here as early as I need to be.  I've got really
18   until 5:30-ish before people go radio silent on
19   me.
20   THE COURT:  How about this as a plan?
21   Obviously, if you could put together what you
22   would like your affirmative defense instruction
23   to be and get it to Ms. Luken so we can address
24   that tomorrow.
25   MR. HARPER:  Yes, ma'am.

Judge Dawn Caloca-Johnson
November 01, 2018

Page 213

1    THE COURT:  Number 35.
2    MR. HARPER:  Okay.  I've got it.
3    THE COURT:  So number 15, I don't think
4    there's any changes needed to that one, weighing
5    the evidence.
6    MS. LUKEN:  Plaintiff is fine with 15.
7    MR. HARPER:  So long as the bold is taken
8    out, obviously.
9    THE COURT:  Okay.  Did you hear that, Ms.
10   Luken?
11   MS. LUKEN:  Yes, I did, just to remove the
12   bold and the brackets.
13   THE COURT:  Yes.  Okay, 16.
14   MS. LUKEN:  We can remove B and C, I think.
15   I mean, I think some of the testimony probably
16   falls kind of in that category, but it wasn't
17   denominated as such, and so I don't see the need
18   for B or C.
19   THE COURT:  Can we remove B and C?
20   MR. HARPER:  Yes, Your Honor.
21   THE COURT:  Number 17, we already -- well,
22   delete this altogether?
23   MS. LUKEN:  Yeah.  I think this goes.
24   THE COURT:  Mr. Harper?
25   MR. HARPER:  Okay.

Judge Dawn Caloca-Johnson
November 01, 2018

Page 215

1    THE COURT:  Why don't you tell me, so
2    Ms. Luken can work on instruction number 18, you
3    need to give her what you want for affirmative
4    defenses, and then she can clean 18 up.  But tell
5    me -- and 19 needs to be cleaned up because the
6    case has changed, which I don't think you'll
7    probably have a problem with.  It's pretty
8    simple.
9    Tell me what -- let's do this, since you
10   have an issue, Mr. Harper.  Can you look through
11   those jury instructions and tell Ms. Luken and
12   the Court which ones you're going to have an
13   objection to as they currently read, other than
14   the ones we've already talked about?
15   MR. HARPER:  Other than the 18, 19?
16   THE COURT:  Yes.  Some we're not going to be
17   giving at all obviously because there's no
18   counterclaim anymore.  So I think you probably
19   ought to be able to agree on like, for example --
20   well --
21   MS. LUKEN:  21, I think, would go.
22   MR. HARPER:  Your Honor, I'm okay with 22.
23   MS. LUKEN:  I don't think 22 is supported by
24   the evidence.
25   THE COURT:  You're okay with it, or you want

Judge Dawn Caloca-Johnson
November 01, 2018

Page 216

```
 1   to delete it?
 2        MR. HARPER:  I'm okay with leaving it.
 3        MS. LUKEN:  He likes 22.
 4        MR. HARPER:  I thought you were asking me --
 5        MS. LUKEN:  Is this yours?  I don't know if
 6   I wrote this.
 7        MR. HARPER:  No, it's yours.
 8        MS. LUKEN:  Well, I withdraw it.
 9        MR. HARPER:  I was going through -- I
10   thought you asked me to go through and tell you
11   the ones I don't object to.
12        THE COURT:  The ones you do object to.
13   Sorry.
14        MR. HARPER:  26 I object to.
15        THE COURT:  Which one?
16        MR. HARPER:  26.
17        THE COURT:  Ms. Luken?
18        MS. LUKEN:  Okay.  This would have been my
19   affirmative defense to his counterclaim.  I guess
20   my only question is if I have that as a reply to
21   any of his affirmative defenses, which I don't --
22   I don't know.  Just one second.
23        MR. HARPER:  Your Honor, I'm really sorry.
24   We're taking this long to go through the ones I'm
25   not even objecting to.  May I please be relieved
```

Judge Dawn Caloca-Johnson
November 01, 2018

Page 218

```
 1        MS. LUKEN:  Oh, I wanted to move in 52, and
 2   that was what had been placed over there with
 3   Mr. Harper.  The ball is in his court on that.
 4   Mr. Harper, did you have an objection to 52?
 5        MR. HARPER:  Your Honor, I object.  It
 6   should have been admitted through Mr. Chaudhari.
 7        MS. LUKEN:  It wasn't my case, Your Honor.
 8   My experience is generally you cannot admit in
 9   the other person's case.  You can lay the
10   predicate for the admissibility of it.
11        THE COURT:  Well, you closed your case.
12        MS. LUKEN:  I did.  I was asking if I could
13   reopen.  I don't need it.  That's fine.
14        THE COURT:  There's really bad weather out
15   there.  Can you modify the verdict form, too, or
16   try to?
17        MS. LUKEN:  Yes, Your Honor, I will.
18        THE COURT:  Okay.
19        (Proceedings adjourned at 5:05 p.m.)
20
21
22
23
24
25
```

Judge Dawn Caloca-Johnson
November 01, 2018

Page 217

```
 1   and just come back early in the morning?  Because
 2   we'll be here until 5:30 in the blink of an eye.
 3        THE COURT:  Can you at least tonight, once
 4   you resolve your issues, let Ms. Luken know the
 5   ones that you think do not apply to this case, so
 6   that she -- because I told the jury to be here at
 7   9:30.  The last thing I want to do is get here,
 8   even if we get here early, and they come in and
 9   it's 11:30 and we're still dealing with jury
10   instructions.
11        MR. HARPER:  I agree.
12        THE COURT:  So I think if you can tell
13   Ms. Luken -- you can work on these instructions
14   tonight and let her know which ones.  She may
15   disagree with you, but if you both agree, she can
16   at least delete instructions that aren't
17   necessary to talk about tomorrow, you know what
18   I'm saying?  And then she can work on 18 and 19.
19   But let's try to meet at 8:30.
20        MS. LUKEN:  With respect to 26, I do have
21   estoppel as a reply to his affirmative defenses.
22   I would want to keep that in there, but it does
23   need to be modified.
24        THE COURT:  Okay.  So let's plan on getting
25   started at 8:30.  I really want to get this done.
```

Judge Dawn Caloca-Johnson
November 01, 2018

Page 219

```
 1              COURT CERTIFICATE
 2
 3   STATE OF FLORIDA
 4   COUNTY OF LEON
 5
 6        I, JO LANGSTON, RPR, certify that I was
 7   authorized to and did stenographically report the
 8   foregoing proceedings, and that the transcript is a
 9   true and complete record of my stenographic notes.
10        Dated this 21st day of May 2022.
11
12
13                    _____
                       Jo Langston
14                    JO LANGSTON, RPR
15
16
17
18
19
20
21
22
23
24
25
```

---

**Page 1**

```
$                          $850                       92:8                      15
$10,000                      10:22 80:3             11th                          10:24 66:7
  151:11                     143:14 155:17            28:23 29:3,5                 67:21 94:18
$2,000                                                30:24 32:6,                 187:24 188:4
  7:25 14:19                       1                  16,18 35:10,                 205:7 211:21
$20,000                                               19,25 45:12,                212:19 213:3,
  121:9 141:17            1                           19 54:13                     6,7
  150:6,10                 131:6,7                     67:7,15                  15th
$25,000                    166:12                   12                            50:16,17
  60:22 61:2,4,          1.120(c)                     41:21,23                    51:3,12
  21 63:21                 158:4                       177:13 188:11               72:6,15
$27,000                  10                          12-by-12                   16
  48:5 49:5,17             206:18                      41:6                       36:24 61:3
  52:6 84:7              10-foot                     12-by-12-foot                200:9 213:13
  161:2                    136:15                      41:5                     16th
$27,500                  10/29                       12-by-20                     61:5
  121:2 142:18             4:4                         144:21                   17
$3,500                   10/31                       12-by-20-foot                213:21
  36:6 38:15,18           4:4                          14:24 39:6              17th
$35,000                  10/31/2018                   40:4,24 41:25              6:5,21 9:18
  192:24                   4:2                         73:20 74:8,               177:24
$40,000                  101                          10,14 75:8             18
  192:23                   94:4                        78:20 79:3,9,            200:10 214:2
$47,500                  10:00                         22 83:17                 215:2,4,15
  102:19                   210:8,17                    125:12,21             19
$5,000                   10:05                       12-by-35-foot              215:5,15
  150:23                   217:9                       191:5                    217:18
$55,000                  10:30                       12-foot                  1942
  5:16 61:11,13           65:18                        40:8 41:10              37:6
  92:24 150:21,         10th                           186:4,20             1st
  22 157:4                39:19 206:17              12:45                       183:19
$7,500                  11                             92:6,8
  131:9 157:4             177:2                      13th                           2
  169:18 176:4          11/2                           44:25 46:18
$750                     4:4                         14                      2
  37:15 38:10           11:30                          11:10,11,18            131:7 203:12
                         217:9                         20:24 68:21            206:23
                       11:35                           80:13 176:25       2,000
                                                                             73:12
```

---

**Page 2**

```
20                       10:10 12:18          25                      79:5,10,24
  188:11 201:19            23:22 25:11          61:8 108:1             90:25 91:4,13
  205:24 206:13            33:11,12             192:24 202:10          125:6 136:9,
20-by-12-foot              34:14 35:1,6         203:3                  11,14 163:4,
  171:2                    51:7,10,15        250                      5,9 185:19,
20-foot                    52:16 53:20         49:6                    23,24 186:13,
  76:3 134:25              85:23 87:7,       26                        17 191:15,22
  135:5 163:8              15,16 88:3,5        59:23,25             35-footer
  185:17 186:1,            193:16              200:5 216:14,           186:11
  5,17 202:3,           2016                    16 217:20           36
  12,14 205:9             28:9,23 29:2,     27,500                     44:13,24
  206:9                    5 30:3,24           84:9                    124:6
20-footer                  32:6,16,18       2894-A                 37
  186:11                   34:22 35:10,        202:25                 44:1 47:20,21
20-ton                     19,25 36:24      2nd                       50:14
  160:23                   154:8               25:11 53:20         381
2008                    2018                    60:3 64:21            200:4
  74:6                    39:19 200:5          65:14,15          39
2012                       202:20,24                                 118:6 126:7,9
  5:3 6:6 7:18             206:17                   3                 127:17
  9:18 12:18            20th                                          128:11,12
  14:22 40:22             87:15,16        3                           132:9 133:23
  73:10 90:24           21                  54:1,2                    148:9,18
2013                      71:6 215:21     30                          160:1 161:14
  40:14,18,19           21,000              46:10 92:1               166:18 172:2
  203:7                   6:9                201:21 202:7,       3rd
2014                    22                   15 210:21              23:22 46:16,
  10:1 17:1               215:22,23       34                         17 47:11
  32:20 44:25             216:3             116:14 117:5            193:16
  45:12,19              22nd                123:23
  50:17 51:3,12           202:20,24       35                             4
  52:18,25              23                  117:7 125:22
  54:13 60:3              204:11            213:1                4
  61:3 62:15,22         24                35,000                   54:1,2 189:24
  63:12,19                204:25 205:1      6:10                    199:23,24
  64:21 67:6,7,         24th               35-foot                 200:9
  15 183:19               62:4,15,21        5:5,15 6:20        40
2015                       63:12,18,24      56:9 74:24           118:11 160:7
  8:18,25 9:4,            64:9,12           75:1,6,21            161:8,22
  8,12,13,15,20                             76:3 78:21           172:18
```

---

**Page 3**

```
41                       53                     180:2                    able
  118:23 161:9            192:15,16                                        109:10 135:1
42                         193:3,6,7               8                      167:5 181:1
  133:23                   198:19                                         182:10 191:2
  148:14,15             55                    8                           201:12 215:19
  149:3 153:17            61:7                   205:20,22             absence
  161:18 174:6          56                    83-B                       12:1
  202:23 203:2            6:14                   160:12,21           abstract
43                       5:00                    188:17                 145:6
  119:7 136:17            179:8,23            83-D                   abutment
  137:3 138:12             182:3                93:1                   45:2 159:3
  121:19 206:18         5:05                  8:30                     201:22
44                        218:19                210:14              abutments
  119:17 162:2          5:30                     217:19,25            45:24 144:24
  163:20 203:12           217:2                                       147:23
  206:23                5:30-ish                   9                   149:18,25
45                        214:18                                      159:12 188:13
  119:24 138:11                              9                        189:24,25
  163:22                      6                 66:9              accept
46                                           90.701                 48:2 52:6
  120:8 138:24          6                       159:15           accepted
  139:8 148:17            202:9              90.702                  48:4 114:15
  204:10                60                      159:17           access
47                        172:25             9:00                    184:9
  120:14 126:7          600                     4:1               accessed
  205:1                   120:6              9:30                    133:14
4:00                    67                      210:13,23        accommodate
  179:22                  205:7                 217:7 217:7         73:19 74:9
4:30                    67                                       account
  207:22                  28:14,18                 A                 38:25
                          205:20                                 accurate
50                                           a.m.                   202:6,24
  124:22                      5                 4:1 92:8          acknowledged
52                                              200:6               170:8
  33:15,18                    7              abide                acting
  87:4,5                                        24:18               25:6
  209:13,17,18          7                    ability             action
  218:1,4                 5:20,24               149:22 153:25       178:1
                        71                      205:13
                          36:16,21
                        7:00
```

---

**Page 4**

```
actions                  admit                     afford                   141:25 149:3
  117:14                  218:8                     75:6,21 76:3            160:6
activities              admitted               afternoon             allegations
  32:22 188:14            64:16 117:22           4:15                   117:5,6
actual                     121:11,14          agreed                     177:18
  36:25 118:2             127:14 141:5          52:10 60:23         allege
addition                   193:6,7 218:6        61:15,22 80:9         89:14 142:7
  98:16 120:24          advice                   83:3 99:2          alleged
additional                9:25 10:5             114:21 123:17         55:16 127:18
  85:5,9 119:9            39:2                   133:16 138:20      alleges
  121:9 137:22          advise                   140:2 148:3         118:6,11
  142:13 169:4           20:6                 agreement               119:3,17,24
  192:24 207:14         advised                 7:20 10:14,        alleging
address                   5:12 6:24             16,17 11:1          120:8 140:8
  59:23 78:18            29:6 73:10             17:1,3,4,6         allow
  86:12,14,18            86:20 156:5            24:10 32:24          69:11 124:4
  88:14 117:1           advices                 33:2 52:5,9,         181:1
  179:5 214:23           87:8                   11,13 59:6        allowed
addressed               affiliated              76:9 94:19          121:4 159:16
  19:11 24:5             100:6                   97:24 98:1        aloud
  28:10 123:22          affirmative              99:2 101:4,7        28:20
addressing               115:21 116:5          108:14 111:7       altogether
  27:24 37:20            134:1 165:16,          112:17              178:24 213:22
  38:11 69:20            21,25 167:14,          113:13,15,18,      amenities
adjacent                  20,22 168:2,          21 114:19           76:19
  48:14 55:17            14 170:2               115:10 118:5,     amnesty
  58:9                    171:17,23             15 119:8,14,        138:5
adjourned                 172:1,13,14,          18,25 120:15,     amount
  218:19                  18 173:12,25          20 121:13           46:25 47:1
adjust                    174:3 175:7,          122:18 126:11       176:2 190:3
  133:1                   9,14,15,24            138:1 149:4       analyze
adjusted                  176:6,16,21          160:2,8             119:19 138:1
  90:8                    177:7,24             161:10,20            162:3
admissibility             178:5,25             162:2 163:22      and/or
  218:10                  215:3 216:19,         164:10,12,14        119:19 120:1
admissible                21 217:21            171:4               149:5 160:8,
  131:25 158:25         affirmatively         ahead                 10 162:4
  159:25 209:14          211:3                  92:5 180:23         163:23
                                                203:12 204:10
                                             allegation
                                               116:15 118:24
```

Judge Dawn Caloca-Johnson
November 01, 2018

5

**answered**
39:8 40:6
69:1 78:23
98:8 105:22,
23 106:3,8,
12,15,17
107:4 110:1
113:22,23
**anticipate**
179:20
**anticipated**
179:19
**apologies**
147:20
**apologize**
211:6
**apparently**
20:12 57:2
135:11 163:4
**appeal**
163:19,20
**appears**
158:13
**appellate**
132:22 165:6
**applicable**
66:22,23,24
81:23 118:8
126:13
148:10,20,21
153:3 157:19
159:22 160:4
166:17 175:21
**application**
38:17 46:12
47:9 126:2
128:12 171:3
**applications**
174:19

**applied**
132:17
**applies**
94:21 95:14
130:4 148:9
156:23
**applying**
122:6 140:18
**appoint**
32:21
**approached**
73:14
**approaches**
146:3 160:22
185:13
**appropriate**
71:15 100:25
123:19 132:8,
24 133:3,24
138:8 165:19
167:13 175:18
195:21 201:24
**approval**
68:23 69:12,
16 97:18
132:4 139:15
171:10
**approvals**
113:14
**approve**
98:3,5 148:5
157:21
**approved**
27:11 111:17
116:17 117:8
123:17,25
131:22 139:3,
4 155:13
171:13 176:24

177:1
**approximate**
201:24
**approximately**
172:24 189:24
190:13
193:17,19
**April**
33:11 34:14
35:1,6 87:7,
15,16 149:14
146:4 194:14,
15
**apt**
27:13
**architect**
12:7 89:24
90:12
**architects**
90:10,13
**architectural**
90:6,17,18
**areas**
109:13
**argue**
144:12 171:11
173:4 176:8
**argument**
107:24 108:1
119:21 139:9,
17 149:1,21
152:15,17
160:12 166:21
171:6,18
172:9 175:8,
13,21 176:12,
18 210:20
**arguments**
173:10 177:6

179:24 208:3,
25
**arises**
34:24 83:9
**arising**
52:2
**arranged**
67:12
**arrangements**
64:17,19
**arrived**
77:17
**arriving**
195:14
**art**
81:20 145:10
**artfully**
163:16
**articulated**
172:4
**as-built**
9:4 10:11,14,
18,22 11:2,
12,14,20,23,
24 12:11
30:15 77:12
80:2,9 83:3,
6,8,12,21,23,
25 121:17,20
137:19 143:14
154:13,18
155:7 157:11
**ASAP**
46:13 47:7,13
**ascertain**
201:13
**aspect**
122:18 142:12

---

Judge Dawn Caloca-Johnson
November 01, 2018

7

**brackets**
213:12
**brain**
126:20
**branched**
188:3
**breach**
12:5 116:10
122:5,8,10,
11,12,18,20
127:18 129:11
130:11 137:12
141:13,15
142:12 143:16
145:5 148:2
165:11 168:22
169:14,18,20,
23 170:3
175:19 177:18
**breached**
119:7,18,24
120:14 125:5
126:11 129:9
137:25 149:4
160:2,7
161:9,19
162:2 163:22
164:10,14
170:4 177:14
16 83:17
84:3,5,19
85:2 90:15
91:1,4,13
92:23,25
93:2,4,6,10,
13,14,17,19
158:5 205:3

**brackets** continued...

10:5,7 61:7,
8,20 89:9,12
**billed**
60:24 61:16
**billing**
12:18 14:17
188:3
**bills**
14:14
**binding**
112:17 148:21
**bizarre**
132:13
**blame**
100:24
**blink**
217:2
**block**
21:24 22:3
23:6 187:24
**bold**
213:7,12
**bolded**
47:14
**book**
33:20,23
34:1,3,10,16,
18,19
**books**
62:8
**bottom**
38:7 53:16
59:18
**box**
117:21
**Brackenchase**
188:2

33:10,12 35:1
42:15,22 43:3
48:16,17
49:2,3 70:18
71:17 84:16
87:1 90:4
107:9 108:4
110:23 111:1
138:15 149:13
179:4 183:11
195:1 198:22
209:19
**bridge**
5:5,12,15,17
6:11,17 7:14
14:24 15:2,21
16:7 19:5
35:17 38:18,
22,25 39:2,6
40:4,24 41:5,
25 42:1 43:2
72:6,8,17,21
73:9,17,20
74:8,10,15,24
75:1,6,8,21
76:3,4 77:2
78:4,20,21
79:3,5,9,10,
22,24 81:13,
16 83:17
**break**
65:17,19
91:17 92:4,6
158:5 205:3
**breeze**
60:18
**Brian**
20:2 27:19
28:22 29:5
30:8 31:2,3,
12 32:5,9

116:15 118:8,
13,25 123:1,
2,3,4,13,24
124:24 125:2,
6,11,12,16,
17,21 126:12,
16,18,19,21,
24 127:4,6,11
130:18
131:11,12
133:20 134:25
135:5,12,14,
16 136:9,11,
13,15,22
146:7,9
147:5,7,8,22,
24 148:15
150:8,11,13,
16,21,22
151:8,9
152:13 154:17
155:12 159:2,
21 160:3,9,
13,14,15,20,
21,22 161:10
163:4,5,8,9
166:10 167:11
172:16,21,23
173:5 184:8,
10 185:9,12,
17,19,23
186:1,8,13,
14,17,18,19
188:4,11,12,
21,23 189:5,

---

Judge Dawn Caloca-Johnson
November 01, 2018

6

**aspects**
66:5 116:12
**assembled**
15:23
**asserted**
122:11
**assertion**
70:14
**assist**
7:22 9:20
19:14 58:12
72:25 88:6
206:20
**assistance**
9:10 89:21
**assisted**
14:20
**assisting**
174:17
**associate**
19:2,4,5
**associated**
119:20 162:5,
6
**Associates**
5:5 38:24
56:18 75:21
76:2 86:2
100:14 125:1
134:14,17
135:3,10
155:9 199:19
**Associates'**
101:3
**assumed**
90:21
**assumes**
108:13

**assuming**
107:16 127:5
173:15,16
**assumption**
29:20
**assured**
16:12 72:5
**attach**
112:12
**attaches**
45:10
**attachment**
37:4,9
**attempted**
27:18
**attention**
6:1 141:4
182:7
**attorney**
18:15 32:1
57:5
**attorneys**
208:21
**August**
6:5,21 7:18
9:18 90:24
**authenticated**
209:14
**authorised**
71:10
**available**
67:16
**averted**
155:4
**avoid**
97:4
**avoided**
155:5

**aware**
31:8,10 50:12
51:3,11,13
54:8 59:4
79:13,21
85:22 132:20
181:3
**awful**
17:16

**B**

**B-2**
214:3
**backed**
136:3
**background**
103:9
**backwards**
141:12,18
143:13,21
**bad**
218:14
**ball**
218:3
**bargained**
92:21 150:25
152:2,24
**Barry**
200:3
**basic**
147:10
**basing**
77:15
**bear**
58:14
**bed**
189:25 190:1

**beginning**
110:9 122:7
139:11 192:5
201:11 205:21
**belabor**
188:9
**belief**
16:20 77:2,8
83:11 84:11,
20,22 94:4
97:14 118:22
121:4 123:12
130:13 153:24
154:14
**believed**
16:18,24
17:18 99:6
120:21
124:12,16
**believes**
94:3 119:12
137:22 150:1
189:19
**benefit**
52:22 127:23
**better**
107:7 153:4
181:25
**beyond**
36:2,3 42:1
90:22 113:4
197:21 207:12
**big**
74:7 140:18
**bigger**
185:12
**biggest**
26:18 28:4
**bill**

---

Judge Dawn Caloca-Johnson
November 01, 2018

8

**b** continued...
6,7,15,19,22
190:1,3,15,
14:1,5,9
15:10,20
16:3,4,12,18,
25 17:3 19:20
20:1,22 21:6
22:19,24
23:4,7,13,19
24:11 25:6
30:2 32:21,23
34:15 35:20
36:2,3 38:18,
20 39:7 41:24
42:3,13,18
44:4 45:18,20
46:9,11,19
47:11,17
48:20,23
49:5,8 50:21
51:6,16,22
52:1,4,9,14,
18,22,25 56:2
57:16 58:2,23
59:3,4,7
60:3,13 61:3

63:21 64:17
66:23 67:5
70:5 71:15,24
72:3,7,16
73:22,24
74:2,4,11
76:9,12 77:3
80:7,9 83:22,
23 85:8 88:22
90:5,13,17
91:4,6,14
93:8 96:21
97:23,24
98:14,16,24
99:12,19
101:14
102:12,15
104:7 108:22
111:8,15
112:6,7
117:15 118:4,
7,12,16
119:17 120:2
121:20 123:15
124:13 125:5
127:23
131:23
133:13,17
135:11,17
138:4,6,12
140:10
146:14,23
153:25 154:4,
15 161:3,17,
19 162:11
163:19,21
164:9,13
165:10 166:14
182:24 188:5,
6,7,25 189:1,
4,8,9,10
59:3,4,7
60:3,13 61:3

191:5,17
193:18 194:10
197:19,22
199:5,12,14
**Bridges'**
31:2,3 36:4
43:15 52:22
62:8 97:25
117:25 119:4
188:15
**brief**
183:3
**briefly**
140:11 167:17
179:5
**bring**
4:7 92:10
100:21 141:3
**Broadway**
200:4
**broken**
115:23
**budget**
44:19 186:18
**build**
15:21 125:6
126:18,19
144:10,19,20
145:7 147:7,
22 154:17
191:17
**Builders**
188:2
**building**
43:2 147:9
188:2,4,5
**built**
11:15 35:18
97:23 98:6
109:3 116:16

123:2,24
151:16 188:6,
7 191:22
195:7
**bullet**
54:1
**bunch**
78:3,5 154:7
**burden**
122:4 131:8,
12 153:7,9,12
157:10 168:13
169:1,12,16
**burdens**
153:10
**Burger**
19:1
**business**
105:13
187:23,25
196:22

**C**

**cage**
190:25
**calling**
15:8,10
**calls**
12:17 41:7
93:25 120:17
163:3 179:17
188:10 193:13
**capable**
16:13
**capital**
47:13
**captain**
15:8,11

Judge Dawn Caloca-Johnson
November 01, 2018

9

```
cast                  8,18,19          cheaper            167:21
  152:17              123:11,17          75:8,22          claimed
catch                 124:11,23        check              137:14 138:12
  4:25                125:3,14           20:6,10 64:10    148:2 150:4
category              126:16,22          65:1,11,13       176:3
  213:16              127:7,22,24        68:11 119:19     clarification
caveat                128:14,20,24       138:2 162:3        118:8 126:13
  177:13              130:10 132:1     checked             133:11 135:13
certificates          133:11 135:13      68:14            137:22 138:3,
  177:16              137:22 138:3,    choice              8,11,25
cetera                8,11,25            140:13 180:4     claims
  91:10 144:24        140:5,8          choices             109:19 142:7
changes               141:5,13           209:2            165:12 175:11
  73:18 90:21         143:1 145:2      chose              clarify
  138:14 170:24       147:24 149:22      72:24 73:21        64:25 106:6,
  213:4               154:21 155:8       134:12            25 189:17
changing              159:1,20         Chris              clarity
  133:3               163:7,18           101:9              17:7 78:2
characterized         164:4,21         circle               111:7 189:11
  86:6                165:2,12           147:15             202:11
charge                169:15 170:18    circumstances      clause
  42:14               174:17 176:4,      122:15 132:12      66:14 108:15
charging              24 183:23        citations          clean
  179:24 180:1        185:1,18           156:13            124:15 157:20
  207:24 208:15       189:18 191:4     cited               178:20 215:4
  211:6               194:3 197:20,      157:17,22,23     cleaned
Chaudhari             24 198:1,13,       158:3              215:5
  4:10,18,23          15,20,22         citing             clerk
  5:25 36:23          199:2 202:20       156:22             18:15 34:9
  55:16 66:4          203:2 205:2      civil               183:4 187:4
  92:17 94:17         206:16             16:6,8,11         client
  96:5,18 97:12       209:15,18           103:2             142:22 146:21
  98:12 104:18        210:6            claim                171:7
  105:6 110:19,     Chaudhari's          57:14 70:10      client's
  22 111:20           97:3 118:22,       74:6 78:18         129:16
  115:3 116:6         24 121:21          81:12 85:4       closings
  117:20,22           123:5 124:21       116:10 121:8       182:11
  118:6,11            130:17 136:2       127:7 131:11      coin
  119:12 120:4,       137:20,22          140:10 152:11      169:2
                      171:11
```

Judge Dawn Caloca-Johnson
November 01, 2018

11

```
conflating            construct         Consulting         2,5,7,13,19
  115:13 147:12         117:7,12,25       36:23 37:6        114:22,23,25
conflict                126:12 160:3,   contacted          116:10 118:1,
  214:15                8 161:10          19:7 89:8        15,19 119:11
conflicts               166:16          Contacting         122:6 123:1,
  179:18 181:2          172:15,20         174:16           15 125:5,14
  195:14              constructed       contend            127:21 129:9
conformed               151:16 192:23     118:24 117:12    130:17 131:13
  118:8 126:13          193:14            122:2            132:1 136:24
  160:3               conforms          content            139:2,11,12,
conforms                166:17            22:17            15,18,19
  166:17              constructing      context            140:4,6,9
confused                166:14 172:23     13:25 152:12     141:10 144:8,
  101:18,22           construction      contingency        9,14 145:4,5
  104:19                70:24,25          170:17           148:20,23
characterized           72:17 81:24     continued         152:7 157:3
  86:6                  82:1,2 119:4      4:2,21           160:24 164:17
connect                 121:24 122:1    contract          165:12 166:15
  164:4                 126:11 127:19     8:15 10:25       167:7 168:21,
connection              133:9 140:16      11:1 14:9,11,   22 169:18
  45:11 164:7           143:17            18 16:25         170:21,23
  190:14              145:11,12         17:6,12 24:10     171:4,12
connects                149:5,6           33:2,3 35:12     173:18 174:19
  189:6                151:15,19        50:20 51:6        175:8,19
consent                 153:2 156:11,     52:2 60:23       176:25 177:14
  132:3                 18 157:8,16       62:4 65:23       188:10 191:11
consider                174:4 184:2,    67:23,24 68:5     contracted
  44:5 157:7            3,11 187:20,    70:4 72:14,18      67:5 125:12,
considered              23 193:14       80:8,10 82:24     17 133:12
  159:8 160:14        construe            83:2,7,9,22      185:15
  165:9                 149:8            84:1 85:12,17    contracting
consistent            consultant          89:18,20,25      126:17 187:25
  62:9 171:3            19:5 196:3        90:22 94:19      contractor
  188:16              consultation        95:12 98:1       12:6 22:20,25
constitute              9:1,22 14:12      99:2,7 101:4,    23:7 25:1,3,7
  12:5                  84:13,21         106:7 107:1      71:8,11 73:23
                      consultations       108:10,14,24    146:23,24
                        16:10 84:23       111:7,10,15,    184:23 194:18
                      consulted           23,25 112:1,
                        28:1
```

Judge Dawn Caloca-Johnson
November 01, 2018

10

```
collected             123:10 124:1,    compliant          concerned
  14:2 85:2             3 129:2 135:1    95:24 118:7       82:8 142:12
comma                   136:18          conclusion        conclusion
  56:24 57:1            138:10,23         77:18 96:13       45:24 105:20
commencing              139:7 143:11    concrete           144:21,24
  200:6                 145:4 149:7      45:24 105:20       147:22,23
commensurate            151:4 164:15,    144:21,24         149:16,18,24
  182:4                 25               147:22,23         150:22 151:9
comment               complaint         149:16,18,24       188:12
  15:1 123:21           67:10 116:12     150:22 151:9      190:18,22
  147:19 156:17         125:4 160:1      188:12            191:1
  162:6 163:1           165:13 168:20   complied          condition
comments                174:7            56:6 131:4        119:13 161:21
  162:11              complaints         167:7             175:11 177:8
commercial              76:15 98:19     conditions        conditions
  188:3 196:21          115:23           11:15 131:1       11:15 131:1
  197:3,10            complete           146:1 166:15      146:1 166:15
common                  38:16 118:12    conduct           conduct
  92:10 136:10,         119:8 130:1      105:13           105:13
  21 137:7,8,9          137:1,2,21,23   confer            confer
  144:4 162:20          160:8 161:20,    16:19 178:16      16:19 178:16
communication           25 163:25       conference        conference
  30:8 88:23          completed          80:20,21         80:20,21
  197:25                14:9 55:7,9      82:22 105:15      82:22 105:15
communications          67:12,18         110:7 199:24     110:7 199:24
  19:19 23:13           119:16 130:25    207:24 208:15    207:24 208:15
  68:5 88:4             136:20 137:20    211:6            211:6
  89:9 192:10           170:22          conferences      conferences
competency              193:18,20        180:1            180:1
  95:17 96:25         completely        confirm          confirm
competent               132:23 136:3     5:3,14           5:3,14
  71:8,22,25          completing        confirmed        confirmed
  72:3,6 76:8           160:19 161:23     138:21 154:6     138:21 154:6
  81:1 96:15          completion         199:3           199:3
  106:19                61:16           confirms         confirms
  116:13,18           compliance         59:17            59:17
  117:6 118:21          72:9 97:1
  119:2 120:16,         123:16
  18 121:25
```

Judge Dawn Caloca-Johnson
November 01, 2018

12

```
contractor's         59:21             195:3             crossing
  71:6             cost               Court's            136:13 201:14
contractors          5:6 6:20 19:6     141:4 214:10     crux
  23:13              80:2,4 102:13    courtroom          123:5
contradicted         137:21 160:22     4:12 65:21       cubic
  119:13             161:1 192:23      66:2 77:10,22     49:6
contrary             205:15            84:15,24         cumulative
  48:23            costs               92:7,11 115:9     95:11 98:8
contributed          64:3,4,6          182:16 208:9      106:16
  170:3 176:1        137:18 146:8      209:8 210:24     cure
contributory       count               211:12            82:16 170:11
  175:20             122:14           cover             curious
contributory       counter-            80:11 191:12      155:10
  175:20           defendant          covered           currently
convey               161:16 165:10     61:14             11:9 44:2
  48:12            counter-           crafted            49:18 159:2
correcting         plaintiff           198:25            215:13
  120:11             122:17           created           customer
correction         counterclaim        154:13            52:24 191:24
  12:10 80:15        116:8 153:11     credible           198:5
corrective           165:9 166:7,      121:25 128:20    cut
  152:6              18,22 168:1,     creek              7:16 104:25
correctly            11 169:11         186:5,21
  53:5 81:22         178:23 215:18    crew
  correlation        216:19            43:2 45:13,16     ┌─────────┐
  133:25           counterproposal     48:20,22 65:5    │    D    │
correspondence       44:3              76:7 184:9       └─────────┘
                   country             195:14           d/b/a
                     68:6            criminal            194:9
                   counts              129:18 130:8     daily
                     115:23 116:11   cross               196:9
                   county              179:7 182:3      damage
                     25:20 26:11      202:7 211:18       121:7,15
                     28:12 29:8,16   cross-              141:20 142:18
                     30:5 31:1       examination        damaged
                     34:4,5,16        4:14,21 82:4       12:9
                     46:13 117:17     100:23 117:23     damages
                   course             130:14 193:23      89:14 103:11
                     12:19 88:15                         120:25 122:9,
                                                         10,13,19
                                                         137:11,14,20
```

Judge Dawn Caloca-Johnson
November 01, 2018

13

| | | | |
|---|---|---|---|
| 140:7 141:11,<br>14,16 143:21,<br>23 145:23<br>146:1,5,11<br>150:4,5<br>151:2,14<br>153:19<br>160:18,19<br>161:7,23<br>164:24 175:14<br>176:1,2,3,5 | 110:12 135:8<br><br>**deck**<br>144:21<br>149:16,24<br>151:7,8,9<br>188:12 190:5<br><br>**declined**<br>14:5<br><br>**deemed**<br>152:20 | 164:17 165:25<br>173:1 214:5<br><br>**defendant/<br>counter-<br>plaintiff**<br>122:3 182:22<br><br>**defending**<br>167:1<br><br>**defense**<br>105:8 115:4,6 | **defined**<br>131:21<br><br>**definitely**<br>27:13 49:10<br><br>**definition**<br>72:20 93:19<br>123:3,6 127:6<br>132:6 139:22<br>167:10<br><br>**definitions** |
| **dated**<br>25:11 28:23<br>29:5 44:25<br>46:17 61:3,4<br>65:15<br><br>**day-to-day**<br>132:24<br>196:12,20<br>197:5,6<br><br>**days**<br>70:23 72:17<br><br>**deal**<br>140:18<br><br>**dealing**<br>127:18 134:16<br>217:9<br><br>**decent**<br>180:14<br><br>**decide**<br>124:4 130:6<br>132:6 148:7<br>178:5<br><br>**decided**<br>56:8 123:20<br><br>**decides**<br>18:23 143:1<br>163:18,19<br><br>**decision** | **default**<br>170:12<br><br>**defect**<br>80:15,17,25<br>81:1,9,19,20<br>82:1 121:24<br>122:1 133:10<br>143:17 149:5,<br>6,7 151:15,19<br>174:4<br><br>**defective**<br>12:4 81:3,13<br>82:2 93:23<br>102:3<br><br>**defects**<br>119:4 120:11,<br>12<br><br>**defend**<br>166:24<br><br>**defendant**<br>4:14 107:8,13<br>117:12 120:25<br>121:11 160:9<br>161:12 165:10<br>168:23 172:16<br>188:19 192:3,<br>10 193:11<br><br>**defendant's**<br>120:17 121:13 | 153:19 167:14<br>168:12 169:12<br>172:1,14,19<br>173:5,12,14,<br>20,25 174:3<br>175:7,9,14,<br>15,18,22,24<br>176:6,15,17,<br>22 177:7,16,<br>24 214:22<br>216:19<br><br>**defense's**<br>182:25<br><br>**defenses**<br>97:21,22<br>115:22 116:6<br>134:1 165:16,<br>21,25 167:20,<br>22 168:2,14,<br>25 169:3,4<br>170:2 171:17,<br>24 177:19<br>178:6,25<br>214:6,8 215:4<br>216:21 217:21<br><br>**deficiencies**<br>83:9,12,13<br>170:8<br><br>**deficient**<br>177:11 | 127:19<br><br>**deflect**<br>100:24<br><br>**degree**<br>192:20<br><br>**delay**<br>29:6,15 30:3,<br>24<br><br>**delete**<br>213:22 216:1<br>217:16<br><br>**deliberate**<br>209:1<br><br>**delivered**<br>81:22<br><br>**demand**<br>175:1,3<br><br>**demanded**<br>174:21<br><br>**demanding**<br>35:10 63:13<br><br>**demonstrable**<br>149:6<br><br>**demonstrate**<br>22:12 122:17,<br>19 141:19,21<br>143:9 145:5<br>168:21 |

Judge Dawn Caloca-Johnson
November 01, 2018

| | | | |
|---|---|---|---|
| 197:22<br><br>**directed**<br>12:7 115:21<br>116:4,24<br>122:16,21<br>144:1 160:5<br>161:7,18<br>162:1 163:20<br>164:9,12,23<br>165:18 166:22<br>172:5<br><br>**directing**<br>15:24,25<br>16:2,4 165:11<br><br>**direction**<br>20:17 143:5<br>201:2<br><br>**directly**<br>19:10 148:1<br>158:21<br><br>**dirt**<br>44:7 51:17<br>146:3 161:6<br><br>**disagree**<br>133:21 157:23<br>217:15<br><br>**disagreement**<br>138:18 165:5<br><br>**disagrees**<br>198:15,18<br><br>**disclose**<br>181:17<br><br>**discovery**<br>12:20 59:16<br><br>**discrepancy**<br>88:16,17<br>124:5<br><br>**discuss**<br>22:16 48:12 | 108:22 208:18<br><br>**discussion**<br>6:20 26:3<br>35:18 40:7,11<br>42:4,16 44:9<br>46:8 49:22<br>51:19 61:6<br>70:10,13<br>90:24 178:18<br>179:5 212:6<br><br>**discussions**<br>5:4,7,8 20:13<br>40:21 43:3<br>86:1 132:2<br><br>**dismissed**<br>139:20<br><br>**displays**<br>23:19<br><br>**displeasure**<br>98:13,17<br><br>**dispute**<br>45:18,20 62:9<br>123:18<br>169:17,19<br><br>**disputing**<br>148:13,16<br><br>**dissatisfaction**<br>170:6<br><br>**distinction**<br>95:15 151:3<br>169:10<br><br>**distinctly**<br>185:1<br><br>**distinguish**<br>156:21<br><br>**ditch**<br>135:19 189:9<br><br>**division**<br>196:22 197:7 | **divisions**<br>197:2<br><br>**doctor**<br>129:11<br><br>**documentation**<br>203:17<br><br>**documents**<br>56:24 60:10,<br>12,14<br><br>**doggone**<br>129:20<br><br>**door**<br>20:1 209:6<br><br>**doubt**<br>127:23 130:6<br><br>**dove**<br>116:23<br><br>**dozens**<br>78:8<br><br>**drafted**<br>125:2 127:22<br>140:4<br><br>**drafter**<br>140:6,25<br>141:8,9<br><br>**drag**<br>53:19<br><br>**drawing**<br>11:12,14,20<br>82:20 109:8<br>113:12 121:21<br>200:23<br><br>**drawings**<br>27:11 195:22<br><br>**drawn**<br>75:1 196:4<br><br>**drew**<br>56:4,18 | 57:10,12<br>86:11<br><br>**driveway**<br>109:4 146:4<br>152:14 189:1,<br>12,16 204:4,<br>20<br><br>**driving**<br>189:3,5<br><br>**dropped**<br>45:6<br><br>**duly**<br>4:20 183:12<br>187:11<br><br>**duties**<br>195:3<br><br>**duty**<br>124:12,16<br><br>**dwelling**<br>204:4,6<br><br>---<br>**E**<br>---<br><br>**earth**<br>136:13<br><br>**easily**<br>139:20<br><br>**economic**<br>152:21<br><br>**effect**<br>70:4,11<br>139:12<br><br>**efficiently**<br>208:10<br><br>**effort**<br>100:23<br><br>**Ehrhardt**<br>158:23 |

Judge Dawn Caloca-Johnson
November 01, 2018

14

| | | | |
|---|---|---|---|
| **demonstrated**<br>52:24 151:14<br>163:13<br><br>**demonstrating**<br>118:21<br><br>**demonstration**<br>118:3 121:18<br>151:21,23,25<br><br>**denominated**<br>213:17<br><br>**DEP**<br>23:23 24:6<br>27:6 30:15<br>50:18 51:1,4,<br>20,24 52:8<br>53:21 54:16<br>55:11 87:19<br>97:19 134:8<br>154:24 155:7,<br>9,13,21<br>159:6,10,13<br>174:16<br><br>**departed**<br>67:6,8<br><br>**Department**<br>154:3 207:7<br><br>**departure**<br>64:5<br><br>**depend**<br>182:9<br><br>**depends**<br>18:18 90:12,<br>15 184:17<br><br>**depicted**<br>135:5 202:13<br><br>**depicting**<br>201:7<br><br>**depiction**<br>41:23 | **depicts**<br>203:9<br><br>**deposition**<br>39:5,21 40:2<br>41:9 60:11<br>134:7,9,13,15<br>199:15,21<br>200:1,2<br>202:19,22,23<br>203:2 206:16<br><br>**depositions**<br>134:17,18,20<br><br>**derived**<br>153:21<br><br>**describe**<br>18:21 193:11<br>206:4<br><br>**described**<br>121:10 146:10<br>183:18<br><br>**describes**<br>18:16 112:1<br>144:15<br><br>**description**<br>144:18 149:15<br>151:5 188:15<br>206:24 207:3<br><br>**design**<br>51:14 73:24<br>90:11,13<br>96:20 154:16<br>184:20 185:14<br><br>**designated**<br>200:8<br><br>**designed**<br>75:7<br><br>**designer**<br>184:21 | **desire**<br>73:19 74:10<br><br>**despite**<br>168:17<br><br>**detail**<br>191:9<br><br>**detailed**<br>173:2<br><br>**details**<br>64:16<br><br>**determine**<br>53:19 162:13,<br>25 173:23<br><br>**determined**<br>12:4 123:8<br>195:21<br><br>**develop**<br>6:25 14:2<br>15:7<br><br>**developed**<br>76:22<br><br>**developer**<br>143:1<br><br>**developing**<br>15:6 76:18<br><br>**development**<br>7:10,11,23<br>8:23 15:17,19<br>38:24 40:14<br>56:4,8,11,13,<br>14,18 57:11,<br>12 72:25<br>73:19,25<br>74:6,23,25<br>75:23 76:4,<br>18,25 79:4,<br>10,23 90:20,<br>25 98:23<br>161:12 162:5, | 7,9,24 163:2<br>164:2,8<br>173:17 189:13<br>196:23<br>200:17,24<br>201:14 202:5<br>203:6,15<br><br>**deviated**<br>31:8 172:23<br><br>**deviation**<br>148:4<br><br>**dictate**<br>43:5<br><br>**dictated**<br>108:13<br><br>**difference**<br>20:18 138:22<br>140:22 149:23<br>151:10<br>152:22,23<br><br>**differences**<br>55:25 149:23<br>170:9<br><br>**difficult**<br>31:21<br><br>**dimensions**<br>125:18<br><br>**diminution**<br>150:24 152:2<br><br>**direct**<br>6:1 16:16<br>17:18 22:18<br>25:17 26:5<br>30:7 42:12,<br>24,25 55:16,<br>19 82:17 98:8<br>161:15 164:18<br>182:4 183:14<br>187:13 196:15 |

Judge Dawn Caloca-Johnson
November 01, 2018

16

| | | | |
|---|---|---|---|
| **Eight**<br>175:16<br><br>**eighth**<br>175:24 176:6<br><br>**elicit**<br>81:5<br><br>**elicited**<br>89:22<br><br>**email**<br>6:19,23 8:1<br>21:20,21,24<br>22:4,14<br>28:23,25<br>29:2,4,11,14<br>30:18 31:1,<br>10,15 32:5,8<br>33:5,19<br>34:14,22<br>36:14,23,25<br>37:14 38:16<br>40:22,25<br>41:1,2,4,6,8<br>45:4,9 46:5,<br>11,15 47:6,8,<br>11 48:25<br>49:24,25<br>50:1,13 68:17<br>73:13 85:21,<br>24 86:4,12,<br>14,17,18,25<br>88:7,9,14,25<br>89:2,19 91:2<br>112:15,22<br>114:1 186:2,4<br>192:13,20<br>193:15 198:1,<br>23,25 199:2<br>209:18<br><br>**emailed**<br>14:22 68:10 | **emailing**<br>86:13<br><br>**emails**<br>12:20,22,24<br>14:16 21:22<br>22:3,6,9,16,<br>23 23:4 42:2<br>185:25<br><br>**employed**<br>13:20<br><br>**encapsulate**<br>190:5<br><br>**encased**<br>190:18<br><br>**encompasses**<br>191:1<br><br>**encroach**<br>189:25<br><br>**encroaches**<br>94:8,9<br><br>**encroaching**<br>37:3 189:20<br>190:6<br><br>**encroachment**<br>189:22<br><br>**engage**<br>24:8<br><br>**engaged**<br>14:7,11<br><br>**engagement**<br>7:18 17:8,9,<br>11 170:5<br><br>**engineer**<br>17:19,21,25<br>19:9 21:7<br>22:13,14 30:3<br>42:5 43:4,6<br>49:3 57:7<br>70:18 71:17, | 21 72:12,15<br>75:2,4 103:2,<br>3,9 109:8<br>125:24 126:4<br>136:14 143:3<br>164:21,24<br>194:20 195:24<br>196:1,2<br><br>**engineered**<br>195:22<br><br>**engineering**<br>7:15 16:6,9,<br>11 46:2<br>74:17,20,21<br>136:10 144:23<br>154:16 192:25<br>203:14<br><br>**engineers**<br>16:8,9 22:17<br>41:13<br><br>**enormous**<br>190:3<br><br>**ensure**<br>72:9<br><br>**entailed**<br>31:7 205:17<br>206:6<br><br>**enter**<br>52:1<br><br>**entered**<br>10:13 14:8<br>16:25 52:4,8<br>64:2 135:13<br><br>**enters**<br>4:12 66:2<br>92:11 182:16<br>210:24<br><br>**entire**<br>9:18 30:23 | 35:3 41:22<br>70:25 89:12<br><br>**entirely**<br>14:11 49:19<br>89:13<br><br>**entities**<br>12:24<br><br>**entitled**<br>110:21 116:3<br>150:1<br><br>**environmental**<br>24:7,12,13,24<br>32:25 50:19<br>51:4 85:5,7,<br>9,13,18<br>103:22 104:1,<br>6 121:12<br>128:13 137:17<br>141:18 142:14<br>143:4,6<br>150:6,10<br>154:3 207:8<br><br>**envisioned**<br>99:1<br><br>**equate**<br>33:23 152:18<br><br>**especially**<br>170:13<br><br>**essence**<br>64:16,19,20<br>147:10<br><br>**essentially**<br>14:1 42:12<br>114:13 141:24<br><br>**establish**<br>139:25 140:1<br>146:22<br><br>**established**<br>32:20 53:20 |

Judge Dawn Caloca-Johnson
November 01, 2018

80:17
establishes 156:8
estate 34:7
estimate 201:21
estimated 46:24
estimator 19:6 21:8,9 22:8 47:24
estoppel 217:21
et 91:9,10 144:24
evaluated 77:20 169:8
evaluation 69:5
evening 179:9
event 175:22
Eventually 86:16
everybody 21:23 66:22 138:17 211:1
everyday 127:9
evidence 26:3 37:12 44:2 46:6 80:16 81:1,8 82:3 96:15 108:16,17 116:13,20 118:9,20,21 119:2 121:25 123:11 127:15 129:3,21 131:15 134:11 135:2 136:19 138:10,24 143:25 156:3 158:10,23,24 160:24 161:2 162:9,12 163:11 164:3,20 168:10,19 169:11 183:5 187:5 193:2,8 207:20 213:5 215:24
evidentiary 28:19
exactly 112:1 120:3 137:8 149:16 153:4 156:2,5 195:18 205:11,19 206:2,5
examination 16:16 55:16 92:15 111:5 183:14 187:13 197:22
examined 4:20 183:13 187:12
example 17:17 159:1 160:7 161:2 184:19 215:19
excellent
52:23
exception 147:18
excerpt 199:20
exchange 92:23
excluded 49:12 50:2
exercise 120:20 208:6
exhaustible 174:14
exhibit 5:20,24 10:24 20:24 28:14,18 33:15,18 36:16,21 44:1,13,24 46:10 47:20 50:14 62:13 66:7 87:4 93:1 94:18 112:3 160:12 188:17 192:15,16 193:7 198:19 200:14,17,20 202:13 209:13,17,18
exhibits 60:22 200:13 209:10
existence 80:25 168:21
existing 29:13 35:4
exists 170:14
expedited 67:12
experience 76:18 104:21 129:24 130:15 142:4 153:2 163:14 184:1 218:8
experienced 126:10 166:13 167:9
experiences 187:20
expert 81:15,17 82:1 93:16 97:9,12 116:18 119:5 122:15 146:14 158:8 169:14 171:25 172:13 182:8 183:1 205:3 208:17
expertise 146:18
experts 97:13 109:17 134:4,6 159:15,19
expire 51:6,14 194:19
expired 38:17 51:9 104:2,8,9 153:22,23
expiring 85:22 103:22

Judge Dawn Caloca-Johnson
November 01, 2018

filed 97:21
filing 175:2
fill 44:7,8,12 45:1,23 46:23,25 47:1,19 49:4,6 51:23 161:3,6
final 60:2 70:19 72:8 92:20 119:4 161:21 167:15 170:19 206:15
finalized 208:1
financially 91:9
finder 53:9 123:8,20
finding 172:5
finds 154:9
finish 178:4
finished 55:4 179:23
finishes 45:12
finishing 44:9
firm 136:10 153:4
first 5:2 6:2 23:18 25:19,23,25 41:8 44:5 48:13 50:15 62:14 63:4,21 64:10 68:5,20 71:7 72:20 76:23,25 81:12 105:17 113:11 115:16 122:25 146:14 158:8 169:14
fit 79:3 118:17 126:12 186:22
fits 152:4
five 39:17 181:1,5
five-minute 65:17
fix 155:23
flip 64:21
flood 172:24 190:2,4
floodway 202:2,7,8
Floor 200:4
Florida
95:2,4,8,14 153:2 156:22 157:18,21 158:14,22 159:15 188:1 203:1
flow 122:10,14,19 137:12 140:8 141:14,20 146:1 190:6,7
flowing 145:23
focus 30:1 66:12
focused 66:14 68:22,25
focusing 31:11
folder 45:6 212:14
folks 86:21 159:24
folks' 135:23
follow 33:22 58:6 82:8 85:15 110:21 136:4 160:12 165:5
follow-up 31:16 32:1 108:19 110:20 111:5 113:4,5
followed 27:11 36:13 82:10
following 30:18 36:9 39:25 68:23 80:21 105:15
follows 4:20 40:3 183:13 187:12
Fond 200:3
foray 76:16
forced 57:15 58:1
foreground 190:11
foreign 140:14
foremost 122:25
forgot 105:14
forgotten 106:23
formal 10:13
formed 192:2
forth 25:16 53:21 60:12 62:23 112:10 118:1 154:9 185:8
forwarded 40:15 86:15,16
forwarding 36:12
found

Judge Dawn Caloca-Johnson
November 01, 2018

explain 31:22 35:12 53:23 66:18 104:24 109:14 188:22 203:18,19
explained 35:15 117:19 145:11
explaining 34:17 77:17
explanation 192:19
express 99:11 119:14
expressed 98:13,17 99:18 170:5
extend 29:1
extensively 103:21 124:20
extent 119:11 142:25 146:25 177:5
extra 48:9 212:3,9
extremely 82:7
eye 217:2
eyes 126:20,21

F
facilitate 17:9,10
fact 7:21 10:22 14:23 19:7 33:10 38:25 41:17 50:2 53:9 68:4 107:16 118:19 121:10 123:9,20 149:14 152:20 154:10 159:4 168:8 192:11 207:5
facts 126:9
factual 176:11 177:5
factually 177:22
failed 117:12 118:7,12,25 122:3,17,19 137:1,2 138:12,13 148:10 166:14 170:10 172:5,20 175:12 177:8
failing 119:8,18,25 120:15 126:12 138:1 149:4 152:6 160:2,8 161:10,20 162:3 163:23,24 164:10,15 166:16 177:15
failure 120:9 142:14 143:23 153:15,16
166:10 174:13 177:25
fairly 140:15 180:14 183:17
fairness 173:4
falling 54:17
falls 213:16
false 29:20
familiar 18:6,8,10,12 24:3 34:1
far 59:4,9 120:5
father 23:23 24:6,8
father's 14:3 15:7 32:24 56:12
favor 116:4 140:25 141:8 146:9
favorite 150:3
February 28:23 29:3,5 30:3,24 32:6,16,18 34:22 35:10,19,25 51:7,10,14 67:6 85:23 202:20,24
Federal 157:25
feel 100:23,24 132:9
feels 95:2 165:2
feet 41:21,23 125:22 144:21 172:25 188:11 189:24 201:19,21 202:7,15 205:24 206:13
felony 129:21
felt 71:14 80:12
fence 26:7,8,9 27:2 32:23,24 54:4,6,8,17,21,23 55:2,3,7,10,11 117:22,23 124:19 162:17,19
field 42:9 126:11 166:13
Fifth 174:3
figure 10:2 14:21 107:17 40:5 162:15 165:21 214:4
file 46:12 47:8 211:16

Judge Dawn Caloca-Johnson
November 01, 2018

8:17,20 145:25 212:16
foundation 94:11 96:13 102:6 103:18 104:13
four 93:12 124:22 207:12
fourth 116:11 173:12,24
frame 67:9,17
framed 107:15
framework 60:19
fraudulent 145:18
Fredon 63:2,5
free 9:25 147:22 190:23
free-span 144:20 188:11
frequently 140:15
Friday 179:12
friendly 10:25
front 37:3,10 42:9 47:21 54:3 59:1 66:10 77:14 81:8
130:16 142:1 198:20 200:15
frustrated 156:9 175:25
frustration 156:9 175:25
fulfilled 145:1
full 59:5,10 61:7 170:15 187:18
function 133:2
fundamental 146:20
funny 95:2
furnish 11:12,19
further 6:25 36:5 38:15 105:4 138:1 162:6 166:20 181:24 189:13 193:21 195:5
furtherance 168:11,12

G
gap 54:19
Garcia 17:18 19:9 20:5 21:7,8,19,20 22:3,7,12 40:23 47:24 102:20,
22 103:1,6,8 147:17,21,25 197:12,19,25
Garcia's 19:21 20:19
gathered 130:12 159:23
gathering 33:24
generally 24:8 218:8 196:12 218:8
gentleman 42:14 56:17
gentleman's 43:1
geotech 6:8
geotechnical 5:17
germane 40:17
giving 34:19 85:14 203:24 215:17
glasses 201:15
God 183:8 187:7
goes 20:1 107:22,23 124:19 122:24 135:19 143:15 148:1,7 150:19 176:1 186:11,17 189:5 213:23
gotten 5:16 28:9
governing 173:19
grand 108:1
granted 128:25 144:2 160:5 161:8
graphics 201:19
grasp 153:4
grateful 153:1
gravel 50:5,8,9,10 52:7 146:4
greater 90:21
greatly 180:13
Green 20:2 27:20 28:22 29:5 30:8 31:3,12 32:5 33:10,12,19 34:22 35:1,10 42:15 43:3 48:17 92:3 84:16 87:1 90:4 107:10 108:4 110:23 111:1 125:25 126:3 138:15 149:23 179:4 183:3,4,11,16 187:1 195:1,5,8

Judge Dawn Caloca-Johnson
November 01, 2018

21

198:23 202:25
209:19
**Green's**
42:22
**ground**
124:18
**grounds**
76:11 122:2
**group**
13:15
**guardrail**
50:3,6 52:7
**Guddemi**
5:7,12 6:2
9:9,19 14:19
73:10,13
101:9 203:7

**H**

**half**
39:20 175:2
**hammer**
209:23
**hand**
21:2 183:5
187:4 202:21
**handle**
197:10
**handling**
16:13
**hang**
171:8
**happens**
140:15
**happy**
36:5 99:19
106:24 179:3
191:6,7,14,19

210:9,12
**harm**
108:5
**harmed**
148:5
**Harper**
4:9 21:16
27:14 29:17
31:20,25
43:8,17,20
53:11 57:18
65:24 69:6
73:2,4 75:9
78:23 81:12,
16 82:4 91:22
92:12,14,16
94:6,16 95:7,
12 96:1,4,17
97:2,11,20
98:11 99:6,
10,17 100:21
101:2 102:8
103:20
104:15,17
105:4,7,8,25
106:4,21,22
107:12,18,20
108:3 109:5,
16,21,25
110:20 111:2,
3 113:3,22,25
115:5,10,17
122:22,23
125:7,13
126:3,15,25
127:2,5,9,12,
21 128:2,5,8,
17,24 129:5,
7,18,19,24
130:3,21,24
131:3,19

132:21
136:17,23
137:4,8,15,25
140:19,21
146:12 147:3,
13,14,19,20
148:12,14,16,
24 153:1,9,14
154:13
155:15,18,24
156:4,14,20
157:2,11,14,
25 166:6,8,
21,23 167:5
169:13,19,23
170:1 171:6,
11 172:6,7,11
173:21 174:2,
8,10,15,16,24
175:1,24,25
176:5,17,20,
23 178:11
179:16
180:20,24,25
181:15,20,22
182:13 186:25
193:4,5,24
196:16,24
198:3 199:5
202:21
207:16,17
209:20,21
210:2,3,20,21
211:24,25
212:8,10,11,
16,21,24
213:2,7,20,
24,25 214:6,
9,25 215:10,
15,22 216:2,
4,7,9,14,16,
23 217:11

218:3,4,5
**Harper's**
144:4 168:17
**hat**
143:1 171:8
**hear**
23:20 213:9
**hearsay**
129:16,22
130:9 131:17
133:3 158:18,
20,24 159:24
163:12
**heavily**
60:6 130:9
**height**
190:2,8,10,14
195:21
**help**
6:25 14:2,6,
21 27:18,23
36:1,5 38:14
58:21 73:11
87:18 88:22
101:20 155:11
183:8 187:7
**helped**
88:23
**helping**
87:20
**Hey**
13:3
**Hi**
48:1
**highest**
52:23

Judge Dawn Caloca-Johnson
November 01, 2018

23

60:2 87:12
211:3
**indication**
14:15
**individual**
13:14
**individually**
169:7
**inducement**
145:18
**industry**
81:24 135:17
140:16
145:11,12
187:21
**inferring**
57:15 156:23
**initial**
31:5,14 32:7,
12 183:17
**inside**
189:23 190:25
**insignificant**
171:1
**insinuated**
156:11,16
**insofar**
142:11
**inspections**
177:15
**installation**
5:18 6:11
151:22 184:16
188:4 196:21
197:3,11
**installed**
77:2 81:21
151:20

**instance**
145:9
**instances**
155:6
**instructed**
31:19 110:9
**instruction**
106:1 177:7,9
178:3 211:21
214:22 215:2
**instructions**
117:1 123:23
177:10,20
178:20 179:8
180:15 207:21
208:2,5,24
209:23
211:14,24
214:7 215:11
217:10,13,16
**insufficient**
116:2 121:5
145:22
**integrated**
113:15
**intended**
118:14 154:11
160:10,16
172:17 177:12
**intent**
175:4
**intention**
182:2
**interactions**
28:3
**interested**
28:21
**interesting**
107:11 139:8,

9
**interim**
42:13,17
43:15,22
**intermediate**
190:24
**interrogatories**
173:16
**interstate**
189:3
**invoice**
8:25 36:4,10,
12,13,14,25
37:6,13,15,
22,23 38:4,5,
12 60:22,23
61:2,4,10,13
62:2
**invoices**
61:22
**involved**
27:21 28:8
60:6 192:1
197:18
**involvement**
187:20
**involving**
124:6
**irregularities**
124:7
**irrelevant**
109:7,23
**issue**
25:3,23 28:7
34:10 55:12
58:1 64:25
88:6,14
115:24
116:19,21

118:10 119:6
120:23 128:7
141:24 142:23
144:4 150:20
161:14 162:20
165:14 168:18
179:15 183:6
187:6 215:10
**issued**
134:9
**issues**
4:6 25:16
28:10 58:21
117:22 123:18
127:19 136:1
129:15 140:23
143:22 147:13
175:19
180:13,18
207:6 217:4
**item**
25:19 26:18
28:4 117:19
121:15,17
142:18 151:15
188:10
**items**
26:8,9,10,17,
18,19,23
27:1,4,9,24
28:4 48:9
49:2 50:2
53:21,23,25
118:2 119:15
121:14 143:25
203:10

**J**

**J.D.**
187:3,10,22

Judge Dawn Caloca-Johnson
November 01, 2018

22

**highly**
16:7 81:22
**hire**
7:5,9,22 9:3,
5,8,12,13
19:14 72:25
74:4,9 88:5
101:19 134:4
**hired**
9:5 16:25
38:23 73:9,
17,18,22
74:4,5,11
87:22 88:12
155:15
**hiring**
88:2 147:7
**history**
60:16
**holder**
23:23 24:6,8
117:16 154:21
156:9
**holistic**
117:2
**home**
14:3 76:19
209:24 211:1,
2
**homeowner**
142:9
**homes**
188:2
**honesty**
214:11
**Honor's**
174:6
**hopefully**
92:18 211:10

**hour**
97:3
**hours**
127:15
**hours'**
115:11,14
**house**
109:3 152:15
204:20
**howsoever**
61:23 62:1
**hundred**
60:24 61:16,
18 113:1
**hypothetically**
151:5

**I**

**idea**
40:7 91:23
133:22 166:24
196:18 205:16
**identical**
166:5,6
167:25 172:1,
18
**identification**
5:21,24 28:15
33:16 36:17
200:18
**identified**
103:1 123:14
188:14 207:7
**identify**
171:22 214:12
**ignore**
132:19
**imagine**

180:2 186:16
**impetus**
152:22 156:1
**implement**
138:13 163:24
**implementation**
16:5,11
**implication**
57:20 58:1,3,
4
**implied**
111:10
**imply**
58:22
**implying**
59:3
**importance**
184:3
**important**
66:25 67:1
188:24
**importantly**
214:10
**impossible**
162:24 185:20
**improper**
105:2
**improvements**
192:22 193:13
**inadmissible**
158:18,22
163:12 170:14
**inappropriate**
147:19 171:19
**inartfully**
140:5
**incentive**
191:16

**include**
5:17 6:16
16:16,17,22
111:8 161:5
192:22
**including**
193:14
**incompletion**
81:18
**incorporated**
111:15
113:12,17,21
173:18,22
196:25 197:2
**incorrect**
27:7 28:13
42:24 86:12
151:22,23
**incorrectly**
5:13 151:20,
21 204:5
**increase**
119:25 138:12
163:23
**incumbent**
157:8
**incurred**
64:4,6
**incurring**
64:3
**indeterminate**
46:25
**indicate**
33:19
**indicated**
25:11 80:12
204:12
**indicates**
22:7 37:4,8

Judge Dawn Caloca-Johnson
November 01, 2018

24

194:8 196:25
197:2,8
**James**
23:18 60:22
61:7,10 62:13
115:16 149:14
161:4 179:6
187:3,10,15,
22 192:14,16
194:2,9,14,15
196:25 197:2,
8 198:4 199:9
**Jefferson**
34:5
**Jersey**
22:20,25
23:8,14 24:6
25:7 27:6
94:22,24,25
95:13,21,24
97:18 111:11,
18 122:6
126:23 127:4
128:3,6,9
130:13 133:11
134:20
140:12,24
146:15,25
156:11,22
157:7,16,18
158:9,12,13,
19 159:6,13,
21 162:20
207:7
**Jersey's**
153:5
**job**

18:4,7,11,16,
21 24:19
26:15,24
45:11 76:13
99:13,20
124:14 143:3,
7 170:21
**Joe**
144:9
**July**
8:18 9:4,8,20
10:10 12:18
40:22 67:21
88:3,5 183:19
200:5
**jump**
88:20
**jumped**
88:15
**Jumping**
202:9
**June**
203:7
**juror**
181:24
**jurors**
105:14 180:5,
12
**jury**
4:7,12 53:4
59:1 65:21,23
66:2 78:2
80:22 81:8
92:7,10,11
95:13 105:11,
16 113:5
115:8,9
116:3,22
117:1 119:6
121:1,6

123:22 124:4
127:15
129:14,15,17,
23 130:6,16
131:15 132:5
134:11 135:24
136:1 141:25
142:5 144:16
145:25 146:8
148:6 171:7
172:8 177:6,
20 178:3,6,20
179:8,11,25
180:2 181:9,
12 182:14,16,
21 187:19
193:10 207:21
208:1,2,5,8,
21 209:8,23
210:11,24
211:3,12,13,
20,23 215:11
217:6,9
**justice**
133:4,6
**justifiably**
170:20

**K**

**kinds**
158:14 159:19
**King**
19:1
**knock**
209:6
**knowing**
72:22 162:23
180:1 121:6

**L**

**labor**
172:11
**lady's**
19:2
**LAN**
5:5 6:20,24
7:9,13,17,18,
20,21 8:15,
22,24 9:1,2,
3,5,12,15,17,
21 10:10,14
12:16,24
13:25 14:6,7
16:4,6,19
17:2,5,6,12
19:14 38:23
41:18,20,21
56:3,17 72:25
73:9,17,18
74:1,3,4,5,14
75:20 76:2
78:19 79:2,6,
8,12 80:3
86:2,21 87:22
88:2,5,19
89:18 90:24
100:14,16,22
101:3,19
125:1 134:14,
17 135:3,15
155:9,15
199:16
**land**
7:24 14:3
76:18 207:22
**landscape**
210:4

25

Lane
203:1
language
68:23 118:18
174:25
larger
184:19 185:9
191:10,13,19
late
208:13
latest
155:3
law
18:15 57:5
94:12,21
95:14,21,24
96:1 109:18
122:7 126:19,
23,25 127:4
128:3,9 130:4
132:18 133:1,
9 140:12,13,
18,24 148:20,
22 152:8
153:3,5
156:11,19,22,
23 157:8,12,
13,16,17,18,
19,22 158:2,9,
12,13,14,19,
23 159:6
165:5
laws
94:22 111:11,
18 118:8
126:13 128:13
148:11 159:22
160:4 166:17
lawsuit

10:21 78:19
97:21 98:18
lawyer
16:17 95:25
128:25 159:10
lawyers
110:11,13
lay
93:25 129:4,5
131:15 147:16
158:16,17,20,
23 159:15
162:15,25
163:7 166:25
184:8 207:22
218:9
leader
48:20,22 65:5
76:8 88:20
leading
99:14 152:14
leak
151:18
learned
155:16
leave
130:6
leaves
45:13 65:21
92:7 115:9
165:13 209:8
211:12
leaving
68:6 175:6
216:2
left
4:13 42:9
45:16,18,20
54:18,22,24

55:12,14
140:3 207:19
legal
126:17 132:14
148:21 153:5
161:14 167:19
168:9 171:20
173:14,20
175:7,18,22
176:15 177:19
legally
169:6
legitimate
139:21
length
201:25
leniency
132:10
letter
23:22,24
24:3,5 25:9,
10,16 27:6,19
53:21 54:5,7,
11,16 55:11
87:19 175:1,3
letterhead
22:23 23:5
letters
47:13
level
52:23 146:18
147:10 174:17
license
23:8,14 128:5
147:4 194:19
licensed
22:20,25
23:7,13
litigation
60:7

146:15,23,24
147:8 166:13
167:8 194:18
licenses
23:19
life
93:10
light
170:13
likes
216:3
limited
158:20 197:23
limiting
133:22
line
30:21 35:4
38:7 41:11
49:15 53:16
72:20 88:23
91:10 101:20
102:20 200:9,
10 202:10
203:3,12
204:10,25
205:1,7,20,
21,22 206:18,
23
lines
99:12 101:17
list
48:8 66:7
167:23
listed
119:15 162:14
listening
188:8
litigation
60:7

26

live
187:22 207:18
local
25:20 28:11
34:4 106:10,
12 117:17
192:25
located
63:6 159:3
172:24
location
47:9 78:21
79:4,9,23
83:15,16 90:8
107:9,14
108:9,13
110:23 111:14
117:7,9
123:14,16
124:23,25,24
134:25 135:5
139:23 140:1,
3 154:17,19
172:25 174:1
185:2,6,8,17,
18 186:13,14
195:6,13,17
202:4,13
204:3,16,19
207:1,9,9,12
locations
117:10 173:9
204:14,22
205:4
locked
210:11
logged
62:15
logic
18:25

long
91:20 177:20
178:15 181:10
182:3,11
185:24 192:2
196:11 201:22
208:4 210:19
213:7 216:24
longer
55:7
looked
60:9 196:10
lose
142:23 143:7
lot
12:20,22,25
14:12 17:16
19:13,16
22:9,16 60:14
78:6,7,9
84:13 88:4
132:22 143:20
180:16 181:8
182:19 186:17
188:6,7,10
211:7
loud
53:4
Louis
48:14,16
49:8,23 55:17
56:2 59:6,25
62:21 63:2,4,
13 64:23
65:4,11 99:23
100:1,9,11
101:6
Louis's
49:6

love
172:7
Luken
4:8,13,16,22
5:22 21:17,18
27:16,17
28:16 29:21
31:18 32:4
33:17 36:18
43:10,11,18,
24 45:5,7,8
53:12,14
57:19,23,24
65:16,25 66:3
69:8,9 73:7
75:11,13,17,
19 79:1
80:19,23
81:14,19
82:6,12,21,23
91:16,19,24
92:3 93:24
94:13 95:5,
10,17 96:12,
24 97:15 98:7
99:4,8,14,23
100:13,18
110:16 102:5,
20,25 103:17,
21 104:12
105:1,10,21
106:3,9,14,25
107:6,11,13
108:7,11,21
109:1,19
110:4,20
111:4,6,19,24
116:9,23
117:18 125:8
127:125 128:5,
7 130:14,25

131:5 134:24
137:11,16
140:11,20,22
144:7 149:1,
2,12 150:14
156:18 157:5
165:14 166:2,
9,19 167:17
171:5 172:3
173:3,13
174:4,12
175:1,10,17
176:8,14
177:3 178:8,
12,19 179:13
180:10,21
181:14,16
182:2 183:2,
15 186:24
187:2,14
193:1,9,17,21
196:14 197:21
199:8,11,18,
20 200:11,19
209:11,17
210:1,13,17,
22 211:15,22
212:2,9,13,20
213:6,10,11,
14,23 214:3,
21 223:5,2,11,
21,23 216:3,
5,8,17,18
217:4,13,20
218:1,7,12,17
Luken's
123:21 153:2
124:15 125:1,
13,18 125:8
127:125 133:8,
7 130:14,25,8
lunch
91:17 92:2,6,
8

28

M

M.D.
57:5
ma'am
5:11 6:1,4,7
10,13,18,22
7:1 8:3,7
10:7,12,16,23
11:4,10,16,21
12:13,22
13:10,21,23
14:1,16,20
15:2,10,18
16:1,21,23
18:5,8,18,22
20:3,8,15
21:1,22 22:1,
22 23:10,16
24:2,4 25:8,
13,22 27:7
28:13 29:9
30:21 33:14
34:3,8 35:3
38:1,4 39:23
41:12,16,23
46:1 47:5,15,
22 48:11
49:7,19,22
50:4,16,22
52:3 54:6,10,
16 56:2,10,20
58:4,20,24
60:8 61:18
62:5,16,19,24
63:3,7,9,18,
22,24 64:7,14
65:6 66:11,17
71:4,21 75:25

76:15 77:5,12
78:1,13 79:7,
18,25 80:4,
10,14 83:4,
14,18 84:5
85:7,11
86:12,24
87:2,6,16,17,
24 88:4,13,17
89:1,11 90:7
91:12,15
112:4,10,20
114:8 183:21,
25 184:5
188:7 189:23
190:10
203:11,16,19,
25 204:17,23,
24 205:6
206:3,22
207:3,10
212:24 214:25
maintain
24:16 54:20,
23 55:2,3
major
169:9 188:13
malpractice
136:16
man
75:2 86:11
man-hours
120:6
manager
18:15 19:3
20:7,10 31:14
42:14,18,23
43:15,23
195:4 196:21
manned

70:12
manner
160:23
manufacture
151:23
manufactured
81:21 151:20
March
23:22 25:11
36:24 53:20
mark
54:12
marked
5:20,23
28:14,18
33:15 36:16
94:18 200:17
mason
187:25
match
74:17
matches
63:25
material
44:8,12 45:2,
23 46:23
47:19 49:5
51:23 122:5,
8,11,18
141:14 150:19
168:22
169:11,18,20,
23
materials
12:9 150:8,24
Matt
28:22 29:4
30:19,20
31:2,4,12,14

32:6,7,9
35:11 37:13
85:25 86:8
195:25
matters
42:8 116:1,4
124:20
Matthew
27:21 28:3
72:7 74:21
196:1,8
meaning
53:7,9
meaningful
96:6 118:13
133:15
160:10,16
172:17
meant
58:5
measure
41:14 137:20
146:4 151:1
measured
186:3
measurement
186:4
measures
152:6 163:25
207:12
mechanical
103:9
mediate
175:5
mediation
174:20,23
medical
129:13

28

meet
122:4 177:8
179:9 210:14
217:19
meeting
144:12
meets
167:9
member
74:1 88:19
mention
13:2 53:24
83:8,25
153:18 207:4
mentioned
26:12 32:11
52:2 100:22
125:11 153:15
156:7
mentioning
20:14 124:11
mentions
37:19 124:9
mere
39:20 145:14
message
63:10,13 65:3
messages
58:24 62:22,
24
met all
72:9
mid-morning
65:19
Miller
72:3 76:7,13,
15
millwork

188:3 196:21
197:1,3,10
mind
60:20 115:18
146:14 177:3
minds
144:12
minor
26:18 27:4
37:20 38:11
122:12
minute
7:17 15:12
39:11 60:19
68:5 181:18
minutes
92:3 179:17
181:2,6
210:21
miscellaneous
37:16
mischaracteriza
tion
29:12
misinformed
30:19 31:4,13
134:5,12
misrepresentati
on
35:23 53:3
misrepresented
29:19
missed
30:22
missing
29:24
mistaken
29:22,24

misunderstood
115:17
mitigate
166:10
mitigation
169:5
modification
105:18 108:15
132:14 148:4
modifications
105:23 106:6
107:1 112:2
211:17
modified
105:19 217:23
modify
38:24 218:15
moment
12:19 178:15
199:13
moments
134:3
money
58:16 80:7
102:16,18
134:5,12
money-wise
161:25
month
68:7,11
months
24:5 54:18,
21 55:12,14
86:23 175:2
193:18,19

4:23,24
208:17,23
217:1 217:1
motion
105:10 165:20
166:2
mouth
30:11
moved
188:1
moving
13:4 26:2
135:20 122:16
209:9
multiple
139:1

N

narrow
82:7,8,10
narrowed
180:13
nature
5:9 7:12,14
11:1,19 12:25
13:25 14:5,9
15:10,20
16:3,4,12,18,
25 17:3 19:20
20:1,21 21:6
22:19,24
23:3,4,6,22,
19 24:11 25:6
30:2 31:2,3
32:21,23
34:15 35:20
36:3,8 37:18,
19 39:6 41:24
42:3,13,18

---

43:14 44:3
45:1,20
46:9,11,18
47:11,17
48:20,22
49:5,8 50:20
51:6,16,21
52:1,4,9,14,
20,22,25
54:12,18,21,
25 56:2 57:16
58:2,22 59:3,
4,7 60:3,12
61:2 62:7
63:21 64:17
65:2 66:23
67:5 70:4
71:14,24
72:3,7,16
73:22,24
74:2,4,11
76:8,12 77:2
80:6,7,8
82:9,11 83:2,
23 85:8 88:22
90:5,17 91:4,
6,14 96:20
97:23,24,25
98:13,16,24
99:11,19
101:14
102:12,15
104:7 108:22
111:8,15
112:6,7
117:15,25
118:3,7,12,16
119:3,17
120:2 121:20
123:15 124:13
125:4 127:22
130:20,22

131:23
133:12,17
138:4,6,12
140:9 146:14,
22 153:25
154:4,15
161:3,17,19
162:1 163:19,
21 164:9,13
165:10 182:23
188:15 191:5,
16 193:18
194:9 197:7
**navigating**
153:6
**necessarily**
18:18 133:21
175:20
**negligence**
175:20
**negotiate**
112:5 141:1,6
**negotiated**
112:9 114:11
**Neither**
162:8
**new**
22:20,25
23:8,14 24:5
25:7 27:6
46:3 90:8,9
94:22,24,25
95:13,21,24
97:18 111:10,
18 122:6
126:23 127:3
128:3,5,9
130:12 133:11
134:20
140:12,24

143:5 146:15,
25 150:13
153:4 155:12
156:1,11,22
157:7,16,18
158:9,12,13,
19 159:6,13,
24 174:16
183:19 200:5
207:7
**nice**
109:17
**nine**
176:7 193:17,
19
**non-competent**
120:22
**noncompliance**
206:25 207:4,
6
**noncompliant**
93:22 94:5,7
**nonresponsive**
86:7
**nonresponsivene
ss**
88:11
**noon**
92:2
**normal**
151:1 190:5,6
**normally**
196:17
**note**
4:3 200:16
**notes**
42:10 90:4
**notice**
25:25 27:21,

25 28:8 30:4
37:21 38:11
87:21 107:9,
14 110:23
111:1 115:11,
14 117:13,20
124:7,9
127:12 134:8
155:4 156:1,7
170:13 175:4,
5 206:20
207:10
**notices**
115:1,14
**notification**
132:3
**notified**
37:1 138:25
139:4
**notify**
154:24
**notion**
136:22
**notwithstanding**
132:8
**nuclear**
96:2
**number**
11:10 23:8,15
33:20,23
34:2,3,10,16,
19,20 47:2
70:20 84:7
87:3 97:3
123:23 124:6,
8 166:12
177:13 185:22
203:10
205:10,12
211:21 212:19

---

213:1,3,21
215:2
**numbered**
54:1
**numbers**
47:1

**O**
**object**
107:18 209:9
216:11,12,14
218:5
**objecting**
216:25
**objection**
21:16 27:14
43:8,17 53:11
57:18 69:6
73:2,3,4
75:9,14,15
78:23 93:24
94:13 95:5,
10,22 96:12,
14 100:18
102:5 103:17
104:12 105:1
113:22 124:8
172:9 193:4
196:14 197:21
209:20 215:13
218:4
**objective**
82:13
**obligated**
50:20 51:5
117:16
**obligation**
11:12,18 12:2

16:18 55:1
124:12 165:4
168:20
**observable**
162:15
**observations**
77:25 78:12
**observe**
119:19 138:2
159:4 162:4
**observed**
77:9,20
**obtain**
46:13 50:20
51:5 85:18
124:13 177:15
**obtained**
51:9 104:1
161:12
**obtaining**
24:12 85:14
**occurred**
14:15
**occurs**
88:2
**October**
44:25 46:16,
17,18 47:11
50:16,17
51:3,12
52:16,25 60:3
64:21 65:14,
15
**offer**
7:2,4
**offered**
48:3,4 58:12
158:15,17

**offering**
212:11
**official**
34:6,11 88:5
**officially**
18:2 68:15,17
**old**
187:24
**once**
138:23 155:16
168:4 178:21
217:3
**ones**
21:6 36:20
54:6 110:1
167:24 171:22
215:12,14
216:11,12,24
217:5,14
**ongoing**
8:13
**open**
37:1
**open-ended**
140:4
**opening**
46:3,4,7,9,12
47:3,7,12,18
**operating**
195:12
**operation**
197:5
**operational**
138:14 163:24
**operations**
132:24
196:13,20

**opine**
129:12 149:23
**opining**
82:2
**opinion**
82:2 93:25
96:14 129:4,
5,8,16 130:17
131:16 133:8
134:16 140:9
145:7 158:20,
24 159:8,9,
21,25 163:7,
10,15 164:5
166:25
167:11,12
**opinions**
109:15 132:22
158:15,16,17
159:15,16
**opportunity**
31:24 141:1,6
171:16 188:22
**opposed**
31:23
**option**
76:9 208:22
**ordered**
185:18
**ordinances**
118:9 126:14
148:11 159:22
160:4 166:17
**organized**
158:8
**original**
29:7,15 30:4,
16,25 35:14

---

51:9,13,14
95:20 117:18
153:21,23
**originally**
15:16 51:8
61:10 104:1
**ought**
215:19
**outside**
36:7 37:17,19
80:22 105:16
196:14
**overall**
184:3
**overhead**
191:13,14
**overlap**
165:16
**overnighted**
65:1
**overpass**
189:4
**Overruled**
43:21 57:22
73:6 78:24
99:15 196:19
**oversee**
120:16 164:16
196:22
**owes**
80:7 157:4
**owner**
12:8 48:14
55:17 58:9
68:24 69:11,
15,18 139:3,
16 171:9,10,
13,14 184:15,

21,23 186:2
192:17
194:12,13
**owner's**
170:22 177:1
184:21

**P**
**P.E.**
56:25 57:1,3,
8 72:13 75:2
76:2 79:16
87:9 134:16
**p.m.**
92:9 218:19
**page**
33:20,23
34:2,3,10,16,
19 44:3 50:15
53:8 64:21
59:8 208:21,
22 203:12,12
204:10,25
205:1,7
206:18,23
**paid**
13:22 38:2
55:18,20,22
58:15 59:5,9,
12 64:8,13,
22,23 168:16
**pains**
91:7
**pair**
7:12
**paper**
23:12 44:14,
17

**paperwork**
62:6
**paragraph**
6:2 11:8,10,
11,17,22 12:3
48:13 49:11
66:9,17 68:21
69:25 71:6
72:10 80:13
98:1 116:14
117:5,7
118:6,11,23
119:3,7,17,24
120:3 127:18
128:12 129:2
129:2 131:6,7
136:17 137:14
138:11,24
148:8 149:3
152:5 160:1,7
161:8,9,14,
18,22 166:18
172:2,18
174:6
**paragraphs**
11:7 54:2
83:4 133:23
135:12 167:25
**Pardon**
64:24
**parents**
71:1
**Parker**
27:18,20,21
28:4,22 29:5
30:20 31:2,12
32:6 34:23
35:11,25
36:23 37:6,13
66:8 72:8

85:25 86:9,20
87:7,14,18,25
88:18 89:19
195:25 196:1,
8 206:19
**Parker's**
74:21 88:7
**parole**
108:15
**part**
11:19 12:4
25:4 56:1,3
59:15 61:20
80:14 88:6
100:5 103:11
106:7 110:10
112:18 113:1
114:18 136:5
137:3 149:22
152:5 166:3
171:19 188:24
194:13 196:9
200:7 205:21
**participate**
207:25
**participated**
14:12
**particular**
81:20 102:21
118:17 130:8
184:7 203:17
**particularized**
81:23
**particularly**
140:16
**parties**
105:18 112:17
126:24 147:10
164:22

---

**parties'**
177:14
**parts**
144:5,6
**party**
140:25
**path**
50:5,8,9,10
**pay**
15:20 37:22
38:3 57:14,16
58:2,11,21,23
59:3 61:23
62:2 85:18
102:12,18
131:10 135:21
171:2,8 176:9
**paying**
15:12,14,16
57:16 58:3
73:14 182:7
**payment**
8:24 9:1,15,
16,17 10:10
60:2 61:15
62:14 63:13,
21 64:17
92:20 161:22
167:15 168:12
170:20 173:5
175:3 177:17
**payments**
9:21,23 58:12
**perceived**
158:21
**percent**
60:24 61:16,
18 94:4 113:1
124:22

**perennial**
66:7
**Perfect**
57:13
**perform**
8:22 70:5
151:17 153:16
**performance**
71:9 72:1
97:25
**performed**
21:25 52:23
58:17 70:16
76:21 140:9
146:17
**period**
5:10 14:8
141:22 180:6
**permissible**
107:15
**permit**
23:23 24:6,7,
8 25:19
26:10,14,22,
24 28:11
29:7,16 30:5,
17,25 32:13,
15,18,25
33:20,23
154:1 177:15

143:11,24
153:21 154:22
155:12 156:9
161:11 162:4,
6,8,12,14,18,
20,23 164:2,8
172:22 173:10
**permitee**
154:21,22
**permits**
24:12,14,18,
19,24 31:9
38:17,22
50:18,19
51:1,4,5,8,
13,18,20,24
52:8 67:11
85:13,15,18,
22 96:10
103:22,25
104:2,6,11
106:11,12
119:1 128:13
136:4 138:4
142:15 143:4,
6 150:13
153:20,23
154:1 177:15
**permitted**
116:17 117:8,
10,11 123:25
141:24 155:21
172:25 173:9
**permitting**
32:22 44:19
85:5,10
121:9,11,12
137:17 142:14
150:7,11

**perpetuate**
134:10,18
**person**
120:21 123:12
127:10 147:7
162:15,25
164:18,24
165:2 166:25
191:18
**person's**
18:21 218:9
**personal**
77:8 78:12
121:3
**personally**
71:2 77:9,20
**personnel**
19:7
**pertains**
132:11
**pharmacist**
96:3
**phone**
12:17 41:1,3,
7 61:19 63:2
179:17 183:23
**photograph**
188:16 189:21
**physical**
77:25 84:9
**physically**
70:15,17
**picked**
123:15
**picture**
12:16 126:21
127:10 186:6
189:18

## Page 253 / 33

```
pictures              plaintiff's          23 200:17,23,       pled
  78:3,5                5:20,24 10:24         24 201:14           145:19 167:25
piece                   20:24 28:14,        202:5 203:6,       pointed
  23:12 34:6            18 33:15,18           9,15 214:20         82:20 128:24
  44:14,17             36:21 41:16,21       217:24             points
  46:20 49:7           43:25 44:1,         planning             20:5 48:13
  76:18 143:8          12,24 46:10          14:23 203:15         54:1 87:20
  170:18 189:12        47:20 50:14        plans               portion
pieces                 60:21 87:4           7:11 40:15          6:8 84:10
  137:22 188:22        93:1 94:18           46:2 51:9            199:13
pin                    116:6,12            56:11,13,14,          212:17
  6:20                 139:17 165:13        15 57:12           portions
pitch                  166:1 170:16        72:25 74:12,         199:12 207:15
  192:20               188:17 192:15        13,17,18,20,       position
place                  193:2,7             22 75:12 90:9         18:21 97:6
  14:18 17:1           209:13,17           96:20,23             141:7 142:25
  144:17 152:17      plan                   97:1,2,18            144:4 173:17,
  161:6 186:23         8:23 15:17,19       111:17 114:15         21
  199:25               38:24 40:14         121:18 138:5       possessed
placed                 56:5,8,18           154:14 174:18         154:20
  163:9 186:15         57:11 73:19,        196:4,7            possible
  218:2                25 74:6,9,11,      play                  178:4 185:16
plaintiff              24,25 75:23          66:7                210:18
  4:8 115:20           76:4 78:21         played              Possibly
  116:16 118:24        79:4,11,23           134:19              62:5
  119:7,24             86:11 90:21,       pleading           post-contract
  120:14 126:10        25 107:25            100:19 166:3        131:24
  135:7 137:25         108:17,18,23       pleadings          posted
  149:3,9 160:7        109:3,8              125:8 171:20        26:15 124:16
  161:9,13,19,         111:8,11,13,         212:10,14         posting
  24 162:2             17,22 112:13       please               26:24
  163:21,22            113:12,16,19,        11:5 21:4         potential
  164:10,12,14,        20 115:19           23:25 24:9          189:12
  23 166:12            119:20 124:25       36:20 42:25       poured
  167:1 170:10         125:1 134:22        50:15 69:25         105:20
  172:15,20,22         135:6 136:7,        74:15 75:22       prattling
  177:14 182:23        8,14 152:10         76:4 78:25          81:2
  187:2 207:13         161:12 162:5,       90:1,2 99:16      preapproved
  213:6                7,9,24 163:2,       200:14 212:12
                       9 164:2,8           214:11 216:25
                       173:17 179:12
                       185:9,11,19,
```

## Page 255 / 35

```
44:10 55:4            94:8,10 98:24        143:18,24           70:3 71:11,
61:17 68:2            101:13,16            157:10 169:14         19,24 80:13
70:6,12 71:25        120:17 133:12       proved                121:23 143:16
72:16 87:23          135:11 164:17         120:25               174:20
88:3 103:12,         170:18 173:1       proven               provisions
16 106:11            184:7 189:20          121:16 137:10         140:13
119:8 120:16         192:18,22            142:15,16          pull
136:19 137:2,        194:24 195:2,         151:2 160:18         165:24
3,19 138:19          4 206:4              161:7,24           pulled
161:20,23,25       proposal               164:23 169:15        106:13
162:19 164:1,        7:2,4 16:6         provide             purchase
16 175:12            19:25 38:20           10:14 16:9          124:13 192:16
184:4,18,19          44:5,6,8,10,         24:13 70:5        purchasing
195:4 196:20         11,15,18,19,         76:10 80:9          18:15
203:14 205:18        22,23 45:10,         83:3,23           purpose
projects             23 46:1,24          105:25 109:14        18:20 105:2
  13:12 184:11       47:3,23 48:2        120:15 121:20        118:14,17
prompted             49:4 51:17,23       144:22,23           160:11,16
  41:4               52:2,3 91:4,5       146:15 168:18        172:17
prompting            149:11 161:2        192:19               190:19,21
  51:19            proposals           provided            purposely
promptly             7:14 19:21,20,22     7:14 17:23          197:23
  12:6               20:18,21             40:9 68:1        purposes
proof                52:5                 96:20 104:7         15:6 44:20
  116:2 117:4,6    propose               111:11 131:22        159:14
  118:23 120:22      148:19              149:25 151:25     pursuant
  121:1 122:4      proposed              163:1 164:13         8:22
  137:24 145:22      49:13 185:8         164:11 188:19     pursue
  146:7 168:14,      204:3,4,6,14,     provides              109:19
  23 169:1,12        16,19,20,21         95:13 123:1      put
proper               205:4 211:20        139:2 174:19        6:19 30:10
  107:17,20          214:7             providing             39:11 48:25
  108:12           proposing             11:2 18:23          78:20 79:9,22
properly             103:12              37:17 48:2          124:17 125:20
  177:15           Protection            90:5 115:11         130:15 134:25
property             154:3 207:8       provision             135:4 136:11
  12:9 15:7        prove                 66:9 67:20,23        142:1 146:7,
  48:14 55:17        81:14,25            82:9 69:1,5,         20 151:18
  58:9 63:5          117:13 129:1        10,17,20,24         155:12 163:8,
  76:22,25 78:4      131:12 141:13
```

## Page 254 / 34

```
172:25 173:9          160:25 168:10       33:5,8 41:8         157:24,25
precast                182:22              67:11 76:16,         195:13
  147:23 149:9         207:17,20           17 88:2 124:8     proceed
precedent            presenting           172:9 195:10,        4:15 10:3
  132:23 161:21        166:25              14,15 204:13        24:14 183:1
  175:11 177:8       preserved          privately           proceedings
precisely              135:24              208:19              4:1,3,4
  108:15 144:15      presuit            privy                 104:19 218:19
predates               174:21,23           197:18            process
  88:9               presuming          probably              7:23 18:12
predicate              80:24              9:16 19:24          66:19 79:23
  94:1,13            presumption          21:23 50:24         108:5 115:16
  96:12,25             140:24 141:8,      73:10 91:23         166:3 168:4
  102:5 103:17         9                 108:5 115:16      processes
  104:12 119:21      pretty              116:7 141:12         12:13
  218:10               64:2,6 91:9       152:20 155:25     produced
prefer                 166:9 192:10      162:19 175:13        60:10,12
  52:21 177:6          215:7             182:12 194:4      product
preferable           previous           195:22 213:15        119:4
  182:13               96:24             214:4 215:7,      production
preliminary          previously          18                 13:17
  44:14,17             4:19 116:17      problem             products
prepare                117:8 123:25       10:2 67:4          151:11
  9:4 10:18          price               74:7 109:10      professional
prepared               45:1 48:2,4,      135:6 138:6         6:24 57:7
  201:1,2              7,10 49:13        139:1 143:10        72:12,15 91:9
presence               191:11,14         145:17 160:18       184:20
  182:20             pricing             170:3 180:12     professor
present                5:15 20:11        181:24 215:7        96:1
  110:3 135:1,         40:24 186:1      problems           progress
  24 167:6,7           205:17             86:21 138:18       61:22
presentation         print               139:1 170:6      prohibit
  182:25               180:20           procedural          108:16
presented            printer             157:22,24        project
  110:18               180:18             158:4,11          7:10,13 8:12,
  116:13,20,22       printing            168:8              17 13:14,16
  128:19 129:17        180:18          procedurally         14:5 16:13
  134:11 139:25      prior               167:18             20:6,10 31:3
                                       procedure            42:14,18,22
                                         110:10             43:15,22
```

## Page 256 / 36

```
17 165:22             quickest             101:6               rebut
168:6 178:25           187:16            Ratti's                145:4
182:4 186:7,         quickly              59:18,20           rebuttal
9,10,11,19,            92:19 181:4       raw                   115:15 165:23
20,22 188:25           183:17 209:1        7:23 14:3           168:7 178:14,
200:15                 210:18              210:18              22,24 182:14,
202:12,14,16         quite              re-permitted           25
208:12 209:4           66:12 89:23         103:13,16         rebutted
214:21                 100:13 143:14    reach                  167:12
putting                182:18              86:2,5 87:25     recap
  20:25             quote                 88:24 129:25        25:18
                      41:4 47:18,19      208:19             receive
    ____             137:17 137:21     readily                37:23 38:5
      Q              191:6,7             162:15              92:20,23
    ____                                realistically        107:8,13
qualifications         ____              180:3              110:22,25
  142:4                  R             realize             recess
qualified              ____              38:21 42:6          65:20,22 92:8
  71:22 72:22      radio               realized              105:12 158:6
  95:23 128:9,       214:18              10:2                181:7
  15,17 129:14     raising             realizing           recognize
  136:14             149:19              30:14                57:5 59:20
qualify            rain                reapplication          200:20
  95:25 177:23       190:3               153:20             recollection
quality            raise               reasonable            43:12 62:10
  150:20             138:8 183:4         76:10 123:12,     reconcile
quantification       187:4               13 138:14          55:24
  150:20           raised              reasonableness
quantifying          25:4 97:22          69:5,13 123:7
  46:25              127:7 170:2       reasonably
quarter            raising               163:25
  179:22             55:11 140:23      reasoning
query              Ratti                 78:10 161:14
  95:18              55:17 56:2        reasons
questioning          57:13,16            52:16,20
  41:11 91:11        58:2,23 59:4,       88:11 122:20
  101:20 102:23      5,7 60:19           170:1 172:4
  110:10 113:5       62:21 63:13
quick                64:12,18,22
  60:16 80:20        65:11 99:24
  178:15 180:11      100:1,9,11
```

```
record                  27:3 54:5              registering           remain
  32:24 33:4          reference                 31:5,14 32:7,        133:16 166:11
  34:9 35:13            28:18 206:25              12                remaining
  82:14 105:13          207:11                 reject                119:10 168:6
  117:17 132:10       references                120:21             remedied
  156:21 157:20         143:17                 relate                170:17
  159:14 163:18       referencing               153:20 164:7       remedies
  178:18 179:3          23:24 30:19            related                174:14
  187:18               69:22 71:12,            130:11,12           remedy
  199:13,15,25          13 73:13                152:10 173:25        170:7 214:16
  200:8,16              111:13 198:21           176:19 197:25      remind
  202:12,18           referring                relates               90:1
  212:6                 32:13 130:7             128:13 197:7       Remington
recorded                153:16 193:12         relationship          202:25
  25:20 26:10           204:24                   49:8              removal
  30:17 32:13,        reflect                  relative              76:11
  15,19 33:7,           31:9                     143:10 168:19     remove
  13,21,24            reframe                    214:8               152:19
  34:25 35:2,           69:8                   relatively            213:11,14,19
  11,21,22            refused                    157:1 208:25      removed
recording               170:7                  relevance             55:10 84:3,6,
  26:21 28:11         regard                     95:5,11 97:15       12,19 85:3
records                 77:7 78:10              99:4 156:7           102:10 137:18
  34:11 62:8            88:16 139:8            relevancy              142:19,20
redirect                149:21                   100:19 105:1      render
  21:15 31:25         regarding                relevant              159:8,16
  92:15 199:7           15:1 28:4               164:2                163:14
redo                    159:14                 relied              rendered
  174:19              regardless                157:12               163:7 164:5
redone                  82:15 118:18          relies               renew
  12:9 85:20           142:3 143:9             130:9                 38:22 52:8
  89:17              regards                  relieved                165:20
redraw                  128:11 138:11           216:25             renewed
  75:22 76:4           146:12 153:14          rely                   51:18 103:23
reduced                 198:19                  129:25               104:2,8,11
  186:18,19          registered               relying                154:1
reengaged               29:7,16 30:5,           198:22,24         reopen
  8:22                 25 57:7                                       218:13
reestablished           72:11,15
```

```
retaining               rule                  39:3,9 40:11,        188:15 196:9,
  161:5                 31:21 108:16            12,16,19 48:1        14,17,18
review                  110:2 132:25           49:23 73:14          197:22
  110:11 119:18         157:24,25              83:18 91:15        seal
  138:1 162:3           158:3,4                102:20,21            201:4
reviewed              ruled                    103:1,6,8          seat
  20:2                  165:17 166:22          147:17,21,25         115:4
reviewing             rules                    197:12            second
  60:12 196:8           118:9 126:14         sat                   12:3 44:3
Richard                 132:16,19             60:11                 50:6 117:19
  56:22 57:1           133:1,3             satisfaction             152:5 156:7
  74:19 75:2,4,         148:11                139:16                216:22
  5 76:1,5 87:9        158:10,11             170:16,22           secondary
  89:3 101:9           159:22 160:4          177:1                 16:11 19:7
  199:15 200:2         166:18             satisfied                 36:14
Rick                  ruling                   99:19 131:1       section
  48:19 65:4,5          167:19,21          satisfy                  159:16 176:25
  72:2 76:7,13,         168:3 174:6           149:4 152:7          186:21
  15 101:12            181:17 214:10       scale                 seek
Rick's                rulings                  201:19               108:16
  48:19 49:1           28:19              scenario               seeking
  53:15,17           run                       132:13              10:21 122:21
rise                    66:6 180:7         schedule                 141:17
  190:4                 212:1                  66:9 67:20        send
road                  running                  68:1,3 134:15       34:9 49:4
  46:2,4,7,9,13         43:1 179:20            139:10,22            61:20 89:12
  47:2,7,12,18                                scheduled             119:6 121:6
  59:24,25                    8                 134:17              129:15 195:1
  189:4,5                                    scheduling          sending
roadway               safe                      214:15              36:10 37:13
  189:6,9               203:4              scientific               162:1 199:2
  190:11,14          Saket                      159:17            sends
role                    4:18 197:19        scope                   46:19 89:9
  197:6                 202:20                 36:2,3,8           sense
roles                sales                      37:18,19            93:20 136:10,
  90:21                 18:15 19:2,4          51:22 52:9           21 137:7,8,9
room                    192:20               92:25 99:3,7        144:4 162:20
  36:22 115:8        Santiago                  113:7 119:10,       165:23
  208:8 210:11         17:13,15,18            16 139:21
                       21:7,8 32:21
```

```
repair                  45:22 46:1           resident             167:16
  12:8                 108:24 113:14          133:11            responsibility
repeat                  185:25 186:20       residential            24:21,23
  23:2 30:21         requesting                76:19,25           32:23 55:8
  32:3 70:7             40:21              resides                 85:17 117:25
  78:25 99:16        requests                  59:25               121:13 142:22
  104:5                 8:9                resolution              191:23 198:5
repetition           require                    208:19          responsible
  168:17                81:17 118:16       resolve                 24:11,15
replace                 119:21 134:6          27:6,8 35:16        42:22 85:9,
  12:7,8                162:22                 58:21 88:16,        12,14
replacement          required                  17,21 217:4      responsive
  12:10 49:2           12:9 23:20          resolved                87:13
replenish               90:22 106:11          27:5,10            rest
  7:24 9:19            109:16 117:24          109:20 179:14        98:23 152:9
reply                   118:4 136:7        resolves                158:22
  166:2 216:20         146:17 161:25          83:13             restart
  217:21               191:3 202:15       respect                 30:23
report               requirement               7:10 57:25       restate
  211:8                 109:18 162:21         94:14 95:18         57:22
Reporters               164:24                96:13,25         rested
  200:4 202:25         174:22,25              116:19 117:9,       115:4,7
representation       requirements              13 120:12          182:23
  25:5 120:18          42:22 119:1,          121:17 122:4      restrictions
representative          19 138:2              137:13 140:23       14:5
  71:7,9,22,25         152:8 159:13          141:10 143:13     rests
  72:1,6,6             161:11 162:4,          149:2 165:20        105:9 207:13
  76:8 164:19,         10,14 163:1           174:6 197:24      resubmitted
  22 184:24            172:21                 217:20             104:11
representatives      requires               respects           result
  71:15 120:16         12:11 96:14            71:10               12:10 34:25
  164:16               118:20             respond                 140:7 142:13
request                 121:20,23             47:20,23         resulting
  17:13 49:12          122:8,9                148:25             124:7
  76:10 82:17          136:24 170:21      responded           retainer
  175:4 181:1        research                  14:25 47:25       7:24 8:5,9,11
requested               156:13             response               9:11,19 14:19
  8:11 9:10          researched                43:16 88:25       73:12
  14:19 39:6           128:7 156:15          145:2,15
                       157:16
```

```
sentence                shortly              significant          47:10 49:24
  7:7 29:19             35:9,25 62:3          171:1                50:13,24 53:2
  69:3 71:8          shots                 significantly           56:7 59:13
  144:9 145:7           15:9,11              185:12                60:6 61:14
  205:22             showed                silent                 64:13 65:3
sentences               40:25 63:23          214:18               66:10 69:24
  25:25 32:10        showing               silt                   70:20 71:19
  75:18                 111:13                26:6,8,9 27:2       72:2,10 73:8,
separate                119:21,23            53:22,24             16 74:24
  116:11                121:24 122:5,        54:4,6,8,17,         83:16,19
September               9                    20,23 55:2,3,        84:18 85:17
  19:19,22           shows                    7,10,11              89:13,22
  45:12,19             74:24 75:1            117:22,23            90:10 92:22,
  54:13 61:3,4         134:22 204:7          124:19               25 93:3,5,7,
  63:12,18,24        side                     162:17,18           9,15,18,21
  64:9,12 67:7,        45:2,24 157:4       similar                94:20 95:1,3
  15 206:17            165:3 186:6           158:14,23            96:7,11 98:2,
service                 189:1,8 197:1        161:22 176:18        4,18,21,25
  52:24 90:17,      sidebar                simple                 99:9,25
  19                    80:21 82:22          77:6 83:19           100:3,8,10,12
services                104:14 105:15        111:12 157:1        101:5,8,11,
  7:15 8:12            110:7                  214:14 215:8        13,15,21,24
  16:7,8 37:7,      sides                  simply                 102:1,4,11,
  16 38:8 55:21        109:17 152:13          10:4 31:13          14,17,19,24
  73:15 90:6           162:18 182:19         70:21 73:16         103:5,10,14,
setting              sight                     77:19 83:21        16 104:3,20,
  53:21                 142:23 143:7         84:22 104:10         23 111:12
seven               signature                  130:17            112:16,21,23
  175:16                19:21 20:19          156:20,22           113:2,16,20
Seventh                 21:24 22:3        single                  114:17 193:25
  175:8                 23:5 59:18,          20:23 89:12         194:7,13
shifting                20,22 139:13      sir                    195:9 196:3
  12:19                 201:4                10:25 11:6           197:14 198:7,
short                signed                    15:5 20:23         9 201:16,20
  181:13 182:24         14:4 21:5            26:2,20 29:14        203:5
  206:15               68:6 105:18          30:1,6,9,12       sit
Shorthand               106:6 107:2          31:11 32:23         124:10
  200:4                 108:25                32:3 39:4,24     site
                       114:23,25             40:4,21 42:7        6:25 7:10,11
                                              44:2 46:10         8:23 14:3,12
                                                                 15:17,18
```

Judge Dawn Caloca-Johnson
November 01, 2018

41

26:15,25
38:24 40:14
43:4,6 45:13,
17,19,21 49:3
51:9 53:1,3
54:13,18,22
55:12 56:4,7,
10,12,14,18
57:10,12 64:5
67:6 70:15,
17,18,21,23
71:1,16,18
72:15,25
74:6,18,23,25
75:23 76:4,19
77:24 78:21
79:4,10,23
90:20,25
96:20,22
97:2,17
107:10,25
108:17,18,23
109:4,18
110:24 111:1,
8,11,12,17,22
112:12
113:12,16,19,
20 114:15
117:21 119:20
120:5,19
124:15,25
125:1 134:22
135:6 136:7,
8,14 138:5
152:10 161:12
162:5,7,8,24
163:2,9
164:2,6,8,19,
25 173:17
174:18 183:18
184:2,6,7

185:5,9,11,19
189:14
200:17,23
201:14 202:4
203:6,9,15
**site-specific**
154:16
**sitting**
210:9
**situation**
29:13 88:21
135:25 185:6
**situations**
180:8 184:14
**six**
54:17,21
55:12,14
68:14 174:11
**six-month**
54:19
**sixth**
175:6
**size**
15:1 108:23,
24 116:15,17
123:24,25
124:3,5,24
125:2,10,15
184:17 186:19
191:8 201:11,
13 207:1,9,11
**skill**
159:7
**skipping**
50:12 203:12
204:10 205:7,
20 206:23
**slabs**
149:9

**small**
21:2 172:24
**smaller**
38:25 39:2
42:8 75:23
191:17
**solemnly**
183:5 187:5
**somebody**
45:5 77:21
78:11 89:8
134:8 135:10
142:2 151:7
159:10 163:11
**somebody's**
129:13
**somewhat**
169:3
**son**
154:22
**sooner**
67:13,14
181:25
**sort**
4:25 16:18
20:15 25:5
55:1 67:4,10
77:24 122:1
127:24 140:14
143:15 152:22
154:2 192:19
**sorts**
50:25 123:7
**sought**
137:12 142:18
**sound**
91:23
**sounds**
32:23 54:15

126:4
**South**
187:25
**SP-21**
200:24
**span**
40:8 136:12
147:22 185:24
190:23,24
191:2 202:1,
2,8
**speak**
70:12 144:3
**speaking**
9:18:14
83:5 185:1
**speaks**
120:10 125:14
**special**
13:18
**specialist**
73:14
**specialized**
16:8 109:13
159:7,18
163:13
**specific**
21:23 40:10
118:15 168:19
188:10
**specifically**
10:17 89:2
93:1 116:14
121:1 144:15
146:10 164:18
172:22
193:11,13
197:7

---

Judge Dawn Caloca-Johnson
November 01, 2018

43

**structure**
13:11 93:22
94:11 96:5,9,
19 97:17,23
98:3,5,14,17
102:2,9
105:19 120:13
171:2 190:22,
24 191:2
195:6 198:12
**stuff**
24:17 126:7
127:24 143:20
**sub-consultant**
30:2 31:3
**subject**
68:23 69:5
79:14 109:12
117:15 119:2
124:8 129:10
130:14 171:10
**subjective**
118:22
**subjectively**
119:12
**subjectivity**
69:14
**submit**
148:19 174:18
**submitted**
30:15 46:2
81:15 110:17
155:24
**subpoena**
108:4
**subsequently**
97:24
**substance**
31:10 165:8

**substantial**
123:11 124:1,
4 129:2
130:12 135:2
136:18
138:10,24
204:9
**substantive**
153:5 157:19,
23
**substituted**
149:9
**sue**
55:18,20,23
58:9,10,19
63:14 175:4
**sued**
100:11,12
136:16
**sufficiency**
167:20 168:9
169:10
**sufficient**
69:21 70:5,9
119:6 120:7,
25 128:21
131:20 138:7,
16 139:7
142:5 145:8
169:6
**sufficiently**
70:12 98:13
120:15 121:10
164:15,25
**suggest**
7:5 47:1 58:5
106:22 136:19
138:24
146:17,20
166:4 171:18

**suggested**
19:15
**suggesting**
58:6 97:11
125:3 171:6,
15 204:2
**suggests**
7:21 9:9,19
59:12,13
125:4
**suing**
100:9
**suit**
175:2
**sum**
165:8
**support**
72:22
**supported**
215:23
**supportive**
89:11
**suppose**
178:2
**supposed**
9:12 19:2
120:3 146:2
151:17 152:13
190:9
**surprise**
106:24
**surrounding**
132:12
**survey**
10:11,15,18,
22 11:3,14
12:12 30:15
77:12 78:13
80:2,5,9

83:3,8,13,21,
25
**surveyed**
11:19
**surveyor**
194:22
**suspect**
132:21
**sustained**
27:15 43:9
53:13 94:15
95:6,22 96:14
98:10 101:1
102:7 103:19
104:16 105:3
198:2
**swear**
183:5 187:5
**sworn**
4:20 183:13
187:12
**sympathetic**
165:3

**T**

**tag**
19:2
**talks**
152:6
**Tallahassee**
140:17 203:1
**tasked**
153:6
**team**
12:25 13:2,3,
13,16,17,18,
19,24 14:1,4
15:8 16:6,12

---

Judge Dawn Caloca-Johnson
November 01, 2018

42

**specificities**
90:22
**specifics**
67:20
**specify**
29:25
**specs**
173:15
**spend**
134:4,12
150:6,10
**spent**
38:11 100:13
208:7 210:10
211:7
**spirit**
113:4
**spoke**
10:7 91:15
103:21 183:23
206:1,2
**spot**
186:3,7,17
208:12 209:5
**stage**
190:2
**stake**
124:17 185:16
195:13
**staked**
185:2 195:6,
16
**staking**
179:6
**stand**
4:11 142:2
**standard**
123:7 132:15

135:17 146:21
147:5 153:5
167:4 168:13
195:12
**standards**
167:2
**standing**
121:5
**stands**
96:6
**start**
81:2 87:23
116:5 150:12
180:22 184:10
199:24
200:10,14
202:22 208:17
212:18
**started**
4:14 64:3
91:25 114:2
180:15 187:24
188:2,5
200:13 211:22
217:25
**starting**
116:14
199:19,22
203:2 204:10
205:1,7,22
206:17,23
**starts**
200:8
**state**
11:24 23:7,14
25:7 29:15
32:5 94:21
97:6 106:10,
12 146:15,24
177:25 187:18

199:25
**stated**
62:11
**statement**
35:1 77:15
130:3 204:13
**statements**
28:22 31:11,
16 129:16
131:18 158:18
198:22
**state[d]**
10:19 33:22
38:10,16 71:7
82:25 87:14
105:18
**stating**
18:1 76:10
126:8
**statute**
159:14
**Statutes**
159:15
**staying**
177:3
**stays**
175:16
**steel**
105:19 144:21
147:22
154:19,14
150:21 151:7,
8 152:16
188:11
190:16,21,25
191:2 192:22
193:12,14
198:21 199:3
**STENOGRAPHER'S**

4:3
**Stenotype**
202:25
**step**
115:7
**steps**
33:9
**Steve**
144:10
**Stillwater**
59:23,25
**stipulate**
214:13
**stipulated**
107:3
**stop**
55:22
**stream**
40:8 41:11,
14,21,22 42:2
77:3 94:8,9
186:13 188:25
189:1,2,8,10,
20,22,25
190:1,6,7,25
204:7,8
**strength**
190:22
**stricken**
17:17
172:14,19
174:11
**strike**
133:24 165:20
166:3 167:23
168:1 171:23
172:3 176:15
**structurally**
72:22

---

Judge Dawn Caloca-Johnson
November 01, 2018

44

48:16 52:22
55:24 56:1,3
73:25 88:19,
20
**teams**
13:12
**tear**
150:11
**technical**
159:17
162:13,21
**technically**
160:14
**telling**
34:11 49:20
87:25 115:18
**tells**
6:3 37:14,15
38:14 65:4
136:10 144:5
**temporary**
54:9
**ten**
72:17 97:3
173:16 177:2
**ten-minute**
65:20
**tenth**
176:16,21
**term**
57:8 81:20,23
122:8 123:2
141:14,20
173:15
**terms**
17:8 40:23
61:15 67:9
84:2 112:9,11
118:4 119:14

120:3 145:10
164:1 166:15
169:10
**text**
39:10
**testified**
4:20 17:17
22:18 83:14
124:11
125:15,16,19
127:14 128:14
130:11,21
131:3 132:1
135:4 136:4,
24 138:3,15,
17 147:21,24
25 159:2,20
161:4 183:13,
22 187:12
189:19 195:8,
20 198:4
**testify**
23:18 109:9,
10 121:4
125:24 128:15
138:9 159:4,
5,11 162:22
163:5
**testifying**
43:20 73:5
75:10,16
97:10 113:10
114:14
**testimony**
23:20,21 26:6
43:13 48:23
55:19 57:25
58:8,15 64:1
66:13 72:2,5,
7 77:1,7,13
81:6 84:2,12,

16 88:13
89:22,25
93:2,3,25
96:8,14,18
97:4 98:22
103:7 106:18
108:16 112:24
116:18 117:9,
15 119:5,9,15
120:2,5,12
121:21 124:2,
4,21,23
125:22,23
127:16 128:19
131:20
134:10,19
135:3,23
136:2 137:10
138:21 139:7,
25 143:12
144:25 145:2,
8 146:16,22
147:1,2
149:7,13,17
150:14 151:4,
12 152:25
153:19,24
158:20 159:17
167:8 168:19
182:5 183:18
188:9,20
192:6 195:11
197:23 207:18
209:15 213:15

65:3 83:1
**Thanks**
48:1
**theoretically**
146:16
**theory**
139:11
**they'd**
136:15 180:6
**thing**
5:25 13:4
35:20 53:6,
18 61:24 76:6
135:18,19
140:15 145:17
147:16 149:10
164:17 169:3
178:1 208:17
217:7
**thinks**
81:3 125:20,
23 150:15,16
**third**
117:21 172:20
200:4
**third-party**
100:19
**thoroughly**
157:15 162:3
**thoughts**
164:4
**threatening**
55:18,20,22
58:9,10,19
**three**
9:8 26:19,21
27:5,8 39:15
45:22

Judge Dawn Caloca-Johnson
November 01, 2018
45

three-year
14:8
thrown
84:7
Thursday
200:5
tie
143:22
tied
135:9
till
55:3
timeline
25:10 29:1
timely
154:2
times
14:21 25:4
39:4,13,16
70:20 71:25
86:1 104:19
timing
208:7
title
18:3,4,5,7,
11,16,19,21,
24 22:7 42:17
57:4
tonight
180:3 182:12
210:16 217:3,
14
tool
144:16
top
50:13 190:5
topics
171:19

torn
150:17
totally
185:13,15
touch
5:1 86:10,21
87:8 88:19
town
33:20,22
42:15
Township
63:5
traffic
179:13,14
train
51:2
trained
164:18
training
159:7,11
163:14
transcribed
4:5
transcript
58:14 199:12,
14 202:9
transcripts
207:15
treated
178:23
trial
4:3 23:18
110:9 113:11
129:21 140:19
195:16 208:6,
16
trip
68:16

trouble
86:10
true
8:7 14:20
20:7 21:8
49:19 55:19
60:8 64:13
85:19 89:13
103:25 104:4,
6 114:24
139:20,21
142:17
160:11,17
truth
183:6,7
187:6,7
two
25:25 38:17
39:20,22
54:19 75:17
115:11,13,14
118:2 124:10
143:21 147:10
151:11 158:14
167:1,2 169:1
175:1 179:2
180:15 184:24
197:2 209:2,9
twofold
78:11
type
90:15 178:1
190:20
types
142:6 184:12
typical
184:11
typically
180:7 184:22,
23 191:11

_____
    U
_____
ultimate
107:16
unable
80:8 98:22
unavoidable
208:9
unaware
95:15
uncertain
40:23
uncommon
184:20
underlined
47:13
undertaken
184:4
unequivocally
141:5
unfair
82:12
unfortunately
25:11
unique
128:10
132:12,18,20
unpredictable
208:7
unquote
137:21
unreasonable
69:16,18
unreasonably
69:11
unrebutted
119:15 120:5

Judge Dawn Caloca-Johnson
November 01, 2018
47

191:3
weird
140:14
welcome
183:16
well-versed
156:18
Westwood
200:5
whatsoever
141:9
whoever's
56:15
wide
186:5
wider
186:13,17
width
42:1
wife
194:14,15,16
willing
97:9
windows
151:18
wish
153:3
withdraw
29:17 62:1
216:8
withdrawn
21:17 27:16
43:10 53:12
99:8
withheld
170:19
withhold
69:11 92:19

withholding
69:16
withstand
160:23 190:3,
23
witness
4:11,19 31:19
38:7 91:16
93:25 95:23
105:6,22
106:19 107:5
110:3,25
115:12 158:21
183:9,12
186:24 187:8,
11 193:22
199:10 200:15
witnesses
179:23 180:23
181:13 182:25
word
11:23 12:25
27:12 51:24
83:6 89:24
204:18
words
12:2 29:10
30:6,7,9,10,
12 31:16 40:10
42:12 46:13,15
52:25 53:1,2,3,
6,8 66:4
194:5
worked
28:6 208:9
worker
48:21 72:6
workers
71:7

workforce
69:21 70:5,8,
9 120:1,4
138:13 163:23
working
13:15 74:3
87:23 139:18
141:18 143:21
184:1,10
workload
120:1,4
138:13 163:23
world
203:14
worry
49:9
worth
106:24 124:10
148:18 181:22
Wosbrock
200:3
Wostbrook
56:22 57:1,6
72:12 75:3,4,
6,20 76:1,5
79:13,15
86:10 87:9,12
85:8 89:8
101:10 134:15
199:16 200:19
Wostbrock's
56:23 74:19
write
9:17 50:13
writing
6:2 107:2
132:4
written
10:13 25:5

26:19 29:20
43:13 52:11,
13 76:10
107:9,13
110:22,25
112:2
wrong
43:12 86:14,
17 100:7
157:12,13
165:7

_____
    Y
_____
y'all
208:7,23
209:1,5
y'all's
182:7
yards
49:6
yearly
191:12

_____
    Z
_____
Zero
194:5,7
zone
172:24

Judge Dawn Caloca-Johnson
November 01, 2018
46

147:2
unresponsive
88:1
unsubstantiated
129:22
unusual
140:13
usable
133:14
useful
96:6 118:14
160:10,16
172:17
uses
57:7
utilize
7:8 172:16
utilized
118:13 120:6
133:15 137:5
160:9

_____
    V
_____
vacation
68:8,9,13
vague
69:7
valuable
151:9
value
150:24 151:10
152:2,23
variance
154:2
various
12:24 53:21
66:5 76:19

vehicle
72:23 160:24
verbal
194:7
verbally
52:10 114:21
verdict
115:21 116:4,
24 122:16,21
130:1 144:1
160:5 161:7,
15,18 162:1
163:20 164:9,
12,23 165:11,
18 166:22
172:5 178:7
218:15
verification
70:19 72:8
verified
62:12
verify
21:11 22:4
version
21:2 199:21
211:16
versus
144:5
video
134:15,19
view
77:8 79:14,
15,21 106:21
192:3
viewpoint
168:8
views
79:25

violated
142:8
violates
97:25 159:5,
13
violation
26:1 27:22,25
28:8 30:4
37:21 38:12
87:21 117:14,
20 119:22
124:8,9 134:8
141:21 142:21
152:2 156:1,8
170:13 206:21
207:11
violations
127:13 173:10
virtually
167:24
visit
53:1 107:10
110:24 111:1
184:2,6,7
194:24 195:1
visited
195:4
visits
14:13
volunteering
206:20

_____
    W
_____
Wait
15:12 209:22
212:16
waiting
182:18

waiver
169:5
walking-around
127:9
wall
181:23
walls
161:5
wandering
43:7
warranties
12:6
warranty
11:18,24
68:21,22
80:13 83:5
97:25 118:15,
18 120:9,10
121:23 143:16
148:7 164:11
170:4
waste
152:21
watching
45:17
water
135:20 159:3,
4,12 190:4
waterway
190:7 205:14
weather
218:14
weeks
45:22 68:14
180:15
weighing
213:4 214:1
weight